IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re PHILIP GOODWYN, DEBTOR, ) | *2:06CV893-WKW* |
| ) | CASE NO. ~~2:06-mc-03323-WKW~~ |
| ) | |
| SIMPLE PLEASURES, INC., et al., ) | |
| ) | (          Chapter 7          ) |
| Plaintiffs, ) | (Case No. 05-32325-WRS ) |
| ) | |
| v. ) | |
| ) | (   Adversary Proceeding   ) |
| V RESTAURANTS, INC., et al., ) | (      No. 05-03062        ) |
| ) | |
| Defendants. ) | |

## ORDER

In accordance with the Court's Order granting the withdrawal of the reference (Doc. # 12),

it is hereby ORDERED that the clerks of the bankruptcy court and the district court are DIRECTED

to take all steps necessary to transfer the adversary proceeding (No. 05-03062) to the United States

District Court for the Middle District of Alabama. The clerk of this court shall open the transferred

case as a separate civil case with the undersigned as the presiding judge.

DONE this the 4th day of October, 2006.


_____/s/   W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE

# U.S. Bankruptcy Court
## Middle District of Alabama (Montgomery)
## Adversary Proceeding #: 05-03062
### Internal Use Only

*Assigned to:* William R. Sawyer             *Date Filed:* 08/12/05
*Related BK Case:* 05-32325 (Associated Cases)
*Related BK Title:* Philip L. Goodwyn
*Demand:*
 *Nature[s] of Suit:* 454 Recover Money/Property

**Plaintiff**
-----------------------

| | |
|---|---|
| **Philip L. Goodwyn** | represented by **James L. Day** |
| 1533 Gilmer Ave. | Memory & Day |
| Montgomery, AL 36104 | P.O. Box 4054 |
| (334) 834-8000 | Montgomery, AL 36103-4054 |
| SSN: ▅▅▅▅▅▅ | 334 834-8000 |
| | Fax : 334 834-8001 |
| | Email: jlday@memorylegal.com |
| | |
| | **Von G. Memory** |
| | Memory & Day |
| | P. O. Box 4054 |
| | 469 S.McDonough St. |
| | Montgomery, AL 36101 |
| | 334-834-8000 |
| | Fax : 334-834-8001 |
| | Email: vgmemory@memorylegal.com |
| | *LEAD ATTORNEY* |
| | |
| **Simple Pleasures, Inc.** | represented by |
| 1533 Gilmer Ave. | **James L. Day** |
| Montgomery, AL 36104 | (See above for address) |
| | |
| | **Von G. Memory** |
| | (See above for address) |
| | *LEAD ATTORNEY* |
| | |
| **Susan S. DePaola, Trustee** | represented by |
| 1726 West Second Street | |
| Suite B | **Von G. Memory** |
| Montgomery, AL 36106 | (See above for address) |
| 334-262-1600 | |

V.

**Defendant**
-----------------------

**V Restaurants**
(Reg Agent) Vince Saele
5040 Vaughn Rd.
Montgomery, AL 36116

represented by **Ben E. Bruner**
2835 Zelda Rd
Montgomery, AL 36106
334 323-4462
*LEAD ATTORNEY*

**Daniel G. Hamm**
The Law Offices of Daniel G. Hamm
560 South McDonough St., Ste A
Montgomery, AL 36104
334-269-0269
Fax : 334-323-5666
Email: dhamm@dghlegal.com

**Vince Saele**
5040 Vaughn Rd.
Montgomery, AL 36116

represented by **Ben E. Bruner**
(See above for address)
*LEAD ATTORNEY*

**Daniel G. Hamm**
(See above for address)

**Spectrum/Vaughn Plaza, L.L.C.**
(Reg Agent Edgar H. Fatzinger)
2870 Zelda Road
Montgomery, AL 36106
*TERMINATED: 06/15/2006*

represented by **Coleman Yarbrough**
2860 Zelda Rd.
Montgomery, AL 36106
*TERMINATED: 06/09/2006*
*LEAD ATTORNEY*

| Filing Date | # | Docket Text |
|---|---|---|
| 08/12/2005 | 1 | 454 (Recover Money/Property): Complaint against V Restaurants, Vince Saele, Spectrum/Vaughn Plaza, L.L.C.. Fee Amount $150. Filed by Von G. Memory, James L. Day, Philip L. Goodwyn, V Restaurants, Vince Saele, Spectrum/Vaughn Plaza, L.L.C., Simple Pleasures, Inc. on behalf of Philip L. Goodwyn, Simple Pleasures, Inc.. (Attachments: # 1 Supplement Summons# 2 Supplement Adversary Cover Sheet# 3 Supplement State Complaint# 4 Supplement Answer of Spectrum# 5 Supplement Answer of Vince Sale# 6 Supplement Answer V Restaurants# 7 Supplement V Restaurants Motion to Dismiss# 8 Supplement Defs Brief in Support of V Restaurant's Motion to Dismiss# 9 Supplement Motion to Disqualify Counsel) (Memory, Von) (Entered: 08/12/2005) |
| 08/12/2005 | 2 | Receipt of Complaint(05-03062) [cmp,cmp] ( 150.00) filing fee. Receipt number 1503645, amount $ 150.00. (U.S. Treasury) (Entered: 08/12/2005) |
| 08/16/2005 | | Flags: AwCAact17,AwCAact21 flag(s) removed. Notice Of Removal was filed, no summons is to be issued.The trustee is not a party in this case. (JT, ) . (Entered: 08/16/2005) |
| 08/16/2005 | | New Case Received and Reviewed for Accuracy. (JT, ) (Entered: 08/16/2005) |

| 10/11/2005 | 3 | Order Setting Status Conference Entered On 10/11/2005. Status hearing to be held on 11/1/2005 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (JT, ) Modified text to show manually mailed to D. Coleman Yarbrough and Ben F. Brunner on 10/17/2005 (JT, ). (Entered: 10/11/2005) |
|---|---|---|
| 10/14/2005 | 4 | BNC Certificate of Service - See Image Attached - (RE: related document(s)3 Order on Motion To Set Hearing). No. of Notices: 1. Service Date 10/14/2005. (Admin.) (Entered: 10/15/2005) |
| 11/01/2005 | 5 | Status Conference continued from 11/1/05 (RE: related document(s)3 Order on Motion To Set Hearing, ). Hearing scheduled for 11/29/2005 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (BL, ) (Entered: 11/01/2005) |
| 11/01/2005 | 6 | Status Conference continued from 11/1/05. Hearing scheduled for 11/29/2005 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (BL, ) (Entered: 11/01/2005) |
| 11/07/2005 | 7 | Order Setting Hearing Entered On Motion To Disqualify Plaintiff's Counsel, Von G. Memory 11/7/2005 (RE: related document(s)1(9) Defendants V Restaurant, Inc. and Vince Saele's Motion To Disqualify Plaintiff's Counsel From Representation Of The Plaintiffs). Hearing scheduled for 11/29/2005 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (JT, ) (Entered: 11/07/2005) |
| 11/09/2005 | 8 | BNC Certificate of Service - See Image Attached - (RE: related document(s)7 Order on Motion To Set Hearing, ). No. of Notices: 3. Service Date 11/09/2005. (Admin.) (Entered: 11/10/2005) |
| 11/28/2005 | 9 | Notice of Appearance and Request for Notice Filed by Daniel Gary Hamm on behalf of Vince Saele, V Restaurants. (Hamm, Daniel) (Entered: 11/28/2005) |
| 11/28/2005 | 10 | Notice to Withdraw Document *Motion to Disqualify Counsel attachment #9 in Complaint* Filed by Daniel Gary Hamm on behalf of Vince Saele, V Restaurants (RE: related document(s)1 Complaint,, filed by Plaintiff Philip L. Goodwyn, Plaintiff Simple Pleasures, Inc.). (Hamm, Daniel) (Entered: 11/28/2005) |
| 12/01/2005 | 11 | Order Setting Trial Date and Scheduling Order Entered On 12/1/2005. Dispositive Pretrial Motions due by 3/14/2006. Pretrial Disclosures due by 5/5/2006. List Disclosing Objections To The Use of Depositions or Admissibility of Exhibits due by 6/2/2006. Joint Pre-Trial Statement due by 6/2/2006. Discovery due by 2/28/2006. Pre-Trial Conference set for 6/6/2006 at 01:30 PM at Telephone Hearing. Trial is "Deep Set" for Monday, 6/19/2006.(RK, ) (Entered: 12/01/2005) |

| 12/03/2005 | 12 | BNC Certificate of Service - See Image Attached - (RE: related document(s)11 Scheduling Order, ). No. of Notices: 1. Service Date 12/03/2005. (Admin.) (Entered: 12/04/2005) |
| 02/10/2006 | 13 | Notice of Deposition *of Vince Saele* Filed by Von G. Memory on behalf of Simple Pleasures, Inc.. (Memory, Von) (Entered: 02/10/2006) |
| 03/14/2006 | 14 | Motion For Summary Judgment Filed by Daniel G. Hamm on behalf of Vince Saele, V Restaurants. (Hamm, Daniel) (Entered: 03/14/2006) |
| 03/15/2006 | | Matter Under Advisement Re: (RE: related document(s)14 Motion for Summary Judgment). Matter Under Advisement Due by 6/6/2006. (Sawyer, William) (Entered: 03/15/2006) |
| 03/16/2006 | 15 | Scheduling Order Entered On 3/16/2006 (RE: related document(s)14 Motion for Summary Judgment filed by Defendant V Restaurants, Defendant Vince Saele). Plaintiff Response To Summary Judgement due by 4/14/2006. Defendant Response to Summary Judgment due by 4/24/2006. Summary Judgement due by 4/24/2006. Pre-Trial Conference set for 6/6/2006 at 01:30 PM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (JT, ) (Entered: 03/16/2006) |
| 03/18/2006 | 16 | BNC Certificate of Service - See Image Attached - (RE: related document(s)15 Scheduling Order, ). No. of Notices: 1. Service Date 03/18/2006. (Admin.) (Entered: 03/19/2006) |
| 04/14/2006 | 17 | Response to *Motion for Summary Judgment* Filed by Von G. Memory on behalf of Susan S. DePaola, Trustee (RE: related document(s)14 Motion for Summary Judgment filed by Defendant V Restaurants, Defendant Vince Saele). (Attachments: # 1 Exhibit A- Contract# 2 Exhibit B - Affidavit of Philip Goodwyn) (Memory, Von) (Entered: 04/14/2006) |
| 04/24/2006 | 18 | Response to *Defendant's Reply to Plaintiff's Brief in Response to Summary Judgment* Filed by Daniel G. Hamm on behalf of Vince Saele, V Restaurants (RE: related document(s)17 Response, filed by Plaintiff Susan S. DePaola, Trustee). (Hamm, Daniel) (Entered: 04/24/2006) |
| 05/05/2006 | 19 | Submission of Pretrial Documents *Of Defendant Spectrum/Vaughn Plaza, LLC* Filed by Coleman Yarbrough on behalf of Spectrum/Vaughn Plaza, L.L.C. (RE: related document(s)11 Scheduling Order,, 1 Complaint,, filed by Plaintiff Philip L. Goodwyn, Plaintiff Simple Pleasures, Inc.). (JT, ) (Entered: 05/05/2006) |
| 05/05/2006 | 20 | Submission of Documents: *Pretrial Disclosures of Defendant Vince Saele and V. Restaurants, Inc.* Filed by Daniel G. Hamm on behalf of Vince Saele, V Restaurants (RE: related document(s)11 Scheduling Order, ). (Hamm, Daniel) (Entered: 05/05/2006) |

| 05/08/2006 | 21 | Submission of Pretrial Documents *Pretrial Disclosures, FED. R. BANKR. P. 7026 (a)(3)* Filed by Von G. Memory on behalf of Susan S. DePaola, Trustee (RE: related document(s)11 Scheduling Order, ). (Memory, Von) (Entered: 05/08/2006) |
|---|---|---|
| 06/02/2006 | 22 | Submission of Pretrial Documents *Defendant's Pretrial Statement* Filed by Daniel G. Hamm on behalf of Vince Saele, Spectrum/Vaughn Plaza, L.L.C., V Restaurants (RE: related document(s)11 Scheduling Order, ). (Hamm, Daniel) (Entered: 06/02/2006) |
| 06/05/2006 | 23 | Motion to Extend Time *to file Pretrial Statement (June 5, 2006)* Filed by Von G. Memory on behalf of Susan S. DePaola, Trustee, Philip L. Goodwyn (RE: related document(s)11 Scheduling Order, ). (Memory, Von) (Entered: 06/05/2006) |
| 06/05/2006 | 24 | Submission of Pretrial Documents *(Plaintiffs' Pre-Trial Statement)* Filed by Von G. Memory on behalf of Susan S. DePaola, Trustee, Philip L. Goodwyn, Simple Pleasures, Inc. (RE: related document(s)11 Scheduling Order, ). (Memory, Von) (Entered: 06/05/2006) |
| 06/09/2006 | 25 | Order Dismissing Defendant From Adversary Proceeding (Defendant Spectrum/Vaughn Plaza, LLC). Entered On 6/9/2006. (DS, ) Additional attachment(s) added on 6/9/2006 (DS, ). Modified text on 6/9/2006 (DS, ). (Entered: 06/09/2006) |
| 06/09/2006 | | Terminated party: Spectrum/Vaughn Plaza, L.L.C. terminated per rel doc# 25). (DS, ) (Entered: 06/09/2006) |
| 06/09/2006 | 26 | MEMORANDUM DECISION - Entered On 6/9/2006 (RE: related document(s)14 Motion for Summary Judgment filed by Defendant V Restaurants, Defendant Vince Saele). (DS, ) (Entered: 06/09/2006) |
| 06/09/2006 | 27 | Order Denying Motion For Summary Judgment (RE: related document(s) 14). Entered On 6/9/2006 (RE: related document(s)1 Complaint,, filed by Plaintiff Philip L. Goodwyn, Plaintiff Simple Pleasures, Inc.). Trial date (announced at the 6/6/2006 hearing) set for 6/23/2006 at 09:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (DS, ) (Entered: 06/09/2006) |
| 06/09/2006 | | Motion terminated. (RE: related document(s)14 Motion for Summary Judgment). (Rel doc# 27 terms #14.)(DS, ) (Entered: 06/09/2006) |
| 06/09/2006 | | Matter Under Advisement Complete (RE: related document(s) Set Matter Under Advisement Deadline). (Sawyer, William) (Entered: 06/09/2006) |
| 06/09/2006 | 28 | Motion for Withdrawal of Reference *and Transfer of Adversary Proceeding to the District Court.* Fee Amount $150. Filed by Daniel G. Hamm on behalf of Vince Saele, V Restaurants. (Attachments: # 1 Plaintiff's Complaint# 2 |

|  |  | Order Setting Trial Date Scheduling Order# 3 Order dated 3-16-06) (Hamm, Daniel) (Entered: 06/09/2006) |
|---|---|---|
| 06/09/2006 | 29 | Receipt of Motion for Withdrawal of Reference(05-03062) [motion,mwdref] ( 150.00) filing fee. Receipt number 1857260, amount $ 150.00. (U.S. Treasury) (Entered: 06/09/2006) |
| 06/11/2006 | 30 | BNC Certificate of Service - See Image Attached - (RE: related document(s)25 Agreed/Consent). No. of Notices: 1. Service Date 06/11/2006. (Admin.) (Entered: 06/12/2006) |
| 06/11/2006 | 31 | BNC Certificate of Service - See Image Attached - (RE: related document(s)26 Opinion). No. of Notices: 1. Service Date 06/11/2006. (Admin.) (Entered: 06/12/2006) |
| 06/11/2006 | 32 | BNC Certificate of Service - See Image Attached - (RE: related document(s)27 Scheduling Order, ). No. of Notices: 1. Service Date 06/11/2006. (Admin.) (Entered: 06/12/2006) |
| 06/12/2006 | 33 | Clerk's Certificate To District Court (RE: related document(s) 28 Motion for Withdrawal of Reference. Transmitted to District Court on 6/12/2006 - Motion For Withdrawal of Reference with Clerk's Certificate. Flags: AwCAact19! flag(s) removed. (DS, ) Additional attachment(s) added on 6/12/2006 (DS, ). (Entered: 06/12/2006) |
| 06/15/2006 | 34 | Emergency Motion to Expedite Hearing *on Defendants' Motion to Stay* Filed by Daniel G. Hamm on behalf of Vince Saele, V Restaurants. (Hamm, Daniel) (Entered: 06/15/2006) |
| 06/15/2006 | 35 | Order Dismissing Spectrum/Vaughn Plaza LLC As Party Defendant Entered On 6/15/2006 (RE: related document(s)1 Complaint,, filed by Plaintiff Philip L. Goodwyn, Plaintiff Simple Pleasures, Inc.). (JT, ) (Entered: 06/15/2006) |
| 06/15/2006 | 36 | Order Denying Motion For Summary Judgment (Related Doc # 14) Entered On 6/15/2006. (JT, ) (Entered: 06/15/2006) |
| 06/15/2006 | 37 | Order Setting Trial Entered On 6/15/2006 (RE: related document(s)1 Complaint,, filed by Plaintiff Philip L. Goodwyn, Plaintiff Simple Pleasures, Inc.). Trial date set for 6/23/2006 at 09:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (JT, ) (Entered: 06/15/2006) |
| 06/16/2006 | 38 | Notice of Hearing Set (RE: related document(s)34 Defendant's Motion to Expedite Hearing). Hearing scheduled for 6/19/2006 at 02:00 PM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (JPC, ) (Entered: 06/16/2006) |

| 06/17/2006 | 39 | BNC Certificate of Service - See Image Attached - (RE: related document(s)35 Order). No. of Notices: 1. Service Date 06/17/2006. (Admin.) (Entered: 06/18/2006) |
| 06/18/2006 | 40 | BNC Certificate of Service - Hearing - (RE: related document(s)38 Hearing (Bk)). No. of Notices: 1. Service Date 06/18/2006. (Admin.) (Entered: 06/19/2006) |
| 06/19/2006 | 41 | Objection to *Emergency Motion to Stay* Filed by Von G. Memory on behalf of Susan S. DePaola, Trustee, Philip L. Goodwyn, Simple Pleasures, Inc. (RE: related document(s)34 Motion to Expedite Hearing filed by Defendant V Restaurants, Defendant Vince Saele). (Memory, Von) (Entered: 06/19/2006) |
| 06/19/2006 | 42 | MEMORANDUM DECISION/OPINION - (Defendants' Motion to Stay Proceedings is DENIED )Entered On 6/19/2006 (RE: related document(s)34 Motion to Expedite Hearing filed by Defendant V Restaurants, Defendant Vince Saele, 41 Objection, filed by Plaintiff Susan S. DePaola, Trustee, Plaintiff Philip L. Goodwyn, Plaintiff Simple Pleasures, Inc.). (YP, ) Modified text on 6/23/2006 (YP, ). (Entered: 06/19/2006) |
| 06/19/2006 | 43 | Order Denying Defendants' Motion to Stay Proceedings (Related Doc # 34) Entered On 6/19/2006. (YP, ) (Entered: 06/19/2006) |
| 10/02/2006 | 44 | **MEMORANDUM OPINION AND ORDER** By District Court Judge W. Keith Watkins Granting re: related document(s) 28 Motion For Withdrawal Of Reference Entered On 10/2/2006. (YP, ) (Entered: 10/03/2006) |
| 10/03/2006 | 45 | **MEMORANDUM OPINION AND ORDER** By District Court Judge W. Keith Watkins Granting (RE: related document(s)28 Motion for Withdrawal of Reference, ). (YP, ) Modified (Publish Order to website) on 10/3/2006 (YP, ). (Entered: 10/03/2006) |
| 10/03/2006 | | Flags: ToDistrict flag(s) removed ( MEMORANDUM OPINION AND ORDER entered on 10/2/06 from District Court). (YP, ) (Entered: 10/03/2006) |
| 10/04/2006 | 46 | **Order By District Court Judge W. Keith Watkins Granting the withdrawal of the reference, it is ordered that the clerks of the bankruptcy court and the district court are DIRECTED to take all steps necessary to transfer the adversary proceeding (No. 05-03062) to the United States District Court for the Middle District of Alabama.** Entered On 10/4/2006 (RE: related document(s)44 Order on Motion For Withdrawal Of Reference, 28 Motion for Withdrawal of Reference, filed by Defendant V Restaurants, Defendant Vince Saele). (YP, ) (Entered: 10/04/2006) |

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

IN RE:
**PHILLIP GOODWYN**

**CASE NO. 05-32325**

        **Debtor.**

---

**SIMPLE PLEASURES, INC., an
Alabama corporation, and PHILLIP
GOODWYN, individually,**

    **Plaintiffs,**

**v.**

**V RESTAURANTS, INC., an Alabama
corporation, SPECTRUM/VAUGHN
PLAZA L.L.C., an Alabama limited
liability company, and VINCE SAELE, an
individual, and fictitious Defendants, A, B,
C, D, and E being those persons, firms,
partnerships, corporations, or other
entities that aided, assisted or joined with
the Defendants, incident to the actions
described herein. Plaintiff avers that the
identities of the fictitious parties are
otherwise unknown to Plaintiff at this
time, or if their names are known to
Plaintiff at this time, their identities as
proper parties are not known to Plaintiff
at this time, but their true names will be
substituted by amendment when
ascertained,**

    **Defendants.**

**Montgomery County Case
No. CV 2005 - 306**

**Adv. Pro. No. _____**

---

## NOTICE OF REMOVAL

To:     Hon. A Rittenour Melissa
            Circuit Clerk
            Montgomery County
            251 South Lawrence Street

Montgomery, AL  36104

Ben E. Bruner, Esq.
2835 Zelda Road
Montgomery, AL 36106

D. Coleman Yarbrough, Esq.
2860 Zelda Road
Montgomery, AL 36106

Plaintiffs Simple Pleasures, Inc., and Philip Goodwyn file this notice of removal under 28 U.S.C. §1446(a).

## A. Introduction

1.   Plaintiff, SIMPLE PLEASURES, INC. ("Simple Pleasures") is an Alabama corporation with its principal place of business in Montgomery County, Alabama.

2.   Plaintiff, PHILLIP GOODWYN ("Goodwyn"), is over the age of 19 years, is a resident of Montgomery County, Alabama.

3.   Defendant, V RESTAURANTS, INC. ("V Restaurants"), is an Alabama corporation with its principal place of business in Montgomery County, Alabama.

4.   Defendant, SPECTRUM/VAUGHN PLAZA L.L.C. ("Spectrum"), is an Alabama limited liability company, with its principal place of business in Montgomery County, Alabama.

5.   It is believed that the Defendant, VINCE SAELE ("Saele"), who is over the age of 19 years, is a resident of Montgomery County, Alabama.

6.   In the complaint it has been alleged that Defendants V Restaurants and Saele signed a contract for sale, September 24, 2004. Incident to the instant contract, V Restaurants and Saele agreed, among other things, to purchase the going concern of Gators Restaurant for $90,000.00.

7.  Relying on the representations of V Restaurants and Saele, Goodwyn, and as valuable consideration for the contract for sale, agreed to allow Defendants to assume possession before the sale was closed.

8.  Without cause, V Restaurants and Saele failed or refused to honor their contract for sale. However, V Restaurants and Saele remained in possession and continue to use the restaurant and the amenities associated therewith.

9.  It is further alleged that Defendant Spectrum conspired with the other Defendants to gain complete possession of the assets and operation of the Plaintiffs.

10.  In addition, the complaint contains claims for conversion, unjust enrichment, damages for use, fraud, negligence, wantonness, willfulness,

## B. Basis for Removal

11. This court has jurisdiction to take up and consider civil matters "…arising under Title 11, or arising in or related to cases under Title 11", 28 U.S.C. § 1334. Moreover, this court may hear and determine all "core matters" arising under Title 11 incident to estate administration, allowance and disallowance of claims, orders to turn over estate property and proceedings to determine the validity, extent, and lien priority, 28 U.S.C. § 157(b).

12. All parties to the instant proceeding will be served with a copy of this notice at their last known address.

13. All pleadings, process, orders, and other filings in state/federal courts, with the exception of discovery, are attached to this notice as required by 28 U.S.C. § 1446(a).

14. Venue is proper in this district under 28 U.S.C. § 1441(a) because this district and division embrace the place where the removed action has been pending.

15. Plaintiffs will promptly file a copy of this notice of removal with the clerk of the state court where the action has been pending.

## C. Conclusion

16. Based upon the instant notice of removal, Plaintiffs hereby remove the above referenced civil action to the United States Bankruptcy Court for the Middle District of Alabama, Northern Division.

Respectfully submitted on this the 12th day of August 2005.

Memory & Day

By: /S/ Von G. Memory
Von G. Memory
ASB-8137-071V

James L. Day
ASB-1256-A55J

Attorneys for Debtor/
Plaintiff

OF COUNSEL

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
Email   vgmemory@memorylegal.com
        jlday@memorylegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

☐ facsimile

☐ hand delivery

☐ delivered in open court

on August 12, 2005.

Teresa Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

Ben E. Bruner, Esq.
2835 Zelda Road
Montgomery, AL 36106

D. Coleman Yarbrough
2860 Zelda Road
Montgomery, AL 36106

/S/ Von G. Memory
OF COUNSEL

Form No. 3 (Pg. 1)

| B 104<br>(Rev. 2/92) | **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (if Known) |

| **PARTY** (Check one box only) | ☐ 1 U.S. PLAINTIFF | ☐ 2 U.S. DEFENDANT | ☐ 3 U.S. NOT A PARTY |
|---|---|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT
(Check the one most appropriate box only.)

☐ 454 To Recover Money or Property

☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan

☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action

☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property

☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523

☐ 459 To determine a claim or cause of action removed to a bankruptcy court

☐ 457 To obtain approval for the sale of both the interest of the estate and of a co-owner in property

☐ 434 To obtain an injunction or other equitable relief

☐ 498 Other (specify)

☐ 424 To object or to revoke a discharge 11 U.S.C. §727

☐ 458 To subordinate any allowed claim or interest except where such subordination is provided in a plan

| **ORIGIN OF PROCEEDINGS**<br>(Check one box only.) | ☐ 1 Original Proceeding | ☐ 2 Removed Proceeding | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another Bankruptcy Court | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| DEMAND | NEAREST THOUSAND<br>$ | OTHER RELIEF SOUGHT | ☐ JURY DEMAND |
|---|---|---|---|

### BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
|---|---|
| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| **FILING FEE**   (Check one box only.) | ☐ FEE ATTACHED | ☐ FEE NOT REQUIRED | ☐ FEE IS DEFERRED |
|---|---|---|---|
| DATE | PRINT NAME | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |

Form No. 3 (Pg. 2)

B-104

## ADVERSARY PROCEEDING COVER SHEET (Reverse Side)

This cover sheet must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney) and submitted to the Clerk of the court upon the filing of a complaint initiating an adversary proceeding.

The cover sheet and the information contained on it *do not* replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. This form is required for the use of the clerk of the court to initiate the docket sheet and to prepare necessary indices and statistical records. A separate cover sheet must be submitted to the clerk of the court for each complaint filed. The form is largely self explanatory.

**Parties.** The names of the parties to the adversary proceeding *exactly* as they appear in the complaint. Give the names and addresses of the attorneys if known. Following the heading "Party," check the appropriate box indicating whether the United States is a party named in the complaint.

**Cause of Action.** Give a brief description of the cause of action including all federal statutes involved. For example, "Complaint seeking damages for failure to disclose information, Consumer Credit Protection Act, 15 U.S.C. §1601 et seq.," or "Complaint by trustee to avoid a transfer of property by the debtor, 11 U.S.C. §544."

**Nature of Suit.** Place an "X" in the appropriate box. Only one box should be checked. If the cause fits more than one category of suit, select the most definitive.

**Origin of Proceedings.** Check the appropriate box to indicate the origin of the case:

1. Original Proceeding.
2. Removed from a State or District Court.
4. Reinstated or Reopened.
5. Transferred from Another Bankruptcy Court.

**Demand.** On the next line, state the dollar amount demanded in the complaint in thousands of dollars. For $1,000 enter "1," for $10,000 enter "10," for$100,000 enter "100," if $1,000,000, enter "1000." If $10,000,000 or more, enter "9999.11 If the amount is less than $1,000, enter "0001." If no monetary demand is made, enter "XXXX." If the plaintiff is seeking non-monetary relief, state the relief sought, such as injunction or foreclosure of a mortgage.

**Bankruptcy Case In Which This Adversary Proceeding Arises.** Enter the name of the debtor and the docket number of the bankruptcy case from which the proceeding now being filed arose. Beneath, enter the district and divisional office where the case was filed, and the name of the presiding judge.

**Related Adversary Proceedings.** State the names of the parties and the six digit adversary proceeding number from any adversary proceeding concerning the same two parties or the same property currently pending in any bankruptcy court. On the next line, enter the district where the related case is pending and the name of the presiding judge.

**Filing Fee.** Check one box. The fee must be paid upon filing unless the plaintiff meets one of the following exceptions. The fee is not required if the plaintiff is the United States government or the debtor. If the plaintiff is the trustee or a debtor in possession, and there are no liquid funds in the estate, the filing fee may be deferred until there are funds in the estate (in the event no funds are ever recovered for the estate, there will be no fee). There is no fee for adding a party after the adversary proceeding has been commenced.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the right of the last line of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is *pro se*, that is, not represented by an attorney, the plaintiff must sign.

The name of the signatory must be printed in the box to the left of the signature. The date of the signing must be indicated in the box on the far left of the last line.

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| SIMPLE PLEASURES, INC., an Alabama corporation, and PHILLIP GOODWYN, individually, | |
| **Plaintiffs,** | CASE NO. CV 2005 – ___306____ |
| **V.** | |
| V RESTAURANTS, INC., an Alabama corporation, SPECTRUM/VAUGHN PLAZA L.L.C., an Alabama limited liability company, and VINCE SAELE, an individual, and fictitious Defendants, A, B, C, D, and E being those persons, firms, partnerships, corporations, or other entities that aided, assisted or joined with the Defendants, incident to the actions described herein. Plaintiff avers that the identities of the fictitious parties are otherwise unknown to Plaintiff at this time, or if their names are known to Plaintiff at this time, their identities as proper parties are not known to Plaintiff at this time, but their true names will be substituted by amendment when ascertained, | **TRIAL BY JURY DEMANDED** |
| **Defendants.** | |

## COMPLAINT

### PARTIES

1. Plaintiff, SIMPLE PLEASURES, INC. ("Simple Pleasures") is an Alabama corporation with its principal place of business in Montgomery County, Alabama.

2. Plaintiff, PHILLIP GOODWYN ("Goodwyn"), is over the age of 19 years, is a resident of Montgomery County, Alabama. Mr. Goodwyn's address is 1533 Gilmer Ave., Montgomery, AL 36104.

3.  Defendant, V RESTAURANTS, INC. ("V Restaurants"), is an Alabama corporation with its principal place of business in Montgomery County, Alabama. The registered agent for service of process for V Restaurants, Inc., is Vince Saele. Mr. Saele may be served at 5040 Vaughn Rd., Montgomery, AL 36116.

4.  Defendant, SPECTRUM/VAUGHN PLAZA L.L.C. ("Spectrum"), is an Alabama limited liability company, with its principal place of business in Montgomery County, Alabama. The registered agent for service of process for Spectrum is Edgar H. Fatzinger, III. Mr. Fatzinger may be served at 2870 Zelda Road, Montgomery, AL 36106.

5.  It is believed that the Defendant, VINCE SAELE ("Saele"), who is over the age of 19 years, is a resident of Montgomery County, Alabama. Mr. Saele may be served at 5040 Vaughn Rd., Montgomery, AL, 36116.

6.  FICTITIOUS DEFENDANTS A, B, C, D, and E, are currently unknown, however, these Defendants joined, assisted, aided, and abetted in wrongfully withholding, depriving, and converting assets and other business opportunities.

## JURISDICTION AND VENUE

7.  The Plaintiffs allege that the Defendants owe Plaintiffs money based on a breach of a restaurant purchase agreement and other legal theories. Accordingly, Plaintiffs are proceeding against the Defendants under a theory of breach of contract, conversion, unjust enrichment, damages for use, fraud, wantonness/willfulness, and civil conspiracy. This court has statutory and historical jurisdiction over these claims. All of the parties either reside in or have corporate presence in Montgomery County, Alabama and all of the events and incidents that occurred in relation to the matters between the parties occurred in Montgomery County, Alabama. Hence,

venue is proper in this county. The amount in controversy exceeds $10,000.00 so this case is properly before the Montgomery County Circuit Court.

## FACTS COMMON TO ALL COUNTS

8.  Simple Pleasures was a restaurant and food service corporation in Montgomery, Alabama. Goodwyn is the president of Simple Pleasures.

9.  Simple Pleasures owns and previously operated a popular and well-known restaurant on the east side of Montgomery, Alabama commonly known as "Gators". Gators is located at 5040 Vaughn Road, Montgomery, AL, 36116-1149. Gators has been previously known as Gators Plaza Café, however, recently it was renamed Gators Fish House.

10. Gators maintained a broad customer base, goodwill, and a reputation for quality food and service in Montgomery County, Alabama.

11. In the past two years, Goodwyn and Simple Pleasures have actively pursued and investigated several offers to sell the assets, goodwill, and customer base of Gators.

12. In or about July 2004, Goodwyn received an offer from V Restaurants and Saele to purchase Gators, and ultimately the parties agreed to a $90,000.00 purchase price.

13. For the purchase price, V Restaurants and Saele agreed to purchase Gators, as a going concern, to include all equipment, inventory and supplies, furniture, fixtures, and amenities. In addition, V Restaurants and Saele, *inter alia*, agreed to assume responsibility for the existing lease with Spectrum.

14. The purchase price also included intangibles such as a large customer base, good will, over 15 years of perfected and renowned recipes, and direct assistance with the transition of all existing employees to the new owners.

- 3 -

15. The above-referenced terms and conditions were integrated into a contract for sale, prepared by the Saele Defendants, and signed by the parties, September 24, 2004.

16. Incident to the negotiations on the contract for sale, V Restaurants and Saele negotiated a $30,000.00 payoff of the $104,253.57 lease arrearage with Spectrum, a $30,000.00 payoff of the $80,000.00 debt to Regions Bank, and an anticipated $30,000.00 settlement of the $106,425.71 debt to the Internal Revenue Service.

17. In further consideration, Spectrum, *inter alia*, agreed to release Goodwyn and Simple Pleasures from their lease obligations. Regions Bank agreed to release its liens, pursuant to the promissory note and security agreement, on the assets of Gators. The Internal Revenue Service also agreed to a release of the federal tax lien.

18. Incident to the contract for purchase of Gators, Goodwyn verbally agreed to allow V Restaurants and Saele to take possession of the restaurant, pending approval of the application to the Internal Revenue Service. Moreover, in a show of good faith, Goodwyn did not pursue or solicit other buyers of Gators.

19. V Restaurants and Saele had sole and complete possession of the assets and operation of Gators from September 24, 2004, through the current date. In addition, V Restaurants and Saele had access to the Gators staff and personal property associated with the restaurant.

20. In an effort to firm up a closing date, the undersigned called counsel for the V Restaurants and Saele and requested a closing, however, the undersigned was informed by counsel that V Restaurants and Saele were "no longer interested in the terms of the contract" and withdrew the offer to purchase Gators. Nevertheless, V Restaurants and Saele have remained in sole possession.

21. V Restaurants and Saele have allowed the Gators business to run down to the point that it may be impossible to salvage the business.

22. Spectrum has advertised the leasehold property for public sale in the Montgomery Advertiser, January 13, 20, and 27, 2005. Spectrum has alleged the abandonment of the leased premises and has noticed the sale of the fixtures, equipment, and other personal property belonging to Simple Pleasures, Friday, February 4, 2005.

## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

23. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

24. V Restaurants and Saele signed a contract for sale, September 24, 2004. Incident to the instant contract, V Restaurants and Saele agreed, among other things, to purchase the going concern of Gators for $90,000.00.

25. Relying on the representations of V Restaurants and Saele, Goodwyn, and as valuable consideration for the contract for sale, agreed to allow Defendants to assume possession before the sale was closed.

26. Without cause, V Restaurants and Saele have failed or refused to honor their contract for sale, however, V Restaurants and Saele have remained in possession and continue to use the restaurant and the amenities associated therewith.

WHEREFORE, the Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele in the amount of $90,000.00, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

## SECOND CAUSE OF ACTION
### (CONVERSION)

- 5 -

27. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

28. V Restaurants and Saele signed a document entitled contract for sale, September 24, 2004. Incident to the instant contract V Restaurants and Saele agreed to purchase the going concern of Gators for $90,000.00.

29. Relying on the representations of Saele, Goodwyn, as valuable consideration for the contract for sale, agreed to allow V Restaurants and Saele to assume possession before the sale was closed.

30. Without cause, V Restaurants and Saele have failed or refused to honor their contract for sale.

31. V Restaurants and Saele has had sole and exclusive possession of the assets and operation of Gators from September 24, 2004, through the current date.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### THIRD CAUSE OF ACTION
### (UNJUST ENRICHMENT)

32. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

33. V Restaurants and Saele signed a document entitled contract for sale, September 24, 2004. Regarding the instant contract the V Restaurants and Saele, among other things, agreed to purchase the assets associated with or concerning Gators for $90,000.00.

- 6 -

34. Relying on the representations of Saele, Goodwyn, as valuable consideration for the contract for sale, agreed to allow V Restaurants and Saele to take possession before the sale was closed.

35. Without cause, the V Restaurants and Saele have failed or refused to honor their contract for sale.

36. V Restaurants and Saele had sole possession of the assets and operation of Gators from September 24, 2004, through December 31, 2004. During the same period in both 2001 and 2002, Gators earned in excess of $450,000.00 in sales revenue.

WHEREFORE, the Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

## FOURTH CAUSE OF ACTION
### (DAMAGES FOR USE)

37. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

38. V Restaurants and Saele signed a document entitled contract for sale, September 24, 2004. Incident to the instant contract the V Restaurants and Saele agreed to purchase the going concern of Gators for $90,000.00.

39. Relying on the representations of Saele, Goodwyn, as valuable consideration for the contract for sale, agreed to allow V Restaurants and Saele to assume possession before the sale was closed.

40. Without cause, V Restaurants and Saele have failed or refused to honor their contract for sale.

41. V Restaurants and Saele had sole possession of the assets and operation of Gators from September 24, 2004, through December 31, 2004. During the same period in both 2001 and 2002, Gators earned in excess of $450,000.00 in sales revenue.

WHEREFORE, the Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

## FIFTH CAUSE OF ACTION
### (FRAUD)

42. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele for FRAUD in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

## SIXTH CAUSE OF ACTION
### (NEGLIGENCE)

43. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele for NEGLIGENCE in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

## SIXTH CAUSE OF ACTION
### (WANTONNESS)

44. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele for WANTONNESS in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

## SEVENTH CAUSE OF ACTION
### (WILLFULNESS)

45. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele for WILLFULNESS in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

## SEVENTH CAUSE OF ACTION
### (CONSPIRACY)

46. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment against V Restaurants, Spectrum, and Saele for CONSPIRACY in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

## JURY DEMAND

The Plaintiffs demand a trial by struck jury on all matters contained herein.

Respectfully submitted January 28, 2005.

Memory & Day

By: _____

Von G. Memory
ASB-8137-071V

James L. Day
ASB-1256-A55J

Attorneys for Plaintiffs

OF COUNSEL:

Memory & Day
Post Office Box 4054
Montgomery, AL 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001

# PARNELL & CRUM, P.A.
### ATTORNEYS AT LAW
### 641 SOUTH LAWRENCE STREET
### MONTGOMERY, AL 36104

CHARLES N. PARNELL, III
G. BARTON CRUM
ROBERT J. RUSSELL, JR.
BRITT BATSON GRIGGS
MATTHEW T. ELLIS
ADRIAN D. JOHNSON
J. MATTHEW PARNELL
DAYNA R. BURNETT

TELEPHONE
334-832-4200

TELECOPIER
334-293-3551

MAILING ADDRESS
P.O. BOX 2189
ZIP CODE 36102-2189

September 24, 2004

<u>**VIA FACSIMILE - 834-8001**</u>

Von G. Memory
Attorney at Law
469 S. McDonough Street
Montgomery, Alabama 36104

Dear Von:

I am in receipt of your sales agreement and have briefly reviewed same, deciding that it is not possible to make the corrections and amendments this afternoon prior to 5:00. Thus, I write this letter as a memorandum of agreement, which I believe contains the pertinent provisions, until we can get the final draft documentation agreed upon. They are as follows:

1. That the purchase price shall be $90,000.00;

2. That the purchase price is for all of the assets, including, but not limited to, licenses and leases, equipment, office supplies, inventory, automobiles/delivery van, etc., and any other of the same located off-premises in storage buildings, etc.;

3. That Seller will lease the business to Buyer, along with all licenses and property until the date of closing for the sum of $250.00;

4. That the ownership of the properties mentioned herein above will be transferred to my client at a closing date no later than October 22, 2004, or as otherwise agreed upon by the parties, and that the property transferred shall be transferred without any liens or encumbrances whatsoever;

5. That the closing is contingent upon Regions accepting the sum of $30,000.00 for Phillips' lien.

6. That Spectrum Development will accept a note from Vince in the amount of $30,000.00 and that the $30,000.00 note shall be counted as consideration towards the purchase of the business;

Von G. Memory
September 24, 2004
Page Two

7.     That Buyer is entitled to all revenues derived from the business from the date of the consummation of this agreement forward;

8.     That the remaining $30,000.00 be paid to the Internal Revenue Service for and in consideration of the release of any and all liens which they may have against Phillip, individually, or the business (if any additional monies are owed, Phillip pays);

9.     In the event that any of the contingencies stated herein are not complied with or fulfilled by the Obligor, consideration shall be immediately withdrawn from the Trust Account and returned to the Purchaser;

10.     That upon the consummation of this document, the Purchaser shall be entitled to utilize the premises and operate the business in its normal manner and without interference from Mr. Goodwyn;

11.     That the catering business operating out of Gator's shall continue, but only be operated by its new owner;

12.     That if any of the contingencies fail wherein the Seller is the Obligor, Seller shall reimburse Purchaser for any and all net financial losses or expenses related thereto.

Von, my client is at wits end and feels he may be wasting his time. These terms are non-negotiable and this must be signed by tomorrow at noon (Saturday, September 25, 2004).

Sincerely,

Robert J. Russell, Jr.

RJRjr/fd

V Restaurants, Inc.
By: Vince Saele
Its: President

Simple Pleasures, Inc.
By: Phillip Goodwyn
Its: President

# IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

SIMPLE PLEASURES, INC., an Alabama )
Corporation, and PHILIP GOODWYN, )
individually, )
                           )
      Plaintiffs, )
                           )
v. )        **Case No.: CV 2005-306**
                           )
V RESTAURANTS, INC., an Alabama )
Corporation, *et al* )
                           )
      Defendants. )

*[Stamp: 2005 MAR 10 PM 12:34 FILED CIRCUIT COURT OF MONTGOMERY COUNTY]*

# RESPONSES OF DEFENDANT
## SPECTRUM/VAUGHN PLAZA, LLC

## MOTION TO DISMISS

Defendant Spectrum/Vaughn Plaza, LLC, moves the Court to dismiss the action against it because the Complaint fails to state a claim against said Defendant upon which relief can be granted.

## MOTION FOR MORE DEFINITE STATEMENT

Defendant Spectrum/Vaughn Plaza, LLC, without waiving the forgoing Motion to Dismiss, moves the Court to require the Plaintiffs to give a more definite statement of the claims against this Defendant, and as grounds therefor, respectfully shows unto the Court as follows.

1. There is an allegation in Paragraph 16 of the Complaint that this Defendant agreed to accept $30,000 in satisfaction of its $104,252.57 claim against Plaintiffs upon the closing of a sale between Plaintiffs and the remaining Defendants. That would be neither an unlawful nor tortuous act, and would not have worked to the detriment of Plaintiff.

1

2. There is an allegation in Paragraph 17 of the Complaint that this Defendant agreed to release the Plaintiffs from their lease upon closing of the sale between Plaintiffs and the remaining Defendants. Likewise, such agreement would be neither unlawful nor tortuous, and would have been in the best interests of the Plaintiffs.

3. There is an allegation in Paragraph 22 of the Complaint that this Defendant advertised for sale certain abandoned personal property of Plaintiff Simple Pleasures, Inc.

4. The Prayer for Relief following Paragraph 46 of the Complaint prays for "a Judgment against V Restaurants, Spectrum, and Saele for CONSPIRACY in an amount to be determined..."

5. There are no other material allegations in the Complaint against this Defendant.

6. The Complaint does not show the time, place, or contents of any representation, or falsities of any facts represented, alleged to have been misrepresented, or any reliance thereon by the Plaintiffs, or indeed any allegation of fact which would allow this Defendant to understand what it is called upon to defend.

## ANSWER

Defendant Spectrum/Vaughn Plaza, LLC, incorrectly identified in the Complaint as Spectrum/Vaughn Plaza, L.L.C., without waiving the foregoing motions, in answer to the Complaint heretofore filed, says as follows.

1. It admits the allegations of Paragraphs 1, 2, and 3 on information and belief.

2. It admits the allegations of Paragraph 4, except that Spectrum's name is incorrectly stated, as shown above, and its address is 2862 Zelda Road, Montgomery, Alabama 36106.

3. It admits the allegations of Paragraph 5 on information and belief.

4. In answer to Paragraph 6, this Defendant denies that it joined, assisted, aided, abetted,

2

wrongfully withheld, deprived, or converted assets or other business opportunities. It admits the remaining allegations thereof on information and belief.

5. In answer to Paragraph 7, this Defendant admits that jurisdiction and venue are proper in this Court. To the extent that any wrongful conduct or debt on the part of this Defendant is alleged, it denies such wrongful conduct or debt.

6. It admits the allegations of Paragraphs 8 and 9 on information and belief.

7. It is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10.

8. It admits the allegations of Paragraphs 11, 12 and 13 on information and belief.

9. It is without knowledge or information sufficient to form a belief as to the truth of the truth of the allegations contained in Paragraph 14.

10. It admits the authenticity of the agreement attached to the Complaint as Exhibit "A" on information and belief. It is without knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 15.

11. It admits that it agreed with Defendants V Restaurants and Saele that if V Restaurants and Saele promptly concluded a purchase of the Plaintiff's business, it would accept $30,000 as full payment of Plaintiff's indebtedness to it through the month of September, 2004. It denies making any agreement of that nature with the Plaintiffs. It did not agree to forgive Plaintiffs' indebtedness for subsequent months. It is without knowledge or information sufficient to for a belief as to the remaining allegations of Paragraph 16.

12. It admits that it agreed with V Restaurants and Saele that upon the closing of a sale from Simple Pleasures to V Restaurants, it would release Simple Pleasures and Goodwin from lease

3

obligations occurring thereafter. Said agreement was contingent, of course, upon the closing of the sale no later than September, 2004, and receipt of the $30,000 agreed to be paid. Neither occurred. It admits the remaining allegations of Paragraph 17 on information and belief.

13. It is without knowledge or information sufficient to form belief as to the truth of the allegations contained in Paragraph 18.

14. It admits the allegations of Paragraph 19 on information and belief.

15. It admits the allegations of Paragraph 20 on information and belief. It further asserts, on information and belief, that the conversation referred to therein took place more that a month after the agreed upon deadline for closing.

16. It denies the allegations of Paragraph 21.

17. It denies the allegations of the first sentence of Paragraph 22. It did advertise for public sale and did sell at public outcry on Friday, February 4, 2005, certain personal property on the leased premises on which it had a landlord's lien arising out of the lease between it and Plaintiff Simple Pleasures, and guaranteed by Plaintiff Goodwin, which said personal property had further been abandoned by Simple Pleasures and Goodwin. Said property was sold to the highest bidder for the sum of $21,874.00, which said sum is greater than the property's value as estimated by Plaintiff Goodwin. Said funds, less $364.62 for the cost of advertising the sale, are now being held in escrow pending resolution of conflicting claims by Regions Bank and the Internal Revenue Service. At the time of the sale, Plaintiffs were indebted to this Defendant in an amount well in excess of $100,000.

18. It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 23.

19. It admits on information and belief the execution of the contract attached to the

4

Complaint as Exhibit "A". It admits on information and belief that V Restaurants and Saele remained in possesion of the premises. It denies being in possession of the subject premises. It is without knowledge or information sufficient as to form a belief as to the truth of the remaining allegations of Paragraphs 24, 25 and 26.

20. It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 27.

21. See Paragraph 19 above in answer to Paragraphs 28,29,30 and 31.

22. It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 32.

23. See Paragraph 19 above in answer to Paragraphs 33, 34, 35 and 36.

24. It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 37. See Paragraph 19 above in answer to Paragraphs 38, 39, 40 and 41.

25. See Paragraph 19 above in answer to Paragraph 42.

26. See Paragraph 19 above in answer to Paragraph 43.

27. See Paragraph 19 above in answer to Paragraph 44.

28. See Paragraph 19 above in answer to Paragraph 45.

29. See Paragraph 19 above in answer to Paragraph 46. It further denies engaging in any conspiracy.

## COUNTERCLAIM

Now having fully answered Plaintiffs' Complaint, Defendant Spectrum/Vaughn Plaza, LLC, files its Counterclaim against Plaintiffs/Counterclaim Defendants Simple Pleasures, Inc., and Philip Goodwyn as follows.

## COUNT 1

1.    On, to wit, the 1st day of October, 1996, Defendant/Counterclaim Plaintiff Spectrum/Vaughn Plaza, LLC (hereinafter "Spectrum"), as Lessor, entered into a lease agreement with the Plaintiff/Counterclaim Defendant Simple Pleasures, Inc., (hereinafter "Simple Pleasures") as Lessee.    Simple Pleasures' performance under the said lease was    guaranteed by Plaintiff/Counterclaim Defendant Philip Goodwyn (hereinafter "Goodwyn"), who is the party identified in the Complaint herein as "Philip Goodwin".  Said lease covered certain property in the the Vaughn Plaza Shopping Center, Montgomery, Alabama, wherein Simple Pleasures operated a restaurant known as "Gators Plaza Café" or "Gators Fish House", or simply "Gators".

2. On, to wit, the 1st day of February, 1999, said lease agreement was modified by having certain additional rental space added thereto, and by providing that Lessee would pay to Lessor the sum of $4,100 per month base rent, $200 per month common area maintenance costs, and late fees of the greater of 1.5% of the rental due or $50, when applicable.

3.  On, to wit, the 26th day of July, 2001, the Parties entered into a similar lease, similarly guaranteed, for additional rental space in the aforesaid shopping center, covering the period September 1, 2001, through September 30, 2006.  The rental, as provided therein, was to be $950 per month base rent, $50 per month common area maintenance costs, and late fees as outlined above.

4.  Each lease provided that if Lessor placed the same in the hands of an attorney for collection, Lessee would pay costs of collection, including a reasonable attorney's fee.

5. Simple Pleasures and Goodwyn breached said leases by failing to make the payments due thereunder.

6.  Accrued rent through September, 2004, under both leases is $104,253.37.   Through

November 30 it is $107,457.57.

7. Spectrum has employed the undersigned attorney to represent it in this matter. A reasonable attorney's fee for Spectrum's attorney through this date is $16,188.64.

WHEREFORE Defendant/Counterclaim Plaintiff Spectrum/Vaughn Plaza, LLC, demands judgment against Defendants for $ 123,566.21, interest and costs.

## COUNT II

1. Spectrum incorporates by reference Paragraphs 1 through 7 above.

2. Some time in the summer of 2004, Simple Pleasures and/or Goodwyn put Vince Saele and/or V Restaurants, Inc., in possession of the leased premises, and Saele and/or V Restaurants in fact began operation the business which was conducted on the leased premises.

3. Simple Pleasures and Goodwyn apparently abandoned the leased premises in or before September of 2004.

4. On or about December 1, 2004, in an effort to mitigate its damages, Spectrum negotiated a new lease with V Restaurants, Inc., which said lease has approximately the same terms, other than duration, as the Simple Pleasures leases.

5. On, to wit, the 4th day of February, 2005, Spectrum, after giving due notice by publication and actual notice to Plaintiffs/Counterclaim Respondents Simple Pleasures and Goodwyn, sold at public outcry certain personal property of Simple Pleasures and/or Goodwyn on which Spectrum had a landlord's lien. The property was sold for $21,874.00, which was the highest bid, and which was an amount greater than Goodwyn had estimated the value to be.

6. Though Simple Pleasures and Goodwyn had actual notice of the aforesaid sale, neither appeared, nor in any fashion objected to its taking place.

7

7. The above referenced personal property which was offered for sale, and upon which Spectrum claimed a landlord's lien, had also been pledged by Simple Pleasures and/or Goodwyn to Regions Bank to secure payment of a debt, which, on information and belief, is still unpaid, and is substantially greater than the sales price of the aforesaid property.

8. The Internal Revenue Service of the United States of America had also filed liens against the aforesaid property to secure debts which, on information and belief, are still unpaid, and are substantially greater than the sales price of the aforesaid property.

9. Spectrum holds the above referenced funds, less $342.62 paid for advertising costs, in escrow pending the determination of conflicting claims of ownership as between Spectrum, Regions Bank, and the Internal Revenue Service.

WHEREFORE PREMISES CONSIDERED, Spectrum prays that the Court will make and enter an order declaring and determining that the aforesaid sale was legal, lawful, and appropriate, and that neither Simple Pleasures nor Goodwyn has any further right, title, interest, or claim in or to the personal property sold, or in the real property which was the subject of the leases between Spectrum and Simple Pleasures.

Spectrum prays for such other, further, and different relief as in the premises may be meet and proper.

COLEMAN YARBROUGH    (YAR 003)

8

## CERTIFICATE OF SERVICE

I certify that on the 10th day of March, 2005, a copy of the forgoing has been sent to Memory & Day, P. O. Box 4054, Montgomery, Ala. 36103, by placing it in the U. S. mail, properly addressed and postage prepaid.

COLEMAN YARBROUGH

**STATE OF ALABAMA**
Unified Judicial System
<u>Montgomery</u>         County

Check one(Not for Workers' Comp., PFA, or Small Claims cases):
☐ District Court  ■ Circuit Court

CV 2005-306

| | |
|---|---|
| Style of case:<br>Simple Pleasures Inc., et ux<br>v.<br>V Restaurants, Inc., et al | **MOTION COVER SHEET**<br><br>Name of Filing Party: Spectrum/Vaughn Plaza, LLC |

| | |
|---|---|
| Name, Address, and Telephone No. of Attorney or Party, If Not Represented:<br>D. Coleman Yarbrough, Esq.         (334) 277-9559<br>2860 Zelda Rd., Montgomery, Ala. 36106<br>Attorney Bar No.:  YAR 003 | (To be filled out by Clerk of Court:)<br>☐ Filing Fee Charged and Collected (Amt $___)<br>☐ Filing Fee Not Required (SM, Work Comp, PFA)<br>☐ Affidavit of Hardship on File |

## Type of Motion (Check One)

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Intervene or Appear as Third Party Plaintiff ($297.00) | ☐ Amend |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| | ☐ Consolidation |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Contempt |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Other Dispositive Motion not pursuant to Rule 12(b) ($50.00) | ☐ Designate a Mediator |
| ☐ Renewed Dispositive Motion (Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Judgment as a Matter of Law (during trial) |
| | ☐ Disburse Funds |
| | ☐ Discovery |
| ☐ Summary Judgment or other Dispositive Motion not pursuant to Rule 12(b) ($50.00) | ☐ Ex Parte Restraining |
| | ☐ Extension of Time |
| ☐ Other _____<br>pursuant to Rule_____($50.00) | ☐ In Limine |
| | ☐ Joinder |
| | ☐ More Definite Statement |
| | ☒ Motion to Dismiss pursuant to Rule 12(b) |
| * Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| | ☐ Plaintiff's Motion to Dismiss or Stipulation of Dismissal |
| ☐ Local Court Cost $_____ | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Show Cause |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Temporary Restraining Order |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other_____<br>pursuant to Rule_____(Subject to filing fee) |

2005 MAR 10  PM 12: 34
FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

| | | |
|---|---|---|
| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship  ☐ | Date:<br><br>March 10, 2005 | Signature of Attorney or Party:<br><br>*[signature]* |

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
** Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

SIMPLE PLEASURES, INC. an Alabama )
corporation and PHILLIP GOODWYN, )
individually )
        )
       Plaintiffs )
        )
        )    CV-05-306
       v. )
V RESTAURANTS, INC., an Alabama )
corporation, SPECTRUM/VAUGHN PLAZA, )
L.L.C., an Alabama limited liability company,)
and VINCE SAELE, an individual, and )
fictitious Defendants, A, B,C, D, and E. )
        )
       Defendants/ Respondents )

2005 MAR 25 PM 2:31
FILED CIRCUIT COURT OF MONTGOMERY COUNTY

## DEFENDANT VINCE SAELE'S ANSWER

COMES NOW, The Defendant VINCE SAELE by and through counsel and answers the complaint as follows:

1.     He admits the allegations of paragraphs 1, 2, 3, and 5 on information and belief.

2.     He has insufficient knowledge to admit or deny the allegations in paragraph 4 and therefor denies the allegation.

3.     The allegations in paragraph 6 of the complaint are denied and this defendant demands strict proof thereof;

4.     The allegations in paragraph 7 of the complaint are denied and this defendant demands strict proof thereof.

5.     The allegations in paragraph 8 of the complaint are denied and this defendant demands strict proof thereof.

6.     The allegations in paragraph 9 of the complaint are denied and this defendant demands strict proof thereof.

7.     The allegations in paragraph 10 of the complaint are denied and this defendant demands strict proof thereof.

8.     He has insufficient knowledge to admit or deny the allegations in paragraph 11 and therefor denies the allegation.

9.    The allegations in paragraph 12 of the complaint are denied and this defendant demands strict proof thereof.

10.    The allegations in paragraph 13 of the complaint are denied and this defendant demands strict proof thereof.

11.    The allegations in paragraph 14 of the complaint are denied and this defendant demands strict proof thereof.

12.    The allegations in paragraph 15 of the complaint are denied and this defendant demands strict proof thereof.

13.    The allegations in paragraph 16 of the complaint are denied and this defendant demands strict proof thereof.

14.    The allegations in paragraph 17 of the complaint are denied and this defendant demands strict proof thereof.

15.    The allegations in paragraph 18 of the complaint are denied and this defendant demands strict proof thereof.

16.    The allegations in paragraph 19 of the complaint are denied and this defendant demands strict proof thereof.

17.    The allegations in paragraph 20 of the complaint are denied and this defendant demands strict proof thereof.

18.    The allegations in paragraph 21 of the complaint are denied and this defendant demands strict proof thereof.

19.    He has insufficient knowledge to admit or deny the allegations in paragraph 22 of the complaint and therefor denies the allegation.

20.    He incorporates his prior responses to Paragraphs 1 through 22 in answer to Paragraph 23.

21.    The allegations in paragraph 24 of the complaint are denied and this defendant demands strict proof thereof.

22.    The allegations in paragraph 25 of the complaint are denied and this defendant demands strict proof thereof.

23.    The allegations in paragraph 26 of the complaint are denied and this defendant demands strict proof thereof.

24.    He incorporates by reference his prior responses to Paragraphs 1 through

22 in answer to Paragraph 27.

25.     The allegations in paragraph 28 of the complaint are denied and this defendant demands strict proof thereof.

26.     The allegations in paragraph 29 of the complaint are denied and this defendant demands strict proof thereof.

27.     The allegations in paragraph 30 of the complaint are denied and this defendant demands strict proof thereof.  Any contract for sale was null and void by the plaintiffs' failure to meet conditions of the sale which included the release of liens by the time of the closing date.

28.     The allegations of paragraph 31 of the complaint are denied and this defendant demands strict proof thereof.

29.     He incorporates by reference his prior responses to Paragraphs 1 through 22 in answer to Paragraph 32.

30.     The allegations of paragraph 33 of the complaint are denied and this defendant demands strict proof thereof.

31.     The allegations of paragraph 34 of the complaint are denied and this defendant demands strict proof thereof.

32.     The allegations of paragraph 35 of the complaint are denied and this defendant demands strict proof thereof.

33.     The allegations of paragraph 36 of the complaint are denied and this defendant demands strict proof thereof.

34.     He incorporates by reference his prior responses to Paragraphs 1 through 22 in answer to Paragraph 37.

35.     The allegations of paragraph 38 of the complaint are denied and this defendant demands strict proof thereof.

36.     The allegations of paragraph 39 of the complaint are denied and this defendant demands strict proof thereof.

37.     The allegations of paragraph 40 of the complaint are denied and this defendant demands strict proof thereof.   Any contract for sale was null and void by the plaintiffs' failure to meet conditions of the sale which included the release of liens by the time of the closing date.

38.    The allegations of paragraph 41 of the complaint are denied and this defendant demands strict proof thereof.

39.    He incorporates by reference his prior responses to Paragraphs 1 through 22 in answer to Paragraph 42.

40.    He incorporates by reference his prior responses to Paragraphs 1 through 22 in answer to Paragraph 43.

41.    He incorporates by reference his prior responses to Paragraphs 1 through 22 in answer to Paragraph 44.

42.    He incorporates by reference his prior responses to Paragraphs 1 through 22 in answer to Paragraph 45.

43.    He incorporates by reference his prior responses to Paragraphs 1 through 22 in answer to Paragraph 46.

Any other allegations assertions or statements made in the complaint not addressed herein in the above paragraphs are hereby denied and strict proof demanded by this defendant.

Respectfully Submitted,

_____
Ben E. Bruner
Attorney for the Defendants V Restaurants, Inc and
Vince Saele
2835 Zelda Road
Montgomery, Alabama 36106
(334) 323-4462

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing was served upon the Honorable Vaughn Memory by posting same in the United States mail, postage prepaid and properly addressed to said Counsel; on this the _____ day of _____, 2005.

Ben Bruner

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

SIMPLE PLEASURES, INC. an Alabama )
corporation and PHILLIP GOODWYN, )
individually )
                     )
      Plaintiffs           )        *CV-05-306*
                     )
       v.              )
V RESTAURANTS, INC., an Alabama )
corporation, SPECTRUM/VAUGHN PLAZA, )
L.L.C., an Alabama limited liability company, )
and VINCE SAELE, an individual, and )
fictitious Defendants, A, B,C, D, and E. )
                     )
    Defendants/ Respondents   )

## DEFENDANT V RESTAURANTS, INC. ANSWER

COMES NOW, The Defendant "V Restaurants, Inc." by and through counsel and answers the complaint as follows:

1.      It admits the allegations of paragraphs 1, 2, 3, and 5 on information and belief.

2.      It has insufficient knowledge to admit or deny the allegations in paragraph 4 and therefor denies the allegation.

3.      The allegations in paragraph 6 of the complaint are denied and this defendant demands strict proof thereof;

4.      The allegations in paragraph 7 of the complaint are denied and this defendant demands strict proof thereof.

5.      The allegations in paragraph 8 of the complaint are denied and this defendant demands strict proof thereof.

6.      The allegations in paragraph 9 of the complaint are denied and this defendant demands strict proof thereof.

7.      The allegations in paragraph 10 of the complaint are denied and this defendant demands strict proof thereof.

8.      It has insufficient knowledge to admit or deny the allegations in paragraph 11 and therefor denies the allegation.

9.     The allegations in paragraph 12 of the complaint are denied and this defendant demands strict proof thereof.

10.     The allegations in paragraph 13 of the complaint are denied and this defendant demands strict proof thereof.

11.     The allegations in paragraph 14 of the complaint are denied and this defendant demands strict proof thereof.

12.     The allegations in paragraph 15 of the complaint are denied and this defendant demands strict proof thereof.

13.     The allegations in paragraph 16 of the complaint are denied and this defendant demands strict proof thereof.

14.     The allegations in paragraph 17 of the complaint are denied and this defendant demands strict proof thereof.

15.     The allegations in paragraph 18 of the complaint are denied and this defendant demands strict proof thereof.

16.     The allegations in paragraph 19 of the complaint are denied and this defendant demands strict proof thereof.

17.     The allegations in paragraph 20 of the complaint are denied and this defendant demands strict proof thereof.

18.     The allegations in paragraph 21 of the complaint are denied and this defendant demands strict proof thereof.

19.     It has insufficient knowledge to admit or deny the allegations in paragraph 22 of the complaint and therefor denies the allegation.

20.     It incorporates its prior responses to Paragraphs 1 through 22 in answer to Paragraph 23.

21.     The allegations in paragraph 24 of the complaint are denied and this defendant demands strict proof thereof.

22.     The allegations in paragraph 25 of the complaint are denied and this defendant demands strict proof thereof.

23.     The allegations in paragraph 26 of the complaint are denied and this defendant demands strict proof thereof.

24.     It incorporates by reference its prior responses to Paragraphs 1 through

22 in answer to Paragraph 27.

25.    The allegations in paragraph 28 of the complaint are denied and this defendant demands strict proof thereof.

26.    The allegations in paragraph 29 of the complaint are denied and this defendant demands strict proof thereof.

27.    The allegations in paragraph 30 of the complaint are denied and this defendant demands strict proof thereof.  Any contract for sale was null and void by the plaintiffs' failure to meet conditions of the sale which included the release of liens by the time of the closing date.

28.    The allegations of paragraph 31 of the complaint are denied and this defendant demands strict proof thereof.

29.    It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 32.

30.    The allegations of paragraph 33 of the complaint are denied and this defendant demands strict proof thereof.

31.    The allegations of paragraph 34 of the complaint are denied and this defendant demands strict proof thereof.

32.    The allegations of paragraph 35 of the complaint are denied and this defendant demands strict proof thereof.

33.    The allegations of paragraph 36 of the complaint are denied and this defendant demands strict proof thereof.

34.    It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 37.

35.    The allegations of paragraph 38 of the complaint are denied and this defendant demands strict proof thereof.

36.    The allegations of paragraph 39 of the complaint are denied and this defendant demands strict proof thereof.

37.    The allegations of paragraph 40 of the complaint are denied and this defendant demands strict proof thereof.   Any contract for sale was null and void by the plaintiffs' failure to meet conditions of the sale which included the release of liens by the time of the closing date.

38. The allegations of paragraph 41 of the complaint are denied and this defendant demands strict proof thereof.

39. It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 42.

40. It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 43.

41. It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 44.

42. It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 45.

43. It incorporates by reference its prior responses to Paragraphs 1 through 22 in answer to Paragraph 46.

Any other allegations assertions or statements made in the complaint not addressed herein in the above paragraphs are hereby denied and strict proof demanded by this defendant.

Respectfully Submitted,

_____
Ben E. Bruner    Bruool
Attorney for the Defendants V Restaurants, Inc and
Vince Saele
2835 Zelda Road
Montgomery, Alabama  36106
(334) 323-4462

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing was served upon the Honorable Vaughn Memory by posting same in the United States mail, postage prepaid and properly addressed to said Counsel; on this the ___2.5___ day of _Marnh_, 2005.

Ben Bruner

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

SIMPLE PLEASURES, INC. an Alabama )
corporation and PHILLIP GOODWYN, )
individually )
                      )
       Plaintiffs )
                      )
      v. )    CV 05 - 306
V RESTAURANTS, INC., an Alabama )
corporation, SPECTRUM/VAUGHN PLAZA, )
L.L.C., an Alabama limited liability company, )
and VINCE SAELE, an individual, and )
fictitious Defendants, A, B,C, D, and E. )
                      )
      Defendants/ Respondents )

## DEFENDANT V RESTAURANTS, INC. AND VINCE SAELE'S MOTION TO DISMISS THE COMPLAINT AS TO THEM PURSUANT TO RULE 12(b)6 of the ALABAMA RULES OF CIVIL PROCEDURE FOR FAILURE OF THE PLAINTIFFS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

COMES NOW, the defendants V Restaurants, Inc. and Vince Saele, in the above-styled cause and moves this Honorable Court for the reasons set forth in the brief in support of this motion, to dismiss the complaint in this cause pursuant to Rule 12(b)6 of the Alabama Rules of Civil Procedure as the complaint does not state a cause of action upon which relief can be granted:

Respectfully Submitted,

Ben E. Bruner
Attorney for the Defendants V Restaurants, Inc. and
Vince Saele
2835 Zelda Road
Montgomery, Alabama  36106
(334) 323-4462

DATE 3-15-05

DENIED

WILLIAM A. SHASHY
CIRCUIT JUDGE

## CERTIFICATE OF SERVICE

Jon Memory
Ben Bruner

I hereby certify that a true copy of the above and foregoing was served upon the Honorable Vaughn Memory by posting same in the United States mail, postage prepaid and properly addressed to said Counsel; on this the ___ day of ___, 2005.

_____
Ben Bruner

# STATE OF ALABAMA
Unified Judicial System

Montgomery County

Check one (Not for Workers' Comp, FFA, or Small Claims cases):
☐ District Court  ☒ Circuit Court

▶ File No.

CV-05-306

Style of case: Simple Pleasures, Inc.

v.

V Restaurants, Inc.

## MOTION COVER SHEET

Name of Filing Party:
V Restaurants, Inc. & Vince Seale

Name, Address, and Telephone No. of Attorney or Party, If Not Represented:
Ben Bruner, 2835 Zelda Rd. 36106
334 323-4464

Attorney Bar No.: BRU-001 / ASB-0291-E50B

## Type of Motion (Check One)

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Intervene or Appear as Third Party Plaintiff ($297.00) | ☐ Amend |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| | ☐ Consolidation |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Contempt |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment ($50.00) | ☐ Continue |
| ☐ Other Dispositive Motion not pursuant to Rule 12(b) ($50.00) | ☐ Deposition |
| ☐ Renewed Dispositive Motion (Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during trial) |
| | ☐ Disburse Funds |
| ☐ Summary Judgment or other Dispositive Motion not pursuant to Rule 12(b) ($50.00) | ☐ Discovery |
| ☐ Other _____ pursuant to Rule _____ ($50.00) | ☐ Ex Parte Restraining |
| | ☐ Extension of Time |
| | ☐ In Limine |
| | ☐ Joinder |
| | ☐ More Definite Statement |
| * Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☒ Motion to Dismiss pursuant to Rule 12(b) |
| | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| | ☐ Plaintiff's Motion to Dismiss or Stipulation of Dismissal |
| ☐ Local Court Cost $_____ | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Show Cause |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Temporary Restraining Order |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other _____ pursuant to Rule _____ (Subject to filing fee) |

2005 MAR 10 PM 3:25
FILED CIRCUIT COURT OF MONTGOMERY COUNTY

Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship ☐

Date: 3/10/05

Signature of Attorney or Party:

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
** Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

SIMPLE PLEASURES, INC. an Alabama    )
corporation and PHILLIP GOODWYN,    )
individually    )
     )
     Plaintiffs    )
     )
     v.    )
V RESTAURANTS, INC., an Alabama    )  $CV$ $05 - 306$
corporation, SPECTRUM/VAUGHN PLAZA, )
L.L.C., an Alabama limited liability company,)
and VINCE SAELE, an individual, and    )
fictitious Defendants, A, B,C, D, and E.    )
     )
     Defendants/ Respondents    )

2005 MAR 10

FILED
CIRCUIT COURT OF
MONTGOMERY CO.

## BRIEF IN SUPPORT OF DEFENDANT V RESTAURANTS, INC. AND VINCE SAELE'S MOTION TO DISMISS THE COMPLAINT AS TO THEM PURSUANT TO RULE 12(b)6 of the ALABAMA RULES OF CIVIL PROCEDURE FOR FAILURE OF THE PLAINTIFFS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

COMES NOW, V Restaurants, Inc. and Vince Saele, by and through counsel and submit this brief in support of the referenced motion.

It should be noted that the allegations in the complaint are mere boiler plate and are predicated on paragraphs 1 through 22 which consist of purported facts. While the allegations are somewhat vague and inconsistent they basically consist of arguing that the defendants entered into a contract to sell a business upon which the defendants received entry into the facility and began operation in anticipation of closing the sale and then the defendants refused to close in breach of the contract.

The Alabama Supreme Court has held that " * * * It follows that where plaintiff's cause of action arises out of a contract which is attached to his complaint as an exhibit, and where such contract shows unambiguously on its face that the relief prayed for is not merited, then dismissal is appropriate." McCay v. Big Town, Inc. 307 So. 2d 695 (1975). It is the same situation in this cause. The contract which is attached to the complaint clearly states in paragraph 4 that "the ownership of the properties mentioned herein above will be

transferred to my client at a closing date no later than October 22, 2004, or as otherwise agreed upon by the parties, and that the property transferred shall be transferred without any liens or encumbrances whatsoever".

The plaintiffs fail to make any allegations whatsoever that they performed their part of the contract by that date. They only state that "In an effort to firm up a closing date, the undersigned called counsel for the V Restaurants and Saele and requested a closing, however, the undersigned was informed by counsel that V Restaurants and Saele were "no longer interested in the terms of the contract" and withdrew the offer to purchase Gators."

By the terms of the contract, it was null and void unless that date was met and as a material term of the contract, the complaint is deficient unless it is alleged that the "offer to close" was before or on that date. Any breach of contract claim should be dismissed for that reason as time was of the essence and there is no allegation that an offer to close was made in accord with the contract.

Neither can there be a cause for conversion here. Conversion is defined as "'. . . consisting in "'* * * either * * * the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising of dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title inconsistent with his own." . . .'" Hill v. Kraft, 496 So. 2d 768 (1986). Here, there is no allegation that anything that has happened is in exclusion or defiance" of the plaintiffs rights. Without such an allegation, the conversion count is insufficient as a matter of law.

The remaining causes of action are fraud, damages for use, willfulness, wantonness, unjust enrichment and conspiracy. The plaintiffs have stated no facts which would give a scintilla of evidence of fraud, damages for use, wantonness or unjust enrichment. No causes of action exist for conspiracy or willfulness.

WHEREFOR, the defendants V Restaurants, Inc. and Vince Saele move this honorable court to dismiss the complaint as failing to state any claim upon which a cause of action may lie.

Respectfully Submitted,

_____

Ben E. Bruner
Attorney for the Defendants V Restaurants, Inc and
Vince Saele
2835 Zelda Road
Montgomery, Alabama  36106
(334) 323-4462

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing was served upon the Honorable Vaughn Memory by posting same in the United States mail, postage prepaid and properly addressed to said Counsel; on this the ____10____ day of _____,
2005.

_____
Ben Bruner

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

SIMPLE PLEASURES, INC. an Alabama )
corporation and PHILLIP GOODWYN, )
individually )
)
      Plaintiffs )
)
      v. )
V RESTAURANTS, INC., an Alabama )
corporation, SPECTRUM/VAUGHN PLAZA, )
L.L.C., an Alabama limited liability company, )
and VINCE SAELE, an individual, and )
fictitious Defendants, A, B,C, D, and E. )
)
      Defendants/ Respondents )

C V-05-306

2005 MAR 10  PM 3: 25

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

## DEFENDANT V RESTAURANTS, INC. AND VINCE SAELE'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL FROM REPRESENTATION OF THE PLAINTIFFS

COMES NOW, the defendants V Restaurants, Inc. and Vince Saele, in the above-styled cause and moves this Honorable Court to disqualify plaintiff's counsel. As grounds therefor, the parties state that in the complaint, paragraph 20 states that "in an effort to firm up a closing date, the undersigned called counsel for the V Restaurants and Saele and requested a closing, however, the undersigned was informed by counsel that V Restaurants and Saele were "no longer interested in the terms of the contract" and withdrew the offer to purchase Gators". As time was of the essence in that contract, the timing of the ability to close is vital to the case and Mr. Memory has made factual allegations of his own conduct.

This statement clearly makes Mr. Memory a material witness in this case and it also waives any attorney/ client privilege between Mr. Memory and his firm and the plaintiffs. It is therefor necessary to ask the court to remove him as counsel in this cause so that full discovery can be had including Mr. Memory's deposition.

Respectfully Submitted,

**This case is set for a hearing on**
    APRIL 26 _____, 20 05 , at
    9:00 am/pm.
    _____
    William A. Shashy, Circuit Judge

2005 MAR 16  PM 4: 16

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

Von Memory
Ben Bruner

_[signature]_
_____
Ben E. Bruner
Attorney for the Defendants V Restaurants, Inc and
Vince Saele
2835 Zelda Road
Montgomery, Alabama  36106
(334) 323-4462

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing was served upon the Honorable Vaughn Memory by posting same in the United States mail, postage prepaid and properly addressed to said Counsel; on this the _____10_____ day of _Jnuary_, 2005.

_[signature]_
_____
Ben Bruner

# STATE OF ALABAMA
Unified Judicial System

Check one(*Not for Workers' Comp, PFA, or Small Claims cases*):

File No. __CU-05-306__

_Montgomery_ County   ☐ District Court   ☒ Circuit Court

| | |
|---|---|
| Style of case: _Simple Pleasures, Inc._ <br> v. <br> _V Restaurants, Inc._ | **MOTION COVER SHEET** <br> Name of Filing Party: _V Restaurants, Inc. and Vince Sacle_ |

Name, Address, and Telephone No. of Attorney or Party, If Not Represented:
_Ben Bruner_
_2835 Zelda Rd., Montgomery, Al. 36106_
Attorney Bar No.: _334-323-4462   ASB-0291-E50B_

## Type of Motion (Check One)

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Intervene or Appear as Third Party Plaintiff ($297.00) | ☐ Amend |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| | ☐ Consolidation |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Contempt |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Other Dispositive Motion not pursuant to Rule 12(b) ($50.00) | ☐ Designate a Mediator |
| ☐ Renewed Dispositive Motion (Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Judgment as a Matter of Law (during trial) |
| | ☐ Disburse Funds |
| ☐ Summary Judgment or other Dispositive Motion not pursuant to Rule 12(b) ($50.00) | ☐ Discovery |
| | ☐ Ex Parte Restraining |
| ☐ Other _____, pursuant to Rule_____ ($50.00) | ☐ Extension of Time |
| | ☐ In Limine |
| | ☐ Joinder |
| | ☐ More Definite Statement |
| | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| * Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| | ☐ Plaintiff's Motion to Dismiss or Stipulation of Dismissal |
| | ☐ Preliminary Injunction |
| ☐ Local Court Cost $_____ | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Show Cause |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Temporary Restraining Order |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☒ Other _Motion to Disqualify Plaintiffs Counsel_ <br> pursuant to Rule_____ (Subject to filing fee) |

FILED IN CIRCUIT COURT OF MONTGOMERY COUNTY
2005 MAR 10 PM 3: 25

| | | |
|---|---|---|
| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship ☐ | Date: _3/10/05_ | Signature of Attorney or Party: _Ben S. Bruner_ |

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
** Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                        Case No. 05-32325-WRS
                                             Chapter 7

PHILIP L. GOODWYN,

        Debtor

PHILIP L. GOODWYN and
SIMPLE PLEASURES INC.

        Plaintiffs                 Adv. Pro. No. 05-3062-WRS

   v.

V RESTAURANTS, VINCE SAELE, and
SPECTRUM/VAUGHN PLAZA LLC.,

        Defendants

## ORDER SETTING STATUS CONFERENCE

A status conference will be held at the **United States Bankruptcy Court, One Church Street, Courtroom 4-D, Montgomery, Alabama, on Tuesday, November 1, 2005, at 10:00 a.m.**

ORDERED this 11th day of October, 2005.

               /s/ William R. Sawyer
               United States Bankruptcy Judge

c:  Von G. Memory, Attorney for Plaintiff

Orders.11

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                               Case No. 05-32325-WRS
                                                    Chapter 7
PHILIP L. GOODWYN,

       Debtor

PHILIP L. GOODWYN,

       Plaintiff                       Adv. Pro. No. 05-3062-WRS

   v.

V. RESTAURANTS, VINCE SAELE,
SPECTRUM/VAUGHN PLAZA LLC,

       Defendant

## ORDER SETTING HEARING

      A hearing on defendants V Restaurants Inc. and Vince Saele motion to disqualify

plaintiff's counsel, Von G. Memory, (Doc. 1(9)) will be held on November 29, 2005, at 10 a.m.

at the United States Bankruptcy Court, One Church Street, Courtroom 4-D, Montgomery,

Alabama.

      Done this 4th day of November, 2005.

                   /s/ William R. Sawyer
                   United States Bankruptcy Judge

c: Von G. Memory, Attorney for Plaintiff
   Daniel G. Hamm, Attorney for V Restaurants & Saele

Orders.1

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

|  |  |
|---|---|
| IN RE:<br>PHILLIP GOODWYN<br>DEBTOR,<br><br>SIMPLE PLEASURES, INC., AN ALABAMA CORPORATION AND PHILLIP GOODWYN, INDIVIDUALLY<br>PLAINTIFFS<br><br>V.<br><br>V. RESTAURANTS, INC., AND ALABAMA CORPORATION, SPECTRUM/VAUGHN PLAZA, L.L.C., AN ALABAMA LIMITED LIABILITY COMPANY AND VINCE SAELE, AN INDIVIDUAL, AND FICTITIOUS DEFENDANTS, A, B, C, D, AND E<br><br>DEFENDANTS. | CHAPTER 7<br>CASE NO.: 05-32325<br><br><br>ADV. PRO. CASE NO. 05-03062 |

## NOTICE OF APPEARANCE

**COMES NOW**, Daniel G. Hamm, and hereby gives his Notice of Appearance as Counsel for the defendants, V. Restaurants, Inc., and Vince Saele, in the above-styled cause.

**RESPECTFULLY SUBMITTED** this the 28th day of November, 2005.


**/s/ Daniel G. Hamm**

DANIEL G. HAMM (HAM043)
ATTORNEY FOR V. RESTAURANTS,
INC. AND VINCE SAELE
**KEITH & HAMM, P.C.**
235 SOUTH MCDONOUGH STREET
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX          334-323-5666

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this Notice of Appearance by electronic transmission or by placing a copy in the United States Mail with sufficient postage for first class delivery to the attorneys named below or parties if not represented by counsel.

**DONE** this the 28th day of November, 2005.


/s/ **Daniel G. Hamm**
_____
Daniel G. Hamm (HAM043)


Von G. Memory                          Coleman Yarbrough
James L. Day                           Attorney at Law
Memory & Day                           2860 Zelda Road
Post Office Box 4054                   Montgomery, Alabama 36106
Montgomery, Alabama 36103-4054

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br>**PHILLIP GOODWYN**<br>**DEBTOR,**<br><br>**SIMPLE PLEASURES, INC., AN**<br>**ALABAMA CORPORATION**<br>**AND PHILLIP GOODWYN,**<br>**INDIVIDUALLY**<br>**PLAINTIFFS**<br><br>**V.**<br><br>**V. RESTAURANTS, INC., AND**<br>**ALABAMA CORPORATION,**<br>**SPECTRUM/VAUGHN PLAZA,**<br>**L.L.C., AN ALABAMA LIMITED**<br>**LIABILITY COMPANY AND**<br>**VINCE SAELE, AN**<br>**INDIVIDUAL, AND FICTITIOUS**<br>**DEFENDANTS, A, B, C, D, AND**<br>**E**<br><br>**DEFENDANTS.** | **CHAPTER 7**<br>**CASE NO.: 05-32325**<br><br><br>**ADV. PRO. CASE NO. 05-03062** |

## WITHDRAWAL OF MOTION TO DISQUALIFY COUNSEL

**COMES NOW**, the defendants, V. Restaurants, Inc. and Vince Saele, by and through the undersigned counsel and respectfully requests this Honorable Court to allow the Defendants to withdraw their Motion to Disqualify Plaintiff's Counsel by stating the following:

1.  On March 10, 2005, defendants, V. Restaurants, Inc., and Vince Saele filed a motion to disqualify plaintiff's counsel from representation of the plaintiffs.

2.  On August 12, 2005, Plaintiff's counsel filed a motion to remove said case from State court to Bankruptcy court due to plaintiff Phillip Goodwyn bankruptcy filing.

3.  After further review of the facts and circumstances supporting said motion, defendants V. Restaurants, Inc. and Vince Saele elect to withdraw said motion.

**WHEREFORE**, the premises considered, the undersigned counsel for defendants, V. Restaurants, Inc. and Vince Saele, pray that this Honorable Court will allow the withdrawal of the previously filed Motion to Disqualify Plaintiff's Counsel.

**RESPECTFULLY SUBMITTED** this the 28th day of November, 2005.

**/s/ Daniel G. Hamm**

DANIEL G. HAMM (HAM043)
ATTORNEY FOR V. RESTAURANTS,
INC. AND VINCE SAELE
**KEITH & HAMM, P.C.**
235 SOUTH MCDONOUGH STREET
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX        334-323-5666

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this Withdrawal of Motion to Disqualify Counsel by electronic transmission or by placing a copy in the United States Mail with sufficient postage for first class delivery to the attorneys named below or parties if not represented by counsel.

**DONE** this the 28th day of November, 2005.


**/s/ Daniel G. Hamm**
_____
DANIEL G. HAMM (HAM043)


Von G. Memory                          Coleman Yarbrough
James L. Day                           Attorney at Law
Memory & Day                           2860 Zelda Road
Post Office Box 4054                   Montgomery, Alabama 36106
Montgomery, Alabama 36103-4054

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                            Case No. 05-32325-WRS
                                                                 Chapter 7

PHILIP L. GOODWYN,

      Debtor.


PHILIP L. GOODWYN,

      Plaintiff,                                      Adv. Pro. No. 05-3062-WRS

  v.

V RESTAURANTS; VINCE
SAELE; and SPECTRUM/
VAUGHN PLAZA LLC,

      Defendants.

## ORDER SETTING TRIAL DATE
## SCHEDULING ORDER

As announced from the bench at the scheduling conference held November 29, 2005, the following is the schedule of events in this adversary proceeding:

Discovery shall be completed no later than **February 28, 2006.**

Dispositive motions shall be filed no later than **March 14, 2006.**

Counsel for the parties shall exchange and file with the court by **May 5, 2006,** the pretrial disclosures required by Fed. R. Bankr. Proc. 7026(a)(3). Exhibits, depositions, and the testimony of witnesses not so disclosed shall not be admitted into evidence at the trial except for good cause shown.

Counsel for the parties shall exchange and file with the court by **June 2, 2006,** a list disclosing any objections to the use of depositions or admissibility of exhibits identified or designated under Fed. R. Bankr. Proc. 7026(a)(3). Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, shall be deemed waived unless excused by the court for good cause shown.

Counsel for the parties shall file a joint pretrial statement by **June 2, 2006,** containing the following:

1.  A comprehensive written stipulation of all uncontested facts, including underlying facts, in such form that it can be incorporated in the final order as part of the findings of fact.

2.  A statement of the contentions of each party with respect to contested facts and law.

Prior to trial, all exhibits to be offered at trial shall be marked for identification.  Copies shall be made available to the court at the trial.

A pretrial conference with the parties shall be held on **Tuesday, June 6, 2006, at 1:30 p.m., by telephone.**  The order of trial will be established at the pretrial conference.   The parties need to provide chambers (334/954-3880 or 3846) with a telephone number one week prior to the pretrial conference and keep the line open for at least one hour.

The trial is "deep set" with several other adversaries beginning **Monday, June 19, 2006.**

Done this 1st day of December, 2006.

/s/ Dwight H. Williams Jr.
United States Bankruptcy Judge

c:  Von G. Memory, Attorney for Plaintiff
    Daniel G. Hamm, Attorney for Defendants V Restaurants & Saele
    Coleman Yarbrough, Attorney for Spectrum/Vaughn Plaza

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

**IN RE:**
**PHILLIP GOODWYN,**
**DEBTOR,**

**SIMPLE PLEASURES, INC.,**
**PLAINTIFF,**

**V.**

**V. RESTAURANTS, INC.,**
**DEFENDANT.**

**CHAPTER 7**
**CASE NO. 05-32325-WRS**

**ADVERSARY PROCEEDING**
**NO. 05-03062**

## MOTION FOR SUMMARY JUDGMENT

**COMES NOW** V Restaurants, Inc. and Vince Saele, Defendants in the above styled action, by and through their attorney of record, and moves this Honorable Court pursuant to *Fed.R.Civ.P. 56* and *Fed.Bank.R. 7056* for entry of summary judgment in favor of the Defendants on the following issues:

**Breach of Contract:** The Plaintiff, Simple Pleasures, Inc., and Phillip Goodwyn were in breach of the contract by failing to comply with one of the material terms of contract between the Plaintiff and Defendants.

**Conversion**: There is no evidence of 1) a wrongful taking, 2) an illegal assumption of ownership, 3) an illegal use or misuse of another's property, or 4) a wrongful detention or interference with another's property.

**Unjust Enrichment:** The underlying contract made a part of the Plaintiff's complaint reflects the agreement between the parties and precludes recovery for unjust enrichment.

**Damages for Use:** The Defendants finds no actionable claim under Alabama law which fits the allegations contained in this count. In addition there is no proof that Gator's Restaurant generated any profits during the period between the time V Restaurants took possession of the restaurant and the time that Simple Pleasures' interest in the restaurant was terminated.

**Fraud:** The Plaintiff has produced 1) no evidence of a false representation of a material fact nor is there 2) a specified time, place or date as required by *Rule 9, Federal Rules of Civil Procedure* upon which any misrepresentation was made by the Defendants.

**Negligence:** The Plaintiff has produced 1) no evidence of any duty the Defendants owed the Plaintiff nor 2) that the Defendants were negligent in any manner.

**Wantonness:** The Plaintiff has produced 1) no evidence of a reckless indifference for the consequences, nor 2) some wrongful act or omission of some known duty which produced injury to the Plaintiff.

**Willfulness:** The Plaintiff has produced no evidence of 1) a willful or intentional injury nor 2) a knowledge of the danger accompanied with a design or purpose to inflict injury.

**Conspiracy:** The Plaintiff has produced no evidence 1) of any agreement between the Defendants that caused any harm to the Plaintiff and 2) conspiracy itself furnishes no cause of action in Alabama.

## ADMISSIONS AND UNDISPUTED FACTS

1.  Simple Pleasures was a restaurant and food service corporation in Montgomery, Alabama. Goodwyn is the president of Simple Pleasures. (Plaintiff's Complaint)

2.  Simple Pleasures owns and previously operated a restaurant on the east side of Montgomery, Alabama commonly known as "Gators". Gators is located at 5040 Vaughn Road, Montgomery, AL, 36116-1149. Gators has been previously known as Gators Plaza Café, however, recently it was renamed Gators Fish House. (Plaintiff's Complaint)

3.  Simple Pleasures had a host of financial problems including unpaid Federal tax obligations which resulted in Federal tax liens, unpaid obligations to Regions Bank and an arrearage owed to the restaurant's landlord. (Goodwyn deposition pg. 25 – 28)

4.  In the past two years, Goodwyn and Simple Pleasures have actively pursued and investigated several offers to sell the assets, goodwill, and customer base of Gators. (Plaintiff's Complaint)

5.  In or about July 2004, Goodwyn received an offer from V Restaurants and Saele to purchase Gators, and ultimately the parties agreed to a $90,000.00 purchase price. (Plaintiff's Complaint)

6.  For the purchase price, V Restaurants and Saele agreed to purchase Gators, as a going concern, to include all equipment, inventory and supplies, furniture, fixtures, and amenities. (Plaintiff's Complaint)

7.  The above-referenced terms and conditions were integrated into a contract for sale and signed by the parties, September 24, 2004. (Plaintiff's Complaint)

8.  Incident to the negotiations on the contract for sale, V Restaurants and Saele negotiated a $30,000.00 payoff of the *$104,253.57* lease arrearage with Spectrum, a

$30,000.00 payoff of the $80,000.00 debt to Regions Bank, and an anticipated $30,000.00 settlement of the *$106,425.71* debt to the Internal Revenue Service. (Plaintiff's Complaint)

9.  The Internal Revenue Service lien encumbering the restaurant property was in place and enforceable. These liens were never released nor did Mr. Goodwyn have the liens released as of the October 22, 2004 performance date as required by the letter of understanding. (Goodwyn deposition page 50 – 53)

10. The Regions Bank lien was not released as of the October 22, 2004, date nor did Mr. Goodwyn have an agreement with Regions to release said liens upon payment of $30,000 to Regions as of October 22, 2004 as required by the letter of understanding. (Goodwyn deposition page 50 – 53)

11. Incident to the contract for purchase of Gators, Goodwyn verbally agreed to allow V Restaurants and Saele to take possession of the restaurant, pending approval of the application to the Internal Revenue Service. (Plaintiff's Complaint)

12. Following the signing of the letter of understanding on September 24, 2004, and the agreed date upon which the transfer was to take place, October 22, 2004, Robert J. Russell, Jr. made a number of phone calls to Mr. Memory's office to determine the progress of efforts on behalf of Mr. Goodwyn to clear the liens and encumbrances in question. Through-out all of theses calls Mr. Russell was never provided any assurance that the subject liens and encumbrances (Federal Tax lien and Regions lien) were being addressed by Mr. Goodwyn, nor did he have the financial ability to do so. (Affidavit of Robert J. Russell, Jr.)

13. V Restaurants and Saele signed a contract for sale, September 24, 2004. Incident to the instant contract, V Restaurants and Saele agreed, among other things, to purchase the going concern of Gators for $90,000.00. (Plaintiff's Complaint)

14. During the course of negotiations for the letter of understanding dated September 24, 2004, there were no misrepresentations made to the Plaintiff by the Defendants. (Goodwyn deposition page 80 - 82)

15. V Restaurants and Saele assumed possession before the sale was closed. (Plaintiff's Complaint)

16. Incident to the instant contract V Restaurants and Saele agreed to purchase the going concern of Gators for $90,000.00. (Plaintiff's Complaint)

17. Phillip Goodwyn is not aware of any agreement between or among the Defendants that may have caused him any harm. (Goodwyn deposition page 85 - 87)

18. Other than Simple Pleasures being unable to sell the Gator's restaurant to the Defendant, Mr. Goodwyn has no evidence that there was an agreement between anyone to support the conspiracy count. (Goodwyn deposition page 88 - 89)

**RESPECTFULLY SUBMITTED** this the 14th day of March, 2006.


**/s/ Daniel G. Hamm**

DANIEL G. HAMM (HAM043)
ATTORNEY FOR THE
DEFENDANTS, V RESTAURANTS,
INC AND VINCE SAELE
560 SOUTH MCDONOUGH STREET
SUITE A
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX          334-323-5666

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this **Motion for Summary Judgment** by electronic transmission or by placing a copy in the United States Mail with sufficient postage for first class delivery to the attorneys named below or parties if not represented by counsel.

**DONE** this the 14th day of March, 2006.


**/s/ Daniel G. Hamm**

Daniel G. Hamm (HAM043)
Attorney for the
Defendants, V Restaurants,
Inc and Vince Saele
560 South McDonough Street
Suite A
Montgomery, Alabama 36104
Telephone    334-269-0269
Fax          334-323-5666

Von Memory
James Day
469 S. McDonough Street
Montgomery, Alabama 36104

**DEPOSITION PHILIP GOODWYN**

# SIMPLE PLEASURES, INC.

# v.

# V RESTAURANTS, INC., et al.

# PHILLIP  GOODWYN

**February 17, 2006**

**Reagan Reporters, LLC**
**Phone: 334.262.7556**
**Fax: 334.262.4437**
**www.ReaganReporters.com**

Page 1

IN THE UNITED STATES BANKRUPTCY COURT

  FOR THE MIDDLE DISTRICT OF ALABAMA

          NORTHERN DIVISION

 IN RE:

 PHILLIP GOODWYN,      CASE NO.

     Debtor.           05-32325-WRS

 SIMPLE PLEASURES,     CHAPTER 7

 INC.,

     Plaintiff,

 vs.                   ADVERSARY

 V RESTAURANTS, INC.,  PROCEEDING NO.

 ET AL,                05-03062

     Defendants.

     *   *   *   *   *   *


   DEPOSITION OF PHILLIP GOODWYN,

VOLUME I, taken pursuant to notice and

stipulation on behalf of the

Defendant, in the Law Office of Von G.

Memory, P.A., 469 South McDonough

Street, Montgomery, Alabama 36104,

before Aimee French, Court Reporter

and Notary Public in and for the State

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 2

1  of Alabama at Large, on February 17,
2  2006, commencing at 10:14 a.m.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 4

1              INDEX
2
3  EXAMINATION OF PHILLIP GOODWYN
4
5  EXAMINATION BY:          PAGE NUMBER
6
   Mr. Hamm....................7
7
8       E X H I B I T S
9  Exhibit 1...................33
10
11
12
13
14  CERTIFICATE OF REPORTER.....91
15  WORD INDEX...................
16
17
18
19
20
21
22
23

Page 3

1           APPEARANCES
2
3  FOR THE PLAINTIFF:
4       VON G. MEMORY, ESQ.
5       MEMORY, DAY & AZAR
6       469 SOUTH MCDONOUGH STREET
7       POST OFFICE BOX 4054
8       MONTGOMERY, AL 36104
9
10
11  FOR THE DEFENDANT:
12       DANIEL G. HAMM, ESQ.
13       560 SOUTH MCDONOUGH STREET
14       SUITE 8
15       MONTGOMERY, AL 36104
16
17       D. COLEMAN YARBROUGH, ESQ.
18       2860 ZELDA ROAD
19       MONTGOMERY, AL 36106
20
21  ALSO PRESENT:  Mr. Vince Saele
22
23

Page 5

1           STIPULATIONS
2         It is hereby stipulated and
3  agreed by and between counsel
4  representing the parties that the
5  deposition of PHILLIP GOODWYN is taken
6  pursuant to notice and stipulation on
7  behalf of the Defendant; that all
8  formalities with respect to procedural
9  requirements are waived; that said
10  deposition may be taken before Aimee
11  French, Court Reporter and Notary
12  Public in and for the State of Alabama
13  at Large, without the formality of a
14  commission; that objections to
15  questions, other than objections as to
16  the form of the questions, need not be
17  made at this time, but may be reserved
18  for a ruling at such time as the
19  deposition may be offered in evidence
20  or used for any other purpose as
21  provided for by the Civil Rules of
22  Procedure for the State of Alabama.
23         It is further stipulated and

2  (Pages 2 to 5)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 6

1  agreed by and between counsel
2  representing the parties in this case
3  that the filing of the deposition of
4  PHILLIP GOODWYN is hereby waived and
5  that said deposition may be introduced
6  at the trial of this case or used in
7  any other manner by either party
8  hereto provided for by the Statute,
9  regardless of the waiving of the
10  filing of same.
11         It is further stipulated and
12  agreed by and between the parties
13  hereto and the witness that the
14  signature of the witness to this
15  deposition is hereby waived.
16
17
18
19
20
21
22
23

Page 7

1         PHILLIP GOODWYN,
2  after having been first duly sworn
3  under oath, was examined and testified
4  as follows:
5  EXAMINATION BY MR. HAMM:
6  Q.  Mr. Goodwyn, my name is Dan Hamm.  I'm
7     going to be asking you some questions.
8     You've taken a deposition in this case
9     before; is that correct?
10  A.  Yes.
11         MR. HAMM:  Mr. Memory -- and I
12     guess Mr. Goodwyn will be rendering
13     testimony on behalf of Simple
14     Pleasures, Incorporated also?
15         MR. MEMORY:  That's correct.
16         MR. HAMM:  Very well.
17  Q.  (BY MR. HAMM)  Mr. Goodwyn, at any
18     time if you do not understand my
19     questions, please ask me to rephrase
20     the question, and I'll be glad to.
21     First of all, would you give us your
22     name and your address?
23  A.  Phillip Lightfoot Goodwyn, 1533 Gilmer

Page 8

1     Avenue, Montgomery.
2  Q.  And your last name is G -- would you
3     spell your name?
4  A.  G-O-O-D-W-Y-N.
5  Q.  And, Mr. Goodwyn, how are you employed
6     today?
7  A.  Entec Stations.  I'm supervisor of
8     food service.
9  Q.  And how long have you been so
10     employed?
11  A.  A month and a half, November of 2004.
12  Q.  And you work at a particular station
13     or not?
14  A.  No.  I'm in the corporate office.
15  Q.  And where is that located?
16  A.  On Zelda Road.
17  Q.  Here in Montgomery?
18  A.  Correct.
19  Q.  And once again, what are you doing for
20     Entec?
21  A.  I developed a -- I'm in charge of
22     their food service development and
23     their fountain drinks and their

Page 9

1     coffees and marketing.
2  Q.  How were you employed prior to your
3     employment with Entec?
4  A.  As soon as I finished helping Vince
5     finish some catering parties, when I
6     finished my commitment --
7  Q.  That would be Mr. Saele?
8  A.  Mr. Saele.  Once I had finished
9     helping him through October, I went to
10     work immediately with them.
11  Q.  October of 2005?
12  A.  4.
13  Q.  2000 -- okay.  I thought you -- did
14     you not say a few moments ago that you
15     had been with Entec a month and a
16     half?
17  A.  No, no.
18  Q.  I'm sorry.
19  A.  A year and -- a year since -- I've
20     been there since November of 2004.
21  Q.  Okay.
22  A.  I think that's what I said.
23  Q.  And prior to your employment with

3  (Pages 6 to 9)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP  GOODWYN - 2/17/2006

Page 10

1     Entec, you were employed how?
2  A.   I was the owner of Gator's.
3  Q.   The restaurant that is the subject of
4     this litigation --
5  A.   Correct.
6  Q.   -- is that correct?
7  A.   Simple Pleasures, Inc.
8  Q.   You were the owner of Simple
9     Pleasures, Incorporated?
10  A.   Correct. Or president.
11  Q.   Well, did you own all the stock?
12  A.   Yes.
13  Q.   No other stockholders?
14  A.   No other stockholders.
15  Q.   And how long had Simple Pleasures been
16     in business?
17  A.   '92. It opened as Hillwood Cafe in
18     Vaughn Plaza -- I mean, not in Vaughn,
19     in Hillwood Festival Shopping Center.
20  Q.   And how did it come to be Gator's?
21  A.   Ed needed -- Ed Fatzinger needed a
22     tenant over at -- in Vaughn Plaza, and
23     he had lost the tenant there, and so I

Page 11

1     developed a business. I wanted to get
2     away from Hillwood, which I was
3     operating at that time, into a bigger
4     market, which that area seemed to be.
5     Things were going west -- east, and so
6     we just came up with a name.
7  Q.   Was the nature of the business
8     operated as Simple Pleasures,
9     Incorporated operated at Hillwood?
10  A.   Similar, very similar to what Gator's
11     was, which is a meat and three,
12     lunch/vegetable thing and then a
13     nicer, upscale dinner with seafood, so
14     very similar style of restaurant.
15  Q.   And how long did Simple Pleasures
16     operate the location that you term as
17     Hillwood?
18  A.   Hillwood Cafe, I operated it from --
19     for three years I owned it. It was
20     about three years. The last six
21     months, when I opened Gator's, I owned
22     both of them at the same time. And
23     Gator's -- the financial stress of

Page 12

1     both and management, my lack of
2     ability for management style,
3     probably, forced me into selling
4     Hillwood to the manager of Hillwood,
5     so I could operate only one.
6  Q.   You were operating at the Hillwood
7     location or Simple Pleasures was
8     operating the Hillwood location for
9     three years, did you testify to
10     earlier?
11  A.   I believe that's correct.
12  Q.   And that would have been, what, 1995
13     or --
14  A.   '95.
15  Q.   Okay. And when did Gator's open?
16  A.   Well, '92, it was the end of '92. So
17     really '93 was when Hillwood -- so it
18     would have been, you know,
19     three-and-a-half years, approximately
20     more like three-and-a-half years that
21     I operated Hillwood, owned and
22     operated. I had Gator's for almost
23     nine years.

Page 13

1  Q.   And there was a period of time that
2     they ran -- both businesses were
3     operated?
4  A.   Absolutely, yes, simultaneously,
5     correct.
6  Q.   Okay. Do you know how long that was
7     for?
8  A.   Approximately six months.
9  Q.   Why did you wish to leave the Hillwood
10     location?
11  A.   Hillwood has no evening traffic at all
12     down Zelda at that time. It was very,
13     very limited evening traffic, and it
14     is a small restaurant that didn't
15     allow us to do the volume we felt
16     necessary to perform lunch properly.
17  Q.   With respect to Simple Pleasures,
18     Incorporated, the profitability
19     stemming from the Hillwood location,
20     can you give me an idea as to what
21     that looked like?
22  A.   Absolutely.
23  Q.   Okay.

4  (Pages 10 to 13)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP  GOODWYN - 2/17/2006

Page 14

1  A.   When I took over -- when we took over,
2       I got into something that I didn't
3       know I was getting into.  I was very
4       young in the business --
5  Q.   When you took over --
6  A.   -- meaning when I took over Hillwood.
7       When I bought Hillwood, Ed Fatzinger
8       came and got me to buy Hillwood as it
9       was from Gail Snyder and her group
10      that went eventually down the street.
11      I thought I was buying a restaurant,
12      in turn I was really buying a
13      nightclub with a loyal following to
14      Gail Snyder.  When -- she did
15      everything in her power to destroy --
16      she told me to destroy the business
17      that I had purchased from her, even as
18      going as far as -- I mean, just -- it
19      was unbelievable.  So when she
20      actually opened up --
21  Q.  My --
22  A.   I'm going to give it to you in one
23       second.  I'll be finished.

Page 15

1         MR. MEMORY:  Okay.  Make it
2       short and move on.
3         THE WITNESS:  All right.
4         MR. MEMORY:  We're not
5       interested in the history.
6  A.   It went -- we had very few customers.
7       The financial statements were in
8       trouble until we built it up to a
9       level of profitability.  But we
10      started from very low and in serious
11      debt, and then we pulled it -- I
12      pulled it out of debt over the three
13      years.
14  Q.   (BY MR. HAMM)  Did Simple Pleasures,
15      Incorporated file tax returns for the
16      years of '93, '94, and '95?
17  A.   Correct.
18  Q.   Okay.  What would be the net income
19      for Simple Pleasures, Incorporated in
20      those three years, that you recall?
21  A.   Big losses, losses in '92, '93 and
22      profit in '94 -- or '93, '94, and
23      profits in '95.  It would be the third

Page 16

1       year before we made profits.
2  Q.   With respect to the 1995 year, do you
3       remember a figure that Simple
4       Pleasures, Incorporated would have
5       enjoyed as far as net income as
6       reflected on the federal tax return?
7  A.   The '94 showed like a $60,000 profit.
8       '95 did not show a profit because
9       we -- because the investment -- or it
10      showed a flat profit, a very close
11      profit, because it invested or was
12      investing in all of the purchase of
13      Gator's, and Gator's construction was
14      going on at that time.  So it did show
15      a profit, but it was a -- and I don't
16      recall what it was -- but it was not a
17      cash flow, a negative cash flow.
18  Q.   Really, Mr. Goodwyn, let me ask you.
19      What I'm asking about are some numbers
20      on the bottom of the tax return.
21         MR. MEMORY:  Listen, you
22      didn't ask for them.  He's sitting
23      here doing the best that he can.

Page 17

1         MR. HAMM:  If he recalls.
2       I'm asking for those numbers.
3  A.   I don't know.  I don't know.  I can't
4       recall exactly.
5  Q.   (BY MR. HAMM)  You don't recall the
6       numbers?
7  A.   I do not recall what they were, no.
8         MR. MEMORY:  Sitting there
9       lecturing him.
10  Q.  (BY MR. HAMM)  You feel that '95 was
11      profitable?
12  A.   It was profitable, correct.  There's a
13      difference in cash flow and
14      profitable.  We were spending cash
15      developing Gator's at the same time we
16      were making a profit.  We were out
17      spending our profit.  Was cash flow
18      positive during '95, no.
19  Q.   You were devoting -- any profit that
20      may have stemmed, you were devoting it
21      to the new location, Gator's?
22  A.   Absolutely.
23  Q.   Okay.  And do you have any idea as to

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP  GOODWYN – 2/17/2006

---

Page 18

1  what money that may have been?
2  A.  No.
3  Q.  You indicated earlier that 1994 had a
4  profit of $60,000.  Would it have been
5  in that neighborhood or a greater
6  amount?
7  A.  It would have been a greater amount.
8  Q.  And your position is that the Hillwood
9  location was generating $60,000, the
10  profit, in '94 and a greater amount in
11  '95?
12  A.  Something like that.  I don't recall
13  exactly.
14  Q.  Okay.  Were you taking a salary out of
15  the Hillwood location in '94 and '95?
16  A.  Yeah, I believe I was, yes.
17  Q.  So consequently, the $60,000 and the
18  greater figure for '95 would have been
19  after your salary; is that correct?
20  A.  Yes, if it showed -- when it showed a
21  profit of $60,000, it would not have
22  been a -- if when we showed a profit,
23  it would not have been a cash flow

---

Page 19

1  profit because it would have been
2  paying off debt.  But, yes, we may
3  have shown a profit during that time,
4  60,000 plus my profit -- I would have
5  had 30,000.
6  Q.  And your salary as you recall would
7  have been a $30,000 range?
8  A.  Uh-huh.
9  Q.  And then you opened Gator's in '90 --
10  A.  Or $24,000, I think, at that time.
11  Q.  Then you opened Gator's?
12  A.  Right, correct.
13  Q.  In '96?
14  A.  I'd have to look at the lease.  It was
15  '95 and 6, something like that.
16  Q.  Do you recall what period of time that
17  you ran these two businesses together?
18  A.  About six months.
19  Q.  Okay.  And then you vacated Hillwood?
20  A.  Yes.
21  Q.  Was there any unpaid obligations from
22  the Hillwood location as you recall?
23  A.  All of those -- any obligations,

---

Page 20

1  Hillwood, were absorbed by Simple
2  Pleasures, Inc. and followed on to
3  Gator's.
4  Q.  But there were unpaid obligations
5  associated with the Hillwood location?
6  A.  Yes, there were still outstanding
7  debts.
8  Q.  Were they just the trade payables, or
9  --
10  A.  Trade payables, you know --
11  Q.  Anything in addition to that?
12  A.  It could have been some additional
13  rent left.  I don't know.  It was just
14  trades, trade payments.
15  Q.  I mean, would it have been routine
16  rent or would it have been an
17  arrearage?
18  A.  It may have been.  I can't recall.  We
19  stayed --
20  Q.  I'm sorry?
21  A.  We stayed a little bit in arrears with
22  Ed for years since we opened Hillwood.
23  I've never been current.

---

Page 21

1  Q.  With respect to the Gator's location,
2  what was your experience with -- or
3  what was Simple Pleasures' experience
4  with respect to its profitability in
5  the year of '95, '96, '97, '98, those
6  years?
7  A.  Until we expanded into the bar and
8  made it larger, it was not -- it was
9  marginally profitable based on lunch.
10  But when we expanded the bar, it
11  became much more profitable.
12  Q.  And can you give me a time frame for
13  that?
14  A.  After two years, the second year.
15  Q.  '97, '98?
16  A.  '97, something like that.
17  Q.  And did there come a time that you
18  wanted to get out of the restaurant
19  business at the Vaughn Plaza, at the
20  Gator's location?
21  A.  There was a time from the day I got
22  into Hillwood that I wanted out, yes.
23  Q.  Okay.  But my question with -- while

---

6  (Pages 18 to 21)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 22

1    you were in the Gator's location?
2  A.  From then on, since I've been in the
3     restaurant business, I wanted out.
4  Q.  Okay.  What did you do to get out?
5     What efforts did you take to get out
6     of this restaurant business?
7  A.  The wrong direction.  I was trying to
8     find managers and bring people in like
9     Vince to buy the business or to take
10    it over, to manage it, to become a
11    partner, you know, and the deal would
12    be they would come on and then they
13    could end up getting or buying me out
14    and I would leave.  I found the
15    restaurant business very difficult to
16    maintain a family life the way I'd
17    like to, so it was always a pursuit of
18    trying to find somebody.
19          But in lieu of that, what
20    I ended up doing was, I was going to
21    then expand it.  I found it as running
22    faster to generate more cash flow to
23    keep creditors and to pay things back

Page 23

1     and to try to be able to hire managers
2     and get out that way.
3  Q.  You mentioned earlier that you were
4     trying to find others that were to buy
5     the business or come in.
6  A.  Like Hillwood, when I did Hillwood.
7  Q.  With respect to Gator's, did you go to
8     any other people attempting to or
9     solicit other offers on the purchase
10    on the Gator's business?
11 A.  In 2003, when we closed, I did.  I
12    actively went out and tried to find
13    people to purchase it.
14 Q.  Did you find anybody?  Were there any
15    offers tendered?
16 A.  There were no official offers
17    tendered, no.
18 Q.  And this is in 2003 that you closed
19    the business?
20 A.  Correct.
21 Q.  For what period of time was it closed?
22 A.  Two weeks.
23 Q.  And what was the reason it was closed?

Page 24

1  A.  Financial distress.
2  Q.  Well, I understand that's the result,
3     but what factors?  What factors caused
4     you -- was it a threatened levy,
5     seizure?
6  A.  I opened up a seafood market next
7     door, and that drew down on me
8     financially and very, very heavily.
9     We had spent too much money, $200,000,
10    on it.  We spent a lot of money on it.
11    Theft, because of it, had me overly
12    divided, and theft had run out of
13    control.  The management was out of
14    control.  And that's what drove the
15    problem, and until I regained control
16    and I reopened and let go of
17    management, is when it came back to
18    the financial profitability that it
19    had shown prior to me opening that
20    seafood market.
21 Q.  Let me see if I understand you.  You
22    closed in 2003, sometime during the
23    2003 period.

Page 25

1  A.  October.
2  Q.  October of 2003.  And you reopened and
3     enjoyed a period of profitability?
4  A.  Correct.  I reopened and was managing
5     to pay back some of the IRS debts and
6     some of my suppliers' debts, and we
7     had regained profitability once I
8     reopened, and almost virtually
9     immediately once I reopened.
10 Q.  Following the reopening or following
11    October 2003, did you go through any
12    type of business reorganization or
13    bankruptcy proceedings of any type
14    with --
15 A.  I had begun discussing it with Von.
16    When I closed, I had meetings with him
17    regarding my options on bankruptcy or
18    how to get this stuff paid back, but
19    my goal was to take care of Ed
20    Fatzinger and my debts to people that
21    I had, debts to -- as to try to figure
22    out how to get them taken care of.
23 Q.  There was no bankruptcy petition filed

7 (Pages 22 to 25)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN – 2/17/2006

Page 26

1      --
2  A.  No.
3  Q.   -- in October of 2003 for Simple
4      Pleasures, Incorporated?
5  A.  No.
6  Q.   Has there ever been a bankruptcy
7      petition involved for Simple
8      Pleasures, Incorporated?
9  A.   There was -- we -- October of 2005.
10      We had to go ahead and do bankruptcy
11      because of the Region's.
12          MR. MEMORY:  Listen to his
13      questions.
14          THE WITNESS:  Oh, I'm sorry.
15          MR. MEMORY:  He's asking about
16      the corporation.
17          THE WITNESS:  The corporation,
18      yes.
19  Q.   (BY MR. HAMM)  But the bankruptcy in
20      2005 was an individual bankruptcy; is
21      that correct?
22  A.  Yes.
23  Q.   It was not for the corporation then?

Page 27

1  A.   Not for the corporation.  Sorry.
2  Q.   So in essence --
3  A.   No, and I don't know.
4  Q.   -- my question is:  There has been no
5      bankruptcy petition --
6  A.   No, no.
7  Q.   -- to Simple Pleasures, Incorporated?
8  A.   Correct.
9  Q.   You mentioned earlier some internal
10      service or -- I'm sorry -- some debt
11      to the Internal Revenue Service.
12  A.   Correct.
13  Q.   Tell me about this.
14  A.   Payroll and other -- the payroll tax
15      not submitted on time or not sent --
16      not the full amount from 2003.
17  Q.   That was a withholding tax obligation?
18  A.   Um-hmm.
19  Q.   Was there any income tax obligations?
20  A.   No.
21  Q.   Withholding loan.  Were liens -- did
22      the Internal Revenue Service file
23      liens in this case?

Page 28

1  A.   No, they had not filed liens at that
2      time, no.
3  Q.   Did the Internal Revenue Service file
4      liens at some point in time?
5  A.   Yes, I believe so.
6  Q.   And -- you think so or you know so?
7  A.   I'm sure they did.  I mean, I -- yes,
8      I believe so.
9  Q.   Okay.  Do you know how much the
10      Internal Revenue Service claims they
11      are owed today?
12  A.   I believe a total somewhere around
13      $80,000.
14  Q.   Has there been a responsible party
15      assessment stemming from that
16      withholding tax obligation against you
17      personally?
18  A.   No.
19          MR. MEMORY:  He doesn't know
20      what you're asking.
21          THE WITNESS:  Uh-uh.
22  Q.   (BY MR. HAMM)  Did you understand my
23      question about the responsible party

Page 29

1      assessment?
2  A.   No -- I mean, I guess I don't, really.
3  Q.   Has the IRS -- are they looking to you
4      individually for the withholding taxes
5      stemming from Simple Pleasures,
6      Incorporated?
7  A.   Yeah, they're looking for me for the
8      money, yes.  Certainly, yeah.
9  Q.   In other words, Simple Pleasures,
10      Incorporated is not the only one
11      liable today?
12  A.   Correct, yes.
13  Q.   Phillip Goodwyn himself is liable
14      also?
15  A.   Yes.
16  Q.   Okay.  How about the Alabama State
17      Department of Revenue?  Are there any
18      tax obligations?
19  A.   No.
20  Q.   How about Montgomery County?
21  A.   No.
22  Q.   City of Montgomery?  Sales taxes paid?
23  A.   No.  All sales taxes paid.

8  (Pages 26 to 29)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP  GOODWYN − 2/17/2006

Page 30

1  Q.  Have there ever been any liens or any
2      amounts owed those people beyond the
3      period of time in which they were to
4      be paid?
5  A.  Have I -- I have with the State of
6      Alabama in the 2003.  I owed them
7      $2100, something like that, and I paid
8      it.
9  Q.  Okay.  Most of them have been paid in
10     a timely fashion that would prevent a
11     lien from being filed; is that
12     correct?
13 A.  Absolutely.
14 Q.  Okay.  And the Internal Revenue
15     Services is, as far as you know today,
16     are the only one that has filed a
17     lien?
18 A.  Correct.
19 Q.  You have filed a lawsuit.  Have you
20     had an opportunity to review the
21     lawsuit --
22 A.  Yes.
23 Q.  -- that has been filed in this case?

Page 31

1  A.  Um-hmm.
2  Q.  And you have read the lawsuit?
3  A.  Yes.
4  Q.  Do you understand what is being said
5      in this lawsuit?
6  A.  Um-hmm.
7  Q.  Let me ask you some questions about
8      this lawsuit.  You have alleged a
9      breach of contract that Mr. Saele and
10     V Restaurants, Incorporated --
11 A.  Correct.
12 Q.  -- have breached a contract, an
13     agreement, that you had with them --
14 A.  Um-hmm.
15 Q.  -- you and Simple Pleasures,
16     Incorporated had with them.  Can you
17     tell me how that occurred and what
18     facts you know about that?
19 A.  There were -- I hired or requested
20     Vince come in as a -- you want just
21     the contract, discuss just the
22     contract?
23 Q.  I want what facts support --

Page 32

1  A.  The contract -- Vince and I sat down
2      on the 24th.  He brought in this
3      contract.  He'd been frustrated we had
4      not -- the attorneys had not gotten
5      all together on everything.  He wanted
6      to take control of the business.  I
7      wanted him to take control of the
8      business.  We were waiting for the
9      inevitable from the IRS and from
10     Region's.  They were willing, by all
11     indications, were -- had expressed
12     willingness to meet us on the
13     agreement to the $30,000 for each, and
14     Ed Fatzinger is -- my understanding
15     and I had spoken to Ed, that he was in
16     all -- full agreement with this --
17     with this contract.
18 Q.  Hold on.  That's Mr. Memory's.  Go
19     ahead.  Keep talking.
20 A.  And all that we were going to be
21     waiting for is he -- I was giving him
22     the keys and we were going to be
23     waiting for getting the full release,

Page 33

1      and I was going to be responsible for
2      making sure that he had full release.
3
4      (Whereupon, Exhibit No. 1 was marked
5      for identification.)
6
7  Q.  (BY MR. HAMM) Let me show you an item
8      that I have marked as Exhibit No. 1.
9      Does that document look familiar to
10     you?
11 A.  Yes.
12 Q.  Can you tell me what that --
13 A.  This is an agreement that Vince, with
14     V Restaurants, and I, representing
15     Simple Pleasures, Inc., were in
16     agreement to.
17 Q.  And is that your signature on the
18     bottom or --
19 A.  Yes, it is.
20 Q.  -- or half way down the second page?
21 A.  Yes, that's mine.
22 Q.  Okay.
23     MR. HAMM: Mr. Yarbrough, this

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP  GOODWYN — 2/17/2006

Page 34

1  is the copy of the --
2      MR. YARBROUGH:  Yeah, I've got
3  it.
4      MR. HAMM:  You've got a copy?
5      MR. YARBROUGH:  That's the
6  same thing that was just introduced in
7  the other deposition, isn't it, 24th
8  letter?
9      MR. HAMM:  Yeah.
10 Q.  (BY MR. HAMM)  Mr. Goodwyn, you're
11     signing for Simple Pleasures,
12     Incorporated down here at the bottom
13     of this document?
14 A.  Right.
15 Q.  And is it this agreement, dated
16     September the 24th, 2004, which is
17     marked as Exhibit No. 1, is this the
18     agreement -- is this the agreement
19     that you and Mr. Saele had?
20 A.  Correct.
21 Q.  Acting on behalf of each of your
22     corporations?
23 A.  Correct.

Page 35

1  Q.  Is it this agreement that was
2      breached?
3  A.  Yes.
4  Q.  Okay.  Were there -- are there any
5      other terms other than what is
6      reflected in this document to y'all's
7      agreement?
8  A.  When we were discussing leading up to
9      this document, when we were working on
10     past agreements so implied or
11     discussed, we were lining out areas
12     that I would be allowed to go into in
13     order to make a living and the
14     original documents which referenced
15     any food service, and that's where we
16     had problems, and it turned out that
17     Vince and I were in a complete
18     understanding that existing Gator's
19     customers, ones that I had done
20     catering for in the past, any existing
21     clients, that they were actually
22     actively doing any catering for, that
23     I would not do any work for unless I

Page 36

1  did it in his behalf.  And I did
2  express at that time that I had one
3  wedding obligation that I had to make
4  sure, and he had to fulfill these
5  other -- he had to fulfill these other
6  catering jobs that were coming up, and
7  then he would pay me a percentage for
8  helping him execute those catering
9  jobs.
10     So that was another
11 agreement that we both -- we were on
12 the understanding that I was going to
13 help him finish these because that was
14 my reputation.  I had taken those
15 catering parties, and I wasn't going
16 to let them just kind of be not
17 overseen.
18 Q.  Was that agreement, with respect to
19     the catering that you just described,
20     was it before September the 24th or
21     after September the 24th?
22 A.  Well, it was a -- it was before
23     September 24th when he discussed this

Page 37

1  and that we had discussed that he
2  needed help for these parties, and
3  that he was going to pay me a
4  percentage to handle it.  That was the
5  only way, because otherwise he didn't
6  want me involved in the restaurant,
7  and I didn't want to be involved in
8  the restaurant.  He needed to take it
9  over.
10 Q.  With respect to the catering, the
11     other agreement that you're speaking
12     of --
13 A.  Correct.
14 Q.  -- is it addressed in this September
15     24th, 2004 agreement?
16 A.  Yeah, in that it says that catering
17     business operating out of Gator's
18     shall continue but only be operated by
19     its new owners.
20 Q.  Okay.  And were you satisfied with
21     that?
22 A.  Am I satisfied with that?
23 Q.  Were you satisfied with that on

10  (Pages 34 to 37)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 38

1    September the 24th, 2004?
2  A.   I was satisfied with the fact that we
3    both had it clear in our head.  We
4    understood that this couldn't cover
5    every contingency.  We didn't have,
6    really, lawyers sitting there bringing
7    it up, but in our head we had clear --
8    he wanted to make sure that the
9    profitability of what he saw of
10   Gator's, that I was not going to
11   undermine his business.  And my job
12   was -- and in my head I was going to
13   do nothing to undermine his business,
14   and that is my -- I was not going to
15   go into business against him, taking
16   his customers, and that was our
17   intention.  And was that addressed?
18   Was it specifically word for word?  Is
19   that what's right here?  That's what
20   our intentions, and that's what the
21   discussions between us were, and
22   that's what I was holding myself to.
23   Does that answer your question?

Page 39

1  Q.   Well, if that's your answer, it
2    answers my question.
3  A.   Um-hmm.
4  Q.   The -- were there any matters
5    unresolved on September the 24th,
6    2004?  Maybe that's the way I should
7    ask the question.
8  A.   That we had left -- no, not that I
9    know of specifically, except for the
10   fact that we said we couldn't transfer
11   title, which was not important -- or
12   not title, but we couldn't transfer
13   money until I was able to deliver him
14   clear title to the equipment.
15 Q.   Okay.  I'm going to cover that.  I
16   understand how that would be a factor,
17   but that is addressed in this document
18   on -- dated September the 24th also, I
19   believe.
20 A.   Right.  But it was -- but we had had
21   an understanding that that would come
22   when it would come; that there was no
23   -- although it requests a closing day,

Page 40

1    we had discussed at that time that it
2    would come when it comes; that I would
3    do everything so he could operate it
4    with no hindrances, and that's what I
5    was doing.
6  Q.   Now, when you say operating with no
7    hindrance, he was doing that at the
8    time, was he not, or thereabouts?
9  A.   No, he wasn't operating -- I mean, he
10   was not operating it, the business,
11   until the day -- I mean, he had been
12   in there helping his manager and doing
13   other things, but he wasn't the man in
14   control of all the deposits, of the
15   money, of all that.
16 Q.   When did that occur?
17 A.   August -- September 24th.
18 Q.   Okay.  I get it.  Maybe we're talking
19   beyond each other, but it occurred on
20   or about September 24th that Mr. Saele
21   took over the business --
22 A.   Correct.
23 Q.   -- is that correct?  Okay.  So is it

Page 41

1    your understanding that paragraph
2    number four of Exhibit No. 1 was
3    somewhat ambiguous between the two of
4    you, or does it -- did you not agree
5    to this?
6        MR. MEMORY:  Object to the
7    form.  Calls for legal conclusion.  Go
8    ahead and you can answer it if you
9    can.
10 A.   It was to me, at the time of this,
11   irrelevant in a point because what was
12   our intentions?  Our intentions were
13   he was going to get a good deal.  He
14   was -- I was going to assist him and
15   have everything he need to operate
16   that business; that nothing would
17   hinder his operation of the business;
18   and that he would get complete and
19   total access and be able to keep the
20   equipment and everything in place;
21   that nothing would hinder the
22   purchase.
23 Q.   (BY MR. HAMM)  Okay.

11  (Pages 38 to 41)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 42

1  A.   All right? And that -- this, to me,
2       in some respects was just clarifying
3       what our obligations were, and our
4       obligations were:  He was to hand me
5       the money.  He was to make a deal with
6       Ed, and I would deliver him everything
7       in my power.
8  Q.   Okay.  In your deposition -- have you
9       had an opportunity to review your
10      deposition --
11 A.   Um-hmm.
12 Q.   -- given previously --
13 A.   Right.
14 Q.   -- when Mr. Yarbrough took it?
15 A.   Um-hmm.
16 Q.   Did you review that?
17 A.   I read through it quickly.
18 Q.   There were some suggestions, or
19      actually statements, that an agreement
20      was -- occurred on 27th, 2004.  Was
21      there any agreement subsequent to this
22      September the 24th, 2004 document?
23 A.   Between Vince and I?

Page 43

1  Q.   Um-hmm.
2  A.   Now, there was a lease on September
3       27th, I think, between Vince and
4       Spectrum.
5           MR. HAMM:  What page was this?
6           MR. YARBROUGH:  Yeah, it's
7       first reference, page 28 beginning on
8       line 12.
9  Q.   (BY MR. HAMM) I'm looking at page 28.
10 A.   That would have been September the
11      24th.
12 Q.   Okay.
13 A.   I mean, it may have been Friday.  It's
14      Friday I stated earlier.
15 Q.   So the September 27th date was an
16      error on --
17 A.   It's just a -- yeah.
18 Q.   -- someone's part, either yours or
19      perhaps a court reporter?
20 A.   Right.
21 Q.   Okay.  It should have been September
22      the 24th?
23 A.   Correct.

Page 44

1  Q.   Okay.  Very well.  I just wanted to
2       clear that point up.  There was no
3       agreement subsequent to September the
4       24th?
5  A.   No.
6  Q.   Okay.  Good.  Do you have any
7       indication that Vince Saele would not
8       have paid you $90,000?
9  A.   When he's going to pay me the 60 and
10      -- no.
11 Q.   The purchase price --
12 A.   No.
13 Q.   The consideration would have come
14      across --
15 A.   Absolutely not.
16 Q.   -- with respect to the 90,000; is that
17      correct?
18 A.   No.  I had no indication anyway.
19 Q.   And that is not a basis for your claim
20      with breach of contract, is it, that
21      he didn't have the $90,000 or didn't
22      have the resources to do this, is it?
23 A.   No, that's not.  It's the letter.

Page 45

1  Q.   Okay.
2  A.   I had no indication he was going to
3       breach the contract until Von called
4       me.
5  Q.   Tell me how he breached this contract.
6       And the contract we're speaking of and
7       you're suing about is this September
8       24th, 2004 contract?
9  A.   His attorney sent a letter to Von
10      saying he wasn't going to fulfill the
11      contract.
12 Q.   Okay.  But my question -- the contract
13      that you're suing on, is this the
14      agreement of September the 24th of
15      2004?
16 A.   Correct, or our agreement to fulfill
17      his payment to me.
18 Q.   Okay.  When did you get notice of the
19      breach of the contract?  When were you
20      informed that Vince Saele --
21 A.   Whatever date that Von was aware of
22      that they called me to tell me.  Vince
23      never called me to say there was a

12  (Pages 42 to 45)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP  GOODWYN - 2/17/2006

Page 46

1    problem, we were running in trouble,
2    because I need to have this -- we have
3    a timeline.  There was no discussion
4    that I was in any way, form, or
5    fashion creating any problem or
6    hindrance to him or that he was having
7    a problem and was going to breach the
8    contract.  No one called, said
9    anything that there was a problem.
10 Q.   Well, with respect to paragraph four
11    on the October 22nd, 2004 date, you
12    did not regard that as being a
13    condition of the contract?
14 A.   It wasn't relevant to him operating
15    the business, so I had delivered him
16    -- the business had delivered
17    everything.  It was not -- in other
18    words, the business wouldn't shut down
19    operation.  He wouldn't lose anything.
20    There was nothing -- there was nothing
21    hindering him, so it was irrelevant as
22    far as I was concerned.  I had signed
23    over -- went to the ABC board, signed

Page 47

1    over phone numbers, given anything --
2    anything he'd ask for he got.
3 Q.   Well, let me ask:  On September the
4    24th, where was this contract signed
5    by you and Mr. Saele?
6 A.   In the office at Gator's.  It's a --
7 Q.   Did you have an attorney prior to this
8    date, September 24th, 2004?
9 A.   I did.
10 Q.   And let me ask:  Who was that
11    attorney?
12 A.   Von Memory.
13 Q.   Was Mr. Memory present during that
14    meeting?
15 A.   No, no, he was not.
16 Q.   Okay.  Were you precluded from talking
17    with Mr. Memory on that day, September
18    the 24th, 2004, or prior to signing
19    this document?
20 A.   On this -- he was -- he was out of
21    town or unavailable, and I was
22    probably in poor judgment signing
23    anything without an attorney present.

Page 48

1 Q.   Did he -- were you under any kind of
2    duress on September the 24th, 2004,
3    when you executed --
4 A.   Why did I --
5 Q.   No.  Were you in any kind of duress?
6    Did anything force you to sign?
7 A.   No.
8 Q.   No one forced you to sign this
9    document?
10 A.   No.
11 Q.   Did anyone prevent you from reading
12    this document before you signed it?
13 A.   No.
14 Q.   And you were not incapacitated in any
15    matter, and you understood what you
16    were signing; is that correct?
17 A.   Correct.
18 Q.   But you just did not feel the October
19    27th -- I'm sorry -- October 22nd,
20    2004 date was operative?
21 A.   I don't know if I looked back --
22    reading back over it, I don't think I
23    was much aware of that date after the

Page 49

1    fact.  I didn't look back at this
2    document each week to say where are we
3    on time.  I had turned over everything
4    for his operation.  He was operating.
5    There were no hindrances.  We were --
6    I had spoken to him a number of times
7    saying we're getting ready to get
8    these documents back for full release,
9    so I had told Vince that we were just
10    waiting on this.  There is no problem.
11 Q.   Let me ask:  Had Region's agreed to
12    accept $30,000 at -- let's say
13    September the 24th, 2004?
14 A.   We have a formal at a particular time.
15 Q.   I'm sorry?
16 A.   There was a formal agreement at a
17    particular time, but we had had
18    discussions that they would -- that it
19    would -- in all likelihood they were
20    going to accept the $30,000.
21 Q.   When did you have a definitive
22    agreement from Region's Bank that they
23    would accept 30,000 and release

13  (Pages 46 to 49)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP  GOODWYN - 2/17/2006

Page 50

1  whatever claims they had to the
2  equipment and the furniture and
3  fixtures?
4  A.  Two weeks or something after this, I'm
5      not sure, we had a document to --
6  Q.  There was a letter coming from
7      Region's --
8  A.  Correct.
9  Q.  -- telling you such?
10 A.  Yes, there's a letter.
11 Q.  Okay.  That upon payment of $30,000
12     they would release --
13 A.  Correct.
14 Q.  -- their claims to the furniture and
15     fixtures within the Gator's
16     restaurant?
17 A.  Correct.
18 Q.  With respect to the Internal Revenue
19     Service, when did you receive
20     indication that they would release
21     their claims too?
22 A.  I recall somewhere in November,
23     mid-November.

Page 51

1  Q.  Did you receive a formal document -- a
2      document from the Internal Revenue
3      Service?
4  A.  I wasn't -- that was being handled by
5      my attorney.
6  Q.  Okay.  Have you been informed or has
7      Simple Pleasures been informed?
8          MR. MEMORY:  Don't go out that
9      way.
10 A.  No -- I mean, I don't know.
11         MR. MEMORY:  You can't talk
12     about what the two of us talk about.
13         THE WITNESS:  Right.
14 A.  I don't know what transpired between
15     my attorney and the IRS exactly.
16 Q.  (BY MR. HAMM)  Did you give the
17     Internal Revenue Service 2848 for your
18     authorizing them to work with your
19     counsel?
20 A.  Yes.
21 Q.  Okay.  Did the Internal Revenue
22     Service send you a letter spelling out
23     or detailing any terms upon which they

Page 52

1  would release their claim to this
2  furniture and fixtures?
3  A.  Not that I know of.
4  Q.  Let me ask you this:  Do you continue
5      to get correspondence from the
6      Internal Revenue Service --
7  A.  Yes.
8  Q.  -- even today?
9  A.  Correct.
10 Q.  Even though you've executed the 2848
11     with your counsel; is that correct?
12 A.  Yes.
13 Q.  Or you've executed 2848 to the
14     Internal Revenue Service?
15 A.  Yes.
16 Q.  You still get all correspondence from
17     the Internal Revenue Service, don't
18     you?
19 A.  Yes, right.
20 Q.  Have you ever received a letter from
21     the Internal Revenue Service saying
22     that they would release the lien?
23 A.  No, not that I know of.

Page 53

1  Q.  Okay.  Let me ask:  On October the
2      22nd or November the 15th or any date
3      subsequent to that, how did you plan
4      to carry this transaction out?
5  A.  We were waiting for their approval of
6      acceptance of the offer, which we had
7      been given some reason that they would
8      be looking at it favorably.
9  Q.  How did you anticipate this
10     transaction taking place?  I mean,
11     would it be with Mr. Saele paying
12     $60,000 cash, and you heard the
13     testimony earlier, him assuming a note
14     of $30,000 --
15 A.  Correct.
16 Q.  -- and that money being held someplace
17     pending IRS approval?
18 A.  No.  I was planning to sit down with
19     the attorneys.  He hands over the
20     check, we hand over the release of the
21     equipment from anything.
22 Q.  So you expected the Internal Revenue
23     Service to release their lean prior to

14  (Pages 50 to 53)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP  GOODWYN - 2/17/2006

Page 54

1    receiving $30,000?
2  A.   Or a letter of acceptance of some
3       sort.  We had the letter of acceptance
4       from Region's, and I was waiting for
5       that.
6  Q.   Had Spectrum Development agreed to
7       accept the $30,000 in --
8  A.   Yes, it was --
9  Q.   It was a note; is that correct?
10  A.   A note.
11  Q.   And they had agreed to that?
12  A.   They agreed to accept what Region's
13       and the IRS were getting, and that was
14       $30,000.
15  Q.   And would that serve to release you
16       from the entire lease arrearage?
17  A.   Yes.
18  Q.   Personally?
19  A.   Along with an additional five-year
20       lease from the restaurants from a --
21  Q.   Okay.  Following September the 24th,
22       2004, did you receive any revenues
23       from the business?

Page 55

1  A.   Only in terms of percentages of
2       catering.
3  Q.   Okay.  And is it your position today
4       that you're entitled to revenues from
5       the business subsequent to September
6       the 24th, 2004, you or Simple
7       Pleasures, Incorporated?
8  A.   Well, Simple Pleasures is still owed
9       for all the equipment and all the --
10       what it gave at that particular time.
11       I mean, because it was used.
12  Q.   Okay.  But with respect to your claim
13       against the profits of the business,
14       is it your position in this lawsuit
15       that you're entitled to the revenues
16       from the -- stemming from the
17       operation of the business subsequent
18       to -- I mean after September the 24th,
19       2004?
20  A.   It's -- I'm in the opinion that Simple
21       Pleasures, Inc. owns that business and
22       everything in it, and whatever it was
23       doing and the profit from it more than

Page 56

1       V Restaurants has --
2  Q.   Okay.
3  A.   -- does, has title to it.  As far as
4       I'm concerned, it, V Restaurants,
5       never executed their part of the deal
6       where, yet, Simple Pleasures did.
7  Q.   And you've heard testimony earlier
8       about a landlord foreclosing liens?
9  A.   I understand.
10  Q.   Are you -- do you question that or are
11       you challenging that process here
12       today as far as your lawsuit?
13  A.   I am challenging that that process
14       happened because Vince said he was not
15       from V Restaurants, did not fulfill
16       his part of the agreement.
17  Q.   I'm looking at paragraph eight of
18       Exhibit No. 1, and it speaks of the
19       remaining 30,000.  I presume --
20  A.   Um-hmm.
21  Q.   -- that 30,000 -- 60,000 cash coming
22       in from Mr. Saele, 30,000 would go to
23       Region's; is that correct?

Page 57

1  A.   Correct.
2  Q.   And 30,000 would go to the Internal
3       Revenue Service?
4  A.   Correct.
5  Q.   For the release of all liens that they
6       may have against Phillip?
7  A.   Um-hmm.
8  Q.   That would be you; is that correct?
9  A.   Correct.
10  Q.   Individually or the business?
11  A.   Um-hmm.
12  Q.   Have you been successful today in
13       getting your individual tax -- any
14       lien that may be filed against you
15       individually released?
16  A.   No.
17  Q.   Okay.  Those tax liens remain; is that
18       correct?
19  A.   Correct.
20  Q.   Even today?
21  A.   Um-hmm.
22  Q.   You had a tax obligation of over
23       $30,000 to the Internal Revenue

15  (Pages 54 to 57)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 58

1    Service; is that correct?
2  A.   Correct.
3  Q.   Had you filed any type of Offer in
4      Compromise or directed your attorney
5      to file an Offer in Compromise with
6      the Internal Revenue Service?
7  A.   I believe we made an offer.
8  Q.   Okay.  And have you received a -- an
9      acceptance of that offer for you
10     personally, let me begin with.
11 A.   I believe that the direction that we
12     were taking at this time prior to them
13     not doing it is different than the
14     direction that we are in presently.
15 Q.   Let me ask you:  Did you file an Offer
16     in Compromise with the Internal
17     Revenue Service?  Did you or -- did
18     you instruct your attorneys to file an
19     Offer in Compromise with the Internal
20     Revenue Service?
21 A.   Yes, I instructed my attorney.
22 Q.   Are you aware -- had there been any
23     other efforts to compromise this

Page 59

1      liability other than through the
2      Offer-in-Compromise program?
3  A.   No.
4  Q.   Okay.  Are you sitting here today
5      suggesting that the liability, as
6      assessed, as indicated by the Internal
7      Revenue Service, is incorrect; that
8      you don't owe that much money?
9  A.   No, I wouldn't say.
10 Q.   In other words, you owed more than
11     $30,000?
12 A.   Correct.
13 Q.   And you have not attempted to reduce
14     that liability, or get that liability
15     reduced through any other means other
16     than the Offer in Compromise; is that
17     correct?
18 A.   Correct.
19 Q.   You haven't challenged the underlying
20     assessment, have you?
21 A.   No.
22 Q.   So consequently, there would have been
23     a balance even greater remaining

Page 60

1      unless the Internal Revenue Service
2      released the business and you?
3  A.   Correct.
4  Q.   And you're -- what's the progress on
5      your efforts to reduce that liability
6      today?  What has occurred?
7  A.   I've not made any arrangements at this
8      time.
9  Q.   Have you attempted anything?
10 A.   No.
11 Q.   Okay.  Did you read paragraph number
12     nine?
13 A.   Um-hmm.
14 Q.   Did you discern from that that maybe
15     some of the terms and conditions of
16     this letter are not -- are not
17     intended by the parties to be engraved
18     in stone or by any --
19 A.   The -- I guess with my naive behavior,
20     I felt like what we were discussing
21     here was the sale of the business, an
22     operating entity that was capable of
23     operating, and that's what I was

Page 61

1      giving him.
2  Q.   Had there -- prior to September the
3      24th, had there been discussions
4      between yourself and Mr. Saele and/or
5      your counsel, being Mr. Memory, I take
6      it; is that correct?
7  A.   Correct.
8  Q.   And Mr. Buster Russell about the sale
9      of this business?
10 A.   Yes.
11 Q.   Had there been correspondence between
12     the attorneys?
13 A.   Yes.
14 Q.   And discussions between the two of
15     you, Mr. Goodwyn and -- being Mr.
16     Goodwyn yourself and Mr. Saele?
17 A.   Yes.
18 Q.   Okay.  How long had that been going
19     on?
20 A.   Probably six weeks.
21 Q.   Okay.  And did you want this sale to
22     -- or this transfer to occur as
23     promptly as possible?

16  (Pages 58 to 61)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP  GOODWYN - 2/17/2006

Page 62

1  A.  Yes.
2  Q.  Was it your opinion that Mr. Saele
3      wanted this transfer or sale to occur
4      as promptly as possible?
5  A.  Yes.
6  Q.  Do you doubt on September the 24th,
7      2004, that Vince Saele wanted to go
8      through with this transaction?
9  A.  No.
10  Q.  What would have changed his mind or do
11      you know of anything that would have
12      changed his mind?  What do you know
13      today?
14      MR. MEMORY:  Object to the
15      form.  You can't look in his mind and
16      answer that question.
17  Q.  (BY MR. HAMM)  Have you got any
18      information other than the letter from
19      Mr. Buster Russell that was presented
20      a few moments ago that was shown as
21      Exhibit 3 in the Vince Saele
22      deposition, anything other than this
23      document saying that Mr. Saele does

Page 63

1      not wish to go through with the
2      transaction?
3  A.  No.
4  Q.  Okay.  And do you know of anything
5      other than that indicating to you that
6      -- I asked you if you had anything
7      other than that document, item No. 3.
8      But do you know of anything else that
9      would have indicated to you that
10      Mr. Saele did not wish to go through
11      with this transaction?
12  A.  No.
13  Q.  Okay.  And Mr. Saele's failure to
14      follow through with this transaction
15      is the sole basis for your breach of
16      contract?
17  A.  Correct.
18  Q.  Okay.  With respect to conversion, you
19      have alleged a claim of conversion.
20      First, do you understand what we mean
21      or what is meant by the term
22      "conversion"?
23  A.  No.  What do you mean by conversion?

Page 64

1  Q.  Well, why don't you read paragraph
2      number 21 and 22 of the lawsuit
3      itself, the complaint itself -- I'm
4      sorry, paragraph 27 through 31.
5  A.  (Witness complies.)  Okay.
6  Q.  How did Mr. Saele take this business
7      from you?  Explain to me.
8  A.  He refused to pay for what he agreed
9      to pay for.
10  Q.  Did you give him the keys to the
11      location?
12  A.  Absolutely.
13  Q.  And did he commence the operation of
14      the business?
15  A.  Yes, he continued operations.
16  Q.  Are you suggesting that on September
17      the 24th he had a plan to somehow take
18      this business from you?
19  A.  I can't read into his mind.
20  Q.  Okay.  Have you got any evidence of
21      that, anything other than your
22      conclusions at this moment just before
23      that?

Page 65

1      MR. MEMORY:  Object to the
2      form.
3  Q.  (BY MR. HAMM)  Have you got anything
4      that would say to you or suggest to
5      you that Mr. Saele --
6  A.  Only by what happened and them pulling
7      the contract, by not mentioning
8      anything, not saying, "Hey, I need
9      to -- we need to get something in
10      writing on these things, otherwise I'm
11      going to pull -- I'm not going to pay
12      you."  There was no attempt to
13      reconcile any differences in any
14      problems.  Where I was proceeding as
15      though everything was fine -- because
16      it was.  He had full operations.  He
17      had everything he needed.  I was under
18      no idea that in any way, form, or
19      fashion he could have been hindrance
20      (sic), and he wasn't.  He had no --
21      nothing was taking his equipment.
22      Nothing was stopping him, so how was I
23      not delivering?  And so I was

17  (Pages  62 to 65)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 66

1    expecting him to do the same.
2  Q.   But -- so is it fair to say that by
3       Mr. Saele and V Restaurants,
4       Incorporated not following through
5       with the contract, that they have
6       converted your restaurant to their own
7       use?
8  A.   Correct.
9  Q.   Okay.  And that is the manner by which
10      they took this business from you?
11 A.   Their refusal to pay me made it --
12      made me not be able to make my
13      obligations to Spectrum, which was to
14      deliver the $30,000 contract
15      between --
16 Q.   Well, the contract was coming from
17      Mr. Saele, was it not?
18 A.   Right.  But I was delivering him in
19      full, and he was coming with the
20      money.  I had told him that Vince was
21      in agreement to sign this.  He was
22      paying me $60,000, which would deliver
23      then the equipment to Spectrum.

Page 67

1  Q.   Okay.
2  A.   Because Spectrum wanted the equipment
3       and everything released from liens,
4       also from Region's liens and from the
5       IRS.  So suddenly, because Vince pulls
6       out of that agreement, I can't fulfill
7       the portion for Spectrum.
8  Q.   So you're telling the Court and
9       testifying today that by virtue of Mr.
10      Saele not following through with his
11      obligations under this September 24th,
12      2004 contract, he converted your
13      business to his use?
14 A.   Well, he took it to his use, but we
15      signed this contract.
16 Q.   Okay.  And then failing to follow
17      through with this agreement of
18      September the 24th, right?
19 A.   I signed over the ABC license, signed
20      over the power, signed over everything
21      immediately once this was done.
22 Q.   Um-hmm.  I'm just trying to understand
23      the basis of your claim.

Page 68

1  A.   Right.
2  Q.   Is that -- his failure to follow
3       through with the agreement on
4       September 24 --
5            MR. MEMORY:  No, no.  He's
6       answered that twice as to what -- I
7       know what you want to get at him, but
8       --
9            MR. HAMM:  No.  Tell me.
10           MR. MEMORY:  Exactly.  That
11      it's not the basis just to the
12      contract, that there's more to it than
13      that.
14 Q.   (BY MR. HAMM)  Well, if there is,
15      please tell me.  That's what I'm
16      asking.
17           MR. MEMORY:  Answer his
18      question.
19 Q.   (BY MR. HAMM)  Is there anything more
20      than the contract, the underlying
21      contract, that you say Mr. Saele
22      breached to support your conversion
23      plan?  Let me ask it this way --

Page 69

1       unless you wish to answer that
2       question.
3  A.   I'm thoroughly --
4  Q.   Had Mr. Saele followed through with
5       the contract?
6  A.   Um-hmm.
7  Q.   Would you have a conversion claim
8       against Mr. Saele had he done what
9       y'all had agreed on September the
10      24th, 2004?
11 A.   If he had of done -- if he had
12      performed -- transferred money and
13      signed the lease with Spectrum
14      Development, there would be no claim
15      against Vince Saele.
16 Q.   No claim for conversion or no claim at
17      all?
18 A.   I believe there would be no -- that we
19      would have no contentions.
20 Q.   Okay.  With respect to unjust
21      enrichment, what supports that claim?
22 A.   That he took over a business without
23      the intentions of paying or without

18  (Pages 66 to 69)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 70

1    paying, and I don't know what his
2    intentions are or not, without paying.
3    Q.   Okay.  Do you have any evidence or any
4    suggestion today that on September the
5    24th Vince Saele did not intend to
6    purchase this business?
7    A.   Except that he had entered into or
8    quickly entered into a deal with Ed
9    Fatzinger to do it.  I don't know.
10   Q.   So it had -- might be supported by the
11   timing of his agreement with
12   Mr. Fatzinger also?
13   A.   I know that they'd had numerous
14   negotiations and discussions, and I
15   don't know what might have been going
16   on.  I can't -- I don't know.
17   Q.   Well, let's talk about that.  What is
18   your understanding of his agreement
19   with Mr. Fatzinger?
20   A.   My understanding was -- is that he was
21   going to sign an additional lease, and
22   which is part of what we had
23   discussed, and a $30,000 note.

Page 71

1    Q.   Well, that was part of your agreement?
2    A.   Right.  That was my understanding that
3    Vince had with Ed.
4    Q.   Sitting here today, you know that Mr.
5    Saele is operating a restaurant in the
6    Gator's location on Vaughn Road?
7    A.   Right.  Right.
8    Q.   How did that come to be, or what is
9    your understanding of how that came to
10   be?
11   A.   Because I handed him the keys and the
12   reputation and the equipment.
13   Q.   Did something occur between -- well,
14   since between September --
15   A.   And I signed over the license and I
16   signed over everything and I gave him
17   the phone.  I did all of this.
18   Q.   But you know Spectrum Development
19   continues to own that facility out
20   there; is that correct?
21   A.   Correct.  Ed was forced into
22   exercising a lien, if that's what
23   you're getting to, in order to clear

Page 72

1    up title when Vince had failed,
2    decided he was not going to -- to move
3    forward on this.
4    Q.   Do you have any indication of when
5    that may have happened?  Did you
6    receive notice of that?
7    A.   We received notice of the lien
8    intention, which I then spoke to Ed
9    about, and he said it was a formality,
10   to continue to move forward, so that
11   it was only a formality, but he wanted
12   to fulfill this contract that he was
13   aware of because he wanted clean, you
14   know -- this is what he wanted
15   (indicating).
16   Q.   Do you recall when you received the
17   notice from Mr. Fatzinger?
18   A.   Early -- no.  I received --
19   Q.   Let me ask you this:  Was it after --
20   before September the 24th --
21   A.   We had no notice prior to this, and
22   that's when Ed and I were discussing
23   that we're, Vince and I, were working

Page 73

1    on this to move forward.
2    Q.   Okay.  Was there a notice subsequent
3    from Mr. Fatzinger, subsequent to the
4    September the 24th, 2004?
5         MR. YARBROUGH:  I object to
6    the form and let me tell you the basis
7    of my objection.  You're not
8    specifying notice of point, and --
9    Q.   (BY MR. HAMM)  Well, did you receive
10   any correspondence from Mr. Fatzinger
11   subsequent --
12   A.   I believe we did.
13   Q.   What do you recall that correspondence
14   being subsequent to September the
15   24th, 2004?
16   A.   I'm not sure because we deal with each
17   other, Ed and I, separately.  I don't
18   know.  I mean, I just know that he was
19   telling me we need to get something
20   resolved here.  We need to get this
21   thing moving.
22   Q.   So following September the 24th, 2004,
23   Mr. Fatzinger was suggesting to you to

19  (Pages 70 to 73)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 74

1    get this transaction resolved?
2  A.   Even prior to September 24th.  He was
3       putting pressure on Region's.  He
4       wanted to put pressure on Region's and
5       the IRS and everybody to let's get
6       this thing done and settle up.  So he
7       was taking action to help me
8       facilitate getting everybody on the
9       same page.  That was Ed's idea of a
10      way to make it all happen faster, not
11      in turn to steal the restaurant or
12      force me out, but to make it happen.
13 Q.   Are you suggesting that Mr. Fatzinger
14      --
15 A.   Um-hmm.
16 Q.    -- or Spectrum Development and
17      Mr. Saele, acting for V Restaurants,
18      they got together in some way to cheat
19      you out of your restaurant and this --
20 A.   No.  No.  I'm saying that Spectrum
21      Development -- Spectrum Development
22      initiated a letter prior to this to
23      help me make sure that Region's was

Page 75

1       going to be in full agreement and the
2       IRS of the $30,000 offer being offered
3       by Vince Saele and V Restaurants.  So
4       he was issuing a lien but not with any
5       intentions of actually forcing it, but
6       to clean this -- to make things go
7       forward, to help perpetuate.
8  Q.   You're not suggesting that Mr. Saele
9       and V Restaurants and Spectrum and
10      Mr. Fatzinger got together in some way
11      to deprive you of your restaurant, are
12      you?
13 A.   You know, I can't -- in retrospect, I
14      can't say that's not the case.  All I
15      can say is, for a fact, is that Ed at
16      that time, Ed Fatzinger, expressed to
17      me that he was initiating this letter
18      in order to help me facilitate and get
19      everybody on the same page to get this
20      deal done.
21 Q.   Okay.  You're saying in retrospect you
22      cannot say that that was not the case?
23 A.   Right.  All I know is at that time Ed

Page 76

1       told me I'm initiating a lien, this
2       notice of foreclosure, in order to
3       force everybody else to see the
4       urgency to get this deal done but with
5       no intentions of taking any actions on
6       anything.
7  Q.   When did that occur?  When were you
8       informed of that?
9  A.   Well, Ed and I were in discussion.  I
10      was trying to get this deal done
11      mid-September and early September,
12      that we were trying to get the deal
13      done, and we were waiting for Region's
14      to give us the paperwork, and he said,
15      well, I can help force that half, and
16      that's what was happening.
17 Q.   So he issued some notice that he was
18      going to foreclose his lien?
19 A.   He issued some -- beginning of
20      foreclosure proceedings.
21 Q.   Did that ever occur that you know of?
22 A.   That the foreclosure occurred?
23 Q.   That there was a foreclosure of the

Page 77

1       landlord's lien --
2  A.   Yes.
3  Q.    -- on the furniture and, I guess,
4       everything --
5  A.   Right.
6  Q.    -- that Simple Pleasures owned inside
7       of the restaurant?
8  A.   Right.  After Vince had said he was no
9       intentions of paying.
10 Q.   Okay.  So it occurred following
11      Mr. Saele's -- the letter from
12      Mr. Russell --
13 A.   Correct.  Correct.
14 Q.    -- that is Exhibit No. 3 --
15 A.   Correct.
16 Q.    -- of Mr. Saele's deposition?
17 A.   Right.
18 Q.   Okay.  Following that, the landlord
19      foreclosed their lien?
20 A.   Correct.
21 Q.   Are you aware today of any defects in
22      that process, that it should not have
23      happened, or they didn't do some

20  (Pages 74 to 77)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 78

1    noticing procedures, or the legal
2    process was wrong?
3  A.   You know, I don't think -- I don't
4    know.  I don't know.
5  Q.   Are you aware of any facts, anything
6    that might give you reason to
7    challenge that?
8  A.   Well --
9  Q.   Other than you not liking the outcome?
10         MR. MEMORY:  I object to the
11    form.
12  A.   There was no effort to really make an
13    active true sale -- I mean, no real
14    postings, no real -- I mean, if you
15    want to sell something to get a real
16    profit for it, you know, get as much
17    money as you could, I don't think that
18    was actively done, no.
19  Q.   (BY MR. HAMM)  Okay.  Other than the
20    failure to solicit all offers or
21    whatever --
22  A.   Right.
23  Q.   -- to properly advertise --

Page 79

1  A.   Where it was quietly coming to the
2    conclusion that we're trying to do
3    this amount of money, yes, that's
4    probably what was happening at that
5    particular time because it was
6    operating and Spectrum had wanted
7    Vince to continue, or V Restaurants,
8    to continue operating, wanted an
9    operating entity, not someone to come
10    pull the equipment out.
11  Q.   What facts do you know today to
12    support your claim that V Restaurants,
13    or Mr. Saele, defrauded you in some
14    manner?
15  A.   The facts are -- is that I delivered
16    the full intentions of what I was
17    delivering, what was being requested.
18    I gave him full access, gave him keys,
19    gave him everything.  He had no
20    hindrances to owning and operating
21    that business.
22  Q.   Okay.
23  A.   And he submits a letter and says I'm

Page 80

1    not going to do it and says we're not
2    going to execute.  I'm not going to
3    pay you for this.
4  Q.   Is it fair to say that the facts are
5    his failure to go through with this
6    contract of September the 24th, 2004,
7    that's what -- those are the facts
8    that support your fraud claim?
9  A.   Is his failure to execute this deal.
10  Q.   Did he tell you anything that was
11    misleading?  Can you tell me any --
12    anything he told you about the
13    September 24, 2004 contract that was
14    untrue, that you know today to be
15    untrue?
16  A.   I don't think -- I mean, do I know any
17    facts?  Would you restate that
18    question?  Do I know of any facts that
19    he said that were untrue?
20  Q.   Right.  On or about September -- any
21    representations he made to you about
22    this September 24 contract to get you
23    to sign or that you know today to be

Page 81

1    untrue, to get you to sign this
2    document?
3  A.   Well, I know today that he then chose
4    not to fulfill the contract, even
5    though there was no -- that time was
6    not the issue.  He had full access.
7    That was not an issue, and that was,
8    you know -- so there was no reason for
9    him to withdraw the contract.  The
10    contract was still in place as far as
11    -- or an agreement between the two of
12    us was still in full agreement,
13    enforcement.
14  Q.   Let me ask you this way:  Other than
15    Mr. Saele and V Restaurants' failure
16    to follow through with the contract of
17    September the 24th, are there any
18    other facts that support your fraud
19    claim?
20  A.   Did he try to then buy the equipment
21    at the low price to get it in and to
22    do it in a subversive manner?  Yes, I
23    think that is exactly what he was

21  (Pages 78 to 81)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 82

1  trying to do.
2  Q.  Okay.  You think on September the
3    24th, 2004 he was attempting to do
4    that?
5  A.  No.
6  Q.  Okay.  When did that -- when did you
7    --
8  A.  I don't know.
9  Q.  When did that occur?
10  A.  I should say I don't know that that
11    wasn't his mindset, attempting --
12  Q.  Okay.
13  A.  I did not think it was or I wouldn't
14    have signed it.
15  Q.  You're sitting here today telling us
16    that Mr. Saele bought this restaurant
17    equipment at a below-market price; is
18    that correct?
19  A.  Correct.
20  Q.  And that fact supports your contention
21    that you were defrauded in some manner
22    or helps aid in supporting your
23    contention you were defrauded in some

Page 83

1    manner; is that correct?
2  A.  Correct.
3  Q.  Okay.  But other than that fact, is
4    there anything that you know other
5    than the fact that Mr. Saele purchased
6    this restaurant at, you say, a
7    below-market price, there's no other
8    facts that you know that support the
9    fact -- support the notion that you
10    were defrauded in some manner?
11  A.  I just keep getting to the fact that
12    he withdrew the contract that was
13    going to be paid --
14  Q.  Right.
15  A.  -- and then everything would have been
16    fine.
17  Q.  Withdrew the contract and purchased it
18    below market, correct?
19  A.  Right.  Because I had no use for it at
20    that point.
21  Q.  Okay.  You've also alleged that --
22    MR. HAMM:  Mr. Memory, I know
23    you've got to get out of here.

Page 84

1    MR. MEMORY:  What time is it?
2    MR. HAMM:  11:15 by my watch,
3    but it's unreliable.
4    MR. MEMORY:  What time have
5    you got, Coleman?
6    MR. YARBROUGH:  I have 11:15.
7    MR. MEMORY:  I've got 30
8    minutes to get to Tuskegee for a
9    twelve noon meeting.
10  Q.  (BY MR. HAMM)  With respect to the
11    conspiracy count, do you understand
12    generally what conspiracy is?
13  A.  Um-hmm, yes.
14  Q.  Tell me what you understand a
15    conspiracy to be.
16  A.  Collusion.
17  Q.  An agreement --
18  A.  An agreement --
19  Q.  -- between people to do something
20    wrong?
21  A.  To do something to -- that harms
22    another party.
23  Q.  Okay.  Between who in your case?

Page 85

1  A.  In my case it would have been between
2    Spectrum Development and --
3    MR. HAMM:  I'm going to stand
4    up for a second.
5  A.  -- and Vince Saele or Ed Fatzinger and
6    Vince Saele.
7  Q.  (BY MR. HAMM)  Spectrum Development
8    and --
9  A.  -- or Ed Fatzinger and Vince Saele.
10  Q.  The four parties to this litigation:
11    Fatzinger -- well, he's not a party to
12    this litigation.  Spectrum
13    Development, Vince Saele, and V
14    Restaurants?
15  A.  Correct.
16  Q.  They got together in some manner to do
17    you some harm?
18  A.  It is possible.
19  Q.  Oh, okay.  Do you know it to be a fact
20    or agreed in some manner to do you
21    some harm?
22  A.  I do know that they came to an
23    agreement on how to execute and how to

22  (Pages 82 to 85)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 86

1    end up with the restaurant and its --
2    and everything.
3  Q.   Do you know when they came to this
4    agreement?
5  A.   No.
6  Q.   How did you learn of the agreement?
7  A.   Well, I guess technically I don't know
8    of a specific agreement, I guess, in
9    retrospect of --
10  Q.   Okay.  How do you know there was an
11    agreement then?  Maybe I should ask it
12    that way.
13  A.   I would assume that they had come to
14    some level and it was being an
15    assumption I would have made.
16  Q.   Okay.  And how do you draw that
17    conclusion that there was an
18    agreement?
19  A.   The fact of him pulling, refusing to
20    pay and figuring out a way to -- he
21    had to have gotten clear title from
22    Spectrum because Spectrum was the one
23    that was going to end up owning

Page 87

1    everything.
2  Q.   Do you think that agreement occurred
3    before September the 24th, 2004?
4  A.   I would not have been aware.  I don't
5    know.
6  Q.   Okay.  Do you think it may have
7    occurred -- have you got anything to
8    indicate that if occurred after
9    September the 24th, 2004?
10  A.   It would have been more -- or likely
11    after.
12  Q.   Do you think it would have been before
13    or after the Saele Exhibit Number 3,
14    the Exhibit Number 3 to his
15    deposition, which is dated November
16    the 30th, 2004?
17    MR. HAMM:  Then that's the
18    letter filed Exhibit Number 3, the
19    letter from Mr. Russell.  I'll make a
20    copy of this and hand it to Mr.
21    Goodwyn's deposition.
22  Q.   (BY MR. HAMM)  But do you think it
23    would have been -- that agreement

Page 88

1    would have been before or after that
2    date?
3  A.   I would assume that he would be
4    looking at it in November 30 -- prior
5    to the November 30th date.
6  Q.   You think they made some agreement
7    prior to November 30th, 2004 to --
8  A.   I can't say that they -- honestly
9    can't say that they, in my mind, made
10    it or rather Vince had figured out a
11    way to try to -- to come -- whether
12    Vince had figured out a way, by having
13    discussions with Ed Fatzinger, on
14    ascertaining the business in a
15    different form.
16  Q.   So you think that Mr. Saele may have
17    just kind of conjured up a plan?
18  A.   Right.  From discussions with Ed
19    Fatzinger.
20  Q.   And would that conjuring up of plans
21    be to not go through with the contract
22    with you, which --
23  A.   Right.

Page 89

1  Q.   -- was on September the 24th --
2  A.   Correct.
3  Q.   -- and then wait for Spectrum
4    Development to foreclose their lien?
5  A.   Correct.
6  Q.   Okay.  Other than that happening, the
7    events happening in that manner; that
8    is, the contract did not go through,
9    and, yes, in fact, Spectrum
10    Development did foreclose their lien
11    on the furniture and fixtures in this
12    restaurant, and thereby have rights to
13    that property, other than those two
14    things occurring, what other facts do
15    you know today that support a
16    conspiracy count?
17  A.   None.
18    MR. HAMM:  Von, you want to --
19    let's just adjourn this deposition.
20    MR. MEMORY:  That's fine.
21    MR. HAMM:  I think that might
22    be best because I've got some more,
23    and you've got to get to Tuskegee.

23  (Pages 86 to 89)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

PHILLIP   GOODWYN - 2/17/2006

Page 90

1    (Whereupon, the deposition of PHILLIP
2    GOODWYN was adjourned at approximately
3    11:29 a.m., on February 17, 2006.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 91

1         * * * * * * * * * * * *
2         REPORTER'S  CERTIFICATE
3         * * * * * * * * * * * *
4
5    STATE OF ALABAMA
6    COUNTY OF MONTGOMERY
7
8         I, Aimee French, Certified
9    Shorthand Reporter and Notary Public
10    in and for the State of Alabama at
11    Large, do hereby certify that on
12    February 17, 2006, pursuant to notice
13    and stipulation on behalf of the
14    Defendant, I reported the deposition
15    of PHILLIP GOODWYN, who was first duly
16    sworn by me to speak the truth, the
17    whole truth, and nothing but the
18    truth, in the matter of SIMPLE
19    PLEASURES, INC., Plaintiff, versus V
20    RESTAURANTS, INC., ET AL, Defendants,
21    Case Number 05-32325-WRS, now pending
22    in the United States Bankruptcy Court
23    for Montgomery County, Alabama; that

Page 92

1    the foregoing 90 typewritten pages
2    contain a true and accurate
3    transcription of the examination of
4    said witness by counsel for the
5    parties set out herein; that the
6    reading and signing of said deposition
7    was waived by witness and counsel for
8    the parties.
9         I further certify that I am
10    neither of kin nor of counsel to the
11    parties to said cause, nor in any
12    manner interested in the results
13    thereof.
14         This 27th day of February, 2006.
15
16
17         Aimee French,
          Reporter and Notary Public
18         State of Alabama at Large
19
20
21
22
23

24  (Pages 90 to 92)

b4ce0427-0b12-4d29-a34d-e5e61109eba8

**LETTER OF UNDERSTANDING DATED**

**SEPTEMBER 24, 2004**

# PARNELL & CRUM, P.A.
## ATTORNEYS AT LAW
### 641 SOUTH LAWRENCE STREET
### MONTGOMERY, AL 36104

CHARLES N. PARNELL, III
G. BARTON CRUM
ROBERT J. RUSSELL, JR.
BRITT BATSON GRIGGS
MATTHEW T. ELLIS
ADRIAN D. JOHNSON
J. MATTHEW PARNELL
DAYNA R. BURNETT

TELEPHONE
334-832-4200

TELECOPIER
334-293-3551

MAILING ADDRESS
P.O. BOX 2189
ZIP CODE 36102-2189

September 24, 2004

<u>**VIA FACSIMILE - 834-8001**</u>

Von G. Memory
Attorney at Law
469 S. McDonough Street
Montgomery, Alabama 36104

Dear Von:

I am in receipt of your sales agreement and have briefly reviewed same, deciding that it is not possible to make the corrections and amendments this afternoon prior to 5:00. Thus, I write this letter as a memorandum of agreement, which I believe contains the pertinent provisions, until we can get the final draft documentation agreed upon. They are as follows:

1.  That the purchase price shall be $90,000.00;

2.  That the purchase price is for all of the assets, including, but not limited to, licenses and leases, equipment, office supplies, inventory, automobiles/delivery van, etc., and any other of the same located off-premises in storage buildings, etc.;

3.  That Seller will lease the business to Buyer, along with all licenses and property until the date of closing for the sum of $250.00;

4.  That the ownership of the properties mentioned herein above will be transferred to my client at a closing date no later than October 22, 2004, or as otherwise agreed upon by the parties, and that the property transferred shall be transferred without any liens or encumbrances whatsoever;

5.  That the closing is contingent upon Regions accepting the sum of $30,000.00 for Phillips' lien.

6.  That Spectrum Development will accept a note from Vince in the amount of $30,000.00 and that the $30,000.00 note shall be counted as consideration towards the purchase of the business;

Von G. Memory
September 24, 2004
Page Two

7. That Buyer is entitled to all revenues derived from the business from the date of the
consummation of this agreement forward;

8. That the remaining $30,000.00 be paid to the Internal Revenue Service for and in
consideration of the release of any and all liens which they may have against Phillip,
individually, or the business (if any additional monies are owed, Phillip pays);

9. In the event that any of the contingencies stated herein are not complied with or
fulfilled by the Obligor, consideration shall be immediately withdrawn from the Trust
Account and returned to the Purchaser;

10. That upon the consummation of this document, the Purchaser shall be entitled to
utilize the premises and operate the business in its normal manner and without
interference from Mr. Goodwyn;

11. That the catering business operating out of Gator's shall continue, but only be
operated by its new owner;

12. That if any of the contingencies fail wherein the Seller is the Obligor, Seller shall
reimburse Purchaser for any and all net financial losses or expenses related thereto.

Von, my client is at wits end and feels he may be wasting his time. These terms are non-
negotiable and this must be signed by tomorrow at noon (Saturday, September 25, 2004).

Sincerely,

Robert J. Russell, Jr.

RJRjr/fd

V Restaurants, Inc.                                Simple Pleasures, Inc.
By: Vince Saele                                    By: Phillip Goodwyn
Its: President                                     Its: President

**AFFIDAVIT OF ROBERT J. RUSSELL, JR**

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br>**PHILLIP GOODWYN,**<br>**DEBTOR,**<br><br>**SIMPLE PLEASURES, INC.,**<br>**PLAINTIFF,**<br><br>**V.**<br><br>**V. RESTAURANTS, INC.,**<br>**DEFENDANT.** | **CHAPTER 7**<br>**CASE NO. 05-32325-WRS**<br><br>**ADVERSARY PROCEEDING**<br>**NO. 05-03062** |

## AFFIDAVIT OF
## ROBERT J. RUSSELL, JR.

My name is Robert J. Russell, Jr. and I am over 19 years of age and competent to testify to the following:

1.  I am a licensed practicing attorney in Montgomery, Alabama and have been so since 1986. I currently practice in the law firm of Parnell & Crum, P.A. in Montgomery, Alabama. I am a member of the Alabama State Bar and in good standing.

2.  During the year 2004, Vince Saele, acting on behalf of V Restaurants, Inc. (hereinafter V Restaurants) retained me to represent V Restaurants with its upcoming acquisition of a restaurant known as Gators Restaurant located in the Vaughn Plaza Shopping Center in Montgomery Alabama. Mr. Saele was the owner of V Restaurants. At the time I was employed, Gators Restaurant was owned by Simple Pleasures, Inc. Simple Pleasures was owned by its President, Mr. Phillip Goodwyn.

3.   During the summer of 2004, again acting on behalf of V Restaurants, I began negotiations with Mr. Von Memory, Esq. who at the time represented Mr. Goodwyn and Simple Pleasures, Inc. The purpose of this negotiation was to reach an agreement between Simple Pleasures, Inc. and V Restaurants, Inc. for the acquisition of the Gators Restaurant location.

4.   Over the course of that summer there were several proposals tendered by Mr. Memory acting on behalf of Simple Pleasures, Inc. I responded to these proposals after consultation with Mr. Saele.

5.   The negotiations for the acquisition of the Gators Restaurant location was made more difficult because of outstanding Federal tax liens and a secured interest owned by Regions Bank. These liens attached to the furniture and fixtures housed within the restaurant location. In addition to these encumbrances upon the property, Mr. Goodwyn had allowed the monthly rental payments to go unpaid for a number of months, creating a rental obligation to the owner of the restaurant location, Spectrum Development, Inc.

6.   Negotiations continued for several weeks and Mr. Saele instructed me to respond to one of Mr. Memory's latter proposals with a letter dated September 24, 2004. This letter detailed the terms and conditions upon which Mr. Saele and V Restaurants, Inc. would take title to the restaurant location. A copy of this letter is made a part of this affidavit. The letter was signed by Mr. Saele and Mr. Goodwyn, both acting on behalf of corporations involved in the transaction.

7.   Mr. Saele was at that time operating the restaurant and wanted the sale/purchase to take place or he would then be forced to take alternative routes. This

letter/agreement set out the terms and conditions upon which Mr. Saele was willing to proceed with the acquisition of the Gator's restaurant location. This letter/agreement contained the terms important to Mr. Saele regarding the restaurant acquisition.

8.   Paragraph #4 of the September 24, 2004 letter required Mr. Goodwyn to transfer the Gators Restaurant to V Restaurants, Inc. free of the Federal tax liens and the Region Bank interest. This transfer was to occur on or before October 22, 2004, and should the liens not be cleared and the transfer occur, then the agreement would become void and Mr. Saele and V Restaurants would be released from the agreement.

9.   Between the writing of the letter on September 24, 2004 and the agreed date upon which the transfer was to take place, October 22, 2004, I made a number of phone calls to Mr. Memory's office to determine the progress of efforts on behalf of Mr. Goodwyn to clear the liens and encumbrances in question. Through-out all of theses calls, when I did receive a return phone call, I was never provided any assurance that the subject liens and encumbrances (Federal Tax lien and Regions lien) were being addressed by Mr. Goodwyn.

10. In spite of my additional efforts, I received no confirmation of sale from either Mr. Goodwyn or Mr. Memory.

**RESPECTFULLY SUBMITTED** this the 14th day of March, 2006.


**/s/ Robert J. Russell, Jr.**
_____
ROBERT J. RUSSELL, JR.

**STATE OF ALABAMA**

**MONTGOMERY COUNTY**

I, the undersigned authority, a Notary Public for the State at Large, hereby certify that Robert J. Russell, Jr., whose name is signed to the foregoing conveyance, and who is known to me, acknowledge before me on this day, that being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date.

**GIVEN** under my hand and official seal the 14th day of March, 2006.

/s/ **Vivian P. Smith**
_____
NOTARY PUBLIC
MY COMMISSION EXPIRES: **10-21-07**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| IN RE:<br>**PHILLIP GOODWYN**<br><br>   **Debtor.** | **CASE NO. 05-32325** |

| | |
|---|---|
| **SIMPLE PLEASURES, INC., an Alabama corporation, and PHILLIP GOODWYN, individually,**<br><br>   **Plaintiffs,**<br><br>**v.**<br><br>**V RESTAURANTS, INC., an Alabama corporation, SPECTRUM/VAUGHN PLAZA L.L.C., an Alabama limited liability company, and VINCE SAELE, an individual, et al.,**<br><br>   **Defendants.** | **Montgomery County Case No. CV 2005 - 306**<br><br>**Adv. Pro. No. 05-03062** |

### PLAINTIFFS' BRIEF IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS

### I. OVERVIEW

This case was originally filed in the Circuit Court of Montgomery County, Alabama. The case was removed to the United States Bankruptcy Court for the Middle District of Alabama, incident to a petition for an order of relief filed by Plaintiff, Phillip Goodwyn ("Goodwyn"), under Chapter 7, Title 11 of the United States Bankruptcy Code. In pertinent part, the adversary proceeding alleges breach of contract, conversion, negligence, etc., incident to a proposed sale of substantially all the assets of the Plaintiffs' business, Gators[1], and the assumption of its lease by

---

[1] Gator's is located at 5040 Vaughn Road, Montgomery, AL, 36116-1149. It has been previously known as Gators Plaza Café, however, the restaurant was renamed Gator's, and Gator's Fish House. After the Defendants took control, the restaurant has changed names one or more times. The current name is Gator's Bar and Grill. Nevertheless, the restaurant it will be referred collectively herein as Gators.

the Defendants, V Restaurants, Inc. ("V R"), and Vince Saele ("Saele"). The complaint further alleges conspiracy against V R, Spectrum/Vaughn Plaza L.L.C. ("Spectrum"), and Saele.

## II. STATEMENT OF THE CASE

### A. BACKGROUND

The Plaintiffs originally filed their complaint in the Circuit Court of Montgomery County, Alabama, Case Number CV 2005-306, February 3, 2005. The Defendants filed motions to dismiss, March 20, 2005, and these motions were denied by the Circuit Court, March 16, 2005. The Defendants joined issue.[2]

On August 10, 2005 (the "Petition Date"), Plaintiff Goodwyn filed a voluntary petition[3] under Chapter 7 of Title 11, United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Susan S. DePaola was appointed Interim Trustee, August 11, 2005.

The instant case was removed from the Circuit Court of Montgomery County, Alabama, August 12, 2005 (ECF Doc. 4) and the Trustee filed an application for employment, 11 U.S.C. § 327(e), of Memory Day & Azar as special counsel, November 18, 2005 (ECF Doc. 15) and employment was ordered approved, December 16, 2005 (ECF Doc. 18).

Defendant Spectrum filed a motion for summary judgment while the case was pending in the Circuit Court of Montgomery County. Defendants V R and Vince Saele ("Saele") filed their motion for summary judgment, March 14, 2006 (Adv Pro ECF Doc. 14).

### B. STATEMENT OF THE FACTS

Simple Pleasures is an Alabama restaurant and food service corporation organized by Goodwyn in June 28, 1993. Simple Pleasures owned and previously operated a popular and well-known restaurant on the east side of Montgomery, Alabama commonly known as "Gators". Goodwyn is the president of Simple Pleasures.

---

[2] One or both Defendants also filed counterclaims.
[3] Case Number 05-32325

Gators maintained a broad customer base, goodwill, and a reputation for quality food and service in Montgomery County, Alabama. However, between 2002 and 2004, due to increasing debts, Goodwyn and Simple Pleasures actively pursued and investigated several offers to sell the assets, goodwill, and customer base of Gators.

In or about July 2004, Goodwyn received an offer from V R and Saele to purchase Gators and the parties subsequently signed a letter of intent. A copy of the letter of intent has been introduced in the depositions taken by the parties and is attached hereto as **Exhibit "A"**. In pertinent part, the parties agreed to a $90,000.00 purchase price. For the purchase price, V R and Saele agreed to purchase Gators, as a going concern, to include all equipment, inventory and supplies, furniture, fixtures, and amenities. In addition, V R and Saele, *inter alia*, agreed to assume responsibility for the existing lease with Spectrum.

The purchase price ($90,000.00) was allocated, a $30,000.00 payoff of the $110,000.00 lease arrearage with Spectrum[4], a $30,000.00 payoff of the $83,000.00 debt to Regions Bank, and a $30,000.00 payment to the Internal Revenue Service for its cooperation in releasing a lien, settlement of approximately $110,000.00 debt to the Internal Revenue Service. The Internal Revenue Service had filed a lien on the Defendants' business and settlement would include release by the Internal Revenue Service of their federal tax lien.[5]

The sale included intangibles such as a large customer base, experienced and trained staff, good will, over 15 years of perfected and renowned recipes, signage, telephone number, licenses and permits, and direct assistance with the transition of all existing employees to the new owners. Spectrum, *inter alia*, agreed to release Goodwyn and Simple Pleasures from their lease obligations. Regions Bank agreed to release its liens, pursuant to the promissory note and security agreement, on the assets of Gators.

---

[4] This compromise also included a lease from Spectrum to Vince Saele.

Concurrent with the contract for purchase of Gators, Goodwyn verbally agreed to allow V R and Saele to take possession of the restaurant and pending approval of the application to the Internal Revenue Service for settlement and release of the lien. The Defendants would make payments to the Plaintiffs in the amount of $250.00 until closing. V R and Saele also had access to the Gators staff and personal property associated with the restaurant. Moreover, in a show of good faith, Goodwyn did not pursue or solicit other buyers of Gators. V R and Saele had sole and complete possession of the assets and operation of Gators from September 24, 2004, through the date the Plaintiffs filed their lawsuit in the Montgomery County, Circuit Court.

These terms and conditions of the sale and purchase price were integrated into a letter agreement, prepared by the Saele Defendants, and signed by the parties while Goodwyn's counsel was out of town, September 24, 2004.

After the Internal Revenue Service gave conditional approval to release its lien, counsel for the Plaintiffs notified counsel for V R that a closing should be scheduled. On the day of notification, counsel for V R notified counsel for the Plaintiffs that V R and Saele were "no longer interested in the terms of the contract" and withdrew their offer to purchase Gators. Nevertheless, V R and Saele remained in sole possession of the personal property and leased premises.

After V R took possession, Spectrum gave notice to vacate and subsequently sold the assets of the Plaintiffs to V R.[6] Spectrum advertised the leasehold property for public sale in the Montgomery Advertiser, in late January 2005. Spectrum alleged abandonment of the leased premises and has sold the fixtures, equipment, and other personal property belonging to Simple Pleasures, in February 2005.

---

[5] In the negotiations, the payment to Spectrum and Regions Bank would pay the personal liability of Goodwyn; however, Goodwyn would have continued responsibility for the trust fund portion owed the Internal Revenue Service.
[6] The sale did not include the recipes, telephone number, other general intangibles, and signage.

The Plaintiffs were not paid and Goodwyn subsequently had to file bankruptcy when Regions Bank filed a lawsuit. Notwithstanding, V R and Saele have remained in constant and continuous possession.

### III. ISSUES OF MATERIAL FACT

The Plaintiffs aver that there exist the following issues of material fact:

1.   The contract closing date statement failed to provide a certain date for closing that could not be altered or modified by the parties.

2.   V R and Saele had been in constant and continuous possession of the restaurant since the end of September and a delay in closing did not interfere or prejudice their rights to a delayed closing.

3.   The contract failed to provide terms specifying that time was of the essence or requiring strict compliance.

4.   The Plaintiffs substantially performed the terms of the contract.

5.   Defendants waived the right to require or expect performance by the October 22 date.

6.   The actions of a third-party caused a defensible breach of the contract.

7.   The Defendants were unjustly enriched by taking the restaurant business and not compensating the Plaintiffs.

8.   Fraud and other causes of action requiring determination of mental intent.

### IV. ARGUMENTS AND AUTHORITIES

### A.  STANDARD OF REVIEW

In bankruptcy courts, summary judgment practice is controlled by Bankruptcy Rule 7056, and therefore governed by Rule 56 of the Federal Rules of Civil Procedure, Fed. R. Bankr. P. Rule 7056; Carey Lumber Co. v. Bell, 615 F.2d 370, 378 (5th Cir. 1980). Under Fed. R. Civ. P. Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. Rule 56(c). A party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact". Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, at 322. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323.

But most importantly, from the standpoint of a moving party, a minimal standard is required. **"[F]or a motion for summary judgment to prevail, it is not enough that the moving party show the absence of a genuine issue of material fact. The moving party must also show its entitlement to judgment as a matter of law. Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(c); see also Aero-Fastener, Inc. v. Sierracin Corp. (In re Aero-Fastener, Inc.), 177 B.R. 120, 135 (Bankr.D.Mass.1994)", In re Sullivan 217 B.R. 670, 678 (Bkrtcy.D.Mass.,1998)** [emphasis added].

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, 'designate specific facts showing that there is a genuine issue for trial'". Id. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not

merely rest on his pleadings. <u>Celotex,</u> 477 U.S. at 324 (emphasis added). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", <u>Id.</u> at 322.

> [O]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.
>
> Respondent argues, however, that Rule 56(e), by its terms, places on the nonmoving party the burden of coming forward with rebuttal affidavits, or other specified kinds of materials, only in response to a motion for summary judgment "made and supported as provided in this rule."    According to respondent's argument, since petitioner did not "support" its motion with affidavits, summary judgment was improper in this case.    But as we have already explained, a motion for summary judgment may be made pursuant to Rule 56 "with or without supporting affidavits."   In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file."   Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."
>
> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses.  Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

<u>Celotex</u> at 323 - 324

## B. SUBSTANTIVE ISSUES

### (1) Breach of Contract

- 7 -

In a breach of contract action, the "claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages, See _McGinney v. Jackson,_ 575 So.2d 1070, 1071-72 (Ala.1991); _Seybold v. Magnolia Land Co.,_ 376 So.2d 1083, 1085 (Ala.1+979); _Hanby v. Campbell,_ 222 Ala. 420, 421, 132 So. 893, 894 (1931)", Southern . v. Vaughn 669 So.2d 98, 99 (Ala. 1995)

More specifically, an option to purchase, is a contract in which the seller agrees sell the property at a fixed price within a certain time. However, in such a contract two elements exist:

> "First, the offer to sell which does not become a contract until accepted and, second, the completed contract to leave the offer open for a specified time. It is a unilateral executed contract, binding only upon the optioner and not on the optionee. It becomes a contract between the parties only when exercised or accepted according to its terms. Obviously if the contract is binding on both parties it cannot be an option. 66 C.J. pp. 485-486; Lauderdale Power Co. v. Perry, 202 Ala. 394, 80 So. 476; Bethea v. McCullough, 195 Ala. 480, 70 So. 680; Fullenwider v. Rowan, 136 Ala. 287, 34 So. 975. It becomes necessary to examine the contract designated as Exhibit G to determine from an examination of the entire contract the intention of the parties under the terms of the contract. 66 C.J. p. 490", McGuire v. Andre, 65 So.2d 185, 190 (Ala. 1953)

There should be no question that the subject letter agreement was, in fact a contract. The motion for summary judgment, the Defendants, as an "Undisputed Fact", allege that the agreement was a contract. Since both parties executed the agreement, it is not a unilateral contract.

However, with respect to non-performance, there is a significant issue of material fact as to the non performance of Goodwyn. Goodwyn avers that he faithfully complied with all terms of the contract that were within his control as well as turning the property over to the Defendants.

### (2) Substantial Performance

Under the doctrine of substantial performance, "[w]here a contract is made for an agreed exchange of two performances, one which is to be rendered first, substantial performance of the first obligation, rather than exact or strict performance of the contract's terms, is sufficient to

entitle the contractor to recover," <u>17A Am.Jur.2d</u> <u>Contracts</u> § 616 (2004). *See also* <u>Bay City</u>

<u>Constr. Co. v. Hayes,</u> 624 So.2d 1031, 1034 (Ala.1993) (holding that the plaintiff was permitted

to recover damages for breach of contract because, although he had not performed all of the

obligations on his part under the contract, he had substantially performed the obligations)", <u>Ex</u>

<u>parte Keelboat Concepts, Inc.</u>, 2005 WL 3506864 (Ala.), page 6. In addition, "substantial

performance" of a contract does not consider exact performance of each detail, but performance

of all the important parts, <u>Mac Pon Co. v. Vinsant Painting & Decorating Co.</u>, 423 So.2d 216

(Ala.1982).

However, when substantial performance is an issue, it creates an issue of material fact

that requires the trier of fact to be presented evidence of whether the party substantially

performed the terms of the contract. The Supreme Court of Alabama previously affirmed in

<u>Cobbs v. Fred Burgos Constr. Co.</u>, 477 So.2d 335, 338 (Ala.1985), that "whether a party to a

contract has substantially performed a promise under the contract is a question of fact to be

determined from the circumstances of each case.   Whether Goodwyn substantially performed his

duties under the contract is a question of fact to be determined by the trier of fact and that such a

finding should be supported by the evidence".

### (3) Waiver

In addition to the substantial performance argument, it is also alleged that Saele

and V R were in continuous possession of the restaurant and could not be damaged by the

delay. And even if some remote damage could be alleged, such delay and resulting

damage were waived when time was not of the essence and when the letter agreement

failed to contain a provision of strict compliance, <u>In re Keelboat Concepts, Inc., and F.</u>

<u>Michael Rickels v. C.O.W., Inc.</u>, 2005 WL 3506864 (Ala.), page 7.

### (4) Unjust Enrichment

This is a clear case of unjust enrichment where the Defendants, through agreement, contract, or compromise, have conspired to deprive the Plaintiffs of their valuable property through an alleged failure to close on a date specified in the lease agreement. Simply put, the Plaintiffs worked to release all of the pending liens while Saele and V R were in possession of the restaurant. Also, Goodwyn assisted during the transition. Then when the Internal Revenue Service would not, or could not, timely give the requested lien release, the Defendants seized upon this pretext to steal the Plaintiffs' restaurant assets and business.

In a case recently before the Alabama Supreme Court, we find the following reasoning relating to a cause of action under unjust enrichment.

> "Against the certification of the unjust-enrichment claim, however, the "subjective-state-of-mind" arguments of Avis and the licensees stand on better ground. To prevail on a claim of unjust *1123 enrichment, the plaintiff must show that the " 'defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.' " Dickinson v. Cosmos Broad. Co., 782 So.2d 260, 266 (Ala.2000) (quoting Hancock-Hazlett Gen. Constr. Co. v. Trane Co., 499 So.2d 1385, 1387 (Ala.1986)) (some emphasis omitted; some emphasis added). "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." Battles v. Atchison, 545 So.2d 814, 815 (Ala.Civ.App.1989) (emphasis added)", Avis Rent A Car Systems, Inc. v. Heilman, 876 So.2d 1111, 1123 (Ala., 2003).

### (4) Fraud

Finally, issues involving a person's state of mind are generally not proper for resolution by summary judgment.

> Secondly, fraud is not generally susceptible to summary judgment. While the Supreme Court has stated that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole," Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), questions involving a person's state of mind "are generally factual issues inappropriate for resolution by summary judgment." Braxton-Secret v. A.H. Robins Co., 769 F.2d 528, 531 (9th Cir.1985).  Further, the trial judge must accept as true the nonmovant's evidence, must draw all legitimate inferences in the nonmovant's favor, and must not weigh the

evidence on the credibility of witnesses. *Windon Third Oil and Gas v. Federal Deposit Insurance Corporation*, 805 F.2d 342, 346 (10th Cir.1986).    Were the Court simply to accept the assertions in the defendant's affidavit, that he committed no fraud, the Court would be improperly weighing the credibility of the witness. Accordingly, the motion for summary judgment will be denied.

Modicon v. Shelnutt, 150 B.R. 436, 438 (ED Ark.1992)

This same logic was followed in In re Sullivan when the court found that summary judgment was not appropriate in a case involving the tort of conversion because conversion did not necessarily involve a willful or malicious act, but only the taking or removal of property, In re Sullivan 679.

## V. SUPPORTING DOCUMENT

This brief is supplemented by the affidavit of Philip Goodwyn, which is attached hereto as **Exhibit "B"** and included herein by reference.

## V.  CONCLUSION

There are numerous issues of material fact in the present case, therefore, a judgment or verdict as a matter of law would be inappropriate. Therefore, the Plaintiffs respectfully request this Honorable Court deny the Defendants' motion for summary judgment.

Respectfully submitted on this the 14th day of April 2006.

                                Memory & Day


                                By:  /S/ Von G. Memory
                                     Von G. Memory
                                     ASB-8137-071V

                                     James L. Day
                                     ASB-1256-A55J

                                     Attorneys for Trustee

OF COUNSEL

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
Email  vgmemory@memorylegal.com
       jlday@memorylegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

☐ facsimile

☐ hand delivery

☐ delivered in open court

on April 14, 2006.

Daniel G. Hamm, Esq.
560 South McDonough Street, Suite A
Montgomery, Alabama 36104

Ben E. Bruner, Esq.
2835 Zelda Road
Montgomery, AL 36106

D. Coleman Yarbrough
2860 Zelda Road
Montgomery, AL 36106

/S/ Von G. Memory
OF COUNSEL

# PARNELL & CRUM, P.A.
### ATTORNEYS AT LAW
### 641 SOUTH LAWRENCE STREET
### MONTGOMERY, AL 36104

CHARLES N. PARNELL, III
G. BARTON CRUM
ROBERT J. RUSSELL, JR.
BRITT BATSON GRIGGS
MATTHEW T. ELLIS
ADRIAN D. JOHNSON
J. MATTHEW PARNELL
DAYNA R. BURNETT

TELEPHONE
334-832-4200

TELECOPIER
334-293-3551

MAILING ADDRESS
P.O. BOX 2189
ZIP CODE 36102-2189

September 24, 2004

**VIA FACSIMILE - 834-8001**

Von G. Memory
Attorney at Law
469 S. McDonough Street
Montgomery, Alabama 36104

Dear Von:

I am in receipt of your sales agreement and have briefly reviewed same, deciding that it is not possible to make the corrections and amendments this afternoon prior to 5:00. Thus, I write this letter as a memorandum of agreement, which I believe contains the pertinent provisions, until we can get the final draft documentation agreed upon. They are as follows:

1.      That the purchase price shall be $90,000.00;

2.      That the purchase price is for all of the assets, including, but not limited to, licenses and leases, equipment, office supplies, inventory, automobiles/delivery van, etc., and any other of the same located off-premises in storage buildings, etc.;

3.      That Seller will lease the business to Buyer, along with all licenses and property until the date of closing for the sum of $250.00;

4.      That the ownership of the properties mentioned herein above will be transferred to my client at a closing date no later than October 22, 2004, or as otherwise agreed upon by the parties, and that the property transferred shall be transferred without any liens or encumbrances whatsoever;

5.      That the closing is contingent upon Regions accepting the sum of $30,000.00 for Phillips' lien.

6.      That Spectrum Development will accept a note from Vince in the amount of $30,000.00 and that the $30,000.00 note shall be counted as consideration towards the purchase of the business;

Von G. Memory
September 24, 2004
Page Two

7. That Buyer is entitled to all revenues derived from the business from the date of the consummation of this agreement forward;

8. That the remaining $30,000.00 be paid to the Internal Revenue Service for and in consideration of the release of any and all liens which they may have against Phillip, individually, or the business (if any additional monies are owed, Phillip pays);

9. In the event that any of the contingencies stated herein are not complied with or fulfilled by the Obligor, consideration shall be immediately withdrawn from the Trust Account and returned to the Purchaser;

10. That upon the consummation of this document, the Purchaser shall be entitled to utilize the premises and operate the business in its normal manner and without interference from Mr. Goodwyn;

11. That the catering business operating out of Gator's shall continue, but only be operated by its new owner;

12. That if any of the contingencies fail wherein the Seller is the Obligor, Seller shall reimburse Purchaser for any and all net financial losses or expenses related thereto.

Von, my client is at wits end and feels he may be wasting his time. These terms are non-negotiable and this must be signed by tomorrow at noon (Saturday, September 25, 2004).

Sincerely,

Robert J. Russell, Jr.

RJRjr/fd

V Restaurants, Inc.
By: Vince Saele
Its: President

Simple Pleasures, Inc.
By: Phillip Goodwyn
Its: President

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| IN RE:<br>**PHILLIP GOODWYN**<br><br>    Debtor. | **CASE NO. 05-32325** |

| | |
|---|---|
| **SIMPLE PLEASURES, INC., an Alabama corporation, and PHILLIP GOODWYN, individually,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**V RESTAURANTS, INC., an Alabama corporation, SPECTRUM/VAUGHN PLAZA L.L.C., an Alabama limited liability company, and VINCE SAELE, an individual, et al.,**<br><br>    **Defendants.** | **Montgomery County Case No. CV 2005 - 306**<br><br>**Adv. Pro. No. 05-03062** |

### AFFIDAVIT OF PHILIP GOODWYN

| | |
|---|---|
| **STATE OF ALABAMA** | |
| **COUNTY OF MONTGOMERY** | |

I, Philip Goodwyn, being duly sworn and placed under oath, deposes and says as follows:

1. My name is Philip Goodwyn and I am a resident of Montgomery County, Alabama.

2. I originally started in the restaurant business in the Hillwood Shopping Center (Hillwood Café) and subsequently moved my restaurant to the current location on Vaughn Road in a shopping center called Vaughn Plaza Shopping Center (5040 Vaughn Road, Montgomery, AL, 36106).

3.  When the restaurant moved to the Vaughn Road location, I organized Simple Pleasures, Inc., and the restaurant operated under the name of Gator's Plaza Café, then Gator's, and finally Gator's Fish House, however, the name by which the restaurant was commonly known and familiar to the public was simply Gator's.

4.  After the move to the Vaughn Road location, substantial expenditures were made in renovating the location and purchasing amenities used in the restaurant business. I estimate my expenditures in the approximate amount of $450,000.00. In addition, I have personally spent hundreds of hours in upgrading and running this restaurant. I don't believe that I received a check or compensation in the last two years of operation.

5.  Regardless of my time and upgrades, there was never sufficient income to show a profit. Because of this continuing problem, I attempted to sell the restaurant and my efforts started in 2003.

6.  I actually closed the restaurant for a few weeks at the end of 2003 and subsequently reopened. I was behind in my rent; however, the landlord, Spectrum Development, L.L.C., was willing to work with me under an informal forbearance agreement.

7.  In 2004, I started, in earnest, to locate a purchaser. In the late spring or early summer of 2004, negotiations started with Mr. Vince Saele. In fact, I invited Mr. Saele to participate as an employee in order to give him first hand experience and knowledge regarding Gator's. He became an employee in the month of June 2004. Also, I shared intimate details regarding customers, vendors, and other information regarding the restaurant.

8.  The first effort to sell the restaurant to Mr. Saele failed when he confided that his capital partners would not pay the amount agreed upon ($120,000.00). However, Mr. Saele was

- 2 -

aware of my financial circumstances and he continued negotiations.

9. Finally, it was discussed, even agreed, that Mr. Saele would pay $90,000.00. From this purchase price, I would pay $30,000.00 to the landlord, $30,000.00 to Regions Bank, and $30,000.00 to the Internal Revenue Service.

10. With the $30,000.00 to the landlord, plus a lease by Mr. Saele, it was agreed that the landlord would release me from the remaining balance that was due under the lease which was approximately $110,000.00. Regions Bank had a first priority security agreement and a UCC-1 on the equipment and fixtures and was owed approximately $83,000.00. Regions Bank agreed to release its lien and accept $30,000.00 in full satisfaction of its debt. Finally, the Internal Revenue Service represented by Ms. L. C. Wilson helped with negotiations involving the Internal Revenue Service and finally the Internal Revenue Service agreed to release its lien (approximately $110,000.00) for $30,000.00. However, I understood that I would remain personally liable for an amount assessed under the trust fund penalty portion.

11. Mr. Saele made his first offer in August of 2004. Negotiations occurred over several weeks and finally Mr. Saele insisted that an agreement be signed. My lawyer was out of town but Mr. Saele assured me that there would be no problem in closing and getting paid. Consequently, I signed the letter agreement that has been placed into evidence. Immediately after signing the letter agreement, Mr. Saele insisted that I leave the restaurant and that he be placed in sole control. Therefore, from the date of the letter agreement, I had no day-to-day control in the operation and management of the restaurant. Mr. Saele had absolute control over every aspect and asset associated with the business. Mr. Saele changed the name of the restaurant to Gator's Bar and Grill.

- 3 -

12. Also, I helped Mr. Saele transfer utilities, licenses, and liquor permits to Mr. Saele. All of this took several weeks.

13. I immediately got an oral agreement and received assurances from the landlord and Regions Bank of their concurrence with the referenced compromise.

14. Unfortunately, the Internal Revenue Service did not move as quickly. I prepared and filed documents that eventually were reviewed and approved by agents in New Orleans, LA. I updated Mr. Saele on a regular basis regarding our progress with the Internal Revenue Service.

15. For a period, Mr. Saele and I met several times a day, and on other occasions we met and talked at least daily. There was never an occasion when Mr. Saele complained about the delay or notified me that the contract would be cancelled.

16. The landlord gave notice to vacate after Mr. Saele had possession and advertised, in a local newspaper several months later, that some of the assets involved with the restaurant would be sold on the "courthouse steps". The assets were supposedly sold to Mr. Saele for a fraction of their value. Moreover, Mr. Saele never lost possession and never closed the restaurant because of the sale. In fact, Mr. Saele has continuously been in control and operated the restaurant since the day of the letter agreement.

17. However, some items were not, and could not, be sold by the landlord. Those items include the goodwill, telephone number, licenses, permits, recipes, fully trained and experienced staff and employees, and other intangibles associated with Gator's restaurant.

18. The day that the Internal Revenue Service gave permission to release its lien for $30,000.00, my attorney, at my request, contacted Mr. Saele's attorney and requested a closing. It was a few days later that Mr. Saele's attorney wrote a letter insisting that Mr. Saele would not

- 4 -

proceed with the closing. In fact, Mr. Saele has never paid any amount referenced in the letter of agreement.

19. I have personal knowledge that neither the first priority lien of Regions Bank, nor the lien of the Internal Revenue Service have been paid from the proceeds of the courthouse sale. The instant courthouse sale occurred February 2005. This date was approximately six months after Mr. Saele took possession and three months after he told me he would not close.

20. Also, Mr. Saele and the landlord worked out a lease agreement immediately after Mr. Saele took possession and for the same space that I occupied. These parties have effectively taken my restaurant business for no payment or consideration.

21. Because of the actions of Mr. Saele and the landlord, I have not been able to pay any of my creditors and was sued by Regions Bank. The actions of Mr. Saele and the landlord were directly responsible for my decision to file bankruptcy.

22. Mr. Saele was never hindered in the operation and was incomplete control. The letter agreement did not contain a provision that time was of the essence nor did Mr. Saele ever suggest or imply that he was hindered or harmed by the delay caused by the Internal Revenue Service.

23. Except for the delay in closing, I diligently performed all other material aspects required under the letter agreement.

24. It is my opinion that the restaurant equipment alone has a value in excess of $100,000.00 and that the business, including goodwill, has a value of $100,000.00.

25. This affidavit was prepared by the attorneys for Susan DePaola, Trustee, and was signed after I carefully read the affidavit.

Dated April 14, 2006.

Philip Goodwyn

Sworn to and subscribed before me on this /4 day of April 2006.

(Seal)

Notary

Exp: 4-18-09

This document prepared by:

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
vgmemory@memorylegal.com
jlday@memorylegal.com

- 6 -

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

**IN RE:**
**PHILLIP GOODWYN,**
**DEBTOR,**

**SIMPLE PLEASURES, INC.,**
**PLAINTIFF,**

**V.**

**V. RESTAURANTS, INC., AND**
**VINCE SAELE,**
**DEFENDANTS.**

**CHAPTER 7**
**CASE NO. 05-32325-WRS**

**ADVERSARY PROCEEDING**
**NO. 05-03062**

## DEFENDANT'S REPLY TO PLAINTIFF'S BRIEF IN RESPONSE TO SUMMARY JUDGMENT

**COMES NOW** V Restaurants, Inc. and Vince Saele, Defendants in the above styled action, by and through their attorney of record, and replies to the Plaintiff's *Brief in Response to Motion for Summary Judgment of Defendant's*.

# TABLE OF CONTENTS

Table of Contents................................................................................................. 2

Points and Authorities......................................................................................... 3

Factual Basis ....................................................................................................... 4

Argument ............................................................................................................. 5

    Breach of Contract.......................................................................................7

        Date Certain – Time of the Essence..................................................... 7

        Substantial Performance ...................................................................... 8

        Waiver .................................................................................................. 9

    Conversion ................................................................................................. 9

    Unjust Enrichment ...................................................................................10

    Fraud ........................................................................................................10

Conclusion ........................................................................................................ 11

# POINTS AND AUTHORITIES

**Cases**

Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir.1997)...................................... 6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91

   L.Ed.2d 202 (1986) .................................................................................... 6

Anderson v. Smith's Towing Co., Inc., 867 So.2d 1121,

   (Ala.Civ.App.,2002) ................................................................................... 9

Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co., 267 Ill.App.3d 742,

   643 N.E.2d 245, 205 Ill. Dec. 294, (1994) ................................................ 10

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d

   265 (1986)..................................................................................................... 6

Ellis v. Alcuri, 710 So.2d 1266, 1267 (Ala.Civ.App.1997)................................... 9

Fitzpatrick v. Atlanta, 2 F.3d 1112, 1116 (11th Cir.1993) ................................... 6

Gadsden Brick Co. v. Cranford, 273 Ala. 37, 134 So.2d 421, (Ala. 1961) ....................... 9

Huntsville Golf Dev., Inc. v. Ratcliff, Inc., 646 So.2d 1334, 1336

   (Ala.1994) .................................................................................................... 9

Isom v. Johnson, 205 Ala. 157, 158, 87 So. 543 (1921)........................................ 7

Kennedy v. Polar-BEK & Baker Wildwood Partnership, 682 So.2d 443,

   (Ala.1996) .................................................................................................. 10

Moore v. Lovelace, 413 So.2d 1100 (Ala.1982)..................................................... 7

Rogers v. Relyea, 184 Mont. 1, 601 P.2d 37 (1979)............................................. 7

Seybold v. Magnolia Land Co., 376 So.2d 1083 (Ala.1979).................................. 7

Sullivan v. Mazak Corp., 805 So.2d 674, (Ala.,2000)......................................... 10

Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir.1992) ........................... 6

United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38

   (11th Cir.1991)......................................................................................... 6, 7

Wilson v. Williams, 257 Ala. 445, 59 So.2d 616, (Ala. 1963)........................... 8

## FACTUAL BASIS

Simple Pleasures, Inc. has for several years operated the restaurant known as Gator. The restaurant operates from the Vaughan Plaza Shopping Center in Montgomery, Alabama. Phillip Goodwyn is the sole shareholder of Simple Pleasures and was, up until September 2004, the operator of the Gators.

For several months prior to Mr. Goodwyn leaving the restaurant location, Gator had suffered financial problems. These financial problems resulted in substantial unpaid rent owed to Defendant Spectrum/Vaughn Plaza L.L.C. In addition to the rental obligation, unpaid Federal employee withholding taxes resulted in substantial Federal tax liens filed by the Internal Revenue Service. The restaurant was also in default on an obligation to Regions Bank who held a secured interest in the restaurant equipment.

During the Summer of 2004, Mr. Vince Saele acting as a consultant employed by Simple Pleasures began working at the Gators restaurant. Mr. Saele's efforts were to evaluate the restaurant and determine if it could become profitable. Mr. Goodwyn and Mr. Saele always anticipated that Mr. Saele may wish to enter an agreement with Mr. Goodwyn and Simple Pleasures and Spectrum/Vaughn Plaza L.L.C. to purchase the restaurant. Should the restaurant purchase come to pass, Mr. Saele would make the purchase through his corporation know as V Restaurants, Inc. Any agreement would address the unpaid rental obligation, the Federal tax liens and a secured interest that Regions Bank held in the restaurant equipment.

On September 24, 2004, after several weeks of negotiations between Mr. Goodwyn counsel and Mr. Saele counsel, Mr. Goodwyn and Mr. Saele, acting on behalf or their respective corporations, entered a letter of understanding at to the essential terms

of the restaurant sale/purchase. This letter is now a part of the file in this case and is attached as an exhibit to the Complaint.

A necessary condition of the letter of understanding dated September 24, 2004, between the seller and purchaser was that the transfer would occur "without any lien or encumbrances whatsoever." In addition, the transfer was to occur "at a closing date no later than October 22, 2004" and should any of the contingencies not occur "consideration shall be withdrawn from the Trust Account and returned to the Purchaser."

The Federal tax liens and the Regions secured interest were not cleared by October 22, 2004 and the property could not transfer without the attached liens as required in the letter of understanding. Mr. Saele and V Restaurants, Inc. elected to forgo the purchase of the restaurant from the Simple Pleasures, Inc.

Now Simple Pleasures, Inc. and Phillip Goodwyn sue V Restaurants, Inc, Spectrum/Vaughan Plaza, L.L.C. and Vince Saele for breach of contract, conversion, unjust enrichment, damages for use, fraud, negligence, wantonness, willfulness and conspiracy. The Defendant V Restaurants, Inc, and Vince Saele now move for summary judgment alleging that there is no genuine issue as to any material fact.

## ARGUMENT

*Bankruptcy Rules of Procedure 7056* and *Federal Rule of Civil Procedure 56(c)* provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." An issue of fact is "material" if, under the applicable

substantive law, it might affect the outcome of the case. *Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir.1997)* (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)*; *Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir.1992)*). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson, 477 U.S. at 251, 252, 106 S.Ct. 2505*.

The moving party bears "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)*. Where the nonmoving party bears the burden of proof at trial, the moving party may discharge this "initial responsibility" by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial. *United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir.1991)*. To survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must come forward with evidence sufficient to withstand a directed verdict motion. *Fitzpatrick v. Atlanta, 2 F.3d 1112, 1116 (11th Cir.1993)*.

On summary judgment, "the evidence of the non-movant is to be believed." *Anderson, 477 U.S. at 255, 106 S.Ct. 2505*. "The district court should resolve all

reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences ... in his favor." *Four Parcels, 941 F.2d at 1428*.

### Breach of Contract

This contract was breached; however, the breach was by Simple Pleasures, Inc and not by the Defendants. When a contracting party breaches its contract in a material manner the opposing party's right of action is complete upon the breach. *Seybold v. Magnolia Land Co., 376 So.2d 1083 (Ala.1979)*. A material breach is one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract. *Rogers v. Relyea, 184 Mont. 1, 601 P.2d 37 (1979)*.

Simple Pleasures agreed to transfer the restaurant equipment without the Federal tax liens and the Regions secured interest and agreed to accomplish this by October 22, 2004. (See Complaint and letter of understanding attached) Mr. Goodwyn testified that the liens were not resolved on the required date. (Goodwyn Deposition page 50) The Regions liens were not released to allow a transfer of good title.

Date Certain – Time of the Essence

The Plaintiff now contends that the date stated in the contract, October 22, 2004, itself did not make time of the essence in this contract. This argument is without merit. It is a general rule in equity that time is not of the essence of a contract. However, the parties to a contract may make time of its essence by a clear manifestation of their intent to do so in the terms of their agreement. *Moore v. Lovelace, 413 So.2d 1100 (Ala.1982)*; *Isom v. Johnson, 205 Ala. 157, 158, 87 So. 543 (1921)*.

In this case, the agreement between the parties required the restaurant to "… be transferred no latter than October 22, 2004, or as otherwise agreed upon by the

parties…". The Plaintiff has produced no evidence of any subsequent agreement to transfer the restaurant after the October 22, 2004, date. In addition the agreement stated further "That in the event any of the contingencies stated herein are not fulfilled by the Obligor, consideration shall be immediately withdrawn from the Trust Account and returned to the Purchaser." More importantly the agreement states "Von, my client is at his wits end and feels he may be wasting his time. These terms are non-negotiable and this must be signed by tomorrow at noon (Saturday, September 25, 2004)."

The agreement clearly indicated the intent that time was of the essence in the agreement. The evidence of the parties' intent is strong enough to warrant this Court finding this issue as a matter of law. A date certain was placed in the contract, the agreement provided provisions as to events that would occur if that date certain were not met, and the agreement stated that the Purchaser (the V Restaurants and Saele) were not open to any further delays.

Substantial Performance

Where a contract is substantially performed by one party and the benefits thereof retained by the other, recovery may be had in an action of this kind on an averment of full or complete performance, although the proof shows only a substantial performance. Substantial performance does not contemplate a full or exact performance of every slight or unimportant detail, but performance of all important parts. *Wilson v. Williams, 257 Ala. 445, 59 So.2d 616, (Ala. 1963)*.

In this case, Goodwyn did not substantially perform his duties under the agreement. Although V Restaurants was placed in possession of the restaurant, Goodwyn was never, and still cannot today, deliver good title to the restaurant. The inability to

deliver good and marketable title to the subject of the contract will operate to deny recovery for substantial performance. *Gadsden Brick Co. v. Cranford, 273 Ala. 37, 134 So.2d 421, (Ala. 1961).*

Waiver

The Plaintiff argues that V Restaurants and Saele waived the right to have Goodwyn perform the terms of this agreement in a timely manner by failing to include a provision for strict compliance in the letter agreement. The Defendant reiterates the arguments contained under the heading *Date Certain – Time of the Essence.* In addition the Plaintiff advances no evidence to support this waiver.

## *Conversion*

The Defendants are entitle to a judgment in their favor for the Plaintiff's claim of conversion. To establish conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property. The plaintiff must establish that the defendant converted specific personal property to the defendant's own use and beneficial enjoyment. *Ellis v. Alcuri, 710 So.2d 1266, 1267 (Ala.Civ.App.1997)*, citing *Huntsville Golf Dev., Inc. v. Ratcliff, Inc., 646 So.2d 1334, 1336 (Ala.1994)*, *Anderson v. Smith's Towing Co., Inc., 867 So.2d 1121, (Ala.Civ.App.,2002)*.

The Plaintiffs have failed to produce any evidence of a wrongful taking or an illegal assumption of ownership. The Plaintiffs have failed to advance any evidence of illegal use or misuse of the restaurant or detention of the property over the Defendant's objection.

## *Unjust Enrichment*

Summary judgment in favor of the Defendant is due to be granted for the Plaintiff's claim for unjust enrichment. A party cannot recover on a claim of unjust enrichment where there is an enforceable express contract between the parties concerning the same subject matter on which the unjust-enrichment claim rests. See *Kennedy v. Polar-BEK & Baker Wildwood Partnership, 682 So.2d 443, (Ala.1996)*. See also *Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co., 267 Ill.App.3d 742, 643 N.E.2d 245, 205 Ill. Dec. 294, (1994)*, stating:

> "It is well established, as a general rule, that a plaintiff cannot pursue a quasi-contractual claim where there is an enforceable express contract between the parties.... 'Difficulties arise with quasi-contractual claims when there is an express contract between the parties. The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests. The reason for this rule is not difficult to discern. When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow. Quasi-contract is not a means for shifting a risk one has assumed under contract.' *Sullivan v. Mazak Corp., 805 So.2d 674, (Ala.,2000)*.

## *Fraud*

Summary judgment is due to be granted as to the Plaintiff's fraud count. The Plaintiff argues in its response to the Defendant's summary judgment brief that state of mind is not capable of discerning from pleading filed with the Court. As to this matter, the Plaintiff is correct, however, the point of the Defendant's motion is the Plaintiff's failure to designate a time and place where any materially misleading statements or even if there were any materially misleading statements. During Mr. Goodwyn's deposition he

stated that there were no false or misleading statements made to him by either of the Defendants. (Goodwyn deposition page 80 - 82).

## CONCLUSION

For the foregoing reasons the Defendants are entitled to a grant of summary judgment in their favor. The Defendants would show unto the Court that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. In support of this Motion, the Defendant submits this reply brief, it's previous Motion for Summary Judgment and supporting exhibits, all being adopted and incorporated herein by reference. The Defendant respectfully requests that this Honorable Court enter a judgment against the Plaintiff as to all counts in the Plaintiff's complaint.

**RESPECTFULLY SUBMITTED** this the 24th day of April, 2006.


**/s/ Daniel G. Hamm**

DANIEL G. HAMM (HAM043)
ATTORNEY FOR THE DEFENDANTS
560 SOUTH MCDONOUGH STREET
SUITE A
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX          334-323-5666

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this Defendant's Reply to Plaintiff's Brief in Response to Summary Judgment by electronic transmission or by placing a copy in the United States Mail with sufficient postage for first class delivery to the attorneys named below or parties if not represented by counsel.

**DONE** this the 24th day of April, 2006.

/s/ Daniel G. Hamm

DANIEL G. HAMM (HAM043)
ATTORNEY FOR THE DEFENDANTS
560 SOUTH MCDONOUGH STREET
SUITE A
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX          334-323-5666

Von Memory
James Day
Memory, Day and Azar
469 S. McDonough Street
Montgomery, Alabama 36104

Coleman Yarborough
Attorney at Law
2860 Zelda Road
Montgomery, Alabama 36106

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br>**PHILLIP GOODWYN,**<br>**DEBTOR,**<br><br>**SIMPLE PLEASURES, INC.,**<br>**PLAINTIFF,**<br><br>**V.**<br><br>**V. RESTAURANTS, INC.,**<br>**DEFENDANTS.** | **CHAPTER 7**<br>**CASE NO. 05-32325-WRS**<br><br>**ADVERSARY PROCEEDING**<br>**NO. 05-03062** |

## DEFENDANT'S PRETRIAL STATEMENT

**COMES NOW,** V Restaurants, Inc., Vince Saele, and Spectrum/Vaughn Plaza, L.L.C., Defendants in the above styled action, by and through their attorneys of record, and pursuant to this Honorable Court's Order dated December 1, 2005, files a pre-trial statement on behalf of the aforementioned Defendants only. The Defendants have made efforts, without success, to contact the Plaintiff's counsel to discuss matters to be addressed; consequently these contentions and undisputed facts are being filed without the benefit of Plaintiff's counsel's input.

## CONTENTIONS

1.  The Defendants, V Restaurants, Inc., and Vince Saele, contends that they were not in breach of any contract with any Plaintiff herein.

2.   The Defendants, V Restaurants, Inc., and Vince Saele, contends that the Plaintiffs were in breach of the agreement/contract made the subject of this litigation.

3.   The Defendants, V Restaurants, Inc., and Vince Saele, contends that they did not convert any property of the Plaintiff to their own use by a) a wrongful taking, b) an illegal assumption of ownership, c) an illegal use or misuse of another's property, or d) a wrongful detention or interference with another's property.

4.   The Defendants, V Restaurants, Inc., and Vince Saele, contends that they were placed in possession of the subject restaurant and property by the voluntary actions of the Plaintiff.

5.   The Defendants, V Restaurants, Inc., and Vince Saele, contends that since there was a written agreement between the Plaintiffs and Defendants, said written agreement as a matter of law precludes recovery based on unjust enrichment.

6.   The Defendants, V Restaurants, Inc., and Vince Saele, contends that damages for use is not an actionable claim under controlling law.

7.   The Defendants, V Restaurants, Inc., and Vince Saele, contends that the subject restaurant did not generate a profit during the period in question nor did it have the ability to generate any profit considering its outstanding liabilities.

8.   The Defendants, V Restaurants, Inc., and Vince Saele, contends that there were no false representations made by the Defendants to the Plaintiffs herein.

9.   The Defendants, V Restaurants, Inc., and Vince Saele, contends that the Plaintiffs has produced a) no evidence of a false representation of a material fact nor is there b) a specified time, place or date as required by *Rule 9, Federal Rules of Civil Procedure* upon which any misrepresentation was made by the Defendants.

10. The Defendants, V Restaurants, Inc., and Vince Saele, contends that the Defendants owe no duty to the Plaintiffs.

11. The Defendants, V Restaurants, Inc., and Vince Saele, contends that the Defendants were not negligent in any manner.

12. The Defendants, V Restaurants, Inc., and Vince Saele, contends that there was no reckless indifference for the consequences, or wrongful act or omission which produced injury to the Plaintiffs.

13. The Defendants, V Restaurants, Inc., and Vince Saele, contends that there is no willful or intentional injury or design or purpose to inflict injury.

14. The Defendant, Spectrum/Vaughn Plaza, L.L.C., denies engaging in any conspiracy with any person or entity which in any way or manner caused any injury or damage to any Plaintiff herein.

15. The Defendant, Spectrum/Vaughn Plaza, L.L.C., contends that as a matter of law that conspiracy is not an actionable tort.

## UNDISPUTED FACTS

1. Simple Pleasures was a restaurant and food service corporation in Montgomery, Alabama. Goodwyn is the president of Simple Pleasures.

2. Simple Pleasures owns and previously operated a restaurant on the east side of Montgomery, Alabama commonly known as "Gators". Gators is located at 5040 Vaughn Road, Montgomery, AL, 36116-1149. Gators has been previously known as Gators Plaza Café, however, recently it was renamed Gators Fish House.

3. In the past two years, Goodwyn and Simple Pleasures have actively pursued and investigated several offers to sell the assets, goodwill, and customer base of Gators.

4. In or about July 2004, Goodwyn received an offer from V Restaurants and Saele to purchase Gators, and ultimately the parties agreed to a $90,000.00 purchase price.

5. For the purchase price, V Restaurants and Saele agreed to purchase Gators, as a going concern, to include all equipment, inventory and supplies, furniture, fixtures, and amenities.

6. The above-referenced terms and conditions were integrated into a contract for sale and signed by the parties, September 24, 2004.

7. Incident to the negotiations on the contract for sale, V Restaurants and Saele negotiated a $30,000.00 payoff of the $104,253.57 lease arrearage with Spectrum, a $30,000.00 payoff of the $80,000.00 debt to Regions Bank, and an anticipated $30,000.00 settlement of the $106,425.71 debt to the Internal Revenue Service.

8. Incident to the contract for purchase of Gators, Goodwyn verbally agreed to allow V Restaurants and Saele to take possession of the restaurant, pending approval of the application to the Internal Revenue Service.

9. V Restaurants and Saele signed a contract for sale, September 24, 2004. Incident to the instant contract, V Restaurants and Saele agreed, among other things, to purchase the going concern of Gators for $90,000.00.

10. V Restaurants and Saele assumed possession before the sale was closed.

11. Incident to the instant contract V Restaurants and Saele agreed to purchase the going concern of Gators for $90,000.00.

**RESPECTFULLY SUBMITTED** this the 2nd day of June, 2006.


**/s/ Daniel G. Hamm**
_____

DANIEL G. HAMM (HAM043)
ATTORNEY FOR THE
DEFENDANTS, V RESTAURANTS,
INC AND VINCE SAELE
560 S. MCDONOUGH ST., STE. A
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX              334-323-5666

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this Defendant's Pretrial Statement by electronic transmission or by placing a copy in the United States Mail with sufficient postage for first class delivery to the attorneys named below or parties if not represented by counsel.

**DONE** this the 2nd day of June, 2006.

/s/ **Daniel G. Hamm**

DANIEL G. HAMM (HAM043)
ATTORNEY FOR THE
DEFENDANTS, V RESTAURANTS,
INC AND VINCE SAELE
560 S. MCDONOUGH ST., STE. A
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX            334-323-5666

Von Memory
James Day
469 S. McDonough Street
Montgomery, Alabama 36104

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE:<br>**PHILLIP GOODWYN**<br><br>   **Debtor.** | CASE NO. 05-32325 |

| | |
|---|---|
| **SIMPLE PLEASURES, INC.,** an<br>**Alabama corporation, and PHILLIP**<br>**GOODWYN, individually,**<br><br>   **Plaintiffs,**<br><br>**v.**<br><br>**V RESTAURANTS, INC.,** an Alabama<br>**corporation, SPECTRUM/VAUGHN**<br>**PLAZA L.L.C.,** an Alabama limited<br>**liability company, and VINCE SAELE,** an<br>**individual, et al.,**<br><br>   **Defendants.** | Adv. Pro. No. 05-03062 |

**PLAINTIFFS' PRETRIAL SUBMISSION**

**I. PLAINTIFF'S CONTENTIONS**

**A. Procedural Summary**

The Plaintiffs originally filed their complaint in the Circuit Court of Montgomery

County, Alabama, Case Number CV 2005-306, February 3, 2005. The Defendants filed motions

to dismiss, March 20, 2005, and these motions were denied by the Circuit Court, March 16,

2005. The Defendants joined issue.[1]

---

[1] One or both Defendants also filed counterclaims.

On August 10, 2005 (the "Petition Date"), Plaintiff Goodwyn filed a voluntary petition [2] under Chapter 7 of Title 11, United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Susan S. DePaola was appointed Interim Trustee, August 11, 2005.

The instant case was removed from the Circuit Court of Montgomery County, Alabama, August 12, 2005 (ECF Doc. 4) and the Trustee filed an application for employment, 11 U.S.C. § 327(e), of Memory Day & Azar as special counsel, November 18, 2005 (ECF Doc. 15) and employment was ordered approved, December 16, 2005 (ECF Doc. 18).

Defendant Spectrum filed a motion for summary judgment while the case was pending in the Circuit Court of Montgomery County. Defendants V R and Vince Saele ("Saele") filed their motion for summary judgment, March 14, 2006 (Adv Pro ECF Doc. 14).

**B. Factual Summary**

Simple Pleasures is an Alabama restaurant and food service corporation organized by Goodwyn in June 28, 1993. Simple Pleasures owned and previously operated a popular and well-known restaurant on the east side of Montgomery, Alabama commonly known as "Gators". Goodwyn is the president of Simple Pleasures.

Gators maintained a broad customer base, goodwill, and a reputation for quality food and service in Montgomery County, Alabama. However, between 2002 and 2004, due to increasing debts, Goodwyn and Simple Pleasures actively pursued and investigated several offers to sell the assets, goodwill, and customer base of Gators.

In or about July 2004, Goodwyn received an offer from V R and Saele to purchase Gators and the parties subsequently signed a letter of intent. In pertinent part, the parties agreed to a $90,000.00 purchase price. For the purchase price, V R and Saele agreed to purchase Gators, as a going concern, to include all equipment, inventory and supplies, furniture, fixtures, and

---

[2] Case Number 05-32325

amenities. In addition, V R and Saele, *inter alia*, agreed to assume responsibility for the existing lease with Spectrum.

The purchase price ($90,000.00) was allocated, a $30,000.00 payoff of the $110,000.00 lease arrearage with Spectrum[3], a $30,000.00 payoff of the $83,000.00 debt to Regions Bank, and a $30,000.00 payment to the Internal Revenue Service for its cooperation in releasing a lien, settlement of approximately $110,000.00 debt to the Internal Revenue Service. The Internal Revenue Service had filed a lien on the Defendants' business and settlement would include release by the Internal Revenue Service of their federal tax lien.[4]

The sale included intangibles such as a large customer base, experienced and trained staff, good will, over 15 years of perfected and renowned recipes, signage, telephone number, licenses and permits, and direct assistance with the transition of all existing employees to the new owners. Spectrum, *inter alia*, agreed to release Goodwyn and Simple Pleasures from their lease obligations. Regions Bank agreed to release its liens, pursuant to the promissory note and security agreement, on the assets of Gators.

Concurrent with the contract for purchase of Gators, Goodwyn verbally agreed to allow V R and Saele to take possession of the restaurant and pending approval of the application to the Internal Revenue Service for settlement and release of the lien. The Defendants would make payments to the Plaintiffs in the amount of $250.00 until closing. V R and Saele also had access to the Gators staff and personal property associated with the restaurant. Moreover, in a show of good faith, Goodwyn did not pursue or solicit other buyers of Gators. V R and Saele had sole and complete possession of the assets and operation of Gators from September 24, 2004, through the date the Plaintiffs filed their lawsuit in the Montgomery County, Circuit Court.

---

[3] This compromise also included a lease from Spectrum to Vince Saele.
[4] In the negotiations, the payment to Spectrum and Regions Bank would pay the personal liability of Goodwyn; however, Goodwyn would have continued responsibility for the trust fund portion owed the Internal Revenue Service.

These terms and conditions of the sale and purchase price were integrated into a letter agreement, prepared by the Saele Defendants, and signed by the parties while Goodwyn's counsel was out of town, September 24, 2004.

After the Internal Revenue Service gave conditional approval to release its lien, counsel for the Plaintiffs notified counsel for V R that a closing should be scheduled. On the day of notification, counsel for V R notified counsel for the Plaintiffs that V R and Saele were "no longer interested in the terms of the contract" and withdrew their offer to purchase Gators. Nevertheless, V R and Saele remained in sole possession of the personal property and leased premises.

After V R took possession, Spectrum gave notice to vacate and subsequently sold the assets of the Plaintiffs to V R.[5] Spectrum advertised the leasehold property for public sale in the Montgomery Advertiser, in late January 2005. Spectrum alleged abandonment of the leased premises and has sold the fixtures, equipment, and other personal property belonging to Simple Pleasures, in February 2005.

The Plaintiffs were not paid and Goodwyn subsequently had to file bankruptcy when Regions Bank filed a lawsuit. Notwithstanding, V R and Saele have remained in constant and continuous possession.

## II. DISPUTED FACTS

1.  The letter of intent or contract failed to provide a certain date for closing that could not be altered or modified by the parties.

2.  V R and Saele had been in constant and continuous possession of the restaurant since the end of September and a delay in closing did not interfere or prejudice their rights to a delayed closing.

3.  The letter of intent or contract failed to provide terms specifying that time was of the

essence or requiring strict compliance.

4.   The Plaintiffs substantially performed the terms of the contract.

5.   Defendants waived the right to require or expect performance by the October 22 date.

6.   The actions of a third-party caused a defensible breach of the contract.

7.   The Defendants were unjustly enriched by taking the restaurant business and not compensating the Plaintiffs.

8.   The causes of action alleged by the Plaintiff:

| | |
|---|---|
| First Cause of Action | Breach of Contract |
| SecondCause of Action | Conversion |
| Third Cause of Action | Unjust Enrichment |
| Fourth Cause of Action | Damages for Use |
| Fifth Cause of Action | Fraud |
| Sixth Cause of Action | Negligence |
| Seventh Cause of Action | Wantoness |
| Eighth Cause of Action | Willfulness |
| Ninth Cause of Action | Conspiracy |

## III. UNDISPUTED FACTS

The undersigned counsel will attempt to coordinate with counsel for the Defendants in order to stipulate to certain facts that will reduce the time of trial preparation and expedite the trial.

## IV. TRIAL PREPARATION AND TRIAL

1.   It s requested that the parties be given a date and instructed to mark and exchange exhibits and provide the name and address of trail witnesses.

2.   It is anticipated that a trial can be completed in one day.

---

[5] The sale did not include the recipes, telephone number, other general intangibles, and signage.

Respectfully submitted on this the 5th day of June 2006.

Memory Day & Azar

By:  /S/ Von G. Memory
Von G. Memory
ASB-8137-071V

James L. Day
ASB-1256-A55J

Attorneys for Trustee

OF COUNSEL

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
Email  vgmemory@memorylegal.com
        jlday@memorylegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

☐ facsimile

☐ hand delivery

☐ delivered in open court

on April 14, 2006.

Daniel G. Hamm, Esq.
560 South McDonough Street, Suite A
Montgomery, Alabama 36104

D. Coleman Yarbrough, Esq.
2860 Zelda Road
Montgomery, AL 36106

- 6 -

/S/ Von G. Memory
OF COUNSEL

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                          Case No. 05-32325-WRS
                                                               Chapter 7

PHILLIP GOODWYN,

     Debtor.

PHILLIP L. GOODWYN and
SIMPLE PLEASURES INC.,

     Plaintiffs,                                     Adv. Pro. No. 05-3062-WRS

v.

V RESTAURANTS, VINCE SAELE, and
SPECTRUM/VAUGHN PLAZA LLC.,

     Defendants.

## ORDER DISMISSING DEFENDANT FROM ADVERSARY PROCEEDING

     For the reasons set forth on the record at the hearing held on June 6, 2006, the

Plaintiffs have agreed to dismiss all claims against Defendant Spectrum/Vaughn Plaza,

LLC.  Accordingly, this Defendant is hereby DISMISSED from this Adversary

Proceeding.

     Done this 8th day of June, 2006.

                                      /s/ William R. Sawyer
                                United States Bankruptcy Judge

c: Von G. Memory, Esq.
   Daniel G. Hamm, Esq.
   Coleman Yarbrough, Esq.

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

PHILLIP GOODWYN,

      Debtor.

PHILLIP L. GOODWYN and
SIMPLE PLEASURES INC.,

      Plaintiffs,

v.

V RESTAURANTS, VINCE SAELE, and
SPECTRUM/VAUGHN PLAZA LLC.,

      Defendants.

Case No. 05-32325-WRS
Chapter 7

Adv. Pro. No. 05-3062-WRS

## <u>MEMORANDUM DECISION</u>

      This Adversary Proceeding is before the Court upon the Motion for Summary judgment of the Defendants V Restaurants, Inc. ("V Restaurants") and Vince Saele ("Saele"). (Doc. 14). The Plaintiffs have filed an opposition brief in response to the motion for summary judgment and the Defendants have filed a reply brief. (Docs. 17, 18). The Court heard argument on the motion on June 6, 2006. Plaintiffs Phillip L. Goodwyn and Simple Pleasures, Inc., were present by counsel Von G. Memory. Defendants Vince Saele and V Restaurants were present by counsel Daniel G. Hamm. Defendant Spectrum/Vaughn Plaza, L.L.C., was present by counsel Coleman Yarbrough. The Court finds that there are genuine issues of material fact in dispute. For this reason, the Defendants' Motion for Summary Judgment is DENIED. (Doc. 14).

# I. FACTS

The genesis of this dispute involves an agreement to purchase a restaurant known as "Gators" in Montgomery, Alabama.  This suit was originally filed in the Circuit Court for Montgomery County, Alabama under Case No. CV 2005-306.  Plaintiffs allege several causes of action including breach of contract, conversion, unjust enrichment, damages for use, fraud, wantonness/willfulness, and civil conspiracy.  (Doc. 1).

On September 24, 2004, Phillip Goodwyn[1] and Vince Saele, acting on behalf of their respective corporations, entered into a letter of understanding regarding the purchase of the restaurant.  Two years prior to reaching this agreement, Goodwyn and Simple Pleasures had actively pursued suitors to purchase Gators.  Goodwyn opted to sell Gators after suffering serious financial problems.  These financial problems included a substantial unpaid rent obligation to the owner of the restaurant location, Defendant Spectrum, in the approximate amount of $110,000.00; unpaid federal employee withholding taxes resulting in a debt to the Internal Revenue Service in the approximate amount of $110,000.00; and a debt to Regions Bank in the approximate amount of $83,000.00.  (Goodwyn Aff. ¶ 3).

The September 24, 2004, agreement contemplated a sale of Gators to Saele and V Restaurants for a purchase price of $90,000.00, allocated as follows: 1) a $30,000.00 payoff of the $110,000.00 lease arrearage with Spectrum; 2) a $30,000.00 payoff of the $83,000.00 debt owed to Regions Bank; and 3) a $30,000.00 payment to the Internal

---

[1] Phillip Goodwyn is the sole shareholder of Simple Pleasures, Inc., which is a food service corporation. (Doc. 17).

Revenue Service in exchange for a release of its lien on the business and a settlement of the $110,000.00 debt owed.  (Doc. 17).  Provision 4 of the agreement stated "[t]hat the ownership of the properties mentioned herein above will be transferred to my client at closing date no later than October 22, 2004, or as otherwise agreed upon by the parties, and that the property transferred shall be transferred without any liens or encumbrances whatsoever."  (Doc. 17).

According to Goodwyn, shortly after signing the letter agreement Saele insisted that he be placed in sole control and possession of the restaurant business.  (Doc. 17).  Goodwyn complied allowing V Restaurants to take possession of the restaurant pending approval of the application to the Internal Revenue Service for settlement and release of the lien.  From September 24, 2004, Saele and V Restaurants had absolute control over every aspect of the business, including its assets.  The sale of the business included Gators' customer base, employees, recipes, licenses and permits, and assistance from Goodwyn in transferring utilities, licenses, and liquor permits to Saele.  (Doc. 17).  In an effort to firm up the closing, Goodwyn's counsel contacted counsel for Saele and V Restaurants, and was informed that they were "no longer interested in the terms of the contract."  (Doc. 1).  It is undisputed that one or more of the liens on the business was not released by October 22, 2004.  (Docs. 17, 18).  On or about December 1, 2004, Spectrum negotiated a new lease with V Restaurants.  Also, in February, 2005, about six months after Saele obtained sole possession of the business, Spectrum sold certain personal property of Simple Pleasures and Goodwyn on which it had a landlord's lien.  The property was sold for $21,874.00.  (Doc. 1).   According to Goodwyn, none of the

proceeds from the sale of this property has gone towards satisfying the lien of Regions or the lien of the Internal Revenue Service.  (Doc. 17).

To date, Goodwyn has not been paid any amount referenced in the letter agreement for the business.  Goodwyn also contends that the actions of the Defendants were directly responsible for his decision to file bankruptcy.  (Doc. 17).


## II.  CONCLUSIONS OF LAW


### A.  Summary Judgment Standard


Summary judgment is proper only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56, made applicable to Adversary Proceedings pursuant to Fed. R. Bank. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986); Jones v. City of Columbus, 120 F.3d 248, 251 (11th Cir. 1997).  Federal Rule of Civil Procedure 56(c) states the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The facts must be viewed in a light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 LED. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. at 322;  Hail v. Regency Terrace Owners Association, 782 So.2d1271, 1273 (Ala. 2000).  At the stage of summary

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. To avoid an adverse ruling on a motion for summary judgment, "the nonmoving party must provide more than a mere scintilla of evidence." See Loyd v. Ram Industries, Inc., 64 F.Supp.2d 1235, 1237 (S.D. Ala. 1999) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997)).

## B.  Discussion

The Defendants in their motion for summary judgment recite each cause of action and assert that there is either no evidence to support the claim or that such claim is not viable in this case. (Doc. 14). The Defendants' motion and the bases asserted in support thereof would require the Court to weigh the evidence asserted. However, this invitation must be rejected as "the judge's function [at the stage of summary judgment] is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Viewing the facts in a light most favorable to the nonmoving party, the Court finds that there genuine issues of material fact in dispute.

Plaintiffs argue that the Defendants have effectively taken his restaurant business from him without any payment or consideration. Particularly, with respect to the breach of contract cause of action, Plaintiffs contend that the September 24, 2004, letter agreement did not contain a provision that time was of the essence nor did Saele ever suggest or indicate that he was in any way hindered by the delay in releasing the lien of

the Internal Revenue Service.  It is the position of the Plaintiffs that as soon as the

Internal Revenue Service gave conditional approval to the release of its lien, Plaintiffs'

counsel notified counsel for Defendants that a closing should be scheduled.  Essentially,

Plaintiffs argue that they performed all of the material aspects of the letter agreement and

that the Defendants not only are in breach, but have continued to retain possession of the

restaurant business, including the restaurant's staff, customer base, recipes, licenses and

permits.  The Defendants on the other hand allege that Plaintiffs are in breach because

they failed to have each of the three liens released by October 22, 2004.  Defendants

contend that this was a material breach that touched upon the fundamental purposes of

the contract and furthermore that time was of the essence in the contract.  The Court finds

that there is a significant issue of material fact as to the performance of both parties.  See

RLI Insurance Co. v. MLK, 2005 Ala. LEXIS 97, at *24 (Ala. June 17, 2005)("[w]hether

a promise has been substantially performed is a question of fact to be determined from

the circumstances of the case.")(citing Cobbs v. Fred Burgos Construction Co., 477 So.2d

335, 338 (Ala. 1985)); see also Silverman v. Charmac, Inc., 414 So.2d 892, 895 (Ala.

1982).

Additionally, a claim of fraud is generally not susceptible to summary judgment.

See Freedlander, Inc., The Mortg.People v. NCNB Nat.Bank of North Carolina, 706

F.Supp. 1211, 1212 (E.D. Va. 1988)(summary judgment is seldom appropriate in cases

where particular states of mind are involved in the claim or defense); Dial v. Morgan, 525

So.2d 1362, 1364 (Ala. 1982)("questions of intent are seldom appropriate for disposition

by summary judgment"); Modicon, Inc. v. Shelnutt (In re: Shelnutt), 150 B.R. 436, 438

("fraud is not generally susceptible to summary judgment.").

In light of several different factual disputes the Court determines that the better course to follow here is to allow the Plaintiffs to go forward with a trial on the various claims asserted in their complaint.  (Doc. 1).  Whether or not the Plaintiffs will ultimately succeed on a particular cause of action is a question that will be resolved at trial.

### III.  CONCLUSION

Finally, as there are material facts in dispute, the motion for summary judgment filed by Defendants Saele and V Restaurants is DENIED.  (Doc. 14).  The Court will enter an Order consistent with this Memorandum Decision by way of a separate document.

Done this 8th day of June, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Von G. Memory, Esq.
   Daniel G. Hamm, Esq.
   Coleman Yarbrough, Esq.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**


In re                                                    Case No. 05-32325-WRS
                                                         Chapter 7
PHILLIP GOODWYN,

     Debtor.

PHILLIP L. GOODWYN and
SIMPLE PLEASURES INC.,

     Plaintiffs,                                  Adv. Pro. No. 05-3062-WRS

v.

V RESTAURANTS, VINCE SAELE, and
SPECTRUM/VAUGHN PLAZA LLC.,

     Defendants.


**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**


     For the reasons set forth in the Court's Memorandum Decision of this date, the

Defendants' Motion for Summary Judgment is DENIED.  (Doc. 14).  As announced at

the June 6, 2006 hearing on the motion, the Court will try this Adversary Proceeding on

**Friday, June 23, 2006 at 9:00a.m.**  The trial will take place at the United States

Bankruptcy Court, One Church Street, Courtroom 4-D, Montgomery, Alabama.


     Done this 8th day of June, 2006.


                                     /s/ William R. Sawyer
                              United States Bankruptcy Judge

c: Von G. Memory, Esq.
   Daniel G. Hamm, Esq.
   Coleman Yarbrough, Esq.

®JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

Simple Pleasures, Inc. an Alabama Corporation and
Phillip Goodwyn, Individually

### DEFENDANTS

V. Restaurants, Inc., an Alabama Corporation adn Vince Saele,
Individually

**(b)**   County of Residence of First Listed Plaintiff    Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Montgomery
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)

Von Memory and James Day, Memory & Day, Post Office Box 4054
Montgomery, Alabama 36103-4054, 334-834-8000

Attorneys (If Known)

Daniel G. Hamm, 560 South McDonough Street, Suite A,
Montgomery, Alabama 36104, 334-269-0269

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☒ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

| | | | | | Appeal to District |
|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
28 U.S.C.A. Section 157(d) and Fed. Bankruptcy RUle 5011
Brief description of cause:
Remove Adversary Proceeding

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE    William Sawyer    DOCKET NUMBER   Bk#05-32325, AP#05-03062

DATE
06/09/2006

SIGNATURE OF ATTORNEY OF RECORD
*/s/ Daniel G. Hamm*

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br>**PHILLIP GOODWYN,**<br>**DEBTOR,**<br><br>**SIMPLE PLEASURES, INC.,**<br>**PLAINTIFF,**<br><br>**V.**<br><br>**V. RESTAURANTS, INC.,**<br>**DEFENDANTS.** | **CHAPTER 7**<br>**CASE NO. 05-32325-WRS**<br><br>**ADVERSARY PROCEEDING**<br>**NO. 05-03062** |

## DEFENDANT'S V. RESTAURANTS, INC., AND VINCE SAELE'S MOTION FOR WITHDRAWAL OF THE REFERENCE AND TRANSFER OF ADVERSARY PROCEEDING TO THE DISTRICT COURT

**COMES NOW,** V Restaurants, Inc., and Vince Saele, Defendants in the above styled action, by and through their attorney of record and pursuant to *28 U.S.C. § 157(d)* and *Fed. R. Bank. P, Rule 5011(a)* moves the United States District Court for the Middle District of Alabama for Withdrawal of Reference and Transfer of Adversary Proceeding to the District Court by stating the following:

1. On or about February 2005 the Plaintiffs, Phillip Goodwyn, and Simple Pleasures, Inc. filed the above referenced lawsuit in the Montgomery County Circuit Court. This lawsuit alleged various claims against the defendants, Saele and V Restaurants. Among those being breach of contract, fraud, damages for use, unjust

1

enrichment, wantonness, willfulness, negligence, conspiracy, conversion, and other state law claims. This lawsuit was filed, served and duly answered by the Defendants. In the initial filings the Plaintiffs demanded a jury trial pursuant to *Rule 38, Ala.R.Civ.Proc.* The Defendants relied upon the Plaintiff's demand for a jury trial from the initial filing and pursuant to *Rule 38, Ala.R.Civ.Proc.* and *Rule 38, Fed.R.Civ.Proc.* have continued to rely upon such demand.(Exhibit A)

2.    Following the filing of the aforementioned lawsuit the plaintiff, Goodwyn, then filed a bankruptcy petition with the United States Bankruptcy Court for the Middle District of Alabama. The said case is identified in the heading to this pleading. This bankruptcy case is now the underlying case for the instant adversary proceeding.

3.    Following the filing of the bankruptcy petition the Debtor/Plaintiff removed the State Court Lawsuit/Adversary Proceeding to the United States Bankruptcy Court for the Middle District of Alabama. Various pleadings were filed by the parties and the case proceeded before the United States Bankruptcy Court. At one point the court issued a scheduling order setting given dates for discovery, summary judgment, motion deadlines and other dates. (Exhibit B) Among the items discussed was a pretrial conference set for June 6, 2006. During March of 2006 the Defendants filed a Motion for Summary Judgment with the United States Bankruptcy Court as to all issues and claims in the Plaintiff's complaints.

4.    The summary judgment motion was to be taken up at the pretrial conference set for June 6, 2006. In the order setting the pretrial conference the court stated, "The Court further notes that the Plaintiffs made a demand for jury trial in their complaint. The Court will hear form the parties at the Pretrial Conference whether this

matter is to be trial to the Court or to a jury. The Court will further consider whether this is a core proceeding."

5.   On June 6, 2006, when the matter of the jury trial was raised by the Court, the Plaintiff then withdrew the request for a jury trial. This request for a jury trial was initially demanded at the time the Plaintiff's filed the lawsuit in the Montgomery County Circuit Court and well before the matter was removed to the Bankruptcy Court. Had this case remained at the Montgomery County Circuit Court, the Plaintiff would not be allowed to withdraw the jury demand without the consent of the Defendants pursuant to *Rule 38, Ala.R.Civ.Proc.*

6.   Counsel for the Defendants is in possession of a digital recording of said hearing, however, the recording has yet to be transcribed. Counsel will provide a transcribed copy of the hearing should the Court request.

7.   Following the withdrawal of the jury demand by the Plaintiffs the case was then set on a non-jury trial calendar for June 23, 2006.

8.   The Defendants did not consent to the withdrawal of the jury demand.

9.   The matters raised in the Plaintiff's complaints are non-core matters pursuant to *28 U.S.C.A. § 157* and the Defendants are entitled to a jury trial on all claims raised by the Plaintiffs.

10. This motion for withdraw of the reference is timely in that on June 6, 2006 the Defendants learned that the Plaintiff's jury demand was withdrawn. The Defendants had no indication that the jury demand would be withdrawn prior to the June 6, 2006 pre-trial conference.

11.  This motion for withdrawal of the reference is made within three (3) days of the withdrawal of the jury demand by the Plaintiffs, is made as promptly as possible in the light of the developments in the bankruptcy proceeding and at the first reasonable opportunity for elevating the issue.

12. The Plaintiff will not be prejudiced by any delay brought about by withdrawal of the reference in that the original lawsuit was filed in the State court in February 2005 and the Plaintiffs are the ones that removed the matter to the Bankruptcy Court as opposed to allowing the case to proceed to a timely conclusion in the State Court. The Plaintiff's removal to Bankruptcy Court was filed just as summary judgments were being filed in the State Court.

13. To further support the lack of prejudice to the Plaintiffs, the Plaintiffs were complacent in resting on their jury demand and secreting the willingness to withdraw the demand until the last possible moment (June 6, 2006), notwithstanding the courts pre-trial order addressing the jury demand matter being issued and mentioning the issue eleven (11) weeks previously.

14. It should also be mentioned that the Plaintiff's filed the required pre-trial disclosures on May 5, 2006 without mention of a withdrawal of the jury demand. In addition the Plaintiff's also filed a pre-trial statement on June 2, 2006 which addressed the length of the trial; however there was no mention of the withdrawal of the jury demand.

15. The Defendants include a copy of the pretrial order issued on March 16, 2006 by the Honorable Bankruptcy Court. The said pretrial order indicates that the court will take up the Plaintiff's jury demand and whether this is a core-proceeding. (Exhibit C)

**WHEREFORE, the premises considered**, the Defendants request this Honorable Court to withdraw the reference on the above captioned adversary proceeding and set this matter for a pretrial/status conference.

**RESPECTFULLY SUBMITTED** this the 9th day of June, 2006.

/s/ **Daniel G. Hamm**

DANIEL G. HAMM (HAM043)
ATTORNEY FOR THE
DEFENDANTS, V RESTAURANTS,
INC AND VINCE SAELE
560 S. MCDONOUGH ST., STE. A
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX          334-323-5666

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this Defendant's V. Restaurants, Inc., and Vince Saele's Motion for Withdrawal of the Reference and Transfer of Adversary Proceeding to the District Court by electronic transmission or by placing a copy in the United States Mail with sufficient postage for first class delivery to the attorneys named below or parties if not represented by counsel.

**DONE** this the 9th day of June, 2006.


**/s Daniel G. Hamm**
_____

DANIEL G. HAMM (HAM043)
ATTORNEY FOR THE
DEFENDANTS, V RESTAURANTS,
INC AND VINCE SAELE
560 S. MCDONOUGH ST., STE. A
MONTGOMERY, ALABAMA 36104
TELEPHONE   334-269-0269
FAX         334-323-5666

Von Memory
James Day
469 S. McDonough Street
Montgomery, Alabama 36104

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

**SIMPLE PLEASURES, INC.,** an Alabama
corporation, and **PHILLIP GOODWYN,**
individually,

       **Plaintiffs,**

**V.**

**V RESTAURANTS, INC.,** an Alabama
corporation, **SPECTRUM/VAUGHN
PLAZA L.L.C.,** an Alabama limited
liability company, and **VINCE SAELE,** an
individual, and fictitious Defendants, A, B,
C, D, and E being those persons, firms,
partnerships, corporations, or other
entities that aided, assisted or joined with
the Defendants, incident to the actions
described herein. Plaintiff avers that the
identities of the fictitious parties are
otherwise unknown to Plaintiff at this
time, or if their names are known to
Plaintiff at this time, their identities as
proper parties are not known to Plaintiff
at this time, but their true names will be
substituted by amendment when
ascertained,

       **Defendants.**

Case No. CV 2005 – __306__

**TRIAL BY JURY DEMANDED**

## COMPLAINT

### PARTIES

1.  Plaintiff, SIMPLE PLEASURES, INC. ("Simple Pleasures") is an Alabama corporation with its principal place of business in Montgomery County, Alabama.

2.  Plaintiff, PHILLIP GOODWYN ("Goodwyn"), is over the age of 19 years, is a resident of Montgomery County, Alabama. Mr. Goodwyn's address is 1533 Gilmer Ave., Montgomery, AL 36104.

3.   Defendant, V RESTAURANTS, INC. ("V Restaurants"), is an Alabama corporation with its principal place of business in Montgomery County, Alabama. The registered agent for service of process for V Restaurants, Inc., is Vince Saele. Mr. Saele may be served at 5040 Vaughn Rd., Montgomery, AL 36116.

4.   Defendant, SPECTRUM/VAUGHN PLAZA L.L.C. ("Spectrum"), is an Alabama limited liability company, with its principal place of business in Montgomery County, Alabama. The registered agent for service of process for Spectrum is Edgar H. Fatzinger, III. Mr. Fatzinger may be served at 2870 Zelda Road, Montgomery, AL 36106.

5.   It is believed that the Defendant, VINCE SAELE ("Saele"), who is over the age of 19 years, is a resident of Montgomery County, Alabama. Mr. Saele may be served at 5040 Vaughn Rd., Montgomery, AL, 36116.

6.   FICTITIOUS DEFENDANTS A, B, C, D, and E, are currently unknown, however, these Defendants joined, assisted, aided, and abetted in wrongfully withholding, depriving, and converting assets and other business opportunities.

**JURISDICTION AND VENUE**

7.   The Plaintiffs allege that the Defendants owe Plaintiffs money based on a breach of a restaurant purchase agreement and other legal theories. Accordingly, Plaintiffs are proceeding against the Defendants under a theory of breach of contract, conversion, unjust enrichment, damages for use, fraud, wantonness/willfulness, and civil conspiracy. This court has statutory and historical jurisdiction over these claims. All of the parties either reside in or have corporate presence in Montgomery County, Alabama and all of the events and incidents that occurred in relation to the matters between the parties occurred in Montgomery County, Alabama. Hence,

venue is proper in this county. The amount in controversy exceeds $10,000.00 so this case is properly before the Montgomery County Circuit Court.

## FACTS COMMON TO ALL COUNTS

8.  Simple Pleasures was a restaurant and food service corporation in Montgomery, Alabama. Goodwyn is the president of Simple Pleasures.

9.  Simple Pleasures owns and previously operated a popular and well-known restaurant on the east side of Montgomery, Alabama commonly known as "Gators". Gators is located at 5040 Vaughn Road, Montgomery, AL, 36116-1149. Gators has been previously known as Gators Plaza Café, however, recently it was renamed Gators Fish House.

10.  Gators maintained a broad customer base, goodwill, and a reputation for quality food and service in Montgomery County, Alabama.

11.  In the past two years, Goodwyn and Simple Pleasures have actively pursued and investigated several offers to sell the assets, goodwill, and customer base of Gators.

12.  In or about July 2004, Goodwyn received an offer from V Restaurants and Saele to purchase Gators, and ultimately the parties agreed to a $90,000.00 purchase price.

13.  For the purchase price, V Restaurants and Saele agreed to purchase Gators, as a going concern, to include all equipment, inventory and supplies, furniture, fixtures, and amenities. In addition, V Restaurants and Saele, *inter alia*, agreed to assume responsibility for the existing lease with Spectrum.

14.  The purchase price also included intangibles such as a large customer base, good will, over 15 years of perfected and renowned recipes, and direct assistance with the transition of all existing employees to the new owners.

- 3 -

15. The above-referenced terms and conditions were integrated into a contract for sale, prepared by the Saele Defendants, and signed by the parties, September 24, 2004.

16. Incident to the negotiations on the contract for sale, V Restaurants and Saele negotiated a $30,000.00 payoff of the $104,253.57 lease arrearage with Spectrum, a $30,000.00 payoff of the $80,000.00 debt to Regions Bank, and an anticipated $30,000.00 settlement of the $106,425.71 debt to the Internal Revenue Service.

17. In further consideration, Spectrum, *inter alia*, agreed to release Goodwyn and Simple Pleasures from their lease obligations. Regions Bank agreed to release its liens, pursuant to the promissory note and security agreement, on the assets of Gators. The Internal Revenue Service also agreed to a release of the federal tax lien.

18. Incident to the contract for purchase of Gators, Goodwyn verbally agreed to allow V Restaurants and Saele to take possession of the restaurant, pending approval of the application to the Internal Revenue Service. Moreover, in a show of good faith, Goodwyn did not pursue or solicit other buyers of Gators.

19. V Restaurants and Saele had sole and complete possession of the assets and operation of Gators from September 24, 2004, through the current date. In addition, V Restaurants and Saele had access to the Gators staff and personal property associated with the restaurant.

20. In an effort to firm up a closing date, the undersigned called counsel for the V Restaurants and Saele and requested a closing, however, the undersigned was informed by counsel that V Restaurants and Saele were "no longer interested in the terms of the contract" and withdrew the offer to purchase Gators. Nevertheless, V Restaurants and Saele have remained in sole possession.

- 4 -

21. V Restaurants and Saele have allowed the Gators business to run down to the point that it may be impossible to salvage the business.

22. Spectrum has advertised the leasehold property for public sale in the Montgomery Advertiser, January 13, 20, and 27, 2005. Spectrum has alleged the abandonment of the leased premises and has noticed the sale of the fixtures, equipment, and other personal property belonging to Simple Pleasures, Friday, February 4, 2005.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

23. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

24. V Restaurants and Saele signed a contract for sale, September 24, 2004. Incident to the instant contract, V Restaurants and Saele agreed, among other things, to purchase the going concern of Gators for $90,000.00.

25. Relying on the representations of V Restaurants and Saele, Goodwyn, and as valuable consideration for the contract for sale, agreed to allow Defendants to assume possession before the sale was closed.

26. Without cause, V Restaurants and Saele have failed or refused to honor their contract for sale, however, V Restaurants and Saele have remained in possession and continue to use the restaurant and the amenities associated therewith.

WHEREFORE, the Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele in the amount of $90,000.00, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### SECOND CAUSE OF ACTION
### (CONVERSION)

27. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

28. V Restaurants and Saele signed a document entitled contract for sale, September 24, 2004. Incident to the instant contract V Restaurants and Saele agreed to purchase the going concern of Gators for $90,000.00.

29. Relying on the representations of Saele, Goodwyn, as valuable consideration for the contract for sale, agreed to allow V Restaurants and Saele to assume possession before the sale was closed.

30. Without cause, V Restaurants and Saele have failed or refused to honor their contract for sale.

31. V Restaurants and Saele has had sole and exclusive possession of the assets and operation of Gators from September 24, 2004, through the current date.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### THIRD CAUSE OF ACTION
### (UNJUST ENRICHMENT)

32. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

33. V Restaurants and Saele signed a document entitled contract for sale, September 24, 2004. Regarding the instant contract the V Restaurants and Saele, among other things, agreed to purchase the assets associated with or concerning Gators for $90,000.00.

- 6 -

34. Relying on the representations of Saele, Goodwyn, as valuable consideration for the contract for sale, agreed to allow V Restaurants and Saele to take possession before the sale was closed.

35. Without cause, the V Restaurants and Saele have failed or refused to honor their contract for sale.

36. V Restaurants and Saele had sole possession of the assets and operation of Gators from September 24, 2004, through December 31, 2004. During the same period in both 2001 and 2002, Gators earned in excess of $450,000.00 in sales revenue.

WHEREFORE, the Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### FOURTH CAUSE OF ACTION
### (DAMAGES FOR USE)

37. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

38. V Restaurants and Saele signed a document entitled contract for sale, September 24, 2004. Incident to the instant contract the V Restaurants and Saele agreed to purchase the going concern of Gators for $90,000.00.

39. Relying on the representations of Saele, Goodwyn, as valuable consideration for the contract for sale, agreed to allow V Restaurants and Saele to assume possession before the sale was closed.

40. Without cause, V Restaurants and Saele have failed or refused to honor their contract for sale.

41. V Restaurants and Saele had sole possession of the assets and operation of Gators from September 24, 2004, through December 31, 2004. During the same period in both 2001 and 2002, Gators earned in excess of $450,000.00 in sales revenue.

WHEREFORE, the Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### FIFTH CAUSE OF ACTION
### (FRAUD)

42. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele for FRAUD in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### SIXTH CAUSE OF ACTION
### (NEGLIGENCE)

43. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele for NEGLIGENCE in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### SIXTH CAUSE OF ACTION
### (WANTONNESS)

44. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

- 8 -

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele for WANTONNESS in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### SEVENTH CAUSE OF ACTION
### (WILLFULNESS)

45. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele for WILLFULNESS in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### SEVENTH CAUSE OF ACTION
### (CONSPIRACY)

46. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment against V Restaurants, Spectrum, and Saele for CONSPIRACY in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### JURY DEMAND

The Plaintiffs demand a trial by struck jury on all matters contained herein.

Respectfully submitted January 28, 2005.

- 9 -

Memory & Day

By: _____

Von G. Memory
ASB-8137-071V

James L. Day
ASB-1256-A55J

Attorneys for Plaintiffs

OF COUNSEL:

Memory & Day
Post Office Box 4054
Montgomery, AL 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001

- 10 -

## PARNELL & CRUM, P.A.
### ATTORNEYS AT LAW
### 641 SOUTH LAWRENCE STREET
### MONTGOMERY, AL 36104

CHARLES N. PARNELL, III
G. BARTON CRUM
ROBERT J. RUSSELL, JR.
BRITT BATSON GRIGGS
MATTHEW T. ELLIS
ADRIAN D. JOHNSON
J. MATTHEW PARNELL
DAYNA R. BURNETT

TELEPHONE
334-832-4200

TELECOPIER
334-293-3551

MAILING ADDRESS
P.O. BOX 2189
ZIP CODE 36102-2189

September 24, 2004

<u>VIA FACSIMILE - 834-8001</u>

Von G. Memory
Attorney at Law
469 S. McDonough Street
Montgomery, Alabama 36104

Dear Von:

I am in receipt of your sales agreement and have briefly reviewed same, deciding that it is not possible to make the corrections and amendments this afternoon prior to 5:00. Thus, I write this letter as a memorandum of agreement, which I believe contains the pertinent provisions, until we can get the final draft documentation agreed upon. They are as follows:

1.    That the purchase price shall be $90,000.00;

2.    That the purchase price is for all of the assets, including, but not limited to, licenses and leases, equipment, office supplies, inventory, automobiles/delivery van, etc., and any other of the same located off-premises in storage buildings, etc.;

3.    That Seller will lease the business to Buyer, along with all licenses and property until the date of closing for the sum of $250.00;

4.    That the ownership of the properties mentioned herein above will be transferred to my client at a closing date no later than October 22, 2004, or as otherwise agreed upon by the parties, and that the property transferred shall be transferred without any liens or encumbrances whatsoever;

5.    That the closing is contingent upon Regions accepting the sum of $30,000.00 for Phillips' lien.

6.    That Spectrum Development will accept a note from Vince in the amount of $30,000.00 and that the $30,000.00 note shall be counted as consideration towards the purchase of the business;

Von G. Memory
September 24, 2004
Page Two

7.  That Buyer is entitled to all revenues derived from the business from the date of the
    consummation of this agreement forward;

8.  That the remaining $30,000.00 be paid to the Internal Revenue Service for and in
    consideration of the release of any and all liens which they may have against Phillip,
    individually, or the business  (if any additional monies are owed, Phillip pays);

9.  In the event that any of the contingencies stated herein are not complied with or
    fulfilled by the Obligor, consideration shall be immediately withdrawn from the Trust
    Account and returned to the Purchaser;

10. That upon the consummation of this document, the Purchaser shall be entitled to
    utilize the premises and operate the business in its normal manner and without
    interference from Mr. Goodwyn;

11. That the catering business operating out of Gator's shall continue, but only be
    operated by its new owner;

12. That if any of the contingencies fail wherein the Seller is the Obligor, Seller shall
    reimburse Purchaser for any and all net financial losses or expenses related thereto.

Von, my client is at wits end and feels he may be wasting his time.  These terms are non-
negotiable and this must be signed by tomorrow at noon (Saturday, September 25, 2004).

                                        Sincerely,

                                        Robert J. Russell, Jr.

RJRjr/fd

V Restaurants, Inc.                     Simple Pleasures, Inc.
By:  Vinca Saele                        By:  Phillip Goodwyn
Its:  President                         Its:  President

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                      Case No. 05-32325-WRS
                                                           Chapter 7

PHILIP L. GOODWYN,

       Debtor.


PHILIP L. GOODWYN,

       Plaintiff,                              Adv. Pro. No. 05-3062-WRS

   v.

V RESTAURANTS; VINCE
SAELE; and SPECTRUM/
VAUGHN PLAZA LLC,

       Defendants.


### ORDER SETTING TRIAL DATE
### SCHEDULING ORDER

As announced from the bench at the scheduling conference held November 29, 2005, the following is the schedule of events in this adversary proceeding:

Discovery shall be completed no later than **February 28, 2006.**

Dispositive motions shall be filed no later than **March 14, 2006.**

Counsel for the parties shall exchange and file with the court by **May 5, 2006,** the pretrial disclosures required by Fed. R. Bankr. Proc. 7026(a)(3). Exhibits, depositions, and the testimony of witnesses not so disclosed shall not be admitted into evidence at the trial except for good cause shown.

Counsel for the parties shall exchange and file with the court by **June 2, 2006,** a list disclosing any objections to the use of depositions or admissibility of exhibits identified or designated under Fed. R. Bankr. Proc. 7026(a)(3). Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, shall be deemed waived unless excused by the court for good cause shown.

Counsel for the parties shall file a joint pretrial statement by **June 2, 2006,** containing the following:

1.  A comprehensive written stipulation of all uncontested facts, including underlying facts, in such form that it can be incorporated in the final order as part of the findings of fact.

2.  A statement of the contentions of each party with respect to contested facts and law.

Prior to trial, all exhibits to be offered at trial shall be marked for identification.  Copies shall be made available to the court at the trial.

A pretrial conference with the parties shall be held on **Tuesday, June 6, 2006, at 1:30 p.m., by telephone.**  The order of trial will be established at the pretrial conference.   The parties need to provide chambers (334/954-3880 or 3846) with a telephone number one week prior to the pretrial conference and keep the line open for at least one hour.

The trial is "deep set" with several other adversaries beginning **Monday, June 19, 2006.**

Done this 1st day of December, 2006.

/s/ Dwight H. Williams Jr.
United States Bankruptcy Judge

c:  Von G. Memory, Attorney for Plaintiff
    Daniel G. Hamm, Attorney for Defendants V Restaurants & Saele
    Coleman Yarbrough, Attorney for Spectrum/Vaughn Plaza

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

<span style="color:blue">**Exhibit C**</span>

In re                                                           Case No. 05-32325-WRS
                                                                Chapter 7

PHILIP L. GOODWYN,

       Debtor

PHILIP L. GOODWYN and
SIMPLE PLEASURES INC.,

       Plaintiffs                         Adv. Pro. No. 05-3062-WRS

    v.

V RESTAURANTS, VINCE SEALE,
and SPECTRUM/VAUGHN PLAZA LLC.,

       Defendants

<u>**ORDER**</u>

On March 14, 2006, Defendants V Restaurants, Inc., and Vince Saele, filed a Motion for

Summary Judgment.  (Doc. 14).  The Plaintiffs shall file their response not later than **April 14,**

**2006.**  The Defendants may file a Reply not later than **April 24, 2006.**  The Court will hear

argument on the motion at the Pretrial Conference which has been scheduled for **June 6, 2006, at**

**1:30 p.m.**

The Court further notes that the Plaintiffs made a demand for jury trial in their complaint.

The Court will hear from the parties at the Pretrial Conference whether this matter is to be trial to

the Court or to a jury.  The Court will further consider whether this is a core proceeding.

    Done this 16th day of March, 2006.

                           /s/ William R. Sawyer
                           United States Bankruptcy Judge

c: Von G. Memory, Esq.
   Daniel G. Hamm, Esq.
   Coleman Yarbrough, Esq.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:

       **PHILIP L. GOODWYN**                 **CASE NO. 05-32325 WRS**
           **Debtor**                        **CHAPTER 7**


       **PHILIP L. GOODWYN**
       **SIMPLE PLEASURES, INC.**
       **SUSAN S. DEPAOLA, TRUSTEE**
           **PlaintiffS**

    **vs**

                                   **ADV NO.  05-03062 WRS**

       **V RESTAURANTS**
       **VINCE SAELE**
           **Defendants**


### CLERK'S CERTIFICATE

    I, Dianne M. Segrest, Deputy Clerk of the United States Bankruptcy Court for the Middle District of Alabama, do hereby certify that the documents herein comprise the record on motion to withdraw reference :

      **1) Motion to withdraw  the reference**

    In witness Whereof, I have hereunto subscribe my name and affixed the seal of said court at Montgomery in said district on this 12th day of June, 2006.


               **RICHARD S. ODA, CLERK**
           **UNITED STATES  BANKRUPTCY COURT**

            /s Richard S. Oda

            **Deputy Clerk**
            **Dianne M. Segrest**
            **(334) 954-3856**

ATTEST 1 hereby certify that this is a true and correct copy of such original as it appears of record and on file in my office. Certified this _13_ day of _June, 2006_

U.S. BANKRUPTCY COURT

BY. _Dianne M. Segrest_
            Deputy Clerk

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br>**PHILLIP GOODWYN,**<br>**DEBTOR,**<br><br>**SIMPLE PLEASURES, INC.,**<br>**PLAINTIFF,**<br><br>**V.**<br><br>**V. RESTAURANTS, INC.,**<br>**DEFENDANTS.** | **CHAPTER 7**<br>**CASE NO. 05-32325-WRS**<br><br>**ADVERSARY PROCEEDING**<br>**NO. 05-03062** |

## EMERGENCY MOTION TO STAY THE PROCEEDINGS IN THE UNITED STATES BANKRUPTCY COURT AND FOR AN EXPEDITED HEARING ON THIS MOTION

**COME NOW** the Defendants, V Restaurants, Inc., and Vince Saele, in the above styled matter, and move this Honorable Court to conduct an expedited hearing and issue an order staying the instant proceedings before this Court pending the outcome of the recently filed *Defendant's V. Restaurants, Inc., and Vince Saele's Motion for Withdrawal of the Reference and Transfer of Adversary Proceeding to the District Court* by stating the following grounds:

1. On June 6, 2006, this Honorable Court conducted a pre-trial hearing to address the Defendant's motion for summary judgment, the Plaintiff's jury demand, and core v. non-core matters. During this hearing the Plaintiff withdrew its jury demand without the consent of the Defendants. Inasmuch as the Plaintiffs had previously filed several pretrial pleadings regarding trial matters and never mentioned the withdrawal of their jury demand, the withdrawal of the jury demand came as a surprise to the

Defendants.  According to Alabama Law, a Jury demand cannot be withdrawn without the Defendant's consent.  The case is now set for a bench trial on June 23, 2006.

2.    In response to the aforementioned, the Defendants filed to withdraw the bankruptcy reference in the subject adversary proceeding with the United States District Court for the Middle District of Alabama. *See docket number 28 for the instant proceedings and case number 2:06-MC-3323 before the United States District Court for the Middle District of Alabama.*

3.    The Defendants continue to demand a jury trial on all issues raised by the Plaintiffs, and assert such right by their previously filed motion to withdraw the reference and the instant motion to stay the proceedings.

4.    The Defendants' motion to withdraw the reference to the United States District Court for the Middle District of Alabama is not filed for delay and has merit for the following reasons:

> a.    The Plaintiffs could not withdraw the jury demand absent the consent of the Defendants pursuant to *Rule 38, Ala.R.Civ.Proc.* or *Rule 38, Fed.R.Civ.Proc.*
>
> b.    The motion to the District Court is made as timely and as soon as possible in light of the developments in the Bankruptcy Court pursuant to *In re CHILDS, --- F.Supp.2d ----, 2006 WL 1318598 (M.D.Ala.), 2006 WL 1318598.* Said motion to the District Court was filed within four (4) days of having notice of the grounds for withdrawal of the reference.

5.    The trial setting of June 23, 2006, is the first setting for the instant case. The stay of the instant matter pending resolution by the District Court will not prejudice the Plaintiffs, and will spare the parties the expense of preparing for trial and the necessity of a second trial should the reference be withdrawn.

6.    Historically, decisions on the withdrawal of the reference to the bankruptcy court have been resolved by the District Court within three to seven weeks.

7.    At the present time there is only eight calendar days before the actual trial, which is most likley insufficient time for the United States District Court to address the issue and respond by order on the Defendants' request for withdrawal of the reference.

8.   Should the United States District Court grant the motion to withdraw the reference, the Defendants will be entitled to a Jury trial before the United States District Court.

**WHEREFORE, THE PREMISES CONSIDERED**, the Defendants move this Honorable Court to conduct an emergency hearing and stay the proceedings in before this Court pending a decision on the Defendant's motion to withdraw the reference.

**RESPECTFULLY SUBMITTED** this the 15th day of June, 2006.

/s/ Daniel G. Hamm
_____
Daniel G. Hamm (HAM043)
Attorney for the
Defendants, V Restaurants,
Inc and Vince Saele
560 S. McDonough St., Ste. A
Montgomery, Alabama 36104
Telephone    334-269-0269
Fax          334-323-5666

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this Emergency Motion to Stay the Proceedings in the United States Bankruptcy Court and for an Expedited Hearing on this Motion by electronic transmission or by placing a copy in the United States Mail with sufficient postage for first class delivery to the attorneys named below or parties if not represented by counsel.

**DONE** this the 15th day of June, 2006.


/s/ DANIEL G. HAMM
_____
DANIEL G. HAMM (HAM043)
ATTORNEY FOR THE
DEFENDANTS, V RESTAURANTS,
INC AND VINCE SAELE
560 S. MCDONOUGH ST., STE. A
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX          334-323-5666


Von Memory
James Day
Memory, Day & Azar
469 S. McDonough Street
Montgomery, Alabama 36104

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 05-32325-WRS
                                                         Chapter 7
PHILIP L. GOODWYN,

       Debtor

PHILIP L. GOODWYN, SIMPLE
PLEASURES, and SUSAN S. DEPAOLA,
TRUSTEE

       Plaintiffs                        Adv. Pro. No. 05-3062-WRS

  v.

V RESTAURANTS and VINCE
SAELE,

       Defendants

## ORDER SETTING TRIAL

The trial of this adversary proceeding will be held on Friday, June 23, 2006, at 9:00 a.m., at the United States Bankruptcy Court, One Church Street, Courtroom 4-D, Montgomery, Alabama.

Done this $^{15th}$ day of June, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Von G. Memory, Attorney for Plaintiffs
   Daniel G. Hamm, Attorney for Defendants

Orders.6

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **IN RE: PHILLIP GOODWYN,** | |
| **Debtor,** | **CASE NO. 05-32325** |
| | **CHAPTER 7** |
| **SIMPLE PLEASURES, INC., an Alabama corporation, and PHILLIP GOODWYN, individually,** | **Adv. Pro. No. 05-03062-WRS** |
| **Plaintiffs,** | |
| **v.** | |
| **V RESTAURANTS, INC., an Alabama corporation, SPECTRUM/VAUGHN PLAZA L.L.C., an Alabama limited liability company, and VINCE SAELE, an individual, et al.,** | |
| **Defendants.** | |

### TRUSTEE'S/PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND OBJECTION TO EMERGENCY MOTION TO STAY

COMES NOW the Plaintiff, Susan S. DePaola, Trustee, by and through counsel, in accordance with the court's order, June 15, 2006 (ECF Doc. 4)[1], and says as follows:

### Introduction

This civil action was originally filed in the Circuit Court of Montgomery County, Alabama. The action was removed to the United States Bankruptcy Court for the Middle District of Alabama, incident to a petition for an order of relief filed by Plaintiff, Phillip Goodwyn ("Goodwyn"), under Chapter 7, Title 11 of the United States Bankruptcy Code. The removal was

---

[1] The order (ECF Doc. 3) originally requiring the brief by June 17, 2006, was vacated.

without objection. In pertinent part, the adversary proceeding alleges breach of contract, conversion, negligence, etc., incident to a proposed sale of substantially all the assets of the Plaintiffs' business, Gators[2], and the assumption of its lease by the Defendants, V Restaurants, Inc. ("V R"), and Vince Saele ("Saele"). The action further alleged conspiracy against V R, Spectrum/Vaughn Plaza L.L.C. ("Spectrum")[3], and Saele.

To summarize the instant action, the Goodwyn leased commercial space from Spectrum in a strip mall near the Eastern By-Pass and Vaughn Road, Montgomery, AL. The restaurant went by the name of Gators and was enormously popular. In 2004, Goodwyn entered into preliminary negotiations with Saele for Saele to assume the lease and purchase the assets and amenities associated with the restaurant. Originally, Saele agreed to pay $120,000.00 and then rescinded this offer. Negotiations continued and finally Saele offered to pay $90,000.00. The $90,000.00 price or consideration was to be apportioned with $30,000.00 going to the IRS to release its lien, $30,000.00 to Regions Bank to release its lien, and $30,000.00 going to Spectrum to release its claim[4].

The agreement was reduced to a writing[5] and Saele went into immediate possession. Goodwyn, through counsel, attempted to secure the lien releases from Regions Bank and the IRS. The lien release from Regions Bank was secured almost immediately, however, because of various procedural hurdles, the lien release from the IRS was not obtained until a couple of weeks after the closing date suggested by the above writing. There was never a suggestion or objection raised to the delay. Consequently, when counsel for Goodwyn received notice of lien release from the IRS he immediately notified Saele's counsel. One or two days later, it was

---

[2] Gator's is located at 5040 Vaughn Road, Montgomery, AL, 36116-1149. It has been previously known as Gators Plaza Café, however, the restaurant was renamed Gator's, and Gator's Fish House. After the Defendants took control, the restaurant has changed names one or more times. The current name is Gator's Bar and Grill.  Nevertheless, the restaurant it will be referred collectively herein as Gators.
[3] Spectrum was voluntarily dismissed, June 8, 2006.
[4] In addition to the $30,000.00 payable to Spectrum, the contracting parties also agreed that spectrum would get a new lease or a lease extension.

suggested that Saele would not close and pay the money. Moreover, Saele has remained in possession until the date of this brief.

Approximately four months after Saele gave notice that he would not close and pay the money, Spectrum sold the restaurant equipment on the courthouse steps. However, this action would not have occurred if Saele had paid the purchase price as agreed[6]. Moreover, items like goodwill, signage, recipes, software, data files, and other intangibles were not sold, and for that matter could not have been sold, on the courthouse steps.

The Plaintiffs[7] brought a civil action in state court and requested a jury trial. No jury trial was requested by the other Defendants. When Regions Bank was not paid, Regions Bank filed a civil action against Goodwyn. This civil action precipitated Goodwyn's bankruptcy; and it was to the bankruptcy that the instant removal was directed.

The state civil action was removed, August 12, 2005, without objection and has progressed uninterrupted through motions, notices, discovery, status conferences, and a motion for summary judgment ever since.

After the Saele Defendants lost on summary judgment (ECF Doc. 27), June 9, 2006[8], they filed a motion to withdraw the reference and it is the request for stay that is now before the court[9].

### Statement of the Case

The Plaintiffs originally filed their complaint in the Circuit Court of Montgomery County, Alabama, Case Number CV 2005-306, February 3, 2005. The Defendants filed motions

---

[5] Sometimes the writing is referred to as a letter of intent and sometimes as a contract.
[6] Saele had already entered a lease agreement with Spectrum.
[7] The civil action in state court, after the Goodwyn bankruptcy, was taken over and followed by Susan S. DePaola, Trustee, 11 U.S.C. § 541.
[8] The parties attended a pretrial conference on Tuesday, June 6, 2006, and a ruling on the motion for summary judgment was announced in the pretrial hearing.
[9] A similar motion was filed with the bankruptcy court and has been scheduled for oral argument, June 19, 2006, 2:00 PM.

to dismiss, March 20, 2005, and these motions were denied by the Circuit Court, March 16,

2005. The Defendants joined issue.[10]

On August 10, 2005, Goodwyn filed a voluntary petition [11] under Chapter 7 of Title 11,

United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Susan S. DePaola was appointed Interim

Trustee, August 11, 2005.

The instant case was removed from the Circuit Court of Montgomery County, Alabama,

August 12, 2005 (ECF Doc. 4) and the Trustee filed an application for employment, 11 U.S.C. §

327(e), of Memory Day & Azar as special counsel, November 18, 2005 (ECF Doc. 15) and

employment was ordered approved, December 16, 2005 (ECF Doc. 18).

Defendant Spectrum filed a motion for summary judgment while the case was pending in

the Circuit Court of Montgomery County. Defendants V R and Saele filed their motion for

summary judgment, March 14, 2006 (Adv Pro ECF Doc.  14). The motion was ordered denied,

June 6, 2006 (ECF Doc. 27) and again June 15, 2006 (ECF Doc. 36). Also, Spectrum was

voluntarily dismissed (ECF Doc. 35).

The Saele Defendants filed a motion to withdraw the reference (ECF Doc. 28), June 9,

2006, and a companion motion to stay was filed June 15, 2006 (ECF Doc. 34).

The motion to withdraw the reference in district court is at (DC-ECF Doc. 1) and the

court entered and order to show cause the motion to stay (DC-ECF Doc. 3 and 4). Also, the Saele

Defendants have requested a emergency motion to stay, June 15, 2006.

### Statement of the Issues

When a civil action is 1) filed is state court and jury trial is requested; 2) the same civil

action requesting recovery of assets and damages is removed to Federal District Court without

---

[10] One or both Defendants also filed counterclaims.
[11] Case Number 05-32325

objection; 3) the civil action has been pending in bankruptcy court for ten months and has involved numerous motions, hearings, conferences, a motion for summary judgment, and orders; and, 4) when the civil action is set for trial, June 23, 2006, will the Defendants be permitted to withdraw the reference and seek a stay.

### Statement of the Facts

Goodwyn operated a restaurant in East Montgomery and the restaurant at material times was commonly known as "Gators". Gators maintained a broad customer base, goodwill, and a reputation for quality food and service in Montgomery County, Alabama. However, between 2002 and 2004, due to increasing debts, Goodwyn and Simple Pleasures actively pursued and investigated several offers to sell the assets, goodwill, and customer base of Gators.

In or about July 2004, Goodwyn received an offer from V R and Saele to purchase Gators and the parties subsequently signed a letter of intent. A copy of the letter of intent has been introduced in the depositions.

In pertinent part, the parties agreed to a $90,000.00 purchase price. For the purchase price, V R and Saele agreed to purchase Gators, as a going concern, to include all equipment, inventory and supplies, furniture, fixtures, and amenities. In addition, V R and Saele, *inter alia*, agreed to assume responsibility for the existing lease with Spectrum.

The purchase price ($90,000.00) was allocated, a $30,000.00 payoff of the $110,000.00 lease arrearage with Spectrum[12], a $30,000.00 payoff of the $83,000.00 debt to Regions Bank, and a $30,000.00 payment to the Internal Revenue Service for its cooperation in releasing a lien, settlement of approximately $110,000.00 debt to the Internal Revenue Service. The Internal

---

[12] This compromise also included a lease from Spectrum to Vince Saele.

Revenue Service had filed a lien on the Defendants' business and settlement would include release by the Internal Revenue Service of their federal tax lien.[13]

The sale included intangibles such as a large customer base, experienced and trained staff, good will, over 15 years of perfected and renowned recipes, signage, telephone number, licenses and permits, and direct assistance with the transition of all existing employees to the new owners. Spectrum, *inter alia*, agreed to release Goodwyn and Simple Pleasures from their lease obligations. Regions Bank agreed to release its liens, pursuant to the promissory note and security agreement, on the assets of Gators.

Concurrent with the contract for purchase of Gators, Goodwyn verbally agreed to allow V R and Saele to take possession of the restaurant and pending approval of the application to the Internal Revenue Service for settlement and release of the lien. The Defendants would make payments to the Plaintiffs in the amount of $250.00 until closing. V R and Saele also had access to the Gators staff and personal property associated with the restaurant. Moreover, in a show of good faith, Goodwyn did not pursue or solicit other buyers of Gators. V R and Saele had sole and complete possession of the assets and operation of Gators from September 24, 2004, through the date the Plaintiffs filed their lawsuit in the Montgomery County, Circuit Court.

These terms and conditions of the sale and purchase price were integrated into a letter agreement, prepared by the Saele Defendants, and signed by the parties while Goodwyn's counsel was out of town, September 24, 2004.

After the Internal Revenue Service gave conditional approval to release its lien, counsel for the Plaintiffs notified counsel for V R that a closing should be scheduled. On the day of notification, counsel for V R notified counsel for the Plaintiffs that V R and Saele were "no

---

[13] In the negotiations, the payment to Spectrum and Regions Bank would pay the personal liability of Goodwyn; however, Goodwyn would have continued responsibility for the trust fund portion owed the Internal Revenue Service.

longer interested in the terms of the contract" and withdrew their offer to purchase Gators. Nevertheless, V R and Saele remained in sole possession of the personal property and leased premises.

After V R took possession, Spectrum gave notice to vacate and subsequently sold the assets of the Plaintiffs to V R.[14] Spectrum advertised the leasehold property for public sale in the Montgomery Advertiser, in late January 2005. Spectrum alleged abandonment of the leased premises and has sold the fixtures, equipment, and other personal property belonging to Simple Pleasures, in February 2005.

The Plaintiffs were not paid and Goodwyn subsequently had to file bankruptcy when Regions Bank filed a lawsuit. Notwithstanding, V R and Saele have remained in constant and continuous possession.

## Arguments and Authorities

## Generally

Bankruptcy courts are courts of limited jurisdiction, In Re Munford, 97 F.3d 449, 453 (11th Cir, 1996). The jurisdiction of bankruptcy courts is limited to civil proceedings that arise under, arise in, and are related to cases under Title 11, 28 U.S.C. § 1334(b). See also, Johnson, Blakely, Pope, Boker, Ruppel, and Bruns, P.A. v. Alverez (In Re Alverez), 224 F.3d 1273, 1280 (11th Cir. 2000). Arising under proceedings are matters developed and created by the bankruptcy code, Carter v. Rogers, 220 F.3d 1249, 1253 (11th Cir. 2000); Also see Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431, 1435 (9th Cir. 1995). Arising in proceedings are generally administrative type matters . . . that could arise incident to and only in bankruptcy. Carter, 220 F.3d at 1253; Maitland, 44 F.3d at 1435.

---

[14] The sale did not include the recipes, telephone number, other general intangibles, and signage.

The Eleventh Circuit has also implemented a test to determine if an adversary proceeding is related to a case under Title 11:

> "'[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy.' " Lemco Gypsum, Inc., 910 F.2d at 788 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984)). In other words, " '[a]n action is [sufficiently] related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)and which in any way impacts upon the handling and administration of the bankrupt estate.' " Lemco Gypsum, Inc.,910 F.2d at 788 (quoting Pacor, Inc., 743 F.2d at 994)

Said another way, for the court to invoke related to jurisdiction, there must be some minimum bankruptcy connection or nexus between the civil proceeding and a Title 11 proceeding , Continental Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F. 3d 1340, 1345 (11thCir. 1999).  Munford, 97 F.3d at 453 (11th Cir. 1996)(citing In re Lemco Gypsum, Inc., 910 F.2d 784, 787 (11th Cir. 1990)).

The Middle District of Alabama has adopted a general order of reference which refers all cases arising in, under, or related to Title 11 to the bankruptcy court, *General Order of Reference*, April 25, 1985.  This statutory design ensures that "the judicial power of the United States will be ultimately exercised by an Article III Court," In re Parklane/Atlanta Joint Venture, 927 F.2d 532, 538 (11th Cir. 1991).

If a party believes that a particular case should be heard in district court, it may petition the district court to "withdraw the reference" and relieve the bankruptcy court of jurisdiction, 28 U.S.C. § 157 (d).  Section 157(d) states:  The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of

both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. The decision of whether to withdraw the reference belongs solely to the district court judge, Fed. R. Bankr. P. Rule 5011.

## Withdrawal of the Reference

There are two distinct types of withdrawal: (1) Mandatory and (2) Permissive. Mandatory withdrawal is required if the proceeding requires consideration of both Title 11 and non-bankruptcy code federal law. However, there are no issues here before the court to imply or indicate that issues of non-bankruptcy federal law are at issue in this proceeding, therefore the instant case must be evaluated as a permissive withdrawal request.

## Is Withdrawal of the Reference Proper in this Proceeding?

The threshold issue for determining whether a bankruptcy court has subject matter jurisdiction in a case directs us to 28 U.S.C. § 1334.  Section 1334(b) states that a district court has "original, but not exclusive jurisdiction" for "all civil proceedings arising under Title 11, or arising in or related to cases under Title 11."   In determining whether a federal court has subject matter jurisdiction, it is important to engage in a careful examination of the pleadings to determine whether bankruptcy law creates the cause of action or if the right to the requested relief is dependent upon a substantial question of bankruptcy law.  In re: Johnson, 2002 WL 31084142, at *1 (Bankr. D.S.C. July 31, 2002); see also Pioneer Credit Co. v. Detamore (In re: Detamore), 2005 Bankr. LEXIS 2182, at *4-5 (Bankr. N.D. Ga. Sept. 27, 2005).

In the instant case, the bankruptcy court has subject matter jurisdiction in that the instant adversary proceeding is an action to determine if certain properties are assets of the bankruptcy estate and an action to turnover those properties, 11 U.S.C. § 157(b)(2)(E). Therefore, the

matters raised in the pleadings and existing between the parties necessarily **depend upon the resolution of substantial questions of bankruptcy law**.

Further, 28 U.S.C. § 157 classifies matters as either core proceedings, in which a bankruptcy court may "hear and determine" and on which the court "may enter appropriate orders and judgments," § 157(b)(1), or "non-core proceedings," which the bankruptcy court may hear, but for which the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for de novo review, § 157(c)(1). Said another way, these are the matters that constitute and qualify, among other things, the very matters delegated exclusively to bankruptcy courts under Title 11 or arising in Title 11, 11 U.S.C. § 1334 (a and b).

### Core Non-Core Issues

Courts, in determining whether to exercise such discretion, have looked to the factors expressed by the Second Circuit in In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2nd Cir. 1993), which include whether the claim or proceeding is core or non-core, whether it is legal or equitable, judicial efficiency, the prevention of forum shopping, and the economic use of the debtors' and creditors' resources, Id. Section 157(b)(3) envisions that the bankruptcy judge will determine, in the first instance, whether a matter is core or non-core. See 28 U.S.C. § 157(b)(3); In re CIS Corp., No. 92 Civ. 2740(JFK), 1992 WL 176482, at *2 (S.D.N.Y. July 17, 1992) (collecting cases).

28 U.S.C. § 157(b)(1) provides that bankruptcy courts have full judicial power over "core proceedings arising under Title 11, or arising in a case under Title 11." Section 157 equates core proceedings with the categories of "arising under" and "arising in" proceedings. Mich. Empl. Sec. Comm'n v. Wolverine Radio Co. (In re: Wolverine Radio Co.), 930 F.2d 1132, 1144 (6th Cir. 1991).

Moreover, adjudicating the competing claims of creditors to property of the bankruptcy estate is an essential function of this Court, In re: Lunan Family Restaurants, 194 B.R. 429, 440 (Bankr. N.D. Ill. 1996) ("[a]djudicating competing claims of creditors to the property of a bankruptcy is the central function of bankruptcy law").

In the instant case, the Saele Defendants have converted and appropriated estate assets which the Trustee seeks to recover. Some of the assets were the subject of the courthouse steps sale and other assets were not sold on the courthouse steps. Regardless, the Trustee has taken up the claim of Goodwyn in order to pay claims of Regions Bank, the IRS, and other general unsecured creditors. Based upon this legal theory, the Trustee's actions are core as found by 28 U.S.C. § 157(b)(2)(A and E). Based upon this finding and under a long line of cases recognized by the Eleventh Circuit Court of Appeals, the bankruptcy court has jurisdiction to hear the instant civil action, 28 U.S.C. § 1334(b), in that the civil action arises in and under and action under Title 11.

## Timeliness of Withdrawal

"The reason for the timeliness requirement is to prevent parties from forum shopping, stalling, or otherwise engaging in obstructionist tactics." In re Holcomb Health Care Services, LLC, 329 B.R. 622, 645 (M.D. Tenn. 2004);  In re Matter of LissnerCorp., 115 B.R. 604, 608-612 (N.D. Ill.1990); In re Giorgio, 50 B.R. 327, 328-329 (D.R.I.1985). Unfortunately § 157 (d) does not provide a clear rule on what is timely or untimely.  What may be timely for one movant will not be timely for another.  Courts have differed, however only slightly, on the definition of "timeliness" with respect to withdrawal. Security Farms v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers,  124 F.3d 999,1007 n.3 (9th Cir. 1997) (motion to withdraw is timely "if it was made as promptly as possible in light of the developments in the

bankruptcy proceeding"); In re Sevko, Inc.,  143 B.R. 114, 116(N.D. Ill. 1992) (motion to

withdraw reference is either as soon as possible, or at the first reasonable opportunity after the

moving party has notice of the grounds for withdrawal, depending on the facts of each case);

Burger King Corp v. B-K of Kan., Inc., 64 B.R. 728,730-31 (D. Kan.1986) (holding that a ten-

month delay in filing a motion to withdraw reference was "timely," albeit at "the outer limit");

Laine v. Gross, 128 B.R. 588, 589 (D. Me.1991) (a motion to withdraw the reference that was

filed six months after the time from which "it was clear that grounds for withdrawal existed" was

not timely filed).

   "Despite the absence of a statutory definition, courts are in general agreement that a

motion is timely if it was made as promptly as possible in light of the developments in the

bankruptcy proceeding, or, more simply, if it was made at the first reasonable opportunity."

United States v. Kaplan, 146 B.R. 500, 503.

   When evaluating a motion for withdrawal, the court is required to examine the

circumstances of the underlying bankruptcy proceeding.  In this case, the Saele Defendants have

enthusiastically participated for nearly ten months of litigation in the bankruptcy court, an

answers (no answer filed in the bankruptcy court), multiple live and telephonic hearings, and a

motion for summary judgment, all without mention of moving the proceedings to district court.

It should not go without mentioning that the above actions have involved a lawyer for the Saele

Defendants that is well schooled in bankruptcy matters and has been on the Trustee Panel for

several years. It has been clear for months that this case was scheduled for a bench trial.

However, the Saele Defendants have waited almost until the date of the bench trial in the

bankruptcy court and just after their motion for summary judgment was denied to file their

motion for withdrawal.

**Request for Jury Trial**

Although the Saele Defendants have not clearly articulated the pretext for the instant

motion to withdraw the reference, it will be assumed by the Trustee that the pretext is based on

the oral finding of the bankruptcy court[15] that the civil action would proceed to trial on June 23,

2006, without a jury. At a minimum, if the Saele Defendants were genuinely interested in a jury

trial, and not just a "second bite of the apple", the motion to withdraw the reference should have

been filed March 16, 2006. On the contrary, the Saele Defendants have simply filed a "copy cat"

motion on the heels of two others that were recently filed.

Judge Albritton in a very recent memorandum decision[16], Reding v. Gallagher, Case

Number 2:06-mc-3295-WHA (unpublished memorandum decision), said on the issue of a failure

to timely protect a right to a jury trial:

> On August 28, 2003 Gallagher answered the Trustees' amended
> complaint and demanded a jury trial, meeting the minimum requirements
> of Fed. R. Civ. P. 38(d).  In the bankruptcy context, it is clear that
> Gallagher needed to take additional steps to protect their right to a jury
> trial in the district court and failed to do so.
>
> A party may waive its right to a jury trial by failing to move timely to
> withdraw the reference.  Stainer v. Latimer (In re Latimer), 918 F.2d 136
> (10th Cir.1990); In re HA-LOIndustries, Inc.  326 B.R. at 123.  Ordinarily,
> if a jury demand has been asserted, and at least one of the parties refuses
> to consent to the conduct of the jury trial in the bankruptcy court (as
> Gallagher has done here), the bankruptcy court can no longer conduct a
> trial of the matter.  28U.S.C. § 157(e);  Blackwell v. Deloitte & Touche,
> LLP (In re Blackwell), 279 B.R. 818, 820(Bankr. W.D. Tex.2002). A
> bankruptcy court, however, cannot sua sponte transfer the matter to district
> court and only the district court is empowered to withdraw the reference.
> As the Blackwell opinion concluded:  "Both the statute and the rules
> contemplate the party who desires(and needs) withdrawal to affirmatively
> seek it by motion to the district court.  If neither party timely takes this
> additional step (the essential last step to assure that one gets the jury trial
> they desire before the tribunal they prefer), then that failure can only be

---

[15] The order of March 16, 2006, requested the parties position regarding a jury trial.

[16] In the Reding case, Judge Albritton denied the motion to withdraw the reference and the motion to stay.

construed as a waiver of the party's right to a jury trial." In re Blackwell, 279 B.R. at 819-20; In re HA-LO Industries, Inc. 326 B.R. at 123.

> This court agrees that for a party to be entitled to a jury trial in the district court, the party must not only move to withdraw the reference to the bankruptcy court in addition to making a proper jury demand, but that the motion to withdraw must be timely made. To hold otherwise would be unduly disruptive to orderly procedure and would allow a party to gamble on the outcome of proceedings in the bankruptcy court and, when disappointed, try at the last minute to start all over again before another court.

If indeed the Saele Defendants are permitted to rely upon the jury trial demand that was made in circuit court, any such reliance is negated on their failure to timely pursue their motion to withdraw the reference. In fact, the Saele Defendants could have protected their rights by originally objecting to the removal and, with that failing, they had numerous other opportunities prior to filing the motion for summary judgment and then losing the summary judgment and facing a trial within a matter of days.

### Motion to Stay

In the Saele motion to withdraw the reference, the Saele Defendants hinge their motion on the assumed right of a jury trial. The Seale Defendants, based upon this pretext, are attempting to forestall the scheduled bench trial. As the Court held in In re FMI Forwarding Co., Inc., _ F. Supp. 2d , 2005 U.S. Dist. LEXIS 941 at *21 (S.D.N.Y. 2005), such an attempt to prevent a ruling on a motion pending before the bankruptcy court was an improper basis to withdraw the reference. Not unlike the timing of the motion to withdraw the reference in this case, that Court noted: "The timing of [movant's] withdrawal motion therefore screams forum-shopping of the [pending] claim..., and, as such, the motion is denied as untimely." Id.

As the Saele Defendants' motion to stay is nothing more than an overt exercise in forum shopping, which can only serve to greatly and unduly prejudice the Trustee, a stay is not

appropriate and a motion for stay is due to be denied. If the Saele Defendants are dissatisfied with a ruling on the pending issue before the bankruptcy court, the proper procedure to seek redress would be through an appeal as opposed to the present motion to withdraw the reference.

In In re Securities Group 1980, 89 B.R. 192 (Fla. 1988), a defendant filed a motion to withdraw the reference. In that case, the defendant sought a stay of any further bankruptcy court proceedings, which was denied the same day. There was a motion for partial summary judgment pending against the party seeking withdrawal of the reference on the issue of liability, which was thereafter granted by the bankruptcy court.

In analyzing whether to withdraw the reference, the Court reasoned:

> The decision whether to withdraw the reference in the present instance turns on the application of the second sentence of 28 U.S.C. § 157 (d). Defendants have rested their argument for withdrawal of the reference solely on the ground that resolution of the proceeding requires consideration of both bankruptcy law and federal law regulating organizations or activities affecting interstate commerce. A threshold issue in application of § 157(d) is the timeliness of the motion to withdraw the reference. "If a motion for withdrawal of reference is not timely made, it will certainly be held that the provisions of the second sentence of section 157(d) have been waived." 1 Collier on Bankruptcy para. 3.01 [2] [e], at 3-63 (15th ed. 1987). The Court finds that the present motion is not timely made and therefore will deny it.

> The statute does not define timeliness. Bankruptcy Local Rule 107(a) requires that a motion to withdraw proceedings must be filed with the Clerk of the Bankruptcy Court not later than the date set for filing an answer under Bankruptcy Rule 7012, which is thirty days after issuance of the summons, except when a different time is prescribed by the Bankruptcy Court. Although Bankruptcy Local Rule 107(a) became effective January 1, 1987, after the first answer filed by defendants, the Rule applied to the amended answer, counterclaim and third-party complaint filed on July 8, 1987, and the answer, counterclaim and third-party complaint filed on February 8, 1988, in response to the amended complaint.

> Note 4. If Bankruptcy Local Rule 107(a) did not apply directly in this case, the Court would still view it as a reasonable definition of what constitutes a "timely" motion pursuant to § 157(d). Notably, the thirty-day

period coincides with the statutory period for filing a petition for removal pursuant to 28 U.S.C. § 1446(b). The so-called mandatory withdrawal of reference is sufficiently analogous to a petition to removal that the latter is a useful source by which to measure withdrawal proceedings.

Id. 194. As a result, the Court held the attempt to withdraw the reference was untimely. Importantly, that case was not on the eve of trial when it made its ruling and that fact alone calls into question the viability of the Saele Defendants' motion to withdraw the reference in this case.

## Conclusion

Based upon the foregoing, the Trustee requests that the motion to withdraw the reference be denied, and under the logic extended to injunctive relief, the motion to stay should likewise be denied on the basis that the Saele Defendants can and will not prevail regarding the instant motion.

Respectfully submitted on June 19, 2006.

Memory Day & Azar

By:     /S/ Von G. Memory
        Von G. Memory
        ASB-8137-071V

        James L. Day
        ASB-1256-A55J

        Attorneys for Plaintiff

OF COUNSEL:

Memory Day & Azar
Post Office Box 4054
Montgomery, AL 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☑ E-mail

☐ facsimile

☐ hand delivery

☐ delivered in open court

on June 19, 2006.

D. Coleman Yarbrough, Esq.
2860 Zelda Rd.
Montgomery, AL 36106

Daniel G . Hamm, Esq.
560 South McDonough St.
Montgomery, Alabama 36104

/S/Von G. Memory
OF COUNSEL

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

PHILLIP GOODWYN,

      Debtor.

PHILLIP L. GOODWYN and
SIMPLE PLEASURES INC.,

      Plaintiffs,

v.

V RESTAURANTS, VINCE SAELE, and
SPECTRUM/VAUGHN PLAZA LLC.,

      Defendants.

Case No. 05-32325-WRS
Chapter 7

Adv. Pro. No. 05-3062-WRS

## MEMORANDUM DECISION

This Adversary Proceeding is before the Court upon the Motion to Stay

Proceedings filed by Defendants Vince Saele and V Restaurants.  (Doc. 34).  The Court

heard argument on the motion on June 19, 2006.  Plaintiffs Phillip L. Goodwyn[1] and

Simple Pleasures, Inc., were present by counsel Von G. Memory.  Defendants Vince

Saele and V Restaurants were present by counsel Daniel G. Hamm.  For the reasons set

forth below, the Defendants' Motion to Stay Proceedings is DENIED.  (Doc. 34).

---

[1] Phillip L. Goodwyn filed a voluntary Chapter 7 petition in this Court on August 10, 2005.  (Case No. 05-32325, Doc. 1).

# I. BACKGROUND

As this Adversary Proceeding is before the Court on a motion to stay proceeding, the Court will assume, for purposes of deciding this motion, that the facts as alleged by the Plaintiffs, the nonmoving party, are true.  This civil action was originally filed in the Circuit Court of Montgomery County, Alabama.  (Case No. CV 2005-306).  The Plaintiffs removed the case to this Court on August 12, 2005.  (Doc. 1).  The Plaintiffs have dismissed their claims against Defendant Spectrum/Vaughn Plaza, LLC, leaving for adjudication the Plaintiffs' claims against Defendants Vince Saele and V Restaurants. (Doc. 35).  Essentially, the complaint alleges that Saele has wrongfully taken Goodwyn's restaurant business without compensating him.  Plaintiffs allege several causes of action, including breach of contract, conversion, unjust enrichment, damages for use, fraud, and wantonness/willfulness.  (Doc. 1).

The pertinent facts involving the transactions underlying the instant lawsuit are as follows.  On September 24, 2004, Phillip Goodwyn and Vince Saele, acting on behalf of their respective corporations, Simple Pleasures and V Restaurants, entered into a contract to purchase "Gators" restaurant, located at 5040 Vaughn Road, Montgomery, Alabama, 36116.  The agreed purchase price was $90,000, to be allocated in the following way: 1) a $30,000.00 payoff of a $110,000 lease arrangement with the landlord, Spectrum; 2) a $30,000.00 payoff of the $83,000.00 debt owed to Regions Bank; and 3) a $30,000.00 payment to the Internal Revenue Service in exchange for a release of its lien on the business and a settlement of the $110,000.00 debt owed.  (Doc. 17).  The purchase price

included Gator's assets, customer base, goodwill, recipes, and assistance with the transition of existing employees. Additionally, Goodwyn allowed Saele to have sole and complete possession of the assets and operation of Gators from the date the contract was signed on September 24, 2004. The Defendants have remained in sole possession of the restaurant business up through the current date.

The contract specified an agreed closing date of October 22, 2004 and that the property would be transferred without any liens or encumbrances. (Doc. 17). There is no dispute that one or more of the liens on the business was not released by the October 22, 2004 date. Additionally, sometime in February of 2005, Spectrum sold certain personal property of Goodwyn and Simple Pleasures on which it had a landlord's lien, for $21,874.00. (Doc. 1). The Defendants contend that because Plaintiffs were in breach of the contract by having failed to release all of the liens on the business by the specified date, they are entitled to keep the restaurant business. Plaintiffs on the other hand assert that the Defendants' actions constitute, inter alia, fraud, breach of contract, and conversion. (Doc. 1).

On March 14, 2006, the Defendants filed a motion for summary judgment. (Doc. 14). After hearing argument on the motion, and upon finding genuine issues of material fact in dispute, the Court determined that the only viable course would be to proceed with the trial of Plaintiffs' case. This Adversary Proceeding is scheduled for trial beginning June 23, 2006. (Doc. 11). On June 6, 2006, the Court held a pretrial conference, wherein the Plaintiffs withdrew their jury demand. On June 9, 2006, Defendants moved to withdraw the reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d); see also Rule 5011, Fed. R. Bankr. P. The motion to withdraw the reference is now pending

before the District Court.  On June 15, 2006, the Defendants filed a Motion to Stay

Proceedings.  (Doc. 34).

## II.  DISCUSSION

Title 28 U.S.C. § 157(a) provides that the District Court may refer any or all cases

under title 11, arising in or related to a case under title 11 to the bankruptcy judges for the

district.  Additionally, 28 U.S.C. § 157(d) provides that the district court may withdraw,

in whole or in part, any case or proceeding referred to the Bankruptcy Court.  Motions for

withdrawal or abstention are govern by Rule 5011, Fed. R. Bankr. P.  The rule provides

as follows:

> The filing of a motion for withdrawal of a case or proceeding or for abstention
> pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or
> any proceeding therein before the bankruptcy judge except that the bankruptcy
> judge may stay, on such terms and conditions as are proper, proceedings pending
> disposition of the motion . . .

Rule 5011, Fed. R. Bankr. P.  "The rule clearly states that the Bankruptcy Court is not

required to 'abstain' or stay proceedings pending the district court's decision on the

motion to withdraw the reference.  The question is more properly couched in terms of

whether the Bankruptcy Court *should* stay the proceedings pending the district court's

decision."  In re: Interco, Inc., 135 B.R. 359, 361 (E.D. Mo. 1991); see also In re: Eagle

Enterprises, Inc., 259 B.R. 83, 86 (E.D. Pa. 2001).  In deciding whether to stay a

proceeding pending judicial review, courts generally consider factors such as:

(1)  the likelihood the moving party will prevail on the merits;

(2)  the prospect of irreparable injury to the moving party if relief is withheld;

(3)  the possibility of harm to other parties if relief is granted; and

(4)  the public interest

Freeman v. Cavazos, 923 F.2d 1434, 1437 (11th Cir. 1991); In re: Interco, Inc., 135 B.R. at 361 (citing Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986)).  The Defendants, as the moving parties, have the burden of demonstrating why granting a stay of these proceedings would be appropriate.  Rule 5011, Fed. R. Bankr. P.; In re: Eagle Enterprises, Inc., 259 B.R. at 86 (citing In re: TJN, Inc., 207 B.R. 499, 501 (Bankr. D.S.C. 1996)).

The Defendants assert that proceedings in this Court should be stayed as they have a right to a jury trial, which cannot be had in bankruptcy, without the express consent of all the parties.  28 U.S.C. § 157(e).  Specifically, the Defendants argue that they have relied upon the Plaintiffs' jury demand asserted in the complaint filed in the Circuit Court of Montgomery County, and that such demand cannot be withdrawn without the consent of the Defendants.  (Docs. 1, 28, 34).  See Rule 38, Fed. R. Civ. P.; Rule 38, Ala. R. Civ. Pro.

First addressing the likelihood of success with respect to the Motion for Withdrawal of the Reference, 11 U.S.C. § 157(d) provides for either permissive withdrawal of the reference upon a showing of cause, or mandatory withdrawal of the reference.  The majority of courts that have considered the issue have concluded that mandatory withdrawal of the reference is proper only if the court can make an affirmative determination that resolution of the claims will require substantial and material consideration of non-code federal statutes that have more than a de minimis impact on

interstate commerce.  See Reding v. Gallagher (In re: Childs), 2006 WL 1318598, at *3 (M.D. Ala. May 15, 2006)(citing In re: TPI Intern. Airways, 222 B.R. 663, 667 (S.D. Ga. 1998)).  In the instant case, the relevant non-bankruptcy law is Alabama law, as applied to various state law causes of action including breach of contract, conversion, and fraud. Accordingly, the District Court may find that mandatory withdrawal is not appropriate.

Next examining whether cause has been shown for permissive withdrawal, the District Court may consider several factors including: (1) the advancement of uniformity in bankruptcy administration; (2) decreasing forum shopping and confusion; (3) promoting the economical use of the parties' resources; and (4) facilitating the bankruptcy process; (5) whether the claim is core or non-core; (6) efficient use of judicial resources; (7) a jury demand; and (4) prevention of delay.  Id. (citations omitted).

This Adversary Proceeding has been pending in this Court since August 12, 2005. (Doc. 1).  The Court finds it significant that at no point in these proceedings did the Defendants raise the issue of a jury trial, either in the pleadings or at previous hearings, until the Court held a pretrial conference on June 6, 2006.  The Motion for Withdrawal of the Reference was filed approximately two-weeks before trial, and only after this Court denied the motion for summary judgment.  (Docs. 27, 28).  As the Motion for Withdrawal of the Reference was filed on the very same day as this Court's denial of the Defendants' motion for summary judgment, this appears to be a blatant case of forum shopping on the part of the Defendants.  (Docs. 27, 28).  Additionally, the District Court may find that the instant Motion for Withdrawal of the Reference was not timely filed.  In a recent decision involving the withdrawal of the reference handed down by the District Court, the following was stated:

> Allowing [the defendant] to withdraw under these circumstances would give
> future parties 'an incentive not to move to withdraw the reference until long after
> trials are scheduled, and then to wait to the eve of trial, effectively causing
> adversary proceedings to languish in the bankruptcy court and preventing the firm
> scheduling of trial dates"

In re: Childs, 2006 WL 1318598, at *3 (M.D. Ala. May 15, 2006)(citing HA 2003

Liquidating Trust v. J.P. Morgan Partners (In re: HA-LO Industries, Inc.,), 326 B.R. 116

(Bankr. N.D. Ill. 2005).  While there are no bright line rules in determining what is

timely, moving for withdrawal of the reference two-weeks before trial is not timely under

these circumstances.  In In re: Childs, the District Court also discussed the consequences

of an untimely filed motion to withdraw the reference, stating that "[a] party may waive

its right to a jury trial by failing to move timely to withdraw the refernce." (citing Stainer

v. Latimer (In re: Latimer), 918 F.2d 136 (10th Cir. 1990); In re: HA-LO Industries, Inc.,

326 B.R. 116 (Bankr. N.D. Ill. 2005)).  The Defendants contend that "[h]istorically,

decisions on the withdrawal of the reference to the bankruptcy court have been resolved

by the District Court within three to seven weeks."  (Doc. 34).  The Defendants failed to

cite any case law in support of this position.  Considering that the motion to withdraw the

reference is untimely filed, the Defendants have failed to demonstrate a likelihood of

success on the merits.

Moreover, as the trial is scheduled to begin on June 23, 2006, the Court is not

inclined to stay these proceedings absent a showing of prejudicial harm to one of the

parties or other justifying circumstances.  The Defendants have not produced any

evidence of harm that would be suffered by them if the proceedings were not stayed.  On

the other hand, were these proceedings stayed, the harm to the Plaintiffs would be

significant and tangible.  Plaintiffs are seeking redress for an alleged wrongful taking of a

restaurant business, in which the Defendants are now in possession. The likely outcome of a stay of proceedings would be continuing damages and future loss incurred by Plaintiffs. Balancing the potential harms to each party, the Court determines that the harm suffered by Plaintiffs in the event of a stay outweighs any potential harm to the Defendants. In light of this determination, the Defendants have failed to meet their burden of demonstrating that a stay of these proceedings would be either justified or appropriate.

## III.  CONCLUSION

For the reasons stated above, the Defendants' Motion to Stay Proceedings is DENED. (Doc. 34). The Court will enter an Order consistent with this Memorandum Decision by way of a separate document.

Done this 19th day of June, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Von G. Memory, Esq.
   Daniel G. Hamm, Esq.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                            Case No. 05-32325-WRS
                                                                 Chapter 7
PHILLIP GOODWYN,

      Debtor.

PHILLIP L. GOODWYN and
SIMPLE PLEASURES INC.,

      Plaintiffs,                                              Adv. Pro. No. 05-3062-WRS

v.

V RESTAURANTS, VINCE SAELE, and
SPECTRUM/VAUGHN PLAZA LLC.,

      Defendants.


## <u>ORDER DENYING MOTION TO STAY PROCEEDINGS</u>


For the reasons set forth in the Court's Memorandum Decision of this date, the

Defendants' Motion to Stay Proceedings is DENIED.  (Doc. 34).


Done this 19th day of June, 2006.


/s/ William R. Sawyer
United States Bankruptcy Judge


c: Von G. Memory, Esq.
   Daniel G. Hamm, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In re PHILIP GOODWYN, DEBTOR, | ) | |
| | ) | CASE NO. 2:06-mc-03323-WKW |
| | ) | |
| SIMPLE PLEASURES, INC., et al., | ) | |
| | ) | (        Chapter 7         ) |
| Plaintiffs, | ) | (Case No. 05-32325-WRS ) |
| | ) | |
| v. | ) | |
| | ) | (   Adversary Proceeding   ) |
| V RESTAURANTS, INC., et al., | ) | (        No. 05-03062        ) |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion for Withdrawal of the Reference and Transfer of Adversary Proceeding to the District Court (Doc. # 1) filed by Defendants V Restaurants, Inc., and Vince Saele (collectively "Saele") on June 12, 2006. For the reasons expressed below, the motion is due to be granted.

## I. FACTS AND PROCEDURAL HISTORY

In February 2005, Plaintiffs Simple Pleasures, Inc., and Phillip Goodwyn (collectively "Goodwyn") filed this lawsuit in the Circuit Court of Montgomery County, alleging various state law claims against Saele. The complaint includes claims for breach of contract, conversion, unjust enrichment, "damages for use," fraud, negligence, wantonness, and willfulness. For each claim, Goodwyn seeks a judgment for compensatory and punitive damages, interest, costs, attorney fees, and other relief the court deems just and appropriate. In his complaint, Goodwyn demanded a jury trial pursuant to Rule 38 of the Alabama Rules of Civil Procedure. After Saele's motion to dismiss was denied, Saele filed an answer that did not contain a jury demand.

In August 2005, Goodwyn filed a bankruptcy petition under Chapter 7 of Title 11 with the United States Bankruptcy Court for the Middle District of Alabama ("Bankruptcy Court"). Two days after the bankruptcy petition was filed, Goodwyn removed the state court lawsuit to the Bankruptcy Court.[1] A demand for jury trial was not marked on the adversary proceeding cover sheet.

The Bankruptcy Court's subsequent scheduling order included dates for discovery, dispositive motions, pretrial conference, and the trial. The scheduling order made no mention of trial by jury, jury selection, or filings such as jury instructions. Saele filed a summary judgment motion on March 14, 2006. By order dated March 16, 2006, the Bankruptcy Court scheduled the pretrial conference, at which the summary judgment motion would be argued and ultimately decided, for June 6, 2006. The Bankruptcy Court also contemplated the issue of a jury trial in this order:

> The Court further notes that the Plaintiffs made a demand for jury trial in their complaint. The Court will hear from the parties at the Pretrial Conference whether this matter is to be trial to the Court or to a jury. The Court will further consider whether this is a core proceeding.

(Mar. 16, 2006 Bankr. Order.)

A pretrial conference was held on June 6, 2006. The Bankruptcy Court heard arguments before orally denying the motion for summary judgment. (June 6, 2006 Conference Transcript 17.) The Bankruptcy Judge then stated: "I had forgotten about the demand for jury trial. I mean, if you want to go to district court and file a motion. I had forgotten that there was a demand for a jury trial in this case." (*Id*.) Goodwyn's counsel stated that Goodwyn had made a jury demand in state court; however, Goodwyn "did not in this court rely upon the rights of a jury trial and don't now, don't

---

[1] Goodwyn's bankruptcy filing is the underlying case for the instant adversary proceeding, which originated as the state court lawsuit. Susan S. DePaola was appointed trustee of Goodwyn's estate on the day after the bankruptcy petition was filed.

2

even feel like that we are entitled." (*Id*. 18.)  The Bankruptcy Court construed this statement as Goodwyn's waiver of right to trial by jury, noted that Saele did not make a jury demand in the answer, and scheduled a June 23, 2006 trial date for the adversary proceeding.

On June 9, 2006, three days after the pretrial conference, the Bankruptcy Court entered an order denying the motion for summary judgment.  The order did not address the jury trial issue or the issue of whether the proceeding was core or non-core.  On June 12, 2006, Saele filed the instant motion with this Court seeking a withdrawal of the reference.  Saele then filed  with the Bankruptcy Court, on June 15, 2006, an emergency motion to stay the trial of the adversary proceeding in the Bankruptcy Court pending this Court's ruling on the motion for withdrawal of the reference.  The Bankruptcy Court held a hearing on June 19, 2006, at which he denied Saele's motion to stay.  After briefing on the issue, this Court held a hearing on the motion for withdrawal of the reference on June 20, 2006.  On the same date, this Court ordered a stay of the adversary proceedings in the Bankruptcy Court.

## II.  DISCUSSION

In his motion for withdrawal of the reference, Saele asserts that this is a non-core proceeding, that he has a right to a trial by jury, that he is entitled to rely on Goodwyn's jury demand, that Goodwyn cannot withdraw the jury demand without Saele's consent, which has not been given, and that Saele's motion for withdrawal of the reference is timely filed.  Goodwyn opposes the motion, relying primarily on the authority of *In re Childs*, 342 B.R. 823 (M.D. Ala. 2006).  The Court will address these issues.

District courts have original jurisdiction of all cases under Title 11 and all civil proceedings related to such.  28 U.S.C. § 1334(a).  However, district courts may refer these cases to the district's

3

bankruptcy court, *see* 28 U.S.C. § 157, as the Middle District of Alabama did by entering a General Order of Reference on April 25, 1985. The district courts have the discretion to withdraw the reference upon a showing of cause.[2] 28 U.S.C. § 157(d); Fed. R. Bankr. P. 5011 . The showing of cause is not "an empty requirement." *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 (11th Cir. 1991). Thus, when making a determination of whether sufficient cause exists, "a district court should consider such goals as advancing uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process." *Id.* at 536 n.5 (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir.1985)). District courts also consider (1) whether the claim is core or non-core; (2) the efficient use of judicial resources; (3) whether a jury demand exists; and (4) prevention of delay. *See In re Hvide Marine Towing, Inc.*, 248 B.R. 841, 844 (M.D. Fla. 2000); *In re TPI Int'l Airways*, 222 B.R. 663, 668 (S.D. Ga.1998). While important, none of the aforementioned factors should "prevent the district court from properly withdrawing reference either to ensure that the judicial power of the United States is exercised by an Article III court or in order to fulfill its supervisory function over the bankruptcy courts." *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532 at 538 (citation omitted).

## A.    *Non-Core Proceeding*

At the hearing on the motion to stay, Goodwyn argued that this is a core proceeding. Seale asserts that this is a non-core proceeding. If Seale is correct in its classification, then this factor weighs in favor of the withdrawal of the reference. The record reflects that the Bankrupcty Court has not yet made a determination of whether the claims in this adversary proceeding are core or non-

---

[2] Section 157(d) also allows for mandatory withdrawal, in which the proceedings require consideration of both title 11 and non-bankruptcy code federal law. The instant motion involves a permissive withdrawal.

core.  Accordingly, in the interest of judicial economy, this Court makes the determination for the sole purpose of analyzing the motion for withdrawal of the reference.[3]

Section 157 differentiates between "core" and "non-core" proceedings.  Core proceedings are those proceedings which would not exist in law in the absence of the Bankruptcy Code. *Thomasson v. AmSouth Bank, N.A.,* 59 B.R. 997 (N.D. Ala.1986). "If the proceeding does not involve a substantive right created by the federal bankruptcy law and is one that could exist outside bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding."  *Gower v. Farmers Home Admin. (In re Davis),* 899 F.2d 1136, 1140-1141 (11th Cir. 1990) (citing *Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987)).  Stated somewhat differently, for a case to be considered a core proceeding, the case would not exist "but for" bankruptcy. *See In re Nanodata Computer Corp.,* 52 B.R. 334 (Bankr. W.D.N.Y. 1985); *Zweygardt v. Colorado Nat'l Bank of Denver,* 52 B.R. 229 (Bankr. D. Colo.1985).  When a debtor's claim involves rights independent of and antecedent to the bankruptcy petition, and is not integral to the restructuring of debtor-creditor rights, then the matter is not a core proceeding.  *See In re Olympia Holding Corp.,* 148 B.R. 56, 58 (Bankr. M.D. Fla.1992); *see also Community Bank of Homestead v. Boone* (*In re Boone*), 52 F.3d 958 (11th Cir. 1995).  A non-exhaustive list of core proceedings is set out in § 157(b)(2); however, the statute neither defines nor illustrates a non-core proceeding.

In core proceedings, the bankruptcy judge conducts the trial or hearing and enters a final judgment.  The district court applies normal deferential standards of appellate review to the

---

[3]  The bankruptcy judge is empowered to determine whether a matter is a core proceeding or a non-core proceeding.  § 157(b)(3).

bankruptcy court's disposition of it. *In re Toledo*, 170 F.3d 1340, 1347 (11th Cir. 1999) (citing 28 U.S.C. § 158(a)(2); Fed. R. Bankr. P. 8013). In non-core proceedings, the bankruptcy judge can hold the trial or hearing but cannot issue a final judgment; instead, the bankruptcy judge submits proposed findings of fact and law to the district court for a *de novo* review. *Id.* (citing § 157(c)(1); Fed. R. Bankr. P. 9033).

Goodwyn initiated this action in state court, alleging state law claims, approximately six months prior to filing his bankruptcy petition. Although the adversary proceeding is related to his bankruptcy, his claims clearly exist outside the law of bankruptcy and arose well before the bankruptcy proceedings. As such, this is a non-core adversary proceeding. A review of the list of core proceedings in § 157(b)(2) further bolsters the conclusion that Goodwyn's state law claims are not core proceedings.

**B.    *Jury Demand***

Seale asserts that he has a right to trial by jury on Goodwyn's claims. He further contends that he rightfully relied upon Goodwyn's jury demand in state court and that he did not consent to Goodwyn's attempted withdrawal of his jury demand at the pretrial conference held by the Bankruptcy Court. Goodwyn "stipulates regarding all of the legal standards relating to a jury trial, to include the rights and allowances of a party that did not request the jury trial but is nevertheless protected by the jury demand of another party." (Pls.' Resp. 5.) Goodwyn only argues that Seale waived his right to rely on Goodwyn's jury demand.

The Seventh Amendment provides the right to a trial by jury in common law suits.[4]  The Eleventh Circuit Court of Appeals has held that "common law" means where legal rights are to be ascertained and determined. The Court stated that the Amendment may be construed to embrace all suits which are not of equity and admiralty jurisdiction.  *In re Graham*, 747 F.2d 1383 (11th Cir.1984). Bankruptcy Courts are essentially courts of equity and their proceedings inherently proceedings in equity.  *See Pepper v. Litton*, 308 U.S. 295, 304 (1939); *In re Ranch House of Orange-Brevard, Inc.*, 773 F.2d 1166, 1169 (11th Cir.1985).  "Where an action is simply . . . for the recovery of a money judgment, the action is one at law."  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 46 n.5 (1989)(quotations and citations omitted).

The parties do not dispute that the adversary proceeding involves legal claims and issues. Goodwyn has sought only money damages and not equitable relief.  Thus, there is no question that there is right to a jury trial on these claims.  Nevertheless, Goodwyn asserts that Seale is not entitled to a trial by jury because Goodwyn contends that Seale waived such right.

However, nothing in the record supports the conclusion that Seale waived his right to a trial by jury.  Rule 81 of the Federal Rules of Civil Procedure governs jury trials in cases removed to federal court:

> If at the time of removal all necessary pleadings have been served, a party entitled to trial by jury under Rule 38 shall be accorded it, if the party's demand therefor is served within 10 days after the petition for removal is filed if the party is the petitioner, or if not the petitioner within 10 days after service on the party of the notice of filing the petition.  A party who, prior to removal, has made an express demand for trial by jury in accordance with state law, need not make a demand after removal.  ***If state law applicable in the court from which the case is removed does***

---

[4] The Seventh Amendment to the United States Constitution provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any court of the United States, than according to the rules of common law."

> ***not require the parties to make express demands in order to claim trial by jury,
> they need not make demands after removal unless the court directs that they do so
> within a specified time if they desire to claim trial by jury.***  The court may make this
> direction on its own motion and shall do so as a matter of course at the request of any
> party.  The failure of a party to make demand as directed constitutes a waiver by that
> party of trial by jury.

Fed. R. Civ. P. 81(c) (emphasis added).[5]  Goodwyn made a proper jury demand in state court.  *See*

Ala. R. Civ. P. 38(b) ("Any party may demand a trial by jury of any issue triable of right by a jury

by serving upon the other parties a demand therefor in writing . . . .  Such demand may be indorsed

upon a pleading of the party.").  Seale did not make such a demand in the state court, but he was not

required to do so.  He properly relied upon Goodwyn's demand.  *See Southland Reship, Inc. v.

Flegel*, 534 F.2d 639, 643 (5th Cir. 1976).[6]  Thus, pursuant to Rule 81(c), the parties were not

required to make a jury demand after the action was removed to federal court, and the Bankruptcy

Court did not direct them to do so.  Indeed, the Bankruptcy Court–approximately seven months after

removal–explicitly recognized the parties' jury demand and the right to jury trial.  (March 16, 2006

Bankr. Order) ("The Court will hear from the parties at the Pretrial Conference whether this matter

is to be trial to the Court or to a jury.").

**C.    *Withdrawal of Reference is Timely***

    Goodwyn intimates that if Seale truly wanted a jury trial, Seale should have moved for a

withdrawal of the reference prior to the June 6, 2006 pretrial conference.  Neither the procedural

rules nor the Bankruptcy Court required earlier action, however.  Based on the language of the

---

[5]  Rules 38 and 81(c) of the Federal Rules of Civil Procedure are made applicable to bankruptcy cases and
proceedings through Rule 9015 of the Federal Rules of Bankruptcy Procedure.

[6]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit
Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to
the close of business on September 30, 1981.

March 16, 2006 Bankruptcy Order, it was reasonable for Seale to wait for the Bankruptcy Court to address the issue at the pretrial conference and, during this wait, rely on Goodwyn's jury demand. Because Seale did not seek a withdrawal of the reference until after the Bankruptcy Court denied Seale's summary judgment motion, Goodwyn accuses Seale of forum shopping. But, a similar accusation can be made against Goodwyn. Goodwyn did not attempt to withdraw his jury demand until after receiving a favorable ruling on summary judgment by the Bankruptcy Court. The Bankruptcy Court, over Seale's objection, permitted the withdrawal of the jury demand. However, the rules do not allow a jury demand to be withdrawn without the consent of the parties. Ala. R. Civ. P. 38(d); *see also* Fed. R. Civ. P. 38(d). Undoubtedly, Seale did not consent to the withdrawal of the jury demand.

### III.  CONCLUSION

In this Court's opinion, the existence of a valid jury demand and the non-core proceeding status are dispositive. After careful consideration of all of the relevant factors, the Court finds that Saele has made a showing of good cause for withdrawal of the reference. Accordingly, the Motion for Withdrawal of the Reference (Doc. # 1) is GRANTED, and this cause will proceed to jury trial in the district court. A separate scheduling order will be entered.

DONE this the 2nd day of October, 2006.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE