## IN THE UNITED STATES DISTRICT COURT
### FOR THE
### MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| SUSAN S. DEPAOLA, Chapter 7 Trustee for the Bankruptcy Estate of Philip L. Goodwyn, and SIMPLE PLEASURES, INC., | CASE NUMBER: 06-00893-WKW-SRW |
| Plaintiffs, | |
| v. | BANKRUPTCY CASE NO. 05-32325 – CHAPTER 7, BANKRUPTCY ADV. PRO. NO. 05-03062-WRS |
| V RESTAURANTS, INC., an Alabama corporation, and VINCE SAELE, an individual, | |
| Defendants. | |

### RESPONSE AND OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF

COMES NOW, Susan S. DePaola and Simple Pleasures, Inc., Plaintiffs, by and through their counsel of record, and pursuant to the order of this Honorable Court of December 6, 2006, object to the motion for summary judgment filed by the Defendants. The instant response/ objection is based upon the following:

1) The Pleadings;

2) Supporting Brief and attached Exhibits;

3) The court file of Bankruptcy Adv. Pro. No. 05-03062-WRS; and,

4) The memorandum decision of William R. Sawyer, Adv. Pro. No. 05-3062-WRS, June 8, 2006.

WHEREFORE, there are numerous issues of material fact in the present case, therefore, a judgment or verdict as a matter of law would be inappropriate. The Plaintiffs respectfully request this

Honorable Court deny the Defendants' motion for summary judgment.

Respectfully submitted on this the 13th day of December 2006.

Memory & Day

By: /S/ Von G. Memory
Von G. Memory
ASB-8137-071V

James L. Day
ASB-1256-A55J

Attorneys for Defendants

OF COUNSEL

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
Email   vgmemory@memorylegal.com
jlday@memorylegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

on December 13, 2006.

Daniel G. Hamm, Esq.
560 South McDonough Street, Suite A
Montgomery, Alabama 36104

Ben E. Bruner, Esq.
2835 Zelda Road

Montgomery, AL 36106

/S/ Von G. Memory
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| SUSAN S. DEPAOLA, Chapter 7 Trustee for the Bankruptcy Estate of Philip L. Goodwyn, and SIMPLE PLEASURES, INC., | Case Number: 06-00893-WKW-SRW |
|     Plaintiffs, | |
| v. | |
| V RESTAURANTS, INC., an Alabama corporation, and VINCE SAELE, an individual, | |
|     Defendants. | Bankruptcy Case No. 05-32325 – Chapter 7, Bankruptcy Adv. Pro. No. 05-03062-WRS |

PLAINTIFFS' BRIEF IN RESPONSE TO MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS

I.  OVERVIEW

This case was originally filed in the Circuit Court of Montgomery County, Alabama. The case was removed to the United States Bankruptcy Court for the Middle District of Alabama, incident to a petition for an order of relief filed by Plaintiff, Phillip Goodwyn ("Goodwyn" or "Debtor" herein), under Chapter 7, Title 11 of the United States Bankruptcy Code. The interim Chapter 7 Trustee, Susan DePaola ("Plaintiff", or collectively with Simple Pleasures, Inc., "Plaintiffs"), is prosecuting this matter on behalf of the Chapter 7 bankruptcy estate of Philip Goodwyn and Simple Pleasures, Inc. The case was subsequently transferred to the United States District Court for the Middle District of Alabama.

In pertinent part, this case alleges breach of contract, conversion, negligence, etc., incident to a proposed sale of substantially all the assets of the Plaintiffs' business,

Gators[1], and the assumption of its lease by the Defendants, V Restaurants, Inc. ("V R"), and Vince Saele ("Saele"). The complaint further alleged conspiracy against V R, Spectrum/Vaughn Plaza L.L.C. ("Spectrum"), and Saele. However, on agreement of the parties, the counts against Spectrum/Vaughn Plaza L.L.C., were dismissed during the pendency of the bankruptcy adversary proceeding, June 8, 2006.

## II. STATEMENT OF THE CASE

### A. BACKGROUND

The Plaintiffs originally filed their complaint in the Circuit Court of Montgomery County, Alabama, Case Number CV 2005-306, February 3, 2005. The Defendants filed motions to dismiss, March 20, 2005, and these motions were denied by the Circuit Court, March 16, 2005. The Defendant joined issue.[2]

On August 10, 2005 (the "Petition Date"), Plaintiff Goodwyn filed a voluntary petition [3] under Chapter 7 of Title 11, United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Susan S. DePaola was appointed Interim Trustee, August 11, 2005.

The instant case was removed from the Circuit Court of Montgomery County, Alabama, August 12, 2005 (ECF Doc. 4) and the Trustee filed an application for employment, 11 U.S.C. § 327(e), of Memory Day & Azar[4] as special counsel, November 18, 2005 (ECF Doc. 15) and employment was ordered approved, December 16, 2005 (ECF Doc. 18).

---

[1] Gator's is located at 5040 Vaughn Road, Montgomery, AL, 36116-1149. It has been previously known as Gators Plaza Café, however, the restaurant was renamed Gator's, and Gator's Fish House. After the Defendants took control, the restaurant has changed names one or more times. The current name is Gator's Bar and Grill. Nevertheless, the restaurant it will be referred collectively herein as Gators.
[2] One or both Defendants also filed counterclaims.
[3] Case Number 05-32325
[4] This firm has since been renamed Memory & Day.

Defendant Spectrum filed a motion for summary judgment while the case was pending in the Circuit Court of Montgomery County. Defendants V R and Vince Saele ("Saele") filed their motion for summary judgment, March 14, 2006 (Adv Pro ECF Doc. 14).

A hearing was held on the Defendants' motion for summary judgment, June 6, 2006 and the bankruptcy court decided that there were material facts in dispute, and the motion for summary judgment filed by Defendants Saele and V Restaurants was denied.

The Defendants, moved to withdraw the reference, June 12, 2006, this motion was granted, October 4, 2006, and the instant adversary proceeding was transferred to the United States District Court for the Middle District of Alabama.

## B.  STATEMENT OF THE FACTS

Simple Pleasures is an Alabama restaurant and food service corporation organized by Goodwyn in June 28, 1993. Simple Pleasures owned and previously operated a popular and well-known restaurant on the east side of Montgomery, Alabama commonly known as "Gators". Goodwyn is the president of Simple Pleasures.

Gators maintained a broad customer base, goodwill, and a reputation for quality food and service in Montgomery County, Alabama. However, between 2002 and 2004, due to increasing debts, Goodwyn and Simple Pleasures actively investigated and pursued several offers to sell the assets, goodwill, and customer base of Gators.

In or about July 2004, Goodwyn received an offer from V R and Saele to purchase Gators and the parties subsequently signed a letter of intent. A copy of the letter of intent has been introduced in the depositions taken by the parties and is attached hereto as **Exhibit "A"**. In pertinent part, the parties agreed to a $90,000.00 purchase price. For

- 3 -

the purchase price, V R and Saele agreed to purchase Gators, as a going concern, to include all equipment, inventory and supplies, furniture, fixtures, and amenities. In addition, V R and Saele, *inter alia*, agreed to assume responsibility for the existing lease with Spectrum.

The purchase price ($90,000.00) would be allocated as: a $30,000.00 payoff of the $110,000.00 lease arrearage with Spectrum[5]; a $30,000.00 payoff of the $83,000.00 debt to Regions Bank; and a $30,000.00 payment to the Internal Revenue Service for its cooperation in releasing a lien, and settlement of the approximately $110,000.00 debt to the Internal Revenue Service. The Internal Revenue Service had filed a lien on the Defendants' business and settlement would include release by the Internal Revenue Service of their federal tax lien.[6]

The sale included intangibles such as a large customer base, experienced and trained staff, good will, over 15 years of perfected and renowned recipes, signage, telephone number, licenses and permits, and direct assistance with the transition of all existing employees to the new owners. Spectrum, *inter alia*, agreed to release Goodwyn and Simple Pleasures from their lease obligations. Regions Bank agreed to release its liens, pursuant to the promissory note and security agreement, on the assets of Gators.

Concurrent with the contract for purchase of Gators, Goodwyn verbally agreed to allow V R and Saele to take possession of the restaurant and pending approval of the application to the Internal Revenue Service for settlement and release of the lien. The Defendants would make payments to the Plaintiffs in the amount of $250.00 until closing. V R and Saele also had access to the Gators staff and personal property

---

[5] This compromise also included a lease from Spectrum to Vince Saele.

associated with the restaurant. Moreover, in a show of good faith, Goodwyn did not pursue or solicit other buyers of Gators. V R and Saele had sole and complete possession of the assets and operation of Gators from September 24, 2004, through the date the Plaintiffs filed their lawsuit in the Montgomery County, Circuit Court.

The terms and conditions of the sale and purchase price were integrated into a letter agreement, prepared by Defendants Saele and V Restaurants, and signed by the parties while Goodwyn's counsel was out of town, September 24, 2004.

After the Internal Revenue Service gave conditional approval to release its lien, counsel for the Plaintiffs notified counsel for V R that a closing should be scheduled. On the day of notification, counsel for V R notified counsel for the Plaintiffs that Defendants Saele and V Restaurants were "no longer interested in the terms of the contract" and withdrew their offer to purchase Gators. Nevertheless, Defendants Saele and V Restaurants remained in sole possession of the personal property and leased premises.

After V R took possession, Spectrum gave notice to vacate and subsequently sold the assets of the Plaintiffs to V R.[7] Spectrum advertised the leasehold property for public sale in the Montgomery Advertiser, in late January 2005. Spectrum alleged abandonment of the leased premises and has sold the fixtures, equipment, and other personal property belonging to Simple Pleasures, in February 2005.

The Plaintiffs were not paid and Goodwyn subsequently had to file bankruptcy when Regions Bank filed a lawsuit. Notwithstanding, Defendants Saele and V Restaurants have remained in constant and continuous possession of Gators.

### III. ISSUES OF MATERIAL FACT

---

[6] In the negotiations, the payment to Spectrum and Regions Bank would pay the personal liability of Goodwyn; however, Goodwyn would have continued responsibility for the trust fund portion owed the Internal Revenue Service.

The Plaintiffs aver that there exist the following issues of material fact:

1.   The letter agreement or contract, **Exhibit "A"**, provided a closing not later than October 22, 2004, but also allowed modification by the parties. Therefore, a firm date for closing was never established.

2.   The Defendants were notified by counsel for the Debtor of the Debtor's efforts to obtain a release from the Internal Revenue Service and never notified the Debtor or his counsel that the contract was cancelled until after the Internal Revenue Service approved the compromise with the Plaintiff.

3.   The Defendants never gave notice of how they were harmed by the two-week delay in closing.

4.   The contract failed to provide terms specifying that time was of the essence or requiring strict compliance.

5.   V R and Saele had been in constant and continuous possession of the restaurant since the end of September and a delay in closing did not interfere or prejudice their rights to a delayed closing.

6.   The Debtor substantially performed the terms of the contract.

7.   Defendants waived the right to require or expect performance by the October 22 date.

8.   The actions of a third party caused a defensible breach of the contract.

9.   The Defendants were unjustly enriched by taking the restaurant business and not compensating the Plaintiffs.

10.  There are items of property and property rights that were not subject to seizure

---

[7] The sale did not include the recipes, telephone number, other general intangibles, and signage.

by the landlord.

11. Fraud and other causes of action requiring determination of mental intent.

## IV. ARGUMENTS AND AUTHORITIES

### A.  STANDARD OF REVIEW

Summary judgment practice is controlled by Rule 56 of the Federal Rules of Civil Procedure, Fed. R. Bankr. P. Rule 7056; <u>Carey Lumber Co. v. Bell</u>, 615 F.2d 370, 378 (5th Cir. 1980). Under Fed. R. Civ. P. Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. Rule 56(c). A party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact". <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Celotex</u>, at 322. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." <u>Id</u>. at 323.

But most importantly, from the standpoint of a moving party, a minimal standard is required. **"[F]or a motion for summary judgment to prevail, it is not enough that**

the moving party show the absence of a genuine issue of material fact. The moving party must also show its entitlement to judgment as a matter of law. Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(c); see also Aero-Fastener, Inc. v. Sierracin Corp. (In re Aero-Fastener, Inc.), 177 B.R. 120, 135 (Bankr.D.Mass.1994)", In re Sullivan 217 B.R. 670, 678 (Bkrtcy.D.Mass.,1998) [emphasis added].

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, 'designate specific facts showing that there is a genuine issue for trial'". Id. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324 (emphasis added). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", Id. at 322.

> [O]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.
>
> Respondent argues, however, that Rule 56(e), by its terms, places on the nonmoving party the burden of coming forward with rebuttal affidavits, or other specified kinds of materials, only in response to a motion for summary judgment "made and supported as provided in this rule." According to respondent's argument, since petitioner did not "support" its motion with affidavits, summary judgment was improper in this case. But as we have already explained, a motion for summary judgment may be made pursuant to Rule 56 "with or without supporting affidavits." In

cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

<u>Celotex</u> at 323 - 324

## B. SUBSTANTIVE ISSUES

### (1) Breach of Contract

In a breach of contract action, the "claimant must prove:  (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages, See <u>*McGinney v. Jackson,*</u> 575 So.2d 1070, 1071-72 (Ala.1991);  <u>*Seybold v. Magnolia Land Co.,*</u> 376 So.2d 1083, 1085 (Ala.1+979);  <u>*Hanby v. Campbell,*</u> 222 Ala. 420, 421, 132 So. 893, 894 (1931)", <u>Southern . v. Vaughn</u> 669 So.2d 98, 99 (Ala. 1995)

More specifically, an option to purchase, is a contract in which the seller agrees sell the property at a fixed price within a certain time. However, in such a contract two elements exist:

"First, the offer to sell which does not become a contract until accepted and,

second, the completed contract to leave the offer open for a specified time. It is a unilateral executed contract, binding only upon the optioner and not on the optionee. It becomes a contract between the parties only when exercised or accepted according to its terms. Obviously if the contract is binding on both parties it cannot be an option. 66 C.J. pp. 485-486; <u>Lauderdale Power Co. v. Perry, 202 Ala. 394, 80 So. 476</u>; <u>Bethea v. McCullough, 195 Ala. 480, 70 So. 680</u>; <u>Fullenwider v. Rowan, 136 Ala. 287, 34 So. 975</u>. It becomes necessary to examine the contract designated as Exhibit G to determine from an examination of the entire contract the intention of the parties under the terms of the contract. 66 C.J. p. 490", <u>McGuire v. Andre, 6</u>5 So.2d 185, 190 (Ala. 1953)

There should be no question that the subject letter agreement was, in fact a contract. The motion for summary judgment, the Defendants, as an "Undisputed Fact", allege that the agreement was a contract. Since both parties executed the agreement, it is not a unilateral contract.

However, with respect to non-performance, there is a significant issue of material fact as to the non-performance of Goodwyn. Goodwyn avers that he faithfully complied with all terms of the contract that were within his control as well as turning the property over to the Defendants.

### (2) Substantial Performance

Under the doctrine of substantial performance, "[w]here a contract is made for an agreed exchange of two performances, one which is to be rendered first, substantial performance of the first obligation, rather than exact or strict performance of the contract's terms, is sufficient to entitle the contractor to recover," <u>17A Am.Jur.2d Contracts</u> § 616 (2004). <em>See also</em> <u>Bay City Constr. Co. v. Hayes,</u> 624 So.2d 1031, 1034 (Ala.1993) (holding that the plaintiff was permitted to recover damages for breach of contract because, although he had not performed all of the obligations on his part under the contract, he had substantially performed the obligations)", <u>Ex parte Keelboat Concepts, Inc.</u>, 2005 WL 3506864 (Ala.), page 6. In addition, "substantial performance"

of a contract does not consider exact performance of each detail, but performance of all the important parts, Mac Pon Co. v. Vinsant Painting & Decorating Co., 423 So.2d 216 (Ala.1982).

However, when substantial performance is an issue, it creates an issue of material fact that requires the trier of fact to be presented evidence of whether the party substantially performed the terms of the contract. The Supreme Court of Alabama previously affirmed in Cobbs v. Fred Burgos Constr. Co., 477 So.2d 335, 338 (Ala.1985), that "whether a party to a contract has substantially performed a promise under the contract is a question of fact to be determined from the circumstances of each case. Whether Goodwyn substantially performed his duties under the contract is a question of fact to be determined by the trier of fact and that such a finding should be supported by the evidence".

### (3) Waiver

In addition to the substantial performance argument, it is also alleged that Saele and V R were in continuous possession of the restaurant and could not be damaged by the delay. And even if some remote damage could be alleged, such delay and resulting damage were waived when time was not of the essence and when the letter agreement failed to contain a provision of strict compliance, In re Keelboat Concepts, Inc., and F. Michael Rickels v. C.O.W., Inc., 2005 WL 3506864 (Ala.), page 7.

### (4) Unjust Enrichment

This is a clear case of unjust enrichment where the Defendants, through agreement, contract, or compromise, have conspired to deprive the Plaintiffs of their

valuable property through an alleged failure to close on a date specified in the lease agreement. Simply put, the Plaintiffs worked to release all of the pending liens while Defendants Saele and V Restaurants were in possession of the restaurant. Also, Goodwyn assisted during the transition. Then when the Internal Revenue Service would not, or could not, timely give the requested lien release, the Defendants seized upon this pretext to steal the Plaintiffs' restaurant assets and business.

In a case recently before the Alabama Supreme Court, we find the following reasoning relating to a cause of action under unjust enrichment.

> "Against the certification of the unjust-enrichment claim, however, the "subjective-state-of-mind" arguments of Avis and the licensees stand on better ground. To prevail on a claim of unjust *1123 enrichment, the plaintiff must show that the " 'defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.' " Dickinson v. Cosmos Broad. Co., 782 So.2d 260, 266 (Ala.2000) (quoting Hancock-Hazlett Gen. Constr. Co. v. Trane Co., 499 So.2d 1385, 1387 (Ala.1986)) (some emphasis omitted; some emphasis added). "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." Battles v. Atchison, 545 So.2d 814, 815 (Ala.Civ.App.1989) (emphasis added)", Avis Rent A Car Systems, Inc. v. Heilman, 876 So.2d 1111, 1123 (Ala., 2003).

### (4) Fraud

Finally, issues involving a person's state of mind are generally not proper for resolution by summary judgment.

> …fraud is not generally susceptible to summary judgment. While the Supreme Court has stated that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole," Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), questions involving a person's state of mind "are generally factual issues inappropriate for resolution by summary judgment." Braxton-Secret v. A.H. Robins Co., 769 F.2d 528, 531 (9th Cir.1985).   Further, the trial judge

must accept as true the nonmovant's evidence, must draw all legitimate inferences in the nonmovant's favor, and must not weigh the evidence on the credibility of witnesses. _Windon Third Oil and Gas v. Federal Deposit Insurance Corporation_, 805 F.2d 342, 346 (10th Cir.1986).   Were the Court simply to accept the assertions in the defendant's affidavit, that he committed no fraud, the Court would be improperly weighing the credibility of the witness. Accordingly, the motion for summary judgment will be denied.

Modicon v. Shelnutt, 150 B.R. 436, 438 (ED Ark.1992)

This same logic was followed in In re Sullivan when the court found that summary judgment was not appropriate in a case involving the tort of conversion because conversion did not necessarily involve a willful or malicious act, but only the taking or removal of property, In re Sullivan, 679.

## V. SUPPORTING DOCUMENT

This brief is supplemented by the affidavit of Philip Goodwyn, which is attached hereto as **Exhibit "B"** and included herein by reference.

## V.  CONCLUSION

There are numerous issues of material fact in the present case, therefore, a judgment or verdict as a matter of law would be inappropriate. Therefore, the Plaintiffs respectfully request this Honorable Court deny the Defendants' motion for summary judgment.

Respectfully submitted on this the 13th day of December 2006.

Memory & Day


By: /S/ Von G. Memory
Von G. Memory
ASB-8137-071V

James L. Day

- 13 -

ASB-1256-A55J

Attorneys for Trustee

OF COUNSEL

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
Email  vgmemory@memorylegal.com
        jlday@memorylegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☐ facsimile

☐ hand delivery

☐ delivered in open court

on December 13, 2006.

Daniel G. Hamm, Esq.
560 South McDonough Street, Suite A
Montgomery, Alabama 36104

Ben E. Bruner, Esq.
2835 Zelda Road
Montgomery, AL 36106

/S/ Von G. Memory
OF COUNSEL

# PARNELL & CRUM, P.A.
### ATTORNEYS AT LAW
641 SOUTH LAWRENCE STREET
MONTGOMERY, AL 36104

CHARLES N. PARNELL, III
G. BARTON CRUM
ROBERT J. RUSSELL, JR.
BRITT BATSON GRIGGS
MATTHEW T. ELLIS
ADRIAN D. JOHNSON
J. MATTHEW PARNELL
DAYNA R. BURNETT

TELEPHONE
334-832-4200

TELECOPIER
334-293-3551

MAILING ADDRESS
P.O. BOX 2189
ZIP CODE 36102-2189

September 24, 2004

**VIA FACSIMILE - 834-8001**

Von G. Memory
Attorney at Law
469 S. McDonough Street
Montgomery, Alabama 36104

Dear Von:

I am in receipt of your sales agreement and have briefly reviewed same, deciding that it is not possible to make the corrections and amendments this afternoon prior to 5:00. Thus, I write this letter as a memorandum of agreement, which I believe contains the pertinent provisions, until we can get the final draft documentation agreed upon. They are as follows:

1.   That the purchase price shall be $90,000.00;

2.   That the purchase price is for all of the assets, including, but not limited to, licenses and leases, equipment, office supplies, inventory, automobiles/delivery van, etc., and any other of the same located off-premises in storage buildings, etc.;

3.   That Seller will lease the business to Buyer, along with all licenses and property until the date of closing for the sum of $250.00;

4.   That the ownership of the properties mentioned herein above will be transferred to my client at a closing date no later than October 22, 2004, or as otherwise agreed upon by the parties, and that the property transferred shall be transferred without any liens or encumbrances whatsoever;

5.   That the closing is contingent upon Regions accepting the sum of $30,000.00 for Phillips' lien.

6.   That Spectrum Development will accept a note from Vince in the amount of $30,000.00 and that the $30,000.00 note shall be counted as consideration towards the purchase of the business;

Von G. Memory
September 24, 2004
Page Two

7.      That Buyer is entitled to all revenues derived from the business from the date of the
        consummation of this agreement forward;

8.      That the remaining $30,000.00 be paid to the Internal Revenue Service for and in
        consideration of the release of any and all liens which they may have against Phillip,
        individually, or the business (if any additional monies are owed, Phillip pays);

9.      In the event that any of the contingencies stated herein are not complied with or
        fulfilled by the Obligor, consideration shall be immediately withdrawn from the Trust
        Account and returned to the Purchaser;

10.     That upon the consummation of this document, the Purchaser shall be entitled to
        utilize the premises and operate the business in its normal manner and without
        interference from Mr. Goodwyn;

11.     That the catering business operating out of Gator's shall continue, but only be
        operated by its new owner;

12.     That if any of the contingencies fail wherein the Seller is the Obligor, Seller shall
        reimburse Purchaser for any and all net financial losses or expenses related thereto.

Von, my client is at wits end and feels he may be wasting his time. These terms are non-
negotiable and this must be signed by tomorrow at noon (Saturday, September 25, 2004).

                                                Sincerely,

                                                Robert J. Russell, Jr.

RJRjr/fd


V Restaurants, Inc.                             Simple Pleasures, Inc.
By:  Vince Saele                                By:  Phillip Goodwyn
Its: President                                  Its: President

EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| IN RE:<br>**PHILLIP GOODWYN**<br><br>**Debtor.** | **CASE NO. 05-32325** |

| | |
|---|---|
| **SIMPLE PLEASURES, INC.,** an Alabama corporation, and **PHILLIP GOODWYN**, individually,<br><br>**Plaintiffs,**<br><br>v.<br><br>**V RESTAURANTS, INC.,** an Alabama corporation, **SPECTRUM/VAUGHN PLAZA L.L.C.,** an Alabama limited liability company, and **VINCE SAELE,** an individual, et al.,<br><br>**Defendants.** | **Montgomery County Case No. CV 2005 - 306**<br><br>**Adv. Pro. No. 05-03062** |

## AFFIDAVIT OF PHILIP GOODWYN

| | |
|---|---|
| STATE OF ALABAMA | |
| COUNTY OF MONTGOMERY | |

I, Philip Goodwyn, being duly sworn and placed under oath, deposes and says as follows:

1. My name is Philip Goodwyn and I am a resident of Montgomery County, Alabama.

2. I originally started in the restaurant business in the Hillwood Shopping Center (Hillwood Café) and subsequently moved my restaurant to the current location on Vaughn Road in a shopping center called Vaughn Plaza Shopping Center (5040 Vaughn Road, Montgomery, AL, 36106).

3.   When the restaurant moved to the Vaughn Road location, I organized Simple Pleasures, Inc., and the restaurant operated under the name of Gator's Plaza Café, then Gator's, and finally Gator's Fish House, however, the name by which the restaurant was commonly known and familiar to the public was simply Gator's.

4.   After the move to the Vaughn Road location, substantial expenditures were made in renovating the location and purchasing amenities used in the restaurant business. I estimate my expenditures in the approximate amount of $450,000.00. In addition, I have personally spent hundreds of hours in upgrading and running this restaurant. I don't believe that I received a check or compensation in the last two years of operation.

5.   Regardless of my time and upgrades, there was never sufficient income to show a profit. Because of this continuing problem, I attempted to sell the restaurant and my efforts started in 2003.

6.   I actually closed the restaurant for a few weeks at the end of 2003 and subsequently reopened. I was behind in my rent; however, the landlord, Spectrum Development, L.L.C., was willing to work with me under an informal forbearance agreement.

7.   In 2004, I started, in earnest, to locate a purchaser. In the late spring or early summer of 2004, negotiations started with Mr. Vince Saele. In fact, I invited Mr. Saele to participate as an employee in order to give him first hand experience and knowledge regarding Gator's. He became an employee in the month of June 2004. Also, I shared intimate details regarding customers, vendors, and other information regarding the restaurant.

8.   The first effort to sell the restaurant to Mr. Saele failed when he confided that his capital partners would not pay the amount agreed upon ($120,000.00). However, Mr. Saele was

- 2 -

aware of my financial circumstances and he continued negotiations.

9.  Finally, it was discussed, even agreed, that Mr. Saele would pay $90,000.00. From this purchase price, I would pay $30,000.00 to the landlord, $30,000.00 to Regions Bank, and $30,000.00 to the Internal Revenue Service.

10. With the $30,000.00 to the landlord, plus a lease by Mr. Saele, it was agreed that the landlord would release me from the remaining balance that was due under the lease which was approximately $110,000.00. Regions Bank had a first priority security agreement and a UCC-1 on the equipment and fixtures and was owed approximately $83,000.00. Regions Bank agreed to release its lien and accept $30,000.00 in full satisfaction of its debt. Finally, the Internal Revenue Service represented by Ms. L. C. Wilson helped with negotiations involving the Internal Revenue Service and finally the Internal Revenue Service agreed to release its lien (approximately $110,000.00) for $30,000.00. However, I understood that I would remain personally liable for an amount assessed under the trust fund penalty portion.

11. Mr. Saele made his first offer in August of 2004. Negotiations occurred over several weeks and finally Mr. Saele insisted that an agreement be signed. My lawyer was out of town but Mr. Saele assured me that there would be no problem in closing and getting paid. Consequently, I signed the letter agreement that has been placed into evidence. Immediately after signing the letter agreement, Mr. Saele insisted that I leave the restaurant and that he be placed in sole control. Therefore, from the date of the letter agreement, I had no day-to-day control in the operation and management of the restaurant. Mr. Saele had absolute control over every aspect and asset associated with the business. Mr. Saele changed the name of the restaurant to Gator's Bar and Grill.

- 3 -

12. Also, I helped Mr. Saele transfer utilities, licenses, and liquor permits to Mr. Saele. All of this took several weeks.

13. I immediately got an oral agreement and received assurances from the landlord and Regions Bank of their concurrence with the referenced compromise.

14. Unfortunately, the Internal Revenue Service did not move as quickly. I prepared and filed documents that eventually were reviewed and approved by agents in New Orleans, LA. I updated Mr. Saele on a regular basis regarding our progress with the Internal Revenue Service.

15. For a period, Mr. Saele and I met several times a day, and on other occasions we met and talked at least daily. There was never an occasion when Mr. Saele complained about the delay or notified me that the contract would be cancelled.

16. The landlord gave notice to vacate after Mr. Saele had possession and advertised, in a local newspaper several months later, that some of the assets involved with the restaurant would be sold on the "courthouse steps". The assets were supposedly sold to Mr. Saele for a fraction of their value. Moreover, Mr. Saele never lost possession and never closed the restaurant because of the sale. In fact, Mr. Saele has continuously been in control and operated the restaurant since the day of the letter agreement.

17. However, some items were not, and could not, be sold by the landlord. Those items include the goodwill, telephone number, licenses, permits, recipes, fully trained and experienced staff and employees, and other intangibles associated with Gator's restaurant.

18. The day that the Internal Revenue Service gave permission to release its lien for $30,000.00, my attorney, at my request, contacted Mr. Saele's attorney and requested a closing. It was a few days later that Mr. Saele's attorney wrote a letter insisting that Mr. Saele would not

- 4 -

proceed with the closing. In fact, Mr. Saele has never paid any amount referenced in the letter of agreement.

19. I have personal knowledge that neither the first priority lien of Regions Bank, nor the lien of the Internal Revenue Service have been paid from the proceeds of the courthouse sale. The instant courthouse sale occurred February 2005. This date was approximately six months after Mr. Saele took possession and three months after he told me he would not close.

20. Also, Mr. Saele and the landlord worked out a lease agreement immediately after Mr. Saele took possession and for the same space that I occupied. These parties have effectively taken my restaurant business for no payment or consideration.

21. Because of the actions of Mr. Saele and the landlord, I have not been able to pay any of my creditors and was sued by Regions Bank. The actions of Mr. Saele and the landlord were directly responsible for my decision to file bankruptcy.

22. Mr. Saele was never hindered in the operation and was incomplete control. The letter agreement did not contain a provision that time was of the essence nor did Mr. Saele ever suggest or imply that he was hindered or harmed by the delay caused by the Internal Revenue Service.

23. Except for the delay in closing, I diligently performed all other material aspects required under the letter agreement.

24. It is my opinion that the restaurant equipment alone has a value in excess of $100,000.00 and that the business, including goodwill, has a value of $100,000.00.

25. This affidavit was prepared by the attorneys for Susan DePaola, Trustee, and was signed after I carefully read the affidavit.

Dated April 14, 2006.

Philip Goodwyn

Sworn to and subscribed before me on this _14_ day of _April_ 2006.

(Seal)

Notary

Exp: _4-18-09_

This document prepared by:

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
vgmemory@memorylegal.com
jlday@memorylegal.com

- 6 -

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 05-32325-WRS

                                                         Chapter 7

PHILLIP GOODWYN,

     Debtor.

PHILLIP L. GOODWYN and
SIMPLE PLEASURES INC.,

     Plaintiffs,                                    Adv. Pro. No. 05-3062-WRS

v.

V RESTAURANTS, VINCE SAELE, and
SPECTRUM/VAUGHN PLAZA LLC.,

     Defendants.


## MEMORANDUM DECISION

This Adversary Proceeding is before the Court upon the Motion for Summary judgment of the Defendants V Restaurants, Inc. ("V Restaurants") and Vince Saele ("Saele").  (Doc. 14).  The Plaintiffs have filed an opposition brief in response to the motion for summary judgment and the Defendants have filed a reply brief.  (Docs. 17, 18).  The Court heard argument on the motion on June 6, 2006.  Plaintiffs Phillip L. Goodwyn and Simple Pleasures, Inc., were present by counsel Von G. Memory.  Defendants Vince Saele and V Restaurants were present by counsel Daniel G. Hamm.  Defendant Spectrum/Vaughn Plaza, L.L.C., was present by counsel Coleman Yarbrough.  The Court finds that there are genuine issues of material fact in dispute.  For this reason, the Defendants' Motion for Summary Judgment is DENIED.  (Doc. 14).

# I.  FACTS

The genesis of this dispute involves an agreement to purchase a restaurant known as "Gators" in Montgomery, Alabama.  This suit was originally filed in the Circuit Court for Montgomery County, Alabama under Case No. CV 2005-306.  Plaintiffs allege several causes of action including breach of contract, conversion, unjust enrichment, damages for use, fraud, wantonness/willfulness, and civil conspiracy.  (Doc. 1).

On September 24, 2004, Phillip Goodwyn[1] and Vince Saele, acting on behalf of their respective corporations, entered into a letter of understanding regarding the purchase of the restaurant.  Two years prior to reaching this agreement, Goodwyn and Simple Pleasures had actively pursued suitors to purchase Gators.  Goodwyn opted to sell Gators after suffering serious financial problems.  These financial problems included a substantial unpaid rent obligation to the owner of the restaurant location, Defendant Spectrum, in the approximate amount of $110,000.00; unpaid federal employee withholding taxes resulting in a debt to the Internal Revenue Service in the approximate amount of $110,000.00; and a debt to Regions Bank in the approximate amount of $83,000.00.  (Goodwyn Aff. ¶ 3).

The September 24, 2004, agreement contemplated a sale of Gators to Saele and V Restaurants for a purchase price of $90,000.00, allocated as follows: 1) a $30,000.00 payoff of the $110,000.00 lease arrearage with Spectrum; 2) a $30,000.00 payoff of the $83,000.00 debt owed to Regions Bank; and 3) a $30,000.00 payment to the Internal

---

[1] Phillip Goodwyn is the sole shareholder of Simple Pleasures, Inc., which is a food service corporation. (Doc. 17).

Revenue Service in exchange for a release of its lien on the business and a settlement of the $110,000.00 debt owed. (Doc. 17). Provision 4 of the agreement stated "[t]hat the ownership of the properties mentioned herein above will be transferred to my client at closing date no later than October 22, 2004, or as otherwise agreed upon by the parties, and that the property transferred shall be transferred without any liens or encumbrances whatsoever." (Doc. 17).

According to Goodwyn, shortly after signing the letter agreement Saele insisted that he be placed in sole control and possession of the restaurant business. (Doc. 17). Goodwyn complied allowing V Restaurants to take possession of the restaurant pending approval of the application to the Internal Revenue Service for settlement and release of the lien. From September 24, 2004, Saele and V Restaurants had absolute control over every aspect of the business, including its assets. The sale of the business included Gators' customer base, employees, recipes, licenses and permits, and assistance from Goodwyn in transferring utilities, licenses, and liquor permits to Saele. (Doc. 17). In an effort to firm up the closing, Goodwyn's counsel contacted counsel for Saele and V Restaurants, and was informed that they were "no longer interested in the terms of the contract." (Doc. 1). It is undisputed that one or more of the liens on the business was not released by October 22, 2004. (Docs. 17, 18). On or about December 1, 2004, Spectrum negotiated a new lease with V Restaurants. Also, in February, 2005, about six months after Saele obtained sole possession of the business, Spectrum sold certain personal property of Simple Pleasures and Goodwyn on which it had a landlord's lien. The property was sold for $21,874.00. (Doc. 1). According to Goodwyn, none of the

3

proceeds from the sale of this property has gone towards satisfying the lien of Regions or the lien of the Internal Revenue Service.  (Doc. 17).

      To date, Goodwyn has not been paid any amount referenced in the letter agreement for the business.  Goodwyn also contends that the actions of the Defendants were directly responsible for his decision to file bankruptcy.  (Doc. 17).


## II.  CONCLUSIONS OF LAW


### A.  Summary Judgment Standard


      Summary judgment is proper only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56, made applicable to Adversary Proceedings pursuant to Fed. R. Bank. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986); Jones v. City of Columbus, 120 F.3d 248, 251 (11th Cir. 1997).  Federal Rule of Civil Procedure 56(c) states the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The facts must be viewed in a light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 LED. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. at 322;  Hail v. Regency Terrace Owners Association, 782 So.2d1271, 1273 (Ala. 2000).  At the stage of summary

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  To avoid an adverse ruling on a motion for summary judgment,"the nonmoving party must provide more than a mere scintilla of evidence." See Loyd v.Ram Industries, Inc., 64 F.Supp.2d 1235, 1237 (S.D. Ala. 1999) (quoting Combs v.Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997)).

### B.  Discussion

   The Defendants in their motion for summary judgment recite each cause of action and assert that there is either no evidence to support the claim or that such claim is not viable in this case.  (Doc. 14).  The Defendants' motion and the bases asserted in support thereof would require the Court to weigh the evidence asserted.  However, this invitation must be rejected as "the judge's function [at the stage of summary judgment] is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Viewing the facts in a light most favorable to the nonmoving party, the Court finds that there genuine issues of material fact in dispute.

   Plaintiffs argue that the Defendants have effectively taken his restaurant business from him without any payment or consideration.  Particularly, with respect to the breach of contract cause of action, Plaintiffs contend that the September 24, 2004, letter agreement did not contain a provision that time was of the essence nor did Saele ever suggest or indicate that he was in any way hindered by the delay in releasing the lien of

the Internal Revenue Service.  It is the position of the Plaintiffs that as soon as the

Internal Revenue Service gave conditional approval to the release of its lien, Plaintiffs'

counsel notified counsel for Defendants that a closing should be scheduled.  Essentially,

Plaintiffs argue that they performed all of the material aspects of the letter agreement and

that the Defendants not only are in breach, but have continued to retain possession of the

restaurant business, including the restaurant's staff, customer base, recipes, licenses and

permits.  The Defendants on the other hand allege that Plaintiffs are in breach because

they failed to have each of the three liens released by October 22, 2004.  Defendants

contend that this was a material breach that touched upon the fundamental purposes of

the contract and furthermore that time was of the essence in the contract.  The Court finds

that there is a significant issue of material fact as to the performance of both parties.  See

RLI Insurance Co. v. MLK, 2005 Ala. LEXIS 97, at *24 (Ala. June 17, 2005)("[w]hether

a promise has been substantially performed is a question of fact to be determined from

the circumstances of the case.")(citing Cobbs v. Fred Burgos Construction Co., 477 So.2d

335, 338 (Ala. 1985)); see also Silverman v. Charmac, Inc., 414 So.2d 892, 895 (Ala.

1982).

Additionally, a claim of fraud is generally not susceptible to summary judgment.

See Freedlander, Inc., The Mortg.People v. NCNB Nat.Bank of North Carolina, 706

F.Supp. 1211, 1212 (E.D. Va. 1988)(summary judgment is seldom appropriate in cases

where particular states of mind are involved in the claim or defense); Dial v. Morgan, 525

So.2d 1362, 1364 (Ala. 1982)("questions of intent are seldom appropriate for disposition

by summary judgment"); Modicon, Inc. v. Shelnutt (In re: Shelnutt), 150 B.R. 436, 438

("fraud is not generally susceptible to summary judgment.").

In light of several different factual disputes the Court determines that the better course to follow here is to allow the Plaintiffs to go forward with a trial on the various claims asserted in their complaint.  (Doc. 1).  Whether or not the Plaintiffs will ultimately succeed on a particular cause of action is a question that will be resolved at trial.

## III.  CONCLUSION

Finally, as there are material facts in dispute, the motion for summary judgment filed by Defendants Saele and V Restaurants is DENIED.  (Doc. 14).  The Court will enter an Order consistent with this Memorandum Decision by way of a separate document.

Done this 8th day of June, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Von G. Memory, Esq.
   Daniel G. Hamm, Esq.
   Coleman Yarbrough, Esq.