# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| SUSAN S. DEPAOLA, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF PHILIP L. GOODWYN AND SIMPLE PLEASURES, INC., | CASE NO.: 2:06-CV-00893-WKW |
| PLAINTIFFS, | (BANKRUPTCY CASE NO. 05-32325-CHAPTER 7) |
| V | |
| V. RESTAURANTS, INC., AND VINCE SAELE, | (BANKRUPTCY ADV. PRO. NO. 05-03062-WRS) |
| DEFENDANTS. | |

## DEFENDANT'S MOTION TO DISMISS – FRAUD COUNT

**COMES NOW** the defendants, V. Restaurants, Inc., and Vince Saele and pursuant to *Rule 12, Ala.R.Civ.Proc.* and *Rule 12, Fed.R.Civ.Proc* move this Honorable Court to dismiss the Plaintiffs' fraud count by stating the following:

1. On or about January 28, 2005, the Plaintiffs filed the instant action in the Montgomery County Circuit Court. This action alleges various claims against the Defendants. This action, subsequent to State Court filing, was removed to the United States Bankruptcy for the Middle District of Alabama. The subject action has now been transferred to the United States District Court for the Middle District of Alabama.

2. One of the counts in the original complaint alleges fraud on the part of the Defendants. Defendants allege that the averment in the complaint is not sufficient to satisfy pleading requirement of *Rule 9, Ala.R.Civ.Proc.* or *Rule 9, Fed.R.Civ.Proc.* in that the averment fails to possess particularity necessary for a fraud count. The complaint fails to state the time,

place and the contents or substance of any false representations as required by the rules of pleadings.

3. Pursuant to *Rule 9(b) Ala.R.Civ.Proc.* allegations of fraud "shall be stated with particularity." The committee comments to the rule explain that "[t]he pleading must show time, place and the contents or substance of the false representations."

4. The Defendants have, on two previous summary judgment motions by the Defendants, raised the failure of the Plaintiffs to plead the particularity of the fraud count as required by the rules of pleading. The failure to raise sufficient facts to support a fraud count was also addressed in the Defendant's brief filed in this action when the action was before the Montgomery County Circuit Court. A co-defendant, who was previously dismissed from this action, also raised the shortcoming of the complaint in its *Motion to Dismiss/Motion for a More Definite Statement/Answer*.

5. The failure of the Plaintiffs to plead such is understandable because of the testimony of Plaintiff, Mr. Phillip Goodwyn, and sole shareholder of Simple Pleasures, Inc. During Mr. Goodwyn's deposition testimony he stated that since the Defendants did not "go through" with the contract he feels he was defrauded. He goes on to say that he had no information that the Defendants intended not to go through with the sale on the day they entered the contract.

6. The Defendant includes the complaint (Exhibit A) filed by the Plaintiff along with excerpts from the Plaintiff's deposition. (Exhibit B)

**WHEREFORE, THE PREMISES CONSIDERED**, Counsel for the Defendants pray that this Honorable Court will issue an order dismissing the fraud count of the Plaintiff's complaint or in the alternative issue a judgment on the pleading in the Defendant's behalf as to the fraud count.

**RESPECTFULLY SUBMITTED** this the 12th day of March, 2007.

/s/ Daniel G. Hamm
_____
DANIEL G. HAMM (HAM043)
ATTORNEY FOR DEFENDANTS, V
RESTAURANTS, INC AND VINCE
SAELE
560 S. MCDONOUGH ST., STE. A
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX                334-323-5666

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this Defendant's Motion to Dismiss – Fraud Count by electronic transmission or by placing a copy in the United States Mail with sufficient postage for first class delivery to the attorneys named below.

**DONE** this the 12th day of March, 2007.

/s/ Daniel G. Hamm
_____
DANIEL G. HAMM (HAM043)
ATTORNEY FOR DEFENDANTS, V
RESTAURANTS, INC AND VINCE
SAELE
560 S. MCDONOUGH ST., STE. A
MONTGOMERY, ALABAMA 36104
TELEPHONE   334-269-0269
FAX         334-323-5666

Von Memory
James Day
469 S. McDonough Street
Montgomery, Alabama 36104

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| SIMPLE PLEASURES, INC., an Alabama corporation, and PHILLIP GOODWYN, individually,<br><br>    Plaintiffs,<br><br>V.<br><br>V RESTAURANTS, INC., an Alabama corporation, SPECTRUM/VAUGHN PLAZA L.L.C., an Alabama limited liability company, and VINCE SAELE, an individual, and fictitious Defendants, A, B, C, D, and E being those persons, firms, partnerships, corporations, or other entities that aided, assisted or joined with the Defendants, incident to the actions described herein. Plaintiff avers that the identities of the fictitious parties are otherwise unknown to Plaintiff at this time, or if their names are known to Plaintiff at this time, their identities as proper parties are not known to Plaintiff at this time, but their true names will be substituted by amendment when ascertained,<br><br>    Defendants. | CASE NO. CV 2005 – 306<br><br><br><br><br><br><br><br><br><br>TRIAL BY JURY DEMANDED |

## COMPLAINT

### PARTIES

1. Plaintiff, SIMPLE PLEASURES, INC. ("Simple Pleasures") is an Alabama corporation with its principal place of business in Montgomery County, Alabama.

2. Plaintiff, PHILLIP GOODWYN ("Goodwyn"), is over the age of 19 years, is a resident of Montgomery County, Alabama. Mr. Goodwyn's address is 1533 Gilmer Ave., Montgomery, AL 36104.

3. Defendant, V RESTAURANTS, INC. ("V Restaurants"), is an Alabama corporation with its principal place of business in Montgomery County, Alabama. The registered agent for service of process for V Restaurants, Inc., is Vince Saele. Mr. Saele may be served at 5040 Vaughn Rd., Montgomery, AL 36116.

4. Defendant, SPECTRUM/VAUGHN PLAZA L.L.C. ("Spectrum"), is an Alabama limited liability company, with its principal place of business in Montgomery County, Alabama. The registered agent for service of process for Spectrum is Edgar H. Fatzinger, III. Mr. Fatzinger may be served at 2870 Zelda Road, Montgomery, AL 36106.

5. It is believed that the Defendant, VINCE SAELE ("Saele"), who is over the age of 19 years, is a resident of Montgomery County, Alabama. Mr. Saele may be served at 5040 Vaughn Rd., Montgomery, AL, 36116.

6. FICTITIOUS DEFENDANTS A, B, C, D, and E, are currently unknown, however, these Defendants joined, assisted, aided, and abetted in wrongfully withholding, depriving, and converting assets and other business opportunities.

**JURISDICTION AND VENUE**

7. The Plaintiffs allege that the Defendants owe Plaintiffs money based on a breach of a restaurant purchase agreement and other legal theories. Accordingly, Plaintiffs are proceeding against the Defendants under a theory of breach of contract, conversion, unjust enrichment, damages for use, fraud, wantonness/willfulness, and civil conspiracy. This court has statutory and historical jurisdiction over these claims. All of the parties either reside in or have corporate presence in Montgomery County, Alabama and all of the events and incidents that occurred in relation to the matters between the parties occurred in Montgomery County, Alabama. Hence,

venue is proper in this county. The amount in controversy exceeds $10,000.00 so this case is properly before the Montgomery County Circuit Court.

## FACTS COMMON TO ALL COUNTS

8. Simple Pleasures was a restaurant and food service corporation in Montgomery, Alabama. Goodwyn is the president of Simple Pleasures.

9. Simple Pleasures owns and previously operated a popular and well-known restaurant on the east side of Montgomery, Alabama commonly known as "Gators". Gators is located at 5040 Vaughn Road, Montgomery, AL, 36116-1149. Gators has been previously known as Gators Plaza Café, however, recently it was renamed Gators Fish House.

10. Gators maintained a broad customer base, goodwill, and a reputation for quality food and service in Montgomery County, Alabama.

11. In the past two years, Goodwyn and Simple Pleasures have actively pursued and investigated several offers to sell the assets, goodwill, and customer base of Gators.

12. In or about July 2004, Goodwyn received an offer from V Restaurants and Saele to purchase Gators, and ultimately the parties agreed to a $90,000.00 purchase price.

13. For the purchase price, V Restaurants and Saele agreed to purchase Gators, as a going concern, to include all equipment, inventory and supplies, furniture, fixtures, and amenities. In addition, V Restaurants and Saele, *inter alia*, agreed to assume responsibility for the existing lease with Spectrum.

14. The purchase price also included intangibles such as a large customer base, good will, over 15 years of perfected and renowned recipes, and direct assistance with the transition of all existing employees to the new owners.

15. The above-referenced terms and conditions were integrated into a contract for sale, prepared by the Saele Defendants, and signed by the parties, September 24, 2004.

16. Incident to the negotiations on the contract for sale, V Restaurants and Saele negotiated a $30,000.00 payoff of the $104,253.57 lease arrearage with Spectrum, a $30,000.00 payoff of the $80,000.00 debt to Regions Bank, and an anticipated $30,000.00 settlement of the $106,425.71 debt to the Internal Revenue Service.

17. In further consideration, Spectrum, *inter alia*, agreed to release Goodwyn and Simple Pleasures from their lease obligations. Regions Bank agreed to release its liens, pursuant to the promissory note and security agreement, on the assets of Gators. The Internal Revenue Service also agreed to a release of the federal tax lien.

18. Incident to the contract for purchase of Gators, Goodwyn verbally agreed to allow V Restaurants and Saele to take possession of the restaurant, pending approval of the application to the Internal Revenue Service. Moreover, in a show of good faith, Goodwyn did not pursue or solicit other buyers of Gators.

19. V Restaurants and Saele had sole and complete possession of the assets and operation of Gators from September 24, 2004, through the current date. In addition, V Restaurants and Saele had access to the Gators staff and personal property associated with the restaurant.

20. In an effort to firm up a closing date, the undersigned called counsel for the V Restaurants and Saele and requested a closing, however, the undersigned was informed by counsel that V Restaurants and Saele were "no longer interested in the terms of the contract" and withdrew the offer to purchase Gators. Nevertheless, V Restaurants and Saele have remained in sole possession.

21. V Restaurants and Saele have allowed the Gators business to run down to the point that it may be impossible to salvage the business.

22. Spectrum has advertised the leasehold property for public sale in the Montgomery Advertiser, January 13, 20, and 27, 2005. Spectrum has alleged the abandonment of the leased premises and has noticed the sale of the fixtures, equipment, and other personal property belonging to Simple Pleasures, Friday, February 4, 2005.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

23. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

24. V Restaurants and Saele signed a contract for sale, September 24, 2004. Incident to the instant contract, V Restaurants and Saele agreed, among other things, to purchase the going concern of Gators for $90,000.00.

25. Relying on the representations of V Restaurants and Saele, Goodwyn, and as valuable consideration for the contract for sale, agreed to allow Defendants to assume possession before the sale was closed.

26. Without cause, V Restaurants and Saele have failed or refused to honor their contract for sale, however, V Restaurants and Saele have remained in possession and continue to use the restaurant and the amenities associated therewith.

WHEREFORE, the Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele in the amount of $90,000.00, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### SECOND CAUSE OF ACTION
### (CONVERSION)

27. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

28. V Restaurants and Saele signed a document entitled contract for sale, September 24, 2004. Incident to the instant contract V Restaurants and Saele agreed to purchase the going concern of Gators for $90,000.00.

29. Relying on the representations of Saele, Goodwyn, as valuable consideration for the contract for sale, agreed to allow V Restaurants and Saele to assume possession before the sale was closed.

30. Without cause, V Restaurants and Saele have failed or refused to honor their contract for sale.

31. V Restaurants and Saele has had sole and exclusive possession of the assets and operation of Gators from September 24, 2004, through the current date.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### THIRD CAUSE OF ACTION
### (UNJUST ENRICHMENT)

32. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

33. V Restaurants and Saele signed a document entitled contract for sale, September 24, 2004. Regarding the instant contract the V Restaurants and Saele, among other things, agreed to purchase the assets associated with or concerning Gators for $90,000.00.

34. Relying on the representations of Saele, Goodwyn, as valuable consideration for the contract for sale, agreed to allow V Restaurants and Saele to take possession before the sale was closed.

35. Without cause, the V Restaurants and Saele have failed or refused to honor their contract for sale.

36. V Restaurants and Saele had sole possession of the assets and operation of Gators from September 24, 2004, through December 31, 2004. During the same period in both 2001 and 2002, Gators earned in excess of $450,000.00 in sales revenue.

WHEREFORE, the Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### FOURTH CAUSE OF ACTION
### (DAMAGES FOR USE)

37. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

38. V Restaurants and Saele signed a document entitled contract for sale, September 24, 2004. Incident to the instant contract the V Restaurants and Saele agreed to purchase the going concern of Gators for $90,000.00.

39. Relying on the representations of Saele, Goodwyn, as valuable consideration for the contract for sale, agreed to allow V Restaurants and Saele to assume possession before the sale was closed.

40. Without cause, V Restaurants and Saele have failed or refused to honor their contract for sale.

41. V Restaurants and Saele had sole possession of the assets and operation of Gators from September 24, 2004, through December 31, 2004. During the same period in both 2001 and 2002, Gators earned in excess of $450,000.00 in sales revenue.

WHEREFORE, the Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### FIFTH CAUSE OF ACTION
### (FRAUD)

42. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele for FRAUD in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### SIXTH CAUSE OF ACTION
### (NEGLIGENCE)

43. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment against V Restaurants and Saele for NEGLIGENCE in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### SIXTH CAUSE OF ACTION
### (WANTONNESS)

44. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele for WANTONNESS in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### SEVENTH CAUSE OF ACTION
### (WILLFULNESS)

45. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment, for compensatory and punitive damages, against V Restaurants and Saele for WILLFULNESS in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### SEVENTH CAUSE OF ACTION
### (CONSPIRACY)

46. The Plaintiffs move to incorporate by reference the averments contained in paragraphs 1 through 22.

WHEREFORE, Goodwyn and Simple Pleasures demand a judgment against V Restaurants, Spectrum, and Saele for CONSPIRACY in an amount to be determined, together with interest, costs, attorney fees, and for such other and further relief as this court deems just and appropriate.

### JURY DEMAND

The Plaintiffs demand a trial by struck jury on all matters contained herein.

Respectfully submitted January 28, 2005.

By: /s/ Von G. Memory
Memory & Day
Von G. Memory
ASB-8137-071V

James L. Day
ASB-1256-A55J

Attorneys for Plaintiffs

OF COUNSEL:

Memory & Day
Post Office Box 4054
Montgomery, AL 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001

# SIMPLE PLEASURES, INC.

# v.

# V RESTAURANTS, INC., et al.

# PHILLIP GOODWYN

### February 17, 2006

Reagan Reporters, LLC
Phone: 334.262.7556
Fax: 334.262.4437
www.ReaganReporters.com

Page 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

IN RE:

| | |
|---|---|
| PHILLIP GOODWYN, | CASE NO. |
| Debtor. | 05-32325-WRS |
| SIMPLE PLEASURES, | CHAPTER 7 |
| INC., | |
| Plaintiff, | |
| vs. | ADVERSARY |
| V RESTAURANTS, INC., | PROCEEDING NO. |
| ET AL, | 05-03062 |
| Defendants. | |

\*   \*   \*   \*   \*   \*

DEPOSITION OF PHILLIP GOODWYN, VOLUME I, taken pursuant to notice and stipulation on behalf of the Defendant, in the Law Office of Von G. Memory, P.A., 469 South McDonough Street, Montgomery, Alabama 36104, before Aimee French, Court Reporter and Notary Public in and for the State

PHILLIP GOODWYN - 2/17/2006

Page 78

```
 1    noticing procedures, or the legal
 2    process was wrong?
 3 A. You know, I don't think -- I don't
 4    know.  I don't know.
 5 Q. Are you aware of any facts, anything
 6    that might give you reason to
 7    challenge that?
 8 A. Well --
 9 Q. Other than you not liking the outcome?
10       MR. MEMORY:  I object to the
11    form.
12 A. There was no effort to really make an
13    active true sale -- I mean, no real
14    postings, no real -- I mean, if you
15    want to sell something to get a real
16    profit for it, you know, get as much
17    money as you could, I don't think that
18    was actively done, no.
19 Q. (BY MR. HAMM) Okay.  Other than the
20    failure to solicit all offers or
21    whatever --
22 A. Right.
23 Q. -- to properly advertise --
```

Page 79

```
 1 A. Where it was quietly coming to the
 2    conclusion that we're trying to do
 3    this amount of money, yes, that's
 4    probably what was happening at that
 5    particular time because it was
 6    operating and Spectrum had wanted
 7    Vince to continue, or V Restaurants,
 8    to continue operating, wanted an
 9    operating entity, not someone to come
10    pull the equipment out.
11 Q. What facts do you know today to
12    support your claim that V Restaurants,
13    or Mr. Saele, defrauded you in some
14    manner?
15 A. The facts are -- is that I delivered
16    the full intentions of what I was
17    delivering, what was being requested.
18    I gave him full access, gave him keys,
19    gave him everything.  He had no
20    hindrances to owning and operating
21    that business.
22 Q. Okay.
23 A. And he submits a letter and says I'm
```

Page 80

```
 1    not going to do it and says we're not
 2    going to execute.  I'm not going to
 3    pay you for this.
 4 Q. Is it fair to say that the facts are
 5    his failure to go through with this
 6    contract of September the 24th, 2004,
 7    that's what -- those are the facts
 8    that support your fraud claim?
 9 A. Is his failure to execute this deal.
10 Q. Did he tell you anything that was
11    misleading?  Can you tell me any --
12    anything he told you about the
13    September 24, 2004 contract that was
14    untrue, that you know today to be
15    untrue?
16 A. I don't think -- I mean, do I know any
17    facts?  Would you restate that
18    question?  Do I know of any facts that
19    he said that were untrue?
20 Q. Right.  On or about September -- any
21    representations he made to you about
22    this September 24 contract to get you
23    to sign or that you know today to be
```

Page 81

```
 1    untrue, to get you to sign this
 2    document?
 3 A. Well, I know today that he then chose
 4    not to fulfill the contract, even
 5    though there was no -- that time was
 6    not the issue.  He had full access.
 7    That was not an issue, and that was,
 8    you know -- so there was no reason for
 9    him to withdraw the contract.  The
10    contract was still in place as far as
11    -- or an agreement between the two of
12    us was still in full agreement,
13    enforcement.
14 Q. Let me ask you this way:  Other than
15    Mr. Saele and V Restaurants' failure
16    to follow through with the contract of
17    September the 24th, are there any
18    other facts that support your fraud
19    claim?
20 A. Did he try to then buy the equipment
21    at the low price to get it in and to
22    do it in a subversive manner?  Yes, I
23    think that is exactly what he was
```

21 (Pages 78 to 81)

Page 82

```
 1     trying to do.
 2  Q. Okay.  You think on September the
 3     24th, 2004 he was attempting to do
 4     that?
 5  A. No.
 6  Q. Okay.  When did that -- when did you
 7     --
 8  A. I don't know.
 9  Q. When did that occur?
10  A. I should say I don't know that that
11     wasn't his mindset, attempting --
12  Q. Okay.
13  A. I did not think it was or I wouldn't
14     have signed it.
15  Q. You're sitting here today telling us
16     that Mr. Saele bought this restaurant
17     equipment at a below-market price; is
18     that correct?
19  A. Correct.
20  Q. And that fact supports your contention
21     that you were defrauded in some manner
22     or helps aid in supporting your
23     contention you were defrauded in some
```

Page 83

```
 1     manner; is that correct?
 2  A. Correct.
 3  Q. Okay.  But other than that fact, is
 4     there anything that you know other
 5     than the fact that Mr. Saele purchased
 6     this restaurant at, you say, a
 7     below-market price, there's no other
 8     facts that you know that support the
 9     fact -- support the notion that you
10     were defrauded in some manner?
11  A. I just keep getting to the fact that
12     he withdrew the contract that was
13     going to be paid --
14  Q. Right.
15  A. -- and then everything would have been
16     fine.
17  Q. Withdrew the contract and purchased it
18     below market, correct?
19  A. Right.  Because I had no use for it at
20     that point.
21  Q. Okay.  You've also alleged that --
22     MR. HAMM:  Mr. Memory, I know
23     you've got to get out of here.
```

Page 84

```
 1     MR. MEMORY:  What time is it?
 2     MR. HAMM:  11:15 by my watch,
 3     but it's unreliable.
 4     MR. MEMORY:  What time have
 5     you got, Coleman?
 6     MR. YARBROUGH:  I have 11:15.
 7     MR. MEMORY:  I've got 30
 8     minutes to get to Tuskeegee for a
 9     twelve noon meeting.
10  Q. (BY MR. HAMM)  With respect to the
11     conspiracy count, do you understand
12     generally what conspiracy is?
13  A. Um-hmm, yes.
14  Q. Tell me what you understand a
15     conspiracy to be.
16  A. Collusion.
17  Q. An agreement --
18  A. An agreement --
19  Q. -- between people to do something
20     wrong?
21  A. To do something to -- that harms
22     another party.
23  Q. Okay.  Between who in your case?
```

Page 85

```
 1  A. In my case it would have been between
 2     Spectrum Development and --
 3     MR. HAMM:  I'm going to stand
 4     up for a second.
 5  A. -- and Vince Saele or Ed Fatzinger and
 6     Vince Saele.
 7  Q. (BY MR. HAMM)  Spectrum Development
 8     and --
 9  A. -- or Ed Fatzinger and Vince Saele.
10  Q. The four parties to this litigation:
11     Fatzinger -- well, he's not a party to
12     this litigation.  Spectrum
13     Development, Vince Saele, and V
14     Restaurants?
15  A. Correct.
16  Q. They got together in some manner to do
17     you some harm?
18  A. It is possible.
19  Q. Oh, okay.  Do you know it to be a fact
20     or agreed in some manner to do you
21     some harm?
22  A. I do know that they came to an
23     agreement on how to execute and how to
```

22 (Pages 82 to 85)