IN THE UNITED STATES
DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SUSAN S. DEPAOLA, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF PHILIP L. GOODWYN AND SIMPLE PLEASURES, INC., | CASE NO.: 2:06-CV-00893-WKW |
| PLAINTIFFS, | (BANKRUPTCY CASE NO. 05-32325-CHAPTER 7) |
| V | |
| V. RESTAURANTS, INC., AND VINCE SAELE, | (BANKRUPTCY ADV. PRO. NO. 05-03062-WRS) |
| DEFENDANTS. | |

## DEFENDANT'S TRIAL BRIEF

**COME NOW** the defendants, V. Restaurants, Inc., and Vince Saele and provide this brief of trial issues for the convenience of the Court and all parties. The following document is prepared by Defendant's counsel and is a good faith effort to inform the Court of facts relative to this litigation. This document is not the representations of any individual Defendant or party and has not been reviewed by any witness or party.

*Trial issue*

> Whether the Defendants breached a contract with the Plaintiffs to purchase the Gators Restaurant and in so doing committed fraud, conversion, negligence, wantonness, willfulness and conspiracy and are now responsible to the Plaintiffs for unjust enrichment and damages?

*Witnesses*

Phillip Goodwyn          Owner of Simple Pleasures, Inc. the corporation that
                         operated the Gators Restaurant located in the

|  |  |
|---|---|
|  | Spectrum/Vaughn LLC shopping center on Vaughn Road and the Eastern Bypass in Montgomery, Alabama. |
| Vince Saele | Owner of V. Restaurants, Inc., the corporation that in 2004 negotiated a purchase agreement with Mr. Goodwyn for the Gators Restaurant location at the above location. |
| Edgar Fatzinger | Managing member of Spectrum/Vaughn LLC, the owners of the shopping center where the Gator's Restaurant location operates on Vaughn Road and the Eastern Bypass in Montgomery, Alabama |
| Robert Russell, Jr. | Counsel for Mr. Vince Saele and V. Restaurants, Inc. during the time of the above proposed purchase of the Gators Restaurant from Mr. Phillip Goodwyn and Simple Pleasures, Inc. |
| Other witnesses | Both parties list other witnesses; however for the purpose of the following information, the unlisted witnesses are not germane. |

*Timeline*

This case involves several dates that are operative and may be more easily understood with the use of a time line, therefore the Defendants provide the following timeline that is undisputed.

| | |
|---|---|
| May 2004 | Following several years of financial problems in the Gator's Restaurant location Phillip Goodwyn contacts Vince Saele and requests that he come to his restaurant either as a manage, partner or prospective purchaser. Vince Saele agrees and originally starts as a consultant. At the time, Mr. Goodwyn is almost two years behind in lease arrearage ($104,253.57), in default on his equipment financing arrangement to Regions Bank who has lien on all of his restaurant equipment and furniture ($80,000.00) and has recently been made the subject of a Federal Tax lien for unpaid employment taxes ($106,425.71). |
| June – August 2004 | After several weeks at the restaurant, Mr. Saele decides that he desires to purchase the restaurant and makes an offer to Mr. Goodwyn. Negotiations commence and the parties will soon enter a letter of understanding. (See attachment A) All the while, the restaurant landlord is demanding the unpaid lease obligation and threatening eviction. |

| | |
|---|---|
| September 1, 2004 | The landlord gave Simple Pleasures, Inc. and Phillip Goodwyn a notice of the lease default/termination and pursuant to the lease allows ten days to cure the arrearage. This notice states the rental arrearage is $104,253.57 and gives the Plaintiff ten (10) days to cure the default. (See attachment B) |
| September 24, 2004 | Phillip Goodwyn and Vince Saele, both acting on behalf of their corporations, sign a letter of understanding providing that Mr. Saele will purchase the restaurant leasehold, its equipment and furniture on October 22, 2004, for a specified amount provided the tax liens are satisfied and other contingencies are met. At this time Phillip Goodwyn leaves the restaurant and turns the property over to Vince Saele. (See attachment A) |
| October 22, 2004 | All tax liens are still in place and not removed. |
| November 4, 2004 | Realizing that the terms of the letter of understanding were not met and according to the landlord who was "tired of dealing with Phillip Goodwyn", Spectrum/Vaughn LLC terminated Simple Pleasures, Inc and Phillip Goodwyn's interest in the Gator's Restaurant location and took possession of all personal property within the premises. This notice of termination was sent to Simple Pleasures, Inc. and Phillip Goodwyn. (See attachment C) |
| November 2004 | Spectrum/Vaughn, LLC approached Vince Saele about entering a lease and continuing operations of a restaurant at the subject location. |
| November 19, 2004 | Correspondence from the Internal Revenue Service provided to Von Memory from the Service states that for $30,000.00 the Service agrees conditionally to discharge certain property owned by Simple Pleasures, Inc. from the lien of the Service. It is worthwhile to note that the Plaintiff did not attempt to obtain a release of the tax lien pursuant to IRC § 6325(a) but sought a discharge of property pursuant to IRC § 6325(b). The agreement signed by the Plaintiff and Defendant required a release of all tax liens against Goodwyn individually and the business. (See attachment E) |
| November 24, 2004 | Von Memory, acting on behalf of the Plaintiffs, notified the Defendants that the Plaintiffs were prepared to sell the restaurant under the conditions specified. Again, the document attached to the letter from Mr. Memory was not a release of the tax lien pursuant to IRC § 6325(a) but a discharge of property pursuant to IRC § 6325(b). However, the Plaintiff's rights in the |

|  |  |
|---|---|
|  | leasehold had been terminated and all personal property located in the restaurant was subject to the landlord's lien. |
| December 2004 | Vince Saele acting for V. Restaurants, Inc. enters a new lease with Spectrum/Vaughn, LLC. |
| January 2005 | Spectrum/Vaughn, LLC gives notice of the foreclosure of its landlord's lien on all personal property belonging to Simple Pleasures, Inc. and Phillip Goodwyn. The notice is also sent to Regions Bank, and the Internal Revenue Service. The landlord conducts an auction on the courthouse steps where Vince Saele and others bid on the property. Vince Saele places the highest bid which was a price above the properties value suggested by Phillip Goodwyn. |
| To this date | Tax liens against the Plaintiffs remain on file as of this writing. |

***Undisputed facts***

In or about July 2004, the Plaintiffs received an offer from V Restaurants and Saele, the Defendants, to purchase Gators Restaurant in eastern Montgomery, Alabama. The parties would agree on a $90,000.00 purchase price. For the purchase price, V Restaurants and Saele agreed to purchase Gators, as a going concern, to include its leasehold, all equipment, inventory and supplies, furniture, fixtures, and amenities. The above-referenced terms and conditions were integrated into a letter of understanding and signed by the parties, September 24, 2004. (See attachment A)

At the time of the above negotiations, the Plaintiff was in serious default of its lease at the "storefront" where the restaurant operated. Just before the parties signed a contract, the Plaintiff was served a notice of default in the leasehold agreement by the restaurant's landlord, Spectrum Development, L.L.C. acting through Mr. Edgar Fatzinger. This notice was pursuant to the default notice/termination clause of the lease signed by the Plaintiffs. The notice informed the Plaintiffs of the $104,253.57 leasehold arrearage and demanded that this arrearage be cured within ten (10) days, all pursuant to the terms of the lease. (See attachment B)

Subsequent to the above notice of default, the Plaintiff and the Defendant entered the letter of understanding. Mr. Vince Saele will testify that he was aware of the recently filed Federal Tax liens against the Plaintiff and the leasehold arrearage along with a general understanding of the Plaintiffs financial predicament. With this in mind, the

Defendant provided in the letter of understanding that the tax liens, both personal and individual would have to be removed before he would undertake the purchase. Mr. Saele will testify that he is aware that if one purchases anything from a person that has tax liens, that the purchaser may stand to loose the item purchase or may be responsible for some of the taxes owed by the seller. (See attachment A, paragraph 8)

At the time of the agreement, September 24, 2004, Mr. Edgar Fatzinger acting for the landlord was insisting that someone assume the Gator's lease and make arrangements for the arrearage or that Mr. Goodwyn bring the lease current. He waited until after the specified closing date of October 22, 2004, and learned that the sale failed to close because of the Plaintiffs failure to meet the contingencies of the agreement. He then, acting pursuant to his September 1, 2004, notice of default terminated the tenancy of the Plaintiffs and took possession of all personal property in the restaurant location and commenced to foreclose the landlords lien by the auction of all personal property in the restaurant location. (See attachment C)

On November 24, 2004, the Plaintiff's counsel provided a letter from the Internal Revenue Service suggesting a "Certificate of Discharge" of certain property from Federal Tax liens versus a release of the tax liens. (See attachment D) Aside from the untimely performance under the contract, the termination of the Plaintiff's rights in the leasehold interests and the seizure of the personal property located in the restaurant, the September 24, 2004, letter of understanding required the Plaintiff's to release the subject tax liens against Goodwyn, individually and the business. The correspondence from the Internal Revenue Service provides for a Certificate of Discharge from the Federal Tax lien. The Certificate of Discharge, would if fully complied with by the Plaintiffs only release specified items from the lien, where the letter of understanding provided for the conveyance of additional item. (See attachment E)

Subsequent to the above Spectrum/Vaughn, LLC approached the Defendant about the operation of restaurant in the same location and they entered a lease agreement. After proper notices, the landlord foreclosed its lien on the fixtures and personal that remained in the restaurant location. This foreclosure sale was conducted on the Montgomery County Courthouse steps where several bidders appeared and Mr. Vince Saele purchased the equipment for an amount above the fair market value asserted by the Plaintiffs.

It is the Defendants contention that the Plaintiffs lost any right in the subject restaurant location to convey on November 4, 2004. In addition, the Plaintiff did not perform under the letter of understanding as required by October 22, 2004 nor did the Plaintiff ever release any tax liens as agreed upon.

**RESPECTFULLY SUBMITTED** this the 19th day of March, 2007.

/s/ Daniel G. Hamm
---
DANIEL G. HAMM (HAM043)
ATTORNEY FOR DEFENDANTS, V
RESTAURANTS, INC AND VINCE
SAELE
560 S. MCDONOUGH ST., STE. A
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX          334-323-5666

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this Defendant's Trial Brief by electronic transmission or by placing a copy in the United States Mail with sufficient postage for first class delivery to the attorneys named below.

**DONE** this the 19th day of March, 2007.

/s/ Daniel G. Hamm
DANIEL G. HAMM (HAM043)
ATTORNEY FOR DEFENDANTS, V
RESTAURANTS, INC AND VINCE
SAELE
560 S. MCDONOUGH ST., STE. A
MONTGOMERY, ALABAMA 36104
TELEPHONE    334-269-0269
FAX          334-323-5666

Von Memory
James Day
469 S. McDonough Street
Montgomery, Alabama 36104

Attachment A
September 24, 2004 Letter of Understanding between
Simple Pleasures, Inc. and Phillip Goodwyn and
V. Restaurants, Inc. and Vince Saele

**PARNELL & CRUM, P.A.**
ATTORNEYS AT LAW
641 SOUTH LAWRENCE STREET
MONTGOMERY, AL 36104

CHARLES N. PARNELL, III
G. BARTON CRUM
ROBERT J. RUSSELL, JR.
BRITT BATSON GRIGGS
MATTHEW T. ELLIS
ADRIAN D. JOHNSON
J. MATTHEW PARNELL
DAYNA R. BURNETT

TELEPHONE
334-832-4200

TELECOPIER
334-293-3551

MAILING ADDRESS
P.O. BOX 2189
ZIP CODE 36102-2189

September 24, 2004

<u>VIA FACSIMILE - 834-8001</u>

Von G. Memory
Attorney at Law
469 S. McDonough Street
Montgomery, Alabama 36104

Dear Von:

    I am in receipt of your sales agreement and have briefly reviewed same, deciding that it is not possible to make the corrections and amendments this afternoon prior to 5:00. Thus, I write this letter as a memorandum of agreement, which I believe contains the pertinent provisions, until we can get the final draft documentation agreed upon. They are as follows:

1. That the purchase price shall be $90,000.00;

2. That the purchase price is for all of the assets, including, but not limited to, licenses and leases, equipment, office supplies, inventory, automobiles/delivery van, etc., and any other of the same located off-premises in storage buildings, etc.;

3. That Seller will lease the business to Buyer, along with all licenses and property until the date of closing for the sum of $250.00;

4. That the ownership of the properties mentioned herein above will be transferred to my client at a closing date no later than October 22, 2004, or as otherwise agreed upon by the parties, and that the property transferred shall be transferred without any liens or encumbrances whatsoever;

5. That the closing is contingent upon Regions accepting the sum of $30,000.00 for Phillips' lien.

6. That Spectrum Development will accept a note from Vince in the amount of $30,000.00 and that the $30,000.00 note shall be counted as consideration towards the purchase of the business;

Von G. Memory
September 24, 2004
Page Two

7. That Buyer is entitled to all revenues derived from the business from the date of the consummation of this agreement forward;

8. That the remaining $30,000.00 be paid to the Internal Revenue Service for and in consideration of the release of any and all liens which they may have against Phillip, individually, or the business (if any additional monies are owed, Phillip pays);

9. In the event that any of the contingencies stated herein are not complied with or fulfilled by the Obligor, consideration shall be immediately withdrawn from the Trust Account and returned to the Purchaser;

10. That upon the consummation of this document, the Purchaser shall be entitled to utilize the premises and operate the business in its normal manner and without interference from Mr. Goodwyn;

11. That the catering business operating out of Gator's shall continue, but only be operated by its new owner;

12. That if any of the contingencies fail wherein the Seller is the Obligor, Seller shall reimburse Purchaser for any and all net financial losses or expenses related thereto.

Von, my client is at wits end and feels he may be wasting his time. These terms are non-negotiable and this must be signed by tomorrow at noon (Saturday, September 25, 2004).

Sincerely,

Robert J. Russell, Jr.

RJRjr/fd

V Restaurants, Inc.
By: Vince Saele
Its: President

Simple Pleasures, Inc.
By: Phillip Goodwyn
Its: President

Attachment B
September 1, 2004 Notice of Default in Leasehold to Simple Pleasures, Inc. and Phillip Goodwyn



# SPECTRUM/VAUGHN PLAZA LLC
"SERVING RETAILERS SINCE 1984"

September 1, 2004

Mr. Philip Goodwyn
Individually and President
Simple Pleasures, Inc.
5040 Vaughn Rd.
Montgomery, Alabama 36116

Re: Leases at Vaughn Plaza Shopping Center

Dear Philip:

This letter is the required 10 day notice of default to you, the Lessee, under our Leases for Gators Restaurant and Market. The default is for non-payment of rent, and the amount in arrears is $104,253.57. This is also notice to you personally, as Lease Guarantor, of the default.

This is notice that, if the default is not cured within the 10 day period, we, the Lessor, intend to exercise all of our rights under the Lease and under law to cure the default, including taking possession of the premises. Let me caution you against removing anything from the premises as we have a Landlord's lien, and believe such a removal would be a conversion of property.

As provided in the Lease, if we acquire the services of an attorney to enforce our rights, those fees will be charged to you as additional rent. Further let me remind you of our agreement from October 2003 to let you operate for up to one year with an arrearage as long as current rent is paid. The current rent has not been paid, so that agreement has been breached, and is now voided.

Very truly yours,

Edgar H. Fatzinger III
Member

Cc: D. Coleman Yarbrough, Attorney

EXHIBIT

M & D Exhibit 122

Attachment C
November 4, 2004, Notice of Leasehold Termination to
Simple Pleasures, Inc and Phillip Goodwyn



# SPECTRUM/VAUGHN PLAZA LLC
"SERVING RETAILERS SINCE 1984"

*Attw Von:*

November 4, 2004           **CERTIFIED MAIL**

*Received SAT 11/04/204*

Mr. Philip Goodwyn and
Simple Pleasures, Inc.
5040 Vaughn Rd.
Montgomery, AL 36116
        And
1533 Gilmer Ave.
Montgomery, AL 36104

Re: Vaughn Plaza Shopping Center
    Gator's Restaurant 5040 Vaughn Rd.

Dear Philip:

This letter is to inform you, both as President of Simple Pleasures, Inc. and as the individual guarantor of our Lease, that, pursuant to the 10 day statutory notice served on you, we have taken possession of the above referenced premises, terminated our Lease due to non-performance, and taken possession of all fixtures, equipment, and other property as was left behind in the Leased Premises. We have it on good authority that you have not been operating a business at the Premises since September of this year, thus abandoning the premises along with the fixtures, equipment and other property. We have not received any rent since July of this year. Your current rental indebtedness to us is $111,117.38.

In order to mitigate damages, we intend to Lease the Premises to others, and we further intend to sell all the fixtures, equipment and other property at public auction and apply the proceeds to the debt. We claim that our Landlord's lien as the first lien as it arose with the commencement of the Lease, but we will notify the other two lienholders of record, Regions Bank and the Internal Revenue Service as to the auction and let them make their claims against the proceeds. Any deficiency thereafter will be claimed directly from you.

Very truly yours,

Edgar H. Fatzinger III
Member

EXHIBIT

M & D Exhibit 121

Attachment D
November 19, 2004, Internal Revenue Service correspondence
re:Certificate of Discharge

**Internal Revenue Service**  **Department of the Treasury**
600 S. Maestri Place, Stop 65
New Orleans, LA 70130

date: November 19, 2004

Philip Lightfoot Goodwyn
1533 Gilmer Ave.
Montgomery, AL 36104

Re: Request for Discharge
Simple Pleasures, Inc.
EIN: 63-1095373

Dear Mr. Goodwyn:

Your request for a <u>Certificate of Discharge</u> has been approved based upon the information provided. Upon receipt of the following, we will issue a Certificate of Discharge:

Payment in the amount of $30,000.00. Based upon the information provided, this represents the maximum taxpayer interest in the property to be discharged, with no payment to the taxpayer. If the payment is by certified funds or a cashier's check, the Certificate can be considered for immediate issuance. If the payment is in another form, the Certificate will be delayed 30 days to verify the payment has cleared;

A copy of the transfer of the property (<u>Act of Sale</u>, Act of Donation, Vehicle Registration) <u>showing proper recordation with the appropriate office; to include a copy of the Exhibit A that is referred to in the contract.</u>

A Settlement Statement (Form HUD-1 or equivalent) showing the distribution of all funds disbursed in the transaction on the property. If no funds transfer takes place, a signed statement explaining this must be submitted;

THIS CONDITIONAL COMMITMENT LETTER IS GOOD FOR (30 DAYS) FROM THE ABOVE DATE ON THE FOLLOWING DESCRIBED ASSETS SIMPLE PLEASURES INC. DBA GATORS CAFE :

All fixed and unfixed assets to include, inventory, equipment, machinery, furniture, computers, fixtures, tools, supplies, accessories, licenses, and trade name.

Please attach a copy of this letter to your reply and send to:

Internal Revenue Service
Darlene Boyd, Advisor/Reviewer
600 S. Maestri Place, Stop 65
New Orleans, LA 70130

Should you have any questions, please contact the above employee, Badge 72-03053, at 504-558-3200, or by facsimile at 504-558-3490.

Sincerely,

Wallace B. Schneidau
Technical Services (Advisory) Group Manager

cc: Von G. Memory

Attachment E
IRC § 6325

26 U.S.C.A. § 6325

UNITED STATES CODE ANNOTATED
TITLE 26. INTERNAL REVENUE CODE
**SUBTITLE F--PROCEDURE AND ADMINISTRATION**
**CHAPTER 64--COLLECTION**
SUBCHAPTER C--LIEN FOR TAXES
PART II--LIENS
→ **§ 6325. Release of lien or discharge of property**

 **(a) Release of lien.**--Subject to such regulations as the Secretary may prescribe, the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which--

   **(1) Liability satisfied or unenforceable.**--The Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable;  or

   **(2) Bond accepted.**--There is furnished to the Secretary and accepted by him a bond that is conditioned upon the payment of the amount assessed, together with all interest in respect thereof, within the time prescribed by law (including any extension of such time), and that is in accordance with such requirements relating to terms, conditions, and form of the bond and sureties thereon, as may be specified by such regulations.

 **(b) Discharge of property.**--

   **(1) Property double the amount of the liability.**--Subject to such regulations as the Secretary may prescribe, the Secretary may issue a certificate of discharge of any part of the property subject to any lien imposed under this chapter if the Secretary finds that the fair market value of that part of such property remaining subject to the lien is at least double the amount of the unsatisfied liability secured by such lien and the amount of all other liens upon such property which have priority over such lien.

   **(2) Part payment;  interest of United States valueless.**--Subject to such regulations as the Secretary may prescribe, the Secretary may issue a certificate of discharge of any part of the property subject to the lien if--

      **(A)** there is paid over to the Secretary in partial satisfaction of the liability secured by the lien an amount determined by the Secretary, which shall not be less than the value, as determined by the Secretary, of the interest of the United States in the part to be so discharged, or

      **(B)** the Secretary determines at any time that the interest of the United States in the part to be so discharged has no value.

      In determining the value of the interest of the United States in the part to be so discharged, the Secretary shall give consideration to the value of such part and to such liens thereon as have priority over the lien of the United States.

   **(3) Substitution of proceeds of sale.**--Subject to such regulations as the Secretary may prescribe, the Secretary may issue a certificate of discharge of any part of the property subject to the lien if such part of the property is sold and, pursuant to an agreement with the Secretary, the proceeds of such sale are to be held, as a fund subject to the liens and claims of the United States, in the same manner and with the same priority as such liens and claims had with respect to the discharged property.

   **(4) Right of substitution of value.**--

      **(A) In general.**--At the request of the owner of any property subject to any lien imposed by this chapter, the Secretary shall issue a certificate of discharge of such property if such owner--

         **(i)** deposits with the Secretary an amount of money equal to the value of the interest of the United States (as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

      determined by the Secretary) in the property; or

      **(ii)** furnishes a bond acceptable to the Secretary in a like amount.

    **(B) Refund of deposit with interest and release of bond.**--The Secretary shall refund the amount so deposited (and shall pay interest at the overpayment rate under section 6621), and shall release such bond, to the extent that the Secretary determines that--

      **(i)** the unsatisfied liability giving rise to the lien can be satisfied from a source other than such property; or

      **(ii)** the value of the interest of the United States in the property is less than the Secretary's prior determination of such value.

    **(C) Use of deposit, etc., if action to contest lien not filed.**--If no action is filed under section 7426(a)(4) within the period prescribed therefor, the Secretary shall, within 60 days after the expiration of such period--

      **(i)** apply the amount deposited, or collect on such bond, to the extent necessary to satisfy the unsatisfied liability secured by the lien; and

      **(ii)** refund (with interest as described in subparagraph (B)) any portion of the amount deposited which is not used to satisfy such liability.

    **(D) Exception.**--Subparagraph (A) shall not apply if the owner of the property is the person whose unsatisfied liability gave rise to the lien.

**(c) Estate or gift tax.**--Subject to such regulations as the Secretary may prescribe, the Secretary may issue a certificate of discharge of any or all of the property subject to any lien imposed by section 6324 if the Secretary finds that the liability secured by such lien has been fully satisfied or provided for.

**(d) Subordination of lien.**--Subject to such regulations as the Secretary may prescribe, the Secretary may issue a certificate of subordination of any lien imposed by this chapter upon any part of the property subject to such lien if--

    **(1)** there is paid over to the Secretary an amount equal to the amount of the lien or interest to which the certificate subordinates the lien of the United States,

    **(2)** the Secretary believes that the amount realizable by the United States from the property to which the certificate relates, or from any other property subject to the lien, will ultimately be increased by reason of the issuance of such certificate and that the ultimate collection of the tax liability will be facilitated by such subordination, or

    **(3)** in the case of any lien imposed by section 6324B, if the Secretary determines that the United States will be adequately secured after such subordination.

**(e) Nonattachment of lien.**--If the Secretary determines that, because of confusion of names or otherwise, any person (other than the person against whom the tax was assessed) is or may be injured by the appearance that a notice of lien filed under section 6323 refers to such person, the Secretary may issue a certificate that the lien does not attach to the property of such person.

**(f) Effect of certificate.**--

    **(1) Conclusiveness.**--Except as provided in paragraphs (2) and (3), if a certificate is issued pursuant to this section by the Secretary and is filed in the same office as the notice of lien to which it relates (if such notice of lien has been filed) such certificate shall have the following effect:

      **(A)** in the case of a certificate of release, such certificate shall be conclusive that the lien referred to in such certificate is extinguished;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 U.S.C.A. § 6325

**(B)** in the case of a certificate of discharge, such certificate shall be conclusive that the property covered by such certificate is discharged from the lien;

**(C)** in the case of a certificate of subordination, such certificate shall be conclusive that the lien or interest to which the lien of the United States is subordinated is superior to the lien of the United States;  and

**(D)** in the case of a certificate of nonattachment, such certificate shall be conclusive that the lien of the United States does not attach to the property of the person referred to in such certificate.

**(2) Revocation of certificate of release or nonattachment.**--If the Secretary determines that a certificate of release or nonattachment of a lien imposed by section 6321 was issued erroneously or improvidently, or if a certificate of release of such lien was issued pursuant to a collateral agreement entered into in connection with a compromise under section 7122 which has been breached, and if the period of limitation on collection after assessment has not expired, the Secretary may revoke such certificate and reinstate the lien--

**(A)** by mailing notice of such revocation to the person against whom the tax was assessed at his last known address, and

**(B)** by filing notice of such revocation in the same office in which the notice of lien to which it relates was filed (if such notice of lien had been filed).

Such reinstated lien (i) shall be effective on the date notice of revocation is mailed to the taxpayer in accordance with the provisions of subparagraph (A), but not earlier than the date on which any required filing of notice of revocation is filed in accordance with the provisions of subparagraph (B), and (ii) shall have the same force and effect (as of such date), until the expiration of the period of limitation on collection after assessment, as a lien imposed by section 6321 (relating to lien for taxes).

**(3) Certificates void under certain conditions.**--Notwithstanding any other provision of this subtitle, any lien imposed by this chapter shall attach to any property with respect to which a certificate of discharge has been issued if the person liable for the tax reacquires such property after such certificate has been issued.

**(g) Filing of certificates and notices.**--If a certificate or notice issued pursuant to this section may not be filed in the office designated by State law in which the notice of lien imposed by section 6321 is filed, such certificate or notice shall be effective if filed in the office of the clerk of the United States district court for the judicial district in which such office is situated.

**(h) Cross reference.**--

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.